**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

URBAN OAKS BUILDERS, LLC; HINES
INTERESTS LIMITED PARTNERSHIP; 1662
MULTIFAMILY LLC; HINES 1662
MULTIFAMILY, LLC; HINES INVESTMENT
MANAGEMENT HOLDINGS LIMITED
PARTNERSHIP; HIMH GP, LLC; HINES
REAL ESTATE HOLDINGS LIMITED
PARTNERSHIP; JCH INVESTMENTS, INC;

     Plaintiffs,

v.                                                                    Case No. 4:19-CV-04211 (VDG)

GEMINI INSURANCE COMPANY;
IRONSHORE SPECIALTY INSURANCE
COMPANY; NAVIGATORS SPECIALTY
INSURANCE COMPANY; GREAT
AMERICAN ASSURANCE COMPANY;
SOUTHSTAR CAPITAL GROUP I, LLC;
COTTINGTON ROAD TIC, LLC; DURBAN
ROAD TIC, LLC; COLLIS ROOFING, INC.;
DA PAU ENTERPRISES, INC.; FLORIDA
CONSTRUCTION SERVICES, INC.;
STRUCTURAL CONTRACTORS
SOUTH, INC.;

     Defendants.
_____/

### GEMINI'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO COUNTS II AND III OF PLAINTIFFS' COMPLAINT, AND COUNTERCLAIM

Defendant GEMINI INSURANCE COMPANY ("Gemini") files its amended answer

and affirmative defenses to Counts II and III of the complaint (DE 1) filed by URBAN OAKS

BUILDERS, LLC ("UOB"), HINES INTERESTS LIMITED PARTNERSHIP, 1662 MULTIFAMILY

LLC, HINES 1662 MULTIFAMILY, LLC, HINES INVESTMENT MANAGEMENT HOLDINGS

LIMITED PARTNERSHIP, HIMH GP, LLC, HINES REAL ESTATE HOLDINGS LIMITED

PARTNERSHIP, JCH INVESTMENTS (collectively "Hines") (all referred to as "Plaintiffs"):

.

## NATURE OF ACTION

1.      Admitted.

2.      Denied that Gemini refused to fully comply with its contractual and common law obligations to Plaintiffs. As for the remaining allegations, without knowledge; therefore denied.

3.      Admitted that the amounts sought in the Southstar Lawsuit allegedly reach the limits of all of the policies at issue. Denied that Gemini left Plaintiffs to fend for themselves. Specifically, pursuant to the demands for reimbursement by Plaintiffs, Gemini made payments. These payments exhausted Gemini's each occurrence limit of $2M and Gemini does not owe Plaintiffs a defense or indemnity. As for the remaining allegations, without knowledge; therefore denied.

## JURISDICTION AND VENUE

4.      Admitted for jurisdictional purposes only.

5.      Denied.

6.      Admitted for jurisdictional purposes only.

7.      Admitted for jurisdictional purposes only.

8.      Admitted.

## PARTIES

9.      Without knowledge; therefore denied.

10.     Admitted.

11.     Without knowledge; therefore denied.

12.     Without knowledge; therefore denied.

13.     Admitted.

14.     Without knowledge; therefore denied.

15.　　Admitted.

16.　　Admitted.

17.　　Admitted.

18.　　Admitted.

19.　　Admitted.

20.　　Without knowledge; therefore denied.

21.　　Admitted.

22.　　Admitted.

23.　　Admitted.

24.　　Admitted.

25.　　Admitted.

26.　　Admitted.

27.　　Admitted.

28.　　Admitted.

## BACKGROUND

**A.　The Construction Project**

29.　　Without knowledge; therefore denied.

30.　　Without knowledge; therefore denied.

31.　　Without knowledge; therefore denied.

32.　　Without knowledge; therefore denied.

33.　　Without knowledge; therefore denied.

34.　　Admitted.

35.　　Without knowledge; therefore denied.

36.    Without knowledge; therefore denied.

37.    Admitted.

**B.    The Carriers' Insurance Policies**

38.    Admitted that Gemini issued the policy identified in paragraph 39 to Hines Interests Limited Partnership and UOB as the first Named Insureds. As for the remaining allegations, without knowledge; therefore denied.

39.    Admitted.

40.    The Gemini policy speaks for itself and need not be admitted or denied.

41.    The Gemini policy speaks for itself and need not be admitted or denied.

42.    The Gemini policy speaks for itself and need not be admitted or denied.

43.    The Ironshore policy speaks for itself and need not be admitted or denied.

44.    The Ironshore policy speaks for itself and need not be admitted or denied.

45.    The Ironshore policy speaks for itself and need not be admitted or denied.

46.    The Ironshore policy speaks for itself and need not be admitted or denied.

47.    The Navigators policy speaks for itself and need not be admitted or denied.

48.    The Navigators policy speaks for itself and need not be admitted or denied.

49.    The Navigators policy speaks for itself and need not be admitted or denied.

50.    The Navigators policy speaks for itself and need not be admitted or denied.

51.    The Great American policy speaks for itself and need not be admitted or denied.

52.    The Great American policy speaks for itself and need not be admitted or denied.

53.    The Great American policy speaks for itself and need not be admitted or denied.

54.    The Great American policy speaks for itself and need not be admitted or denied.

55.    The Great American policy speaks for itself and need not be admitted or denied.

### C.    The Southstar Lawsuit

56.    Without knowledge; therefore denied.

57.    Admitted.

58.    Admitted that the Southstar Plaintiffs filed the Southstar Lawsuit against Plaintiffs and others. As for the remaining allegations, the complaint in the Southstar Lawsuit speaks for itself and need not be admitted or denied.

59.    The complaint in the Southstar Lawsuit speaks for itself and need not be admitted or denied.

60.    The complaint in the Southstar Lawsuit speaks for itself and need not be admitted or denied.

### D.    The Carriers' Refusal to Provide a Defense and to Acknowledge their Indemnity Obligations

61.    Admitted that Plaintiffs previously demanded reimbursement and Gemini made payments to UOB in connection with the alleged construction defect claims against them in the Southstar Lawsuit. These payments exhausted Gemini's each occurrence limit of $2M and Gemini does not owe UOB a defense or indemnity. As for the remaining allegations, without knowledge; therefore denied.

62.    Admitted that Gemini retained counsel to defend the Southstar Lawsuit. Further, admitted that Plaintiffs demanded reimbursement and Gemini made payments in connection with the alleged construction defect claims against them in the Southstar Lawsuit. These payments exhausted Gemini's each occurrence limit of $2M and Gemini does not owe a defense or indemnity.

63.    Admitted that Plaintiffs previously demanded reimbursement and Gemini made payments in connection with the alleged construction defect claims against them in the Southstar

Lawsuit. These payments exhausted Gemini's each occurrence limit of $2M and Gemini does not owe a defense or indemnity. As for the remaining allegations, denied that Plaintiffs are entitled to reimbursement for defense expenses or indemnity for remediation expenses under the Gemini policy.

64. Admitted that Ironshore's position that Gemini's policy has not been exhausted because the Southstar Lawsuit involves multiple occurrences is frivolous. Denied that Gemini's aggregate limit applies to the claims against Plaintiffs in the Southstar Lawsuit.

65. Without knowledge; therefore denied.

66. Without knowledge; therefore denied.

67. Without knowledge; therefore denied.

68. Denied that Gemini breached any obligation to Plaintiffs under the Gemini policy or common law. As for the remaining allegations, without knowledge; therefore denied.

### COUNT 1 – TURNOVER – 11 U.S.C. § 542

69. Gemini reincorporates paragraphs 1 to 68.

70. Gemini moved to dismiss Count I for failure to state a claim for which relief can be granted. Consequently, this allegation need not be admitted or denied.

71. Gemini moved to dismiss Count I for failure to state a claim for which relief can be granted. Consequently, this allegation need not be admitted or denied.

72. Gemini moved to dismiss Count I for failure to state a claim for which relief can be granted. Consequently, this allegation need not be admitted or denied.

73. Gemini moved to dismiss Count I for failure to state a claim for which relief can be granted. Consequently, this allegation need not be admitted or denied.

74.     Gemini moved to dismiss Count I for failure to state a claim for which relief can be granted. Consequently, this allegation need not be admitted or denied.

## COUNT 2 – BREACH OF CONTRACT

75.     Gemini reincorporates paragraphs 1 to 68.

76.     The policies at issue speak for themselves and need not be admitted or denied.

77.     Without knowledge; therefore denied.

78.     Denied that Gemini owes Plaintiffs defense or indemnity and that it refused to defend them in the Southstar Lawsuit. As for the remaining allegations, without knowledge; therefore denied.

79.     Denied that Plaintiffs suffered any damages due to Gemini's conduct. Specifically, Plaintiffs demanded reimbursement and Gemini made payments in connection with the alleged construction defect claims against them in the Southstar Lawsuit. These payments exhausted Gemini's each occurrence limit of $2M and Gemini does not owe a defense or indemnity. As for the remaining allegations, without knowledge; therefore denied.

80.     Denied.

## COUNT 3 – REQUEST FOR DECLARATORY RELIEF

81.     Gemini reincorporates paragraphs 1 to 68.

82.     Denied that Gemini did not provide a defense to Plaintiffs in the Southstar Lawsuit. Denied that Gemini did not indemnify Plaintiffs. Specifically, Plaintiffs previously demanded reimbursement and Gemini made payments in connection with the alleged construction defect claims against them in the Southstar Lawsuit. These payments exhausted Gemini's each occurrence limit of $2M and Gemini does not owe a defense or indemnity. As for the remaining allegations, without knowledge; therefore denied.

83.    Denied.

84.    Admitted for jurisdictional purposes only.

85.    Denied that Plaintiffs are entitled to recover attorney's fees, legal assistant fees, and costs pursuant to Florida Statutes §§ 627.428, 57.104, 57.041, 626.9373 and/or Texas Statutes § 542.060 and Tex. Civ. Prac. & Rem. Code 38.001. As for the remaining allegations, without knowledge; therefore denied.

**A.    Request for Declaratory Relief Against Gemini**

86.    Denied.

87.    Denied. Plaintiffs demanded reimbursement and Gemini made payments in connection with the alleged construction defect claims against them in the Southstar Lawsuit. These payments exhausted Gemini's each occurrence limit of $2M and Gemini does not owe a defense or indemnity.

**B.    Request for Declaratory Relief Against Ironshore**

88.    Admitted.

89.    Admitted that Plaintiffs seek a declaration regarding the rights, duties, and obligations owed to them under the Ironshore policy. As for the remaining allegations, without knowledge; therefore denied.

**C.    Request for Declaratory Relief Against Navigators**

90.    Admitted.

91.    Admitted that Plaintiffs seek a declaration regarding the rights, duties, and obligations owed to them under the Navigators policy. As for the remaining allegations, without knowledge; therefore denied.

**D.      Request for Declaratory Relief Against Great American**

92.      Admitted.

93.      Admitted that Plaintiffs seek a declaration regarding the rights, duties, and obligations owed to them under the Great American policy. As for the remaining allegations, without knowledge; therefore denied.

## CONDITIONS PRECEDENT

94.      Denied.

95.      Denied.

## PRAYER

All allegations and claims in the WHEREFORE paragraph are denied including that Plaintiffs are entitled to any relief.

All allegations in Plaintiffs' complaint not specifically admitted are denied.

## AFFIRMATIVE DEFENSES

First Affirmative Defense: Coverage is barred, in whole or in part, by the terms, provisions, exclusions, conditions and limitations contained in the Gemini policy. Each of these applicable terms, provisions, exclusions, conditions, and limitations are asserted as affirmative defenses.

Second Affirmative Defense: Counts II and III of Plaintiffs' complaint fail to state a valid claim for which relief can be granted. Specifically, pursuant to the demands for reimbursement, Gemini made the following payments in connection with the alleged construction defect claims against them in the Southstar Lawsuit: Check No. 0000036701 in the amount of $900,259.77, Check No. 0000036313 in the amount of $935,005.43, and Check No. 0000036145 in the amount of $164,734.80. These payments exhausted Gemini's each occurrence limit of $2M. Consequently, Gemini does not owe a defense or indemnity.

Third Affirmative Defense: Counts II and III of Plaintiffs' complaint fail to state a valid claim for which relief can be granted. Specifically, on January 29, 2018, Plaintiffs demanded that Ironshore defend and/or indemnify them for damages from the Southstar Lawsuit. In support of their demand, Plaintiffs informed Ironshore, "the primary carrier, Gemini, stated that it has exhausted its policy limits of $2,000,000 on January 17, 2018. As a result we are expecting prompt payment of these invoices by Ironshore…." Consequently, Counts II and III of the complaint against Gemini are frivolous.

Fourth Affirmative Defense: Counts II and III of Plaintiffs' complaint fail to state a valid claim for which relief can be granted. Specifically, the insuring agreement of Coverage A of Gemini's policy does not require a complete release as a condition of exhaustion of the each occurrence limit of $2M. Consequently, to the extent that Plaintiffs allege Gemini's $2M payment was voluntary and/or not covered is frivolous and contrary to the terms of Gemini's policy.

Fifth Affirmative Defense: Counts II and III of Plaintiffs' complaint fail to state a valid claim for which relief can be granted. Specifically, Section III – Limits of Insurance of Gemini's policy does not require a total settlement agreement and release as a condition of exhaustion of the each occurrence limit of $2M. Consequently, to the extent that Plaintiffs allege that Gemini's $2M payment was voluntary and/or not covered is frivolous and contrary to the terms of Gemini's policy.

Sixth Affirmative Defense: Counts II and III of Plaintiffs' complaint fail to state a valid claim for which relief can be granted. Specifically, the Southstar Lawsuit only alleges a single "occurrence" as that term is defined in Gemini's policy.

Seventh Affirmative Defense: Counts II and III of Plaintiffs' complaint fail to state a valid claim for which relief can be granted. Specifically, the Gemini policy's insuring agreement provides that Gemini's "right and duty to defend ends when [it has] used up the applicable limit of insurance in the payment of judgments or settlements[.]" Gemini made three payments. Consequently, Gemini does not owe a defense or indemnity.

Eighth Affirmative Defense: Counts II and III of Plaintiffs' complaint fail to state a valid claim for which relief can be granted. Specifically, Gemini provided a defense until the exhaustion of the policy. Gemini also assisted in the release of $2M in liability from Southstar. This was done through the Gemini's payments, which reimbursed expenses incurred under the Warranty Work Agreement. Further, the release of liability from over $2M was memorialized in the Standstill Agreement, which Gemini funded. Consequently, Plaintiffs' claims are frivolous.

Ninth Affirmative Defense: Counts II and III of Plaintiffs' complaint fail to state a valid claim for which relief can be granted. Specifically, once Gemini exhausted the $2M each occurrence limit of the policy, Ironshore's obligations under its excess policy was triggered. Accordingly, Ironshore (not Gemini) owes a defense and indemnity in the Southstar Lawsuit.

Tenth Affirmative Defense: Counts II and III of Plaintiffs' complaint fail to state a valid claim for which relief can be granted. Specifically, Gemini's reimbursements were "payments of settlement" because they (a) were pursuant to the Warranty Work Agreement and Standstill Agreement between the parties, (b) limited the damages in dispute between the parties and benefitted the insured, (c) were paid by Gemini at UOB's request, and (d) were payments of settlement by the plain meaning of the term. Consequently, Plaintiffs' claims are frivolous.

Eleventh Affirmative Defense: Counts II and III of Plaintiffs' complaint are vague and fail to allege any facts establishing why Gemini's $2M reimbursements are not covered under

Gemini's policy. Accordingly, pursuant to Federal Rules of Civil Procedure 12(e), Gemini reserves the right to move for a more definite statement regarding these counts.

Twelfth Affirmative Defense: Gemini has fully complied with the terms and conditions of its policy. Consequently, Gemini no longer owes defense or indemnity regarding the Southstar Lawsuit.

Thirteenth Affirmative Defense: Gemini issued and delivered the Commercial General Liability Wrap policy described in paragraph 39 above to "Hines Interests Limited Partnership and Urban Oaks Builders, LLC" in Houston, Texas. Consequently, Texas law applies to the interpretation of the Gemini policy.

Fourteenth Affirmative Defense: Plaintiffs' claim for damages under Florida Statutes §§ 627.428, 57.104, 57.041, 626.9373 is frivolous. Specifically, Florida's statutes are inapplicable because Texas substantive law applies here.

Fifteenth Affirmative Defense: The proper test for determining the number of occurrences under Texas law is the liability triggering test, not the cause test or the new Defect Counting Test proposed by Plaintiffs. Consequently, Plaintiffs claim for the $4,000,000 Aggregate Limit of Gemini's Policy is frivolous.

Sixteenth Affirmative Defense: Plaintiffs are not entitled to any relief under Counts II and III of its complaint pursuant to the doctrines of waiver and estoppel. Specifically, at the time of accepting Gemini's first and second payments under the Warranty Work Agreement, Plaintiffs did not argue or notify Gemini that the payments did not exhaust the $2M Each Occurrence Limit for any reason, including that the payments were for reimbursement of defense expenses or that Gemini failed to obtain a release.

Seventeenth Affirmative Defense: Plaintiffs are not entitled to any relief under Counts II and III of its complaint pursuant to the doctrines of waiver and estoppel. Specifically, at the time of accepting Gemini's third payment under the Standstill Agreement, Plaintiffs did not argue or notify Gemini that the payment did not exhaust the $2M Each Occurrence Limit for any reason, including that the payment was for reimbursement of defense expenses or that Gemini failed to obtain a release from the Southstar Parties.

Eighteenth Affirmative Defense: Should the Court find the underlying complaint alleges multiple occurrences, under Gemini's Policy Plaintiffs must pay a $25,000 deductible for each occurrence.

Nineteenth Affirmative Defense: Should the Court find the underlying complaint alleges multiple occurrences, Gemini is entitled to a declaration establishing: (a) the number of occurrences, (b) the identity of each occurrence, and (c) the value of each occurrence.

Twentieth Affirmative Defense: To the extent Counts II and III contain insufficient information to permit Gemini to raise all appropriate defenses, Gemini reserves the right to amend or supplement its answer and affirmative defenses.

## COUNTERCLAIM

GEMINI INSURANCE COMPANY ("Gemini") sues URBAN OAKS BUILDERS, LLC ("UOB"), HINES INTERESTS LIMITED PARTNERSHIP, 1662 MULTIFAMILY LLC, HINES 1662 MULTIFAMILY, LLC, HINES INVESTMENT MANAGEMENT HOLDINGS LIMITED PARTNERSHIP, HIMH GP, LLC, HINES REAL ESTATE HOLDINGS LIMITED PARTNERSHIP, JCH INVESTMENTS (collectively "Hines") (all referred to as "Plaintiffs"), and states:

## NATURE OF ACTION

1.      This is an action for declaratory relief under 28 U.S.C. § 2201 and for judicial estoppel. Specifically, at Plaintiffs' demands and threats, Gemini paid its $2,000,000 Each Occurrence Limit, which they accepted without any reservations. A year and a half later, Plaintiffs claim Gemini owes the entire $4,000,000 Aggregate Limit to satisfy the claims against them in the Underlying Action, all of which stem from one contract to build one project, which was then sold in one sales contract.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to Fed. R. Civ. P. 13(a), and 28 U.S.C. § 1332 because there is diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district, *i.e.*, issuance and delivery of Gemini's policy in Houston, Texas. Moreover, venue is also proper in this district because there is no district in which this action may otherwise be brought.

4.      Specifically, Plaintiffs opposed Gemini's effort to litigate this coverage dispute in

the Middle District of Florida. After the action was remanded, Plaintiffs voluntarily dismissed the Florida state action in order to sue Gemini and others in the United States Bankruptcy Court for the Southern District of Texas, where presumably they hoped for a favorable forum. *See* 28 U.S.C. § 1391(b)(2)- (3). The Bankruptcy Court issued a report and recommendation that this Court should withdraw the reference to the entire adversary complaint, because none of the counts, *i.e.*, turnover of disputed insurance proceeds, breach of contract, and declaratory relief counts are "core" claims under the Bankruptcy Code.

5.      All conditions precedent have occurred, been performed, or have been waived.

### THE PARTIES

6.      Gemini is a statutory insurance company with its statutory domicile in the state of Delaware. Gemini's main administrative office is located in Scottsdale, Arizona. Accordingly, Gemini is a citizen of Delaware and Arizona. In this action, Gemini issued and delivered in Houston, Texas, a Commercial General Liability policy to "Hines Interests Limited Partnership" and "Urban Oaks Builders, LLC," as the sole first Named Insureds, bearing Policy No. VCWP001075, and effective from 06/28/2012 to 06/28/2017 ("Policy").

7.      Hines Interests Limited Partnership is a Texas limited partnership. The sole general partner of Hines Interests Limited Partnership is Hines Holdings Inc., which was at all times, including at the time this counterclaim was filed, a citizen of the state of Texas. Accordingly, Hines Interests Limited Partnership is a citizen of the state of Texas.

8.      UOB is a Delaware limited liability company. The sole members of UOB are POC Holdings 1, Inc. and POC Holdings 2, Inc., which were at all times, including at the time this counterclaim was filed, citizens of the state of Texas. Accordingly, UOB is a citizen of the state of Texas.

9.    1662 Multifamily, LLC is a Delaware limited liability company. The sole members of 1662 Multifamily, LLC are Hines 1662 Multifamily, LLC and Hines Investment Management Holdings LP, which were at all times, including at the time this counterclaim was filed, citizens of the state of Texas. The sole member of Hines 1662 Multifamily, LLC and Hines Investment Management Holdings LP is HIMH GP LLC, which was at all times, including at the time this counterclaim was filed, a citizen of the state of Texas. Accordingly, 1662 Multifamily, LLC is a citizen of the state of Texas.

10.    Hines 1662 Multifamily, LLC is a Delaware limited liability company. The sole member of Hines 1662 Multifamily, LLC is Hines Investments Management Holdings Limited Partnership, which was at all times, including at the time this counterclaim was filed, a citizen of the state of Texas. The sole member of Hines Investment Management Holdings LP is HIMH GP LLC, which was at all times, including at the time this counterclaim was filed, a citizen of the state of Texas. Accordingly, Hines 1662 Multifamily, LLC is a citizen of the state of Texas.

11.    Hines Investments Management Holdings Limited Partnership is a Texas limited partnership. The sole member of Hines Investments Management Holdings Limited Partnership is HIMH GP, LLC, which was at all times, including at the time this counterclaim was filed, a citizen of the state of Texas. Accordingly, Hines Investments Management Holdings Limited Partnership is a citizen of the state of Texas.

12.    HIMH GP, LLC is a Delaware limited liability company. The sole member of HIMH GP, LLC is Hines Real Estate Holdings Limited Partnership, which was at all times, including at the time this counterclaim was filed, a citizen of the state of Texas. Accordingly, HIMH GP, LLC is a citizen of the state of Texas.

13.    Hines Real Estate Holdings Limited Partnership is a Texas limited partnership.

The sole general partner of Hines Real Estate Holdings Limited Partnership is JCH Investments, Inc. which was at all times, including at the time this counterclaim was filed, a citizen of the state of Texas. Accordingly, Hines Real Estate Holdings Limited Partnership is a citizen of the state of Texas.

14.    JCH Investments, Inc. was at all times, including at the time this counterclaim was filed, a Texas corporation with its principal place of business in Texas. Accordingly, JCH Investments, Inc. is a citizen of the state of Texas.

## COMMON ALLEGATIONS

### UOB was hired in one contract to build one Project.

15.    In July 2014, 1662 Multifamily, LLC hired UOB under a contract to construct a project for them located in Celebration, Florida.

16.    The project consists of six identical four-story residential apartment buildings and a clubhouse located at 1662 Celebration Boulevard, Celebration, Florida 34747 known as "Sola at Celebration" (the "Project").

17.    The original construction of the single Project was completed in February 2016.

### The Project was sold in one Sale Contract.

18.    Southstar Capital Group I, LLC as manager and agent for Cottington Road TIC, LLC and Durban Road TIC, LLC (the "Southstar Parties") purchased the single Project from Hines in July 2016 in one Sale and Purchase Agreement (the "Sale Contract"). A copy of the single Sale Contract attached as Exhibit "A."

19.    Under the Sale Contract, 1662 Multifamily allegedly made misrepresentations, which the Southstar Parties relied on in purchasing the Project.

20.    On February 13, 2018, the Southstar Parties sued Plaintiffs, and others, in the

Circuit Court of Osceola County, Florida, Case No. 2018-CA-415-OC, for allegedly failing to disclose and misrepresenting that the Project had latent defects to induce them into purchasing the Project for $67,000,000. A copy is attached as Exhibit "B."

21.    According to the Southstar Parties, after purchasing the single Project in the single Sale Contract, they discovered that 1662 Multifamily an "alter ego of the other Hines Defendants intentionally withheld, actively concealed, misrepresented, and/or fraudulently failed to disclose physical characteristics and existing conditions," including "non-compliance with the as-built record drawings, extensive violations of the Florida Building code, as well as other latent defective conditions." (Ex. B, Pg. 6 ¶ 23.)

22.    The Underlying Action asserts these claims against Plaintiffs: Count I – Piercing the Corporate Veil/Alter Ego; Count II – Fraudulent Non-disclosure/Fraudulent Inducement; Count III – Breach of Contract – Intentional Withholding of Material Information; Count IV – Statutory Violation of Florida Statutes 553.84; and Count V – Negligence. (*Id.*, Pg. 8.)

23.    On February 28, 2018, Plaintiffs notified Gemini of the lawsuit.

24.    Gemini initially retained counsel to defend Plaintiffs.

**The Gemini Policy**.

25.    Gemini issued and delivered, in Houston, Texas, a Commercial General Liability policy to "Hines Interests Limited Partnership" and "Urban Oaks Builders, LLC" as the first Named Insureds, bearing Policy No. VCWP001075, and effective from 06/28/2012 to 06/28/2017 ("Policy"). A copy is attached as Exhibit "C."

26.    The Policy includes a $2,000,000 Each Occurrence Limit and a $4,000,000 General Aggregate Limit.

27.    The principal coverage form (CG 00 01 12 07) provides in pertinent part:

Page 18

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.** ... (Ex. C, Pg. 7.)

28.  The Policy includes Section III – Limits of Insurance, which provides part:

**SECTION III – LIMITS OF INSURANCE**…

**5.** Subject to Paragraph 2. or 3. Above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a.  Damages under Coverage A…

Because of all… "property damage" arising out of any one "occurrence."

(*Id.*, Pg. 16.)

## Under threats to pay, Gemini exhausted the Each Occurrence Limit and paid its entire $2,000,000 limit.

29.  On June 26, 2017, the Southstar Parties entered into an agreement for the performance of warranty work at the Project ("Warranty Work Agreement"). A copy is attached as Exhibit "D."

30.  The Warranty Work Agreement, included the following provision:

> By entering into this agreement, Southstar does not waive its rights, if any, to make claims regarding any other defects allegedly present at the Project other than the cantilever balconies. With respect to any such claims, UOB hereby reserves its rights, positions and defenses. (Ex. D, Pg. 1.)

31.     On July 21, 2017, Plaintiffs sent a letter to Gemini demanding payment of the costs it incurred ($162,734.80) under the Warranty Work Agreement. A copy is attached as Exhibit "E." The demand includes an itemized list, in 150 (one hundred and fifty) pages of expenses incurred to address myriad defects at the Project.[1]

32.     The demand provides in pertinent part:

> The purpose of this letter is to provide Vela/Gemini with our account of the expenses that have occurred through May 31, 2017, including the itemized detail. Furthermore, Urban Oaks is also making a demand for payment on the entire amount provided on the attached. Please review and respond within 14 days of this demand. (Emphasis added.)

33.     The demand did not allege that the complaint against it in the Underlying Action alleged multiple occurrences.

34.     On October 4, 2017, Plaintiffs threatened Gemini that it was in violation of the Texas Prompt Payment statute for failing to pay the 07/21/2017 demand. A copy is attached as Exhibit "F." In pertinent part, the Notice provides:

> On a related note, please be advised that Gemini has violated the Texas Prompt Payment Statute (Texas Insurance Code Chapter 542) for its inaction relating to Urban Oaks' claim on July 21, 2017. Under Chapter 542, Urban Oaks is entitled to 18% interest and attorneys' fees. If Urban Oaks files suit against Gemini, Urban Oaks will be seeking such interest and attorneys' fees, along with any other remedies to which it is entitled.

35.     On October 5, 2017, UOB continued to threaten Gemini, under Texas law, for immediate payment of expenses incurred under the Warranty Work Agreement from Gemini. A copy is attached as Exhibit "G."

---

[1] UOB did not argue multiple occurrences.

36.     In pertinent part, the demand provides:

As you know, Gemini has violated Chapter 542 of the Texas Insurance code for its failure to timely pay Urban Oaks' claim of $162,734.80, which was submitted on July 21, 2017.

37.     In response to all the threats, Gemini made its first payment for $164,734.80 on October 10, 2017. A copy is attached as Exhibit "H."

38.     Plaintiffs accepted Gemini's first payment and did not argue multiple occurrences.

39.     Plaintiffs' renewed demand included an updated Expense Breakdown documenting expenditures of over $1.2 million for various construction defects, which Plaintiffs incurred under the Warranty work Agreement. A copy of the Expense Breakdown is attached as Exhibit "I."

40.     On November 9, 2017, still under threat, Gemini made its second payment for $935,005.43. A copy is attached as Exhibit "J."

41.     The check Gemini provided that it was made "In Payment of: REIMBURSEMENT FOR WARRANTY WORK BETWEEN SOUTHSTAR." (*Id.*)

42.     Plaintiffs accepted Gemini's second payment and did not argue multiple occurrences.

43.     On November 14, 2017, the Southstar Parties and UOB entered into a Standstill Agreement for the purpose of avoiding litigation. The Standstill Agreement was not limited to specific units, certain buildings, certain construction elements or certain types of damages; rather, it was for litigation as a whole over the single Project. A copy is attached as Exhibit "K."

44.     Under the Standstill Agreement, UOB agreed to pay the Southstar Parties $2,050,398.72 and in exchange, the Southstar Parties agreed not to file a lawsuit, as to any damages and as to any claims, until the standstill period ended. (*See* Ex. K, Pg. 2-3.)

45.     The purpose of the standstill period was for the parties to attempt to negotiate a settlement for complete resolution of the claim. (*Id.*)

46.     Section 3 of the Standstill Agreement provides in pertinent part:

(a) [Southstar] shall have the right to include the items and amounts set forth in the November 8, 2017 invoice in its claims for damages (and [Urban Oaks] reserves and retains its rights to contest such amounts); (b) the Standstill Payment will be credited against any amount ultimately recovered by [Southstar] with respect to the Repair Work Claims in any such contested resolution proceeding; and (c) the Standstill Payment shall be retained by [Southstar] as an irrevocable partial settlement payment from [Urban Oaks] and shall not be recoverable by or refundable to [Urban Oaks …] regardless of any resolution or outcome of the Repair Work Claims in any contested resolution proceeding (even if the Standstill Payment exceeds the amount of damages awarded to [Southstar] in such contested resolution proceeding). (*Id.*)

47.     Additionally, Section 5 of the Standstill Agreement provides in pertinent part:

"all discussions between the Parties concerning the Repair Work Claims during the Standstill Period… shall constitute protected settlement communication under Section 90.404 of the Florida Evidence Code […and that] the fact and terms of this Standstill Agreement shall be held confidential by each of the parties." (*Id.*)

48.     On January 23, 2018, Gemini made its third and final payment for $900,259.77. A copy is attached as Exhibit "L."

49.     Plaintiffs accepted Gemini's third payment and did not argue multiple occurrences.

50.     The third payment included a partial reimbursement for the Standstill Agreement. (Ex. M, Pg. 9.)

51.     Gemini did not fully fund the Standstill Agreement because Gemini exhausted its Policy in the middle of reimbursing the November 2017 expense breakdown.

52.    The complaint in the Underlying Action alleges a single "occurrence" and Gemini fully exhausted its obligations under the Policy, at Plaintiffs' insistence and under threat of violating Texas law, by paying the Each Occurrence Limit of $2,000,000. (*Id.*)

## COUNT I – NO DUTY TO DEFEND OR INDEMNIFY BASED ON EXHAUSTION OF THE EACH OCCURRENCE LIMIT

53.    Gemini reincorporates paragraphs 1 through 52.

54.    Under Section III – Limits of Insurance of the Policy, Gemini paid its entire $2,000,000 Each Occurrence Limit in full satisfaction of the one occurrence alleged by the Southstar Parties, *i.e.*, the one sale of one defectively constructed project.

55.    Gemini's payments exhausted the $2,000,000 Each Occurrence Limit.

56.    Accordingly, Gemini has no duty to continue defending or to indemnify the Plaintiffs in the Underlying Action.

## COUNT II – ESTOPPEL REGARDING NUMBER OF OCCURRENCES AND APPLICABLE SUBSTANTIVE LAW

57.    Gemini reincorporates paragraphs 1 through 52.

58.    In its demands to Gemini to pay, Plaintiffs did not allege multiple occurrences.

59.    Plaintiffs accepted Gemini's $2,000,000 Each Occurrence Limit without any reservations, including that the Southstar Parties alleged multiple occurrences.

60.    Gemini detrimentally relied on Plaintiffs' position.

61.    Plaintiffs should now be estopped from arguing that the Underlying Action alleges multiple occurrences against them.

62.    Moreover, in their demands to pay, Plaintiffs threatened Gemini with violating the Texas Prompt Payment statute, entitling them to "bad faith" and attorney's fees.

63.    Gemini detrimentally relied on Plaintiffs' position.

64.    Plaintiffs should now be estopped from arguing that Florida law somehow informs this Court's inquiry.

## COUNT III – DECLARATORY RELIEF REGARDING THE IDENTIFY AND NUMBER OF OCCURRENCES

65.    Gemini reincorporates paragraphs 1 through 52.

66.    Gemini's position is the Underlying Action alleges one occurrence against Plaintiffs, specifically, the single sale of one defectively constructed project.

67.    Plaintiffs claim each defect at the Project constitutes a separate occurrence.

68.    Despite proposing a new Defect Counting Test, Plaintiffs have not identified the number of occurrences. Instead, Plaintiffs simply claim Gemini owes its $4,000,000 Aggregate Limit under the Policy for some unspecified number of occurrences.

69.    Accordingly, there is an actual, present, and justiciable controversy between Gemini and Plaintiffs regarding the number of occurrences, if the Court determines there is more than one occurrence.

70.    Pursuant to 28 U.S.C. § 2201, Gemini requests the Court find, declare, and identify the number of occurrences, if there is more than one, for purposes of determining how the Policy must respond.

## COUNT IV -  DECLARATORY RELIEF REGARDING THE VALUE OF EACH OCCURRENCE

71.    Gemini reincorporates paragraphs 1 through 52.

72.    Gemini's position is the Underlying Action alleges one occurrence against Plaintiffs, specifically, the single sale of one defectively constructed project.

73.    Plaintiffs claim each defect at the Project constitutes a separate occurrence.

74. Despite proposing a new Defect Counting Test, Plaintiffs have not identified the value of each proposed occurrence. Instead, Plaintiffs simply claim Gemini owes its $4,000,000 Aggregate Limit under the Policy for some unspecified number, identity, and value of occurrences.

75. Accordingly, there is an actual, present, and justiciable controversy between Gemini and Plaintiffs regarding their rights and obligations under the Policy.

76. Pursuant to 28 U.S.C. § 2201, Gemini requests the Court find, declare, and identify the value of each occurrence, if there is more than one, for purposes of determining how the Policy must respond.

### COUNT V – DECLARATORY RELIEF REGARDING THE NUMBER OF APPLICABLE DEDUCTIBLES

77. Gemini reincorporates paragraphs 1 through 52.

78. Gemini's Policy includes a $25,000 Deductible per occurrence, with no aggregate limit. Specifically, the Deductible Liability Insurance Endorsement (Form VE 0536 10 11) provides that under Bodily Injury and/or Property Damage Liability Combined Coverage, the applicable deductible is $25,000 per occurrence. The Endorsement further provides:

**No Limitations**

1. Our obligation under the… Property Damage Liability… Coverages to make any payment on your behalf applies only to the amount in excess of any deductible amounts stated in the Schedule above as applicable to such coverages. …

2. **b. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies to our payments made under Supplementary Payments Coverage including, but not limited to, expenses we incur to investigate or settle a claim, to defend a "suit" and as follows…

    **(3)** Under Property Damage Liability, to all damages because of "Property Damage"….

79.     Gemini's position is the Underlying Action alleges one occurrence against Plaintiffs, specifically, the single sale of one defectively constructed project.

80.     Plaintiffs claim each defect at the Project constitutes a separate occurrence.

81.     Accordingly, there is an actual, present, and justiciable controversy between Gemini and Plaintiffs regarding their rights and obligations under the Policy.

82.     Pursuant to 28 U.S.C. § 2201, Gemini requests the Court find, declare, and identify the number of deductibles based on the identity, number, and value of each occurrence, if there is more than one occurrence, for purposes of determining how the Policy must respond.

## REQUESTED RELIEF

Gemini respectfully requests that this Court:

a.     Take jurisdiction and adjudicate the rights of the parties under the Policy;

b.     Find and declare that Gemini does not owe Plaintiffs a defense or indemnity for the claims against them in the Underlying Action based on exhaustion of the $2,000,000 Each Occurrence Limit.

c.     Find and declare that Plaintiffs should be estopped from changing positions and arguing that there are multiple occurrences instead of just one or that Florida law rather than Texas law applies to this Court's inquiry.

d.     Alternatively, should the Court find that the Underlying Action alleges multiple occurrences, find and declare the number of occurrences at the Project, the identity of the occurrences and the Project, the value of each occurrence at the Project, and the number of applicable deductibles based on all of those occurrences.

e.     And award against Plaintiffs all costs Gemini incurred to prosecute this counterclaim, as well as any other relief that this Court deems, equitable, just, and proper.

Dated: November 26, 2019.                          Respectfully submitted,


                                        /s/MICHELE A. VARGAS
                                        SINA BAHADORAN
                                        Florida Bar No. 523364
                                        Sina.Bahadoran@Clydeco.us

MICHELE A. VARGAS
Florida Bar No. 686395
Michele.Vargas@Clydeco.us

CLYDE & CO US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
T: 305.446.2646
*Admitted pro hac vice*
*Counsel for Gemini Insurance Company*

and

Jason L. Boland (SBTX 24040542)
Julie Goodrich Harrison (SBTX 24092434)
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
jason.boland@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on November 26, 2019, a true and correct copy of the foregoing amended answer, affirmative defenses, and counterclaim was served via the CM/ECF system on all parties registered to receive such service.

/s/MICHELE A. VARGAS
MICHELE A. VARGAS