# EXHIBIT A

EXECUTION VERSION

## AGREEMENT OF SALE AND PURCHASE

### BETWEEN

### 1662 MULTIFAMILY LLC,
**a Delaware limited liability company**

**as Seller**

### AND

### Southstar Capital Group I, LLC
**a Florida limited liability company,**

**as Purchaser**

**pertaining to**

**"Aviva at Celebration"**
**1662 Celebration Blvd.**
**Celebration, Florida 34747**

### EXECUTED EFFECTIVE AS OF

July 1 St , 2016

**Exhibit 1**

## AGREEMENT OF SALE AND PURCHASE

THIS AGREEMENT OF SALE AND PURCHASE (this "**Agreement**") is entered into and effective for all purposes as of ___July 1 st___, 2016 (the "**Effective Date**"), by and between **1662 MULTIFAMILY LLC**, a Delaware limited liability company ("**Seller**"), and **SOUTHSTAR CAPITAL GROUP I, LLC**, a Florida limited liability company or its permitted assigns ("**Purchaser**").

In consideration of the mutual promises, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

## ARTICLE I
## DEFINITIONS

**Section 1.1    Definitions**. For purposes of this Agreement, the following capitalized terms have the meanings set forth in this Section 1.1:

"**Additional Deposit**" means an amount equal to One Million and NO/100 Dollars ($1,000,000.00).

"**Affiliate**" means any person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with Purchaser or Seller, as the case may be. For the purposes of this definition, "control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have the meanings correlative to the foregoing.

"**Agreement**" has the meaning ascribed to such term in the opening paragraph.

"**Authorities**" means the various governmental and quasi-governmental bodies or agencies having jurisdiction over Seller, the Real Property, the Improvements, or any portion thereof.

"**Broker**" has the meaning ascribed to such term in Section 11.1.

"**Business Day**" means any day other than a Saturday, Sunday or a day on which national banking associations are authorized or required to close.

"**CERCLA**" means the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. § 9601 et seq.), as amended by the Superfund Amendments Reauthorization Act of 1986 (42 U.S.C. § 9601 et seq.), as the same may be amended.

"**Certificate as to Foreign Status**" has the meaning ascribed to such term in Section 10.3(e).

"**Certifying Party**" has the meaning ascribed to such term in Section 4.5.

1

"**Closing**" means the consummation of the purchase and sale of the Property contemplated by this Agreement, as provided for in Article X.

"**Closing Date**" means the date on which the Closing occurs, which date will be thirty (30) days following the date of the termination of the Inspection Agreement, or such earlier or later date to which Purchaser and Seller may hereafter agree in writing.

"**Closing Documents**" has the meaning ascribed to such term in Section 16.1(a).

"**Closing Statement**" has the meaning ascribed to such term in Section 10.4(a).

"**Closing Surviving Obligations**" means the covenants, rights, liabilities and obligations set forth in Sections 3.2(a), 3.2(b) (subject to Section 16.1), 4.9, 5.2(a), 5.2(d), 5.3, 5.5, 5.6, 8.1 (subject to Section 16.1), 8.2, 10.4 (subject to the limitations therein), 10.7, 11.1, 13.3, 16.1, 17.2, 17.15 and 17.20.

"**Closing Time**" has the meaning ascribed to such term in Section 10.4(a).

"**Code**" has the meaning ascribed to such term in Section 4.9.

"**Commitment**" has the meaning ascribed to such term in Section 6.2(a).

"**Contingency Date**" means 5:00 p.m. Eastern time on the date which is thirty (30) days following the effective date of the Inspection Agreement.

"**Declaration**" has the meaning ascribed to such term in Section 5.7.

"**Deed**" has the meaning ascribed to such term in Section 10.3(a).

"**Deposit Time**" means 1:00 p.m. Eastern time on the Business Day that is immediately preceding the Closing Date.

"**Documents**" has the meaning ascribed to such term in Section 5.2(a).

"**Earnest Money Deposit**" means the sum of the Initial Deposit and the Additional Deposit, plus all interest earned on the Additional Deposit.

"**Effective Date**" has the meaning ascribed to such term in the opening paragraph of this Agreement.

"**Environmental Laws**" means all federal, state and local environmental laws, rules, statutes, directives, binding written interpretations, binding written policies, ordinances and regulations issued by any Authorities and in effect as of the date of this Agreement with respect to or which otherwise pertain to or affect the Real Property or the Improvements, or any portion thereof, the use, ownership, occupancy or operation of the Real Property or the Improvements, or any portion thereof, or Purchaser, and as same have been amended, modified or supplemented from time to time prior to and are in effect as of the date of this Agreement, including but not limited to CERCLA, the Hazardous Substances Transportation Act (49 U.S.C. § 1802 et seq.),

RCRA, the Water Pollution Control Act (33 U.S.C. § 1251 et seq.), the Safe Drinking Water Act (42 U.S.C. § 300f et seq.), the Clean Air Act (42 U.S.C. § 7401 et seq.), the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.), the Emergency Planning and Community Right-to-Know Act of 1986 (42 U.S.C. § 11001 et seq.), the Radon and Indoor Air Quality Research Act (42 U.S.C. § 7401 note, et seq.), comparable state and local laws, and any and all rules and regulations which are in effect as of the date of this Agreement under any and all of the aforementioned laws.

"**Escrow Instructions**" has the meaning ascribed to such term in Section 4.2.

"**Exchange**" has the meaning ascribed to such term in Section 17.21.

"**Exchange Documents**" has the meaning ascribed to such term in Section 17.21.

"**Excluded Property**" means the rights to any and all (i) operation manuals, (ii) property belonging to any tenants or service providers, (iii) websites or domain names maintained by Seller or its property manager with respect to the Property (including, without limitation, www.avivaatcelebrationapartments.com and www.avivacelebration.com), (iv) trade names applicable to the Property (including, without limitation, the name "Aviva at Celebration") and (v) signage containing such trade names and logos.

"**Existing Survey**" has the meaning ascribed to such term in Section 6.1.

"**Extended Closing Date**" means that date which is fourteen (14) Business Days after the Closing Date.

"**Extension Payment**" means an amount equal to One Million and NO/100 Dollars ($1,000,000.00).

"**Financing Charge**" has the meaning ascribed to such term in Section 10.1.

"**General Conveyance**" has the meaning ascribed to such term in Section 10.2(b).

"**Governmental Regulations**" means all laws, ordinances, rules and regulations of the Authorities applicable to Seller or Seller's use and operation of the Real Property or the Improvements or any portion thereof.

"**Hazardous Substances**" means all (a) asbestos, radon gas, electromagnetic waves, urea formaldehyde foam insulation and transformers or other equipment that contains dielectric fluid containing polychlorinated biphenyls of 50 ppm or greater, (b) any solid, liquid, gaseous or thermal contaminant, including smoke vapor, soot, fumes, acids, alkalis, chemicals, waste, petroleum products or byproducts, asbestos, PCBs, phosphates, lead or other heavy metals, chlorine, or radon gas, (c) any solid or liquid wastes (including hazardous wastes), hazardous air pollutants, hazardous substances, hazardous chemical substances and mixtures, toxic substances, pollutants and contaminants, as such terms are defined in any Environmental Law, including, without limitation CERCLA, RCRA, the National Environmental Policy Act (42 U.S.C. § 4321 et seq.), the Hazardous Substances Transportation Act, the Toxic Substances Control Act, the Clean Water Act (33 U.S.C. § 1321 et seq.), the Clean Air Act, the Occupational Safety and

3

Health Act (29 U.S.C. § 651 et seq.), as such Laws have been amended and/or supplemented from time to time prior to the date of this Agreement, and any and all rules and regulations promulgated under any of the above, and (d) any other chemical, material or substance, the use or presence of which, or exposure to the use or presence of which, is prohibited, limited or regulated by any Environmental Laws, in effect as of or prior to the date of this Agreement or as the same may be amended or supplemented after the date of this Agreement.

"**Improvements**" means all buildings, structures, fixtures, parking areas and improvements owned by Seller and located on the Real Property.

"**Initial Deposit**" means an amount equal to One Million and NO/100 Dollars ($1,000,000.00).

"**Inspection Agreement**" means that certain Inspection and Confidentiality Agreement dated effective as of June 23, 2016 between Seller and Purchaser.

"**Inspector**" has the meaning ascribed to such term in Section 9.1.

"**Licensee Parties**" has the meaning ascribed to such term in Section 5.1(a).

"**Licenses and Permits**" means, collectively, all of Seller's right, title and interest, to the extent assignable without the necessity of consent or assignable only with consent and such consent has been obtained, in and to licenses, permits, certificates of occupancy, approvals, dedications, subdivision maps and entitlements issued, approved or granted by the Authorities prior to Closing in connection with the Real Property and the Improvements, together with all renewals and modifications thereof.

"**Official Records**" means the Public Records of Osceola County, Florida.

"**Other Party**" has the meaning ascribed to such term in Section 4.5.

"**Permitted Exceptions**" has the meaning ascribed to such term in Section 6.2(a).

"**Permitted Outside Parties**" has the meaning ascribed to such term in Section 5.2(b).

"**Personal Property**" means all of Seller's right, title and interest in and to the equipment, appliances, tools, supplies, machinery, artwork, furnishings and other tangible personal property attached to, appurtenant to, located in and used exclusively in connection with the ownership or operation of the Improvements and described on **Exhibit A** attached hereto.

"**Property**" has the meaning ascribed to such term in Section 2.1.

"**Property Approval Period**" means the period commencing on the Effective Date and terminating at 5:00 p.m. Eastern time on the Contingency Date.

"**Proration Items**" has the meaning ascribed to such term in Section 10.4(a).

"**Purchase Price**" has the meaning ascribed to such term in Section 3.1.

4

"**Purchaser**" has the meaning ascribed to such term in the opening paragraph of this Agreement.

"**RCRA**" means the Resource Conservation and Recovery Act (42 U.S.C. § 6901 et seq.), as amended by the Hazardous and Solid Wastes Amendments of 1984, and as further amended.

"**Real Property**" means those certain parcels of or interests in real property described on **Exhibit B** attached hereto and made a part hereof, together with all of Seller's right, title and interest, if any, in and to the appurtenances pertaining thereto, including but not limited to Seller's right, title and interest in and to the streets, alleys and right-of-ways which abut such real property, and any easement rights, air rights, subsurface rights, development rights and water rights appurtenant to such real property.

"**Records and Plans**" means, collectively: (i) all books and records, including but not limited to property operating statements, specifically relating to the Improvements; (ii) all structural reviews, architectural drawings and engineering, soils, seismic, geologic and architectural reports, studies and certificates pertaining to the Real Property or the Improvements; and (iii) all final plans, specifications and drawings of the Improvements or any portion thereof. The terms "Records and Plans" shall not include (1) any document or correspondence which would be subject to the attorney-client privilege; (2) any document or item which Seller is contractually or otherwise bound to keep confidential; (3) any documents pertaining to the marketing of the Property for sale to prospective purchasers; (4) any internal memoranda, reports or assessments of Seller or Seller's Affiliates relating to Seller's valuation of the Property; (5) appraisals of the Property whether prepared internally by Seller or Seller's Affiliates or externally; (6) any documents or items which Seller reasonably considers confidential or proprietary; (7) any documents or items which are not in Seller's possession and control, and (8) any materials projecting or relating to the future performance of the Property.

"**Rent**" has the meaning ascribed to such term in Section 10.4(b), and some may be "**Past Due Rent**" in accordance with the meaning ascribed to such term in Section 10.4(b).

"**Rent Roll**" has the meaning ascribed to such term in Section 5.2(a).

"**Reporting Person**" has the meaning ascribed to such term in Section 4.9(a).

"**ROFR**" has the meaning ascribed to such term in Section 5.7.

"**Seller**" has the meaning ascribed to such term in the opening paragraph of this Agreement.

"**Seller's Response**" has the meaning ascribed to such term in Section 6.2(a).

"**Seller's ROFR Condition**" has the meaning ascribed to such term in Section 5.7.

"**Service Contracts**" means all of Seller's right, title and interest in all (i) service agreements, maintenance contracts, equipment leasing agreements, warranties, guarantees, bonds and other contracts for the provision of labor, services, materials or supplies relating solely to the

Real Property, Improvements or Personal Property and under which Seller is currently paying for services rendered in connection with the Property, as listed and described on **Exhibit E** attached hereto, together with all renewals, supplements, amendments and modifications thereof, and (ii) any new such agreements entered into after the Effective Date, to the extent permitted by Section 7.1(e) (except that any management agreements will be terminated at Closing and are excluded from such term), to the extent assignable without the necessity of consent or assignable only with consent and such consent has been obtained.

**"Significant Portion"** means damage by fire or other casualty to the Real Property and the Improvements or a portion thereof requiring repair costs in excess of $2,000,000 as such repair costs are reasonably estimated by an Inspector.

**"Survey"** has the meaning ascribed to such term in Section 6.1.

**"Tenant Deposits"** means all security deposits, paid or deposited by the Tenants to Seller, as landlord, or any other person on Seller's behalf pursuant to the Tenant Leases, which have not been applied to obligations under Tenant Leases (together with any interest which has accrued thereon, but only to the extent such interest has accrued for the account of the respective Tenants).

**"Tenant Leases"** means any and all written leases, rental agreements, occupancy agreements and license agreements (and any and all written renewals, amendments, modifications and supplements thereto) entered into on or prior to the Closing Date.

**"Tenant Notice Letters"** has the meaning ascribed to such term in Section 10.7.

**"Tenants"** means all persons or entities leasing, renting or occupying space within the Improvements pursuant to the Tenant Leases, but expressly excludes any subtenants, licensees, concessionaires, franchisees or other persons or entities whose occupancy is derived through Tenants.

**"Termination Notice"** has the meaning ascribed to such term in Section 5.4.

**"Termination Surviving Obligations"** means the rights, liabilities and obligations set forth in Sections 5.2, 5.3, 5.6, 11.1, 12.1, 13.3, 17.2, 17.15 and Article XIII.

**"Title Company"** means Chicago Title Insurance Company, c/o Fidelity National Title Group, 5565 Glenridge Connector, Suite 300, Atlanta, Georgia 30342, Attention:   Christy Hockmeyer.

**"Title Notice Date"** means the date which is fifteen (15) days following the Effective Date.

**"Title Policy"** has the meaning ascribed to such term in Section 6.1.

**"Title Response Date"** means the date which if five (5) days after the Title Notice Date.

"To Seller's Knowledge" means the present actual (as opposed to constructive or imputed) knowledge solely of Jon Wood, without any independent investigation or inquiry whatsoever. Such individual is named in this Agreement solely for the purpose of establishing the scope of Seller's knowledge. Such individual shall not be deemed to be a party to this Agreement nor to have made any representations or warranties hereunder, and no recourse shall be had to such individual for any of Seller's representations and warranties hereunder (and Purchaser hereby waives any liability of or recourse against such individual).

**Section 1.2    References; Exhibits and Schedules**. Except as otherwise specifically indicated, all references in this Agreement to Articles or Sections refer to Articles or Sections of this Agreement, and all references to Exhibits or Schedules refer to Exhibits or Schedules attached hereto, all of which Exhibits and Schedules are incorporated into, and made a part of, this Agreement by reference. The words "herein," "hereof," "hereinafter" and words and phrases of similar import refer to this Agreement as a whole and not to any particular Section or Article.

## ARTICLE II
## AGREEMENT OF PURCHASE AND SALE

**Section 2.1    Agreement**. Seller hereby agrees to sell, convey and assign to Purchaser, and Purchaser hereby agrees to purchase and accept from Seller, on the Closing Date and subject to the terms and conditions of this Agreement, all of the following, but specific excluding the Excluded Property (collectively, the **"Property"**):

    (a)    the Real Property;

    (b)    the Improvements;

    (c)    the Personal Property;

    (d)    all of Seller's right, title and interest as lessor in and to the Tenant Leases and, subject to the terms of the respective applicable Tenant Leases, the Tenant Deposits; and

    (e)    all of Seller's right, title and interest, if any, in, to and under the Service Contracts and the Licenses and Permits, in each case to the extent assignable without the necessity of consent or approval and, if consent or approval is required, to the extent any necessary consent or approval has been obtained.

**Section 2.2    Indivisible Economic Package**. Purchaser has no right to purchase, and Seller has no obligation to sell, less than all of the Property, it being the express agreement and understanding of Purchaser and Seller that, as a material inducement to Seller and Purchaser to enter into this Agreement, Purchaser has agreed to purchase, and Seller has agreed to sell, all of the Property, subject to and in accordance with the terms and conditions hereof.

## ARTICLE III
## CONSIDERATION

**Section 3.1** **Purchase Price**.  The purchase price for the Property (the **"Purchase Price"**) will be Sixty-Seven Million and No/100 Dollars ($67,000,000.00) in lawful currency of the United States of America, payable as provided in Section 3.3.

**Section 3.2** **Assumption of Obligations**.

(a)    As additional consideration for the purchase and sale of the Property, effective as of Closing, Purchaser will be deemed to have, and by virtue of closing the purchase of the Property Purchaser shall have:  (1) assumed and agreed to perform or pay, as applicable, (i) all of the covenants and obligations of Seller, Seller's predecessor in title (if any) and Seller's Affiliates pursuant to the Tenant Leases and Service Contracts assigned to Purchaser and which are to be performed on or subsequent to the Closing Date, and (ii) all of the covenants and obligations of Seller under the Tenant Leases and the Service Contracts and the Licenses and Permits assigned to Purchaser and relating to the physical or environmental condition of the Property, regardless of whether such obligations arise before or after the Closing Date; and (2) assumed and agreed to discharge, perform and comply with each and every liability, duty, covenant, debt or obligation of Seller or any of its Affiliates resulting from, arising out of or in any way related to the Licenses and Permits and arising or accruing on or after the Closing Date.  Purchaser hereby indemnifies, defends, and holds Seller and its Affiliates harmless from and against any and all claims, liens, damages, demands, causes of action, liabilities, lawsuits, judgments, losses, costs and expenses (including without limitation, reasonable attorneys' fees and expenses) asserted against or incurred by Seller or its Affiliates and arising out of the failure of Purchaser to perform its obligations pursuant to this Section 3.2(a).  The provisions of this Section 3.2(a) shall fully survive the Closing without limitation.

(b)    Effective as of Closing, Seller will be deemed to have, and by virtue of closing the sale of the Property Seller shall have, agreed to indemnify and hold Purchaser harmless from and against any and all claims, liens, damages, demands, causes of action, liabilities, lawsuits, judgments, losses, costs and expenses (including without limitation, reasonable attorneys' fees and expenses) asserted against or incurred by Purchaser by reason of or arising out of any failure by Seller to perform its obligations under the Service Contracts and Tenant Leases assigned to Purchaser to the extent the same arose prior to the Closing Date, other than any obligations relating to the physical or environmental conditions of the Property, which obligations are expressly assumed by Purchaser as provided in Section 3.2(a) above; provided, however, that Seller's obligations under this subsection (b) shall not apply to any claims which (i) are based on any matter which is identified in this Agreement (including the Schedules and Exhibits hereto) as an exception or qualification to any representation or warranty of Seller set forth herein, (ii) are based on any matter constituting a breach of Seller's representations and warranties that is deemed waived by Purchaser pursuant to the terms of this Agreement or (iii) are based on a liability which was taken into account as a Closing adjustment pursuant to Section 10.4.  The provisions of this Section 3.2(b) are subject in all events to the provisions of Section 16.1 below.  This Section 3.2(b) shall survive Closing only to the extent provided in Section 16.1 below.

8

**Section 3.3    Method of Payment of Purchase Price**. No later than the Deposit Time, Purchaser will deposit in escrow with the Title Company the Purchase Price (subject to adjustments described in Section 10.4), together with all other costs and amounts to be paid by Purchaser at Closing pursuant to the terms of this Agreement, by Federal Reserve wire transfer of immediately available funds to an account to be designated by the Title Company. No later than 12:00 p.m. (noon) Eastern time on the Closing Date: (a) Purchaser will cause the Title Company to (i) pay to Seller by Federal Reserve wire transfer of immediately available funds to an account to be designated by Seller, the Purchase Price (subject to adjustments described in Section 10.4), less any costs or other amounts to be paid by Seller at Closing pursuant to the terms of this Agreement, and (ii) pay to all appropriate payees the other costs and amounts to be paid by Purchaser at Closing pursuant to the terms of this Agreement; and (b) Seller will direct the Title Company to pay to the appropriate payees out of the proceeds of Closing payable to Seller, all costs and amounts to be paid by Seller at Closing pursuant to the terms of this Agreement.

**ARTICLE IV**
**EARNEST MONEY DEPOSIT AND ESCROW INSTRUCTIONS**

**Section 4.1    Earnest Money Deposit**. Within two (2) Business Days after the Effective Date, Purchaser shall deposit the Initial Deposit with the Title Company, in immediately available federal funds, which will be held in escrow by the Title Company pursuant to the terms of this Agreement. Notwithstanding anything herein to the contrary, the Initial Deposit shall be non-refundable to Purchaser (except in the event of (i) a default by Seller under this Agreement whereupon Purchaser elects to terminate this Agreement in accordance with the terms hereof, (ii) a significant casualty or condemnation of the Property whereupon Purchaser elects to terminate this Agreement in accordance with the terms hereof or (iii) a termination of this Agreement due to a title or survey defect as set forth in Section 6.2) and Title Company shall, immediately upon receipt of the Initial Deposit, distribute same to Seller. In the event this Agreement has not terminated pursuant to Section 5.4 prior to the expiration of the Property Approval Period, then Purchaser shall, within two (2) Business Days after expiration of the Property Approval Period, deposit the Additional Deposit with the Title Company in immediately available federal funds. If this Agreement has not terminated pursuant to Section 5.4 prior to the expiration of the Property Approval Period, and if Purchaser fails to timely deposit the Additional Deposit, Purchaser shall be in default hereunder, this Agreement shall automatically terminate and Seller shall retain the Initial Deposit. If Closing occurs, the Earnest Money Deposit shall be applied to the payment of the Purchase Price at Closing.

**Section 4.2    Escrow Instructions**. Article IV of this Agreement constitutes the escrow instructions of Seller and Purchaser to the Title Company with regard to the Earnest Money Deposit and the Closing (the **"Escrow Instructions"**). By its execution of the joinder attached hereto, the Title Company agrees to be bound by the provisions of this Article IV.

**Section 4.3    Documents Deposited into Escrow**. On or before the Deposit Time, (a) Purchaser will cause the difference between the Purchase Price and the Earnest Money Deposit and interest thereon (subject to the prorations provided for in Section 10.4 and with the addition of all Closing costs to be paid by Purchaser) to be transferred to the Title Company's escrow account, in accordance with the timing and other requirements of Section 3.3, (b) Purchaser will

9

deliver in escrow to the Title Company the documents described and provided for in Section 10.2, and (c) Seller will deliver in escrow to the Title Company the documents described and provided for in Section 10.3 below.

**Section 4.4    Close of Escrow**. Provided that the Title Company has not received from Seller or Purchaser any written termination notice as described and provided for in Section 4.5 (or if such a notice has been previously received, provided that the Title Company has received from such party a withdrawal of such notice), when Purchaser and Seller have delivered the documents required by Section 4.3, the Title Company will:

(a)    If applicable and when required, file with the Internal Revenue Service (with copies to Purchaser and Seller) the reporting statement required under Section 6045(e) of the Internal Revenue Code and Section 4.9;

(b)    Insert the applicable Closing Date as the date of any document delivered to the Title Company undated, and assemble counterparts into single instruments;

(c)    Disburse to Seller, by wire transfer to Seller of immediately available federal funds, in accordance with wiring instructions to be obtained by the Title Company from Seller, all sums to be received by Seller from Purchaser at the Closing, comprised of the Purchase Price as adjusted in accordance with the provisions of this Agreement;

(d)    Deliver the Deed to Purchaser by agreeing to cause the same to be recorded in the Official Records and agreeing to obtain conformed copies of the recorded Deed for delivery to Purchaser and to Seller following recording;

(e)    Issue to Purchaser the Title Policy required by Section 6.1 of this Agreement;

(f)    Deliver to Seller, in addition to Seller's Closing proceeds, all documents deposited with the Title Company for delivery to Seller at the Closing; and

(g)    Deliver to Purchaser (i) all documents deposited with the Title Company for delivery to Purchaser at the Closing and (ii) any funds deposited by Purchaser in excess of the amount required to be paid by Purchaser pursuant to this Agreement.

**Section 4.5    Termination Notices**. If at any time the Title Company receives a certificate of either Seller or Purchaser (for purposes of this Section 4.5, the **"Certifying Party"**) stating that: (a) the Certifying Party is entitled to receive the Earnest Money Deposit pursuant to the terms of this Agreement, and (b) a copy of the certificate was delivered as provided herein to the other party (for purposes of this Section 4.5, the **"Other Party"**) prior to or contemporaneously with the giving of such certificate to the Title Company, then, unless the Title Company has then previously received, or receives within three (3) Business Days after receipt of the Certifying Party's certificate, contrary instructions from the Other Party, the Title Company, within one (1) Business Day after the expiration of the foregoing three (3) Business Day period, will deliver the Earnest Money Deposit to the Certifying Party, and thereupon the Title Company will be discharged and released from any and all liability hereunder. If the Title Company receives contrary instructions from the Other Party within three (3) Business Days

10

following the Title Company's receipt of said certificate, the Title Company will not so deliver the Earnest Money Deposit, but will continue to hold the same pursuant hereto, subject to Section 4.6.

**Section 4.6    Indemnification of Title Company.**   If this Agreement or any matter relating hereto becomes the subject of any litigation or controversy, Purchaser and Seller jointly and severally, will hold Title Company free and harmless from any loss or expense, including reasonable attorneys' fees, that may be suffered by it by reason thereof other than as a result of Title Company's gross negligence or willful misconduct. In the event conflicting demands are made or notices served upon Title Company with respect to this Agreement, or if there is uncertainty as to the meaning or applicability of the terms of this Agreement or the Escrow Instructions, Purchaser and Seller expressly agree that the Title Company will be entitled to file a suit in interpleader and to obtain an order from the court requiring Purchaser and Seller to interplead and litigate their several claims and rights among themselves. Upon the filing of the action in interpleader and the deposit of the Earnest Money Deposit into the registry of the court, the Title Company will be fully released and discharged from any further obligations imposed upon it by this Agreement after such deposit.

**Section 4.7    Maintenance of Confidentiality by Title Company.**   Except as may otherwise be required by law or by this Agreement, Title Company will maintain in strict confidence and not disclose to anyone the existence of this Agreement, the identity of the parties hereto, the amount of the Purchase Price, the provisions of this Agreement or any other information concerning the transactions contemplated hereby, without the prior written consent of Purchaser and Seller in each instance.

**Section 4.8    Investment of Additional Deposit.**   Title Company will invest and reinvest the Additional Deposit, at the instruction and sole election of Purchaser, only in (a) bonds, notes, Treasury bills or other securities constituting direct obligations of, or guaranteed by the full faith and credit of, the United States of America, and in no event maturing beyond the Closing Date, or (b) an interest-bearing account at a commercial bank mutually acceptable to Seller, Purchaser and Title Company. The investment of the Additional Deposit will be at the sole risk of Purchaser and no loss on any investment will relieve Purchaser of its obligations to pay to Seller as liquidated damages the original amount of the Earnest Money Deposit as provided in Article XIII, or of its obligation to pay the Purchase Price. All interest earned on the Additional Deposit will be the property of Purchaser and will be reported to the Internal Revenue Service as income until such time as Seller is entitled to the Additional Deposit pursuant to this Agreement. Purchaser will provide the Title Company with a taxpayer identification number and will pay all income taxes due by reason of interest accrued on the Additional Deposit.

**Section 4.9    Designation of Reporting Person.**   In order to assure compliance with the requirements of Section 6045 of the Internal Revenue Code of 1986, as amended (for purposes of this Section 4.9, the **"Code"**), and any related reporting requirements of the Code, the parties hereto agree as follows:

(a)     The Title Company (for purposes of this Section 4.9, the **"Reporting Person"**), by its execution hereof, hereby assumes all responsibilities for information reporting required under Section 6045(e) of the Code.

11

(b)    Seller and Purchaser each hereby agree:

(i)    to provide to the Reporting Person all information and certifications regarding such party, as reasonably requested by the Reporting Person or otherwise required to be provided by a party to the transaction described herein under Section 6045 of the Code; and

(ii)    to provide to the Reporting Person such party's taxpayer identification number and a statement (on Internal Revenue Service Form W-9 or an acceptable substitute form, or on any other form the applicable current or future Code sections and regulations might require and/or any form requested by the Reporting Person), signed under penalties of perjury, stating that the taxpayer identification number supplied by such party to the Reporting Person is correct.

(c)    Each party hereto agrees to retain this Agreement for not less than four years from the end of the calendar year in which Closing occurred, and to produce it to the Internal Revenue Service upon a valid request therefor.

(d)    The addresses for Seller and Purchaser are as set forth in Section 14.1 hereof, and the real estate subject to the transfer provided for in this Agreement is described in **Exhibit B**.

## ARTICLE V
## INSPECTION OF PROPERTY

**Section 5.1    Entry and Inspection.**

(a)    Through the earlier of the expiration of the Property Approval Period or termination of this Agreement, Purchaser and its authorized agents and representatives (the "**Licensee Parties**") may inspect and investigate the Property and may conduct such non-invasive tests, evaluations and assessments of the Property as Purchaser deems necessary, appropriate or prudent in any respect and for all purposes in connection with Purchaser's acquisition of the Property and the consummation of the transaction contemplated by this Agreement.  Subject to this Section 5.1, Section 5.2 and Section 5.3, Seller will permit the Licensee Parties the right to enter upon the Real Property at all reasonable times, during normal business hours, to perform inspections of the Property.  Purchaser will provide to Seller written notice of the intention of Purchaser or the other Licensee Parties to enter the Real Property at least 24 hours prior to such intended entry and specify the intended purpose therefor and the inspections and examinations contemplated to be made and/or the service providers with whom any Licensee Party will communicate.  At Seller's option, Seller may be present for any such entry, inspection and communication with any Tenants or service providers.  Notwithstanding anything to the contrary contained herein, no physical testing or sampling shall be conducted during any such entry by Purchaser or any Licensee Party upon the Real Property without Seller's specific prior written consent, which consent may be withheld, delayed or conditioned in Seller's sole and absolute discretion; provided, however, that prior to giving any such approval, Seller shall be provided with a written sampling plan in reasonable detail in order to allow Seller a reasonable opportunity to evaluate such proposal.  If, but only with Seller's

12

written approval, Purchaser or the other Licensee Parties undertake any borings or other disturbances of the soil, the soil shall be recompacted to its condition as existed immediately before any such borings or other disturbances were undertaken. If Purchaser or any Licensee Party takes any sample from the Real Property in connection with any testing, Purchaser shall, upon the request of Seller, provide to Seller a portion of such sample being tested to allow Seller, if it so chooses, to perform its own testing.

(b)    Subject to the obligations set forth in Section 5.3 below, the Licensee Parties shall have the right to communicate directly with the Authorities for any good faith reasonable purpose in connection with this transaction contemplated by this Agreement (so long such communications can be conducted without disclosing that a sale of the Property is contemplated); provided, however, Purchaser shall provide Seller at least 24 hours prior written notice of Purchaser's intention to communicate with any Authorities and Seller shall have the right to participate in any such communications. Communications with Authorities pertaining to standard municipal lien searches, zoning confirmation or searches relative to open permits shall not require prior notice to Seller.

(c)    In the event Purchaser terminates this Agreement pursuant to a right to do so granted herein, Purchaser shall deliver to Seller a complete copy of any written studies, reports, tests results or similar documents prepared by or on behalf of Purchaser or its agents.

**Section 5.2    Document Review.**

(a)    Seller has made available, or during the Property Approval Period will make available, either by electronic virtual data room, delivery of materials to Purchaser's representatives, access to the Seller's data room, access to Entrata (a proprietary system subscribed to by Seller's property management agent) or access to the Title Company's virtual data room the following, to the extent in Seller's or its property manager's possession or control (collectively, the **"Documents"**): (i) all existing environmental reports and studies of the Property issued on behalf of Seller; (ii) assessments (special or otherwise), ad valorem and personal property tax bills, covering the year preceding the Effective Date (but Purchaser acknowledges that the Property has been assessed as unimproved and that will change in 2016); (iii) Seller's most current rent roll, a copy of which is attached hereto as **Exhibit C** (the **"Rent Roll"**); (iv) operating statements for the current year to date; (v) copies of the Tenant Leases and each Tenant Lease file for the current Tenants, the Service Contracts, the Licenses and Permits and the Records and Plans; (vi) a current inventory of the Personal Property; (vii) plans and specifications relating to the Property in Seller's possession; and (viii) the governing documents of any homeowners association to which the Property belongs and related operations and maintenance documents. Documents shall not include (1) any document which would be subject to the attorney-client privilege; (2) any document which Seller is obligated to keep confidential; (3) any documents pertaining to the marketing of the Property for sale to prospective purchasers; (4) any internal memoranda, reports or assessments of Seller or Seller's Affiliates to the extent relating to Seller's valuation of the Property; (5) any appraisals of the Property, whether prepared internally by Seller or Seller's Affiliates or externally; (6) any documents which Seller reasonably considers confidential or proprietary (such as Seller's or Seller's property manager's operation manuals, software programs or other electronic media or services that are subject to licenses or other agreements that are personal to Seller or Seller's

13

property manager); or (7) any materials projecting or relating to the future performance of the Property.

(b)    Purchaser acknowledges that any and all of the Documents may be proprietary and confidential in nature and shall be made available to Purchaser solely to assist Purchaser in determining the feasibility of purchasing the Property. Purchaser shall not disclose the contents of the Documents, or any of the provisions, terms or conditions contained therein, to any party outside of Purchaser's organization other than its attorneys, partners, accountants, lenders or investors (collectively, for purposes of this Section 5.2(b), the **"Permitted Outside Parties"**). Purchaser further agrees that within its organization or the organizations of its Affiliates, and as to the Permitted Outside Parties, the Documents will be disclosed and exhibited only to those persons within Purchaser's organization and its Affiliates' organizations or to those Permitted Outside Parties who need to know such information in order to advise Purchaser in connection with the feasibility of Purchaser's acquisition of the Property. Purchaser further acknowledges that the Documents and other information relating to the leasing arrangements between Seller and the Tenants or prospective tenants are proprietary and confidential in nature. Purchaser agrees not to divulge the contents of such Documents and other information except in strict accordance with the confidentiality standards set forth in this Section 5.2 and Article XII. In permitting Purchaser and the Permitted Outside Parties to review the Documents or information to assist Purchaser, Seller has not waived any privilege or claim of confidentiality with respect thereto, and no third party benefits or relationships of any kind, either express or implied, have been offered, intended or created by Seller and any such claims are expressly rejected by Seller and waived by Purchaser and the Permitted Outside Parties, for whom, by its execution of this Agreement, Purchaser is acting as an agent with regard to such waiver. Purchaser shall be responsible for any breaches of confidentiality under this Agreement by any of the Permitted Outside Parties.

(c)    Purchaser shall promptly destroy all copies Purchaser has made (and computer files of same) of any Documents containing confidential information before or after the execution of this Agreement, not later than ten (10) Business Days following the time this Agreement is terminated for any reason, and provide Seller with a certified notice of the completion of such destruction; however, Purchaser shall not be required to destroy any Documents in the event the transaction closes.

(d)    Purchaser acknowledges that some of the Documents may have been prepared by third parties and may have been prepared prior to Seller's ownership of the Property. Purchaser hereby acknowledges that, except as expressly provided in Section 8.1 below, Seller has not made and does not make any representation or warranty regarding the truth, accuracy or completeness of the Documents or the sources thereof (whether prepared by Seller, Seller's Affiliates or any other person or entity). Seller has not undertaken any independent investigation as to the truth, accuracy or completeness of the Documents and is providing the Documents solely as an accommodation to Purchaser.

(e)    Notwithstanding any provision of this Agreement to the contrary, no termination of this Agreement will terminate Purchaser's obligations pursuant to this Section 5.2.

14

**Section 5.3    Entry and Inspection Obligations.**

(a)    Purchaser agrees that in entering upon and inspecting or examining the Property and communicating with any Tenants, Purchaser and the other Licensee Parties will not: disturb the Tenants or interfere with their use of the Property pursuant to their respective Tenant Leases; interfere with the operation and maintenance of the Property; damage any part of the Property or any personal property owned or held by any Tenant or any other person or entity; injure or otherwise cause bodily harm to Seller or any Tenant, or to any of their respective agents, guests, invitees, contractors and employees, or to any other person or entity; permit any liens to attach to the Property by reason of the exercise of Purchaser's rights under this Article V; communicate with the Tenants; communicate with service providers without Seller's prior written consent as provided in this Article V; or reveal or disclose any information obtained concerning the Property and the Documents to anyone outside Purchaser's organization, except in accordance with the confidentiality standards set forth in Section 5.2(b) and Article XII. Purchaser will: (i) maintain and cause those entering the Property to maintain and have in effect workers' compensation insurance, with statutory limits of coverage, and comprehensive general liability (occurrence) insurance in an amount not less than Five Million and No/100 Dollars ($5,000,000.00) per occurrence for personal injury, including bodily injury and death, and property damage satisfactory to Seller and with companies, with deductibles and otherwise in form reasonably acceptable to Seller (including coverage for an "insured contract" with respect to the indemnity in Section 5.3(b)), and deliver to Seller a certificate of insurance verifying such coverage and Seller, Hines Interests Limited Partnership and Seller's property manager being named as an additional insured on such coverage prior to entry upon the Property; (ii) promptly pay when due the costs of all inspections, entries, samplings and tests conducted by Purchaser and/or any Licensee Parties and examinations done with regard to the Property; and (iii) promptly restore the Property to its condition as existed immediately prior to any such inspection, investigations, examinations, entries, samplings and tests, but in no event later than ten (10) days after the damage occurs. Nothing contained in this Section 5.3 shall be deemed or construed as Seller's consent to any further physical testing or sampling with respect to the Property after the date hereof.

(b)    Purchaser hereby indemnifies, defends and holds Seller and its members, partners, agents, officers, directors, employees, successors, assigns and Affiliates harmless from and against any and all liens, claims, causes of action, damages, liabilities, demands, suits, and obligations, together with all losses, penalties, costs and expenses relating to any of the foregoing (including but not limited to court costs and reasonable attorneys' fees) arising out of any inspections, investigations, examinations, entries, samplings or tests conducted by Purchaser or any Licensee Party, whether prior to or after the date hereof, with respect to the Property or any violation of the provisions of this Section 5.3.

(c)    Notwithstanding any provision of this Agreement to the contrary, neither the Closing nor a termination of this Agreement will terminate Purchaser's obligations pursuant to this Section 5.3.

**Section 5.4    Property Approval Period.** Purchaser, in Purchaser's sole and absolute discretion, may determine whether or not the Property is acceptable to Purchaser during the Property Approval Period. If Purchaser determines that the Property is not acceptable, Purchaser

15

shall have the right to terminate this Agreement by the delivery of written notice ("**Termination Notice**") to Seller at any time prior to the expiration of the Property Approval Period. If Purchaser timely delivers a Termination Notice prior to the expiration of the Property Approval Period, then Seller shall retain the Initial Deposit (except in the event of (i) a default by Seller under this Agreement whereupon Purchaser elects to terminate this Agreement in accordance with the terms hereof, (ii) a significant casualty or condemnation of the Property whereupon Purchaser elects to terminate this Agreement in accordance with the terms hereof or (iii) a termination of this Agreement due to a title or survey defect as set forth in Section 6.2, in which case, the Initial Deposit shall be returned to Purchaser) and within three (3) Business Days following Purchaser's delivery of such Termination Notice, Purchaser shall pay any cancellation fees or charges of Title Company not to exceed a total of One Thousand and No/100 Dollars ($1,000.00), and except for Termination Surviving Obligations and return of the Initial Deposit under the circumstances set forth above, the parties shall have no further rights or obligations to one another under this Agreement. In the event Purchaser fails to deliver a Termination Notice prior to the expiration of the Property Approval Period, Purchaser shall be deemed to have waived its right to terminate this Agreement pursuant to this Section 5.4 and the parties hereto shall proceed with the transaction contemplated by this Agreement. If Purchaser has not terminated this Agreement on or before the expiration of the Property Approval Period, and if Purchaser fails to deposit the Additional Deposit, then this Agreement shall automatically terminate and Seller shall retain the Initial Deposit.

Section 5.5    Sale "As Is". THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT HAS BEEN NEGOTIATED BETWEEN SELLER AND PURCHASER, THIS AGREEMENT REFLECTS THE MUTUAL AGREEMENT OF SELLER AND PURCHASER, AND PURCHASER HAS CONDUCTED (OR WILL CONDUCT PRIOR TO THE EXPIRATION OF THE PROPERTY APPROVAL PERIOD) ITS OWN INDEPENDENT EXAMINATION OF THE PROPERTY. OTHER THAN THE SPECIFIC MATTERS REPRESENTED IN SECTION 8.1 HEREOF (AS LIMITED BY SECTION 16.1 OF THIS AGREEMENT), BY WHICH ALL OF THE FOLLOWING PROVISIONS OF THIS SECTION 5.5 ARE LIMITED, PURCHASER HAS NOT RELIED UPON AND WILL NOT RELY UPON, EITHER DIRECTLY OR INDIRECTLY, ANY REPRESENTATION OR WARRANTY OF SELLER OR ANY OF SELLER'S AFFILIATES, AGENTS OR REPRESENTATIVES, AND PURCHASER HEREBY ACKNOWLEDGES THAT NO SUCH REPRESENTATIONS OR WARRANTIES HAVE BEEN MADE. SELLER SPECIFICALLY DISCLAIMS, AND NEITHER IT NOR ANY OF ITS AFFILIATES NOR ANY OTHER PERSON IS MAKING, ANY REPRESENTATION, WARRANTY OR ASSURANCE WHATSOEVER TO PURCHASER AND NO WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EITHER EXPRESS OR IMPLIED, ARE MADE BY SELLER OR RELIED UPON BY PURCHASER WITH RESPECT TO THE STATUS OF TITLE TO OR THE MAINTENANCE, REPAIR, CONDITION, DESIGN OR MARKETABILITY OF THE PROPERTY, OR ANY PORTION THEREOF, INCLUDING BUT NOT LIMITED TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER MAY CONDUCT THEREON, INCLUDING THE POSSIBILITIES FOR FUTURE DEVELOPMENT OF THE PROPERTY, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION

16

WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY (INCLUDING, WITHOUT LIMITATION, ALL LAWS AND REGULATIONS PERTAINING TO ENVIRONMENTAL MATTERS), (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY, (H) THE PRESENCE OR ABSENCE OF HAZARDOUS MATERIALS AT, ON, UNDER, OR ADJACENT TO THE PROPERTY OR ANY OTHER ENVIRONMENTAL MATTER OR CONDITION OF THE PROPERTY, (I) THE LEASES OR OTHER AGREEMENTS AFFECTING THE PROPERTY, OR (J) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, IT BEING THE EXPRESS INTENTION OF SELLER AND PURCHASER THAT, EXCEPT AS EXPRESSLY SET FORTH TO THE CONTRARY IN SECTION 8.1 OF THIS AGREEMENT (AS LIMITED BY SECTION 16.1 OF THIS AGREEMENT), THE PROPERTY WILL BE CONVEYED AND TRANSFERRED TO PURCHASER IN ITS PRESENT CONDITION AND STATE OF REPAIR, "AS IS" AND "WHERE IS", WITH ALL FAULTS. Purchaser represents that it is a knowledgeable, experienced and sophisticated purchaser of real estate, and that it is relying solely on its own expertise and that of Purchaser's consultants in purchasing the Property. Upon the expiration of the Property Approval Period, Purchaser shall be deemed to have conducted such inspections, investigations and other independent examinations of the Property and related matters as Purchaser deems necessary, including but not limited to the physical and environmental conditions thereof, and will rely upon same and not upon any statements of Seller (excluding the limited specific matters represented by Seller in Section 8.1 hereof as limited by Section 16.1 of this Agreement) or of any Affiliate, officer, director, employee, agent or attorney of Seller. Upon Closing, Purchaser will assume the risk (i) that adverse matters, including adverse physical and environmental conditions, may not have been revealed by Purchaser's inspections and investigations and (ii) of changes in applicable Environmental Laws relating to past, present and future environmental health conditions on, or resulting from the ownership or operation of, the Property. Purchaser acknowledges and agrees that (i) all information obtained by Purchaser was obtained from a variety of sources and, except as set forth in Section 8.1, Seller will not be deemed to have represented or warranted the completeness, truth or accuracy of any of the Documents or other such information heretofore or hereafter furnished to Purchaser; (ii) upon Closing, Seller will sell and convey to Purchaser, and Purchaser will accept, the Property, "**AS IS, WHERE IS**," with all faults; (iii) there are no oral agreements, warranties or representations, collateral to or affecting the Property, by Seller, an Affiliate of Seller, any agent, officer, director, employee or attorney of Seller or any third party; (iv) Seller is not liable or bound in any manner by any oral or written statements, representations or information pertaining to the Property furnished by any real estate broker, agent, employee, servant or other person; (v) the Purchase Price reflects the "**AS IS, WHERE IS**" nature of this sale and any faults, liabilities, defects or other adverse matters that may be associated with the Property; and (vi) the disclaimers and other agreements set forth herein are an integral part of this Agreement and Seller would not have agreed to sell the Property to Purchaser for the Purchase Price without the disclaimers and other agreements set forth in this Agreement. Purchaser, with Purchaser's counsel, has fully reviewed the disclaimers and waivers set forth in this Agreement, and understands the significance and effect thereof.

17

Purchaser Initials

### Section 5.6    Purchaser's Release of Seller.

(a)    Seller Released From Liability.  Purchaser acknowledges that it has had the opportunity to inspect the Property and to observe its physical characteristics and existing conditions and the opportunity to conduct such investigation and study on and of the Property and adjacent areas as Purchaser deems necessary, and, except as otherwise expressly provided in the provisions of this Agreement,  Purchaser hereby FOREVER RELEASES AND DISCHARGES Seller from all duties, obligations, responsibility and liability pertaining to the Property in any way, including its condition, valuation, salability, financability or utility of the Property, or its suitability for any purpose whatsoever (including, but not limited to, with respect to the presence in the soil, air, structures and surface and subsurface waters, of Hazardous Materials or other materials or substances that have been or may in the future be determined to be toxic, hazardous, undesirable or subject to regulation and that may need to be specially treated, handled and/or removed from the Property under current or future federal, state and local laws, regulations or guidelines, and any structural and geologic conditions, subsurface soil and water conditions and solid and hazardous waste and Hazardous Materials on, under, adjacent to or otherwise affecting the Property), including without limitation: (a) liabilities and responsibilities for the lessor's obligations under the Leases relating to the physical, environmental or legal compliance status of the Property, whether arising before or after the date of this Agreement; or (b) liabilities under any Environmental Laws.  Purchaser further hereby WAIVES (and by Closing this transaction will be deemed to have WAIVED) any and all objections and complaints (including, but not limited to, federal, state and local statutory and common law based actions, and any private right of action under any federal, state or local laws, regulations or guidelines to which the Property is or may be subject, including, but not limited to, CERCLA) concerning the physical characteristics and any existing conditions of the Property, including, without limitation, the lessor's obligations under the Leases relating to the physical, environmental or legal compliance status of the Property, whether arising before or after the date of this Agreement.  Purchaser further hereby assumes the risk of changes in applicable laws and regulations relating to past, present and future environmental conditions on the Property and the risk that adverse physical characteristics and conditions, including, without limitation, the presence of Hazardous Materials or other contaminants, may not have been revealed by its investigation.

Purchaser Initials

(b)    Purchaser's Waiver of Objections.  Purchaser acknowledges that it has inspected the Property, observed its physical characteristics and existing conditions and had the opportunity to conduct such investigations and studies on and of said Property and adjacent areas as it deems necessary, and subject only to Seller's responsibility for any breach of the warranty and representation contained in Section 8.1(i) of this Agreement (as limited by Section 16.1 of this Agreement), Purchaser hereby waives any and all objections to or complaints (including but not limited to actions based on federal, state or common law and any private right of action under CERCLA, RCRA or any other state and federal law to which the Property is or

18

may be subject) against Seller, its Affiliates, or their respective officers, directors, partners, members, owners, employees or agents regarding physical characteristics and existing conditions, including without limitation structural and geologic conditions, subsurface soil and water conditions and solid and hazardous waste and Hazardous Substances on, under, adjacent to or otherwise affecting the Property or related to prior uses of the Property. The Purchaser's waiver as set forth in this Section 5.6(b) shall not apply in the event that Seller either intentionally withheld or fraudulently failed to disclose to Purchaser any physical characteristic of or existing condition on the Property as described above that was then known to Seller.

(c)    Purchaser further hereby assumes the risk of changes in applicable laws and regulations relating to past, present and future environmental, safety or health conditions on, or resulting from the ownership or operation of, the Property, and the risk that adverse physical characteristics and conditions, including without limitation the presence of Hazardous Substances or other substances, may not be revealed by its investigation.

_____<br>
Purchaser Initials

(d)    Survival.  The provisions of this Section 5.6 shall survive either (i) the Closing and shall not be deemed merged into the provisions of any closing documents, or (ii) any termination of this Agreement.

Section 5.7    **Right of First Refusal**.  Purchaser acknowledges that the Property is subject to a right of first refusal ("ROFR") as set forth in that certain Amended and Restated Declaration of Covenants, Conditions, Restrictions and Obligations, dated March 16, 2012, and recorded on September 6, 2012 in Book 4319, Pages 798-877 of the Public Records of Osceola County, Florida (the "Declaration") in favor of the Declarant (as defined in the Declaration). Purchaser's and Seller's obligation to close the transaction contemplated herein is contingent upon Declarant's failure to affirmatively elect, in writing, within the time period set forth in the Declaration to exercise its ROFR with respect to the Property ("Seller's ROFR Condition").  In the event Seller's ROFR Condition is not fulfilled by the Closing Date, (i) this Agreement shall be null and void and of no further force and effect, except with respect to the Termination Surviving Obligations, and other than such Termination Surviving Obligations, neither party shall have any rights, liabilities or obligations hereunder and (ii) the Earnest Money Deposit shall be refunded to Purchaser within five (5) Business Days following receipt by Title Company and Seller of a written request therefor from Purchaser. If Declarant elects to exercise its ROFR with respect to the Property in accordance with the Declaration, then Seller will immediately notify Purchaser in writing of such exercise and (x) this Agreement shall be null and void and of no further force and effect, except with respect to the Termination Surviving Obligations, and other than such Termination Surviving Obligations, neither party shall have any rights, liabilities or obligations hereunder and (y) the Earnest Money Deposit shall be refunded to Purchaser within five (5) Business Days following receipt by Title Company and Seller of a written request therefor from Purchaser.

19

## ARTICLE VI
## TITLE AND SURVEY MATTERS

**Section 6.1**    **Title and Survey**.  Prior to the execution and delivery of this Agreement, Seller has delivered to Purchaser a copy of that certain survey of the Real Property prepared by Leading Edge Land Services, Project Number 718-13001, dated November 14, 2013, last updated July 24, 2014 (the **"Existing Survey"**).  Within five (5) Business Days following the Effective Date, Seller will deliver to Purchaser a preliminary title report or title commitment (the **"Commitment"**), by the terms of which the Title Company agrees to issue to Purchaser at Closing an owner's policy of title insurance (the **"Title Policy"**) in the amount of the Purchase Price on the ALTA Owner Policy of Title Insurance with extended coverage, Standard Form Rev. 10/17/92 (as amended to date) insuring Purchaser's fee simple title to the Real Property to be good and indefeasible, subject to the terms of such policy and the exceptions described therein.  Seller shall have no obligation to obtain any modification, update, or recertification of the Existing Survey.  Purchaser may obtain, at its sole cost and expense, an update to the Existing Survey (an **"Updated Survey"**).  **"Survey"**, as used herein, shall mean the Existing Survey or Updated Survey, as applicable.

**Section 6.2**    **Title and Survey Review**.

(a)    Purchaser shall have until 5:00 p.m. Eastern time on the Title Notice Date to provide written notice (the **"Title Notice"**) to Seller and the Title Company of any matters shown on the Commitment and/or the Survey which are not satisfactory to Purchaser.  If Seller has not received such written notice from Purchaser by the Title Notice Date, Purchaser shall be deemed to have unconditionally approved of the condition of title to the Property and the Survey.  Except as expressly provided herein, Seller shall have no obligation whatsoever to expend any funds, to undertake any obligations, or otherwise to cure any title objections.  If Purchaser timely delivers a Title Notice, then Seller shall deliver, no later than 5:00 p.m. Eastern time on the Title Response Date, written notice to Purchaser and Title Company identifying which disapproved items, if any, Seller shall cure (by either having the same removed or by obtaining affirmative insurance over the same as part of the final Title Policy) (**"Seller's Response"**).  If Seller does not deliver a Seller's Response prior to the Title Response Date, Seller shall be deemed to have elected to not remove or otherwise cure any exceptions disapproved by Purchaser.  If Seller elects, or is deemed to have elected, not to remove or otherwise cure an exception disapproved in Purchaser's Title Notice, Purchaser shall have until the Contingency Date to (i) deliver a Termination Notice to Seller and Title Company terminating this Agreement, or (ii) waive any such objection to the Commitment and the Survey (whereupon such objections shall be deemed Permitted Exceptions).  If Seller and Title Company have not received written notice from Purchaser by the Contingency Date, such failure shall be deemed Purchaser's waiver of all such objections to the Commitment and the Survey.  In the event Purchaser does timely exercise its right to terminate this Agreement based on a title or survey defect as set forth in this Section 6.2(a), the Initial Deposit shall be promptly returned to Purchaser in accordance with Section 5.4.

(b)    Purchaser may, at or prior to Closing, notify Seller in writing (the **"Gap Notice"**) of any objections to title or the Survey (i) raised by the Title Company between the expiration of the Property Approval Period and the Closing, (ii) not disclosed by the Title

20

Permitted Exceptions. Seller will have not less than three (3) Business Days from the receipt of Purchaser's Gap Notice (and, if necessary, Seller may extend the Closing Date to provide for such three (3) Business Day period and for three (3) Business Days following such period for Purchaser's response), within which time Seller may, but is under no obligation to, agree to remove or otherwise obtain affirmative insurance over the objectionable New Exceptions. If, within the three (3) Business Day period, Seller does not agree to remove or otherwise obtain affirmative insurance over the objectionable New Exceptions, then Purchaser may terminate this Agreement upon delivering a Termination Notice to Seller in accordance with Section 5.4 no later than three (3) Business Days following expiration of the three (3) Business Day cure period, in which case, Purchaser shall be entitled to return of the Earnest Money Deposit. If Purchaser fails to terminate this Agreement in the manner set forth above, the New Exceptions (except those which Seller has agreed to remove or otherwise affirmatively insure over) will be Permitted Exceptions.

Section 6.3     Title Insurance.  At the Closing, the Title Company shall issue to Purchaser the Title Policy with only such endorsements as the Title Company agreed to issue on or before the Contingency Date, with liability in the aggregate amount of the Purchase Price, showing title to the Real Property and the Improvements vested in the Purchaser, subject only to (i) the pre-printed standard exceptions in such Title Policy, (ii) exceptions approved or deemed approved by Purchaser pursuant to Section 6.2, if also acceptable to Title Company, (iii) the Service Contracts, (iv) the Tenant Leases, (v) the Licenses and Permits, (vi) any taxes and assessments for the year of Closing and subsequent years not yet due and payable as of the Closing, (vii) all matters shown on the Survey, any updates thereto, or that would be shown on a current survey, and (viii) any exceptions arising from Purchaser's actions (collectively, the "**Permitted Exceptions**"). Notwithstanding the foregoing, Title Company's obligation with respect to issuance of the Title Policy shall run only to the proposed insured, Purchaser, and such Title Policy shall only be issued in accordance with the Commitment and the Commitment jacket. Nothing in this Section 6.3, the prior Section 6.2 or anywhere else in this Agreement shall ever operate to affect or waive any of Title Company's rights or obligations under the Commitment, but rather shall operate as covenants and conditions between Seller and Purchaser alone (except Title Company's obligations as escrow agent hereunder). Except for the obligations of Title Company as escrow agent hereunder, Title Company shall have no other obligations hereunder, including, without limitation, any obligation or liability whatsoever to Seller. At or prior to Closing, Seller shall provide to Title Company a gap indemnity and affidavit reasonably required by Title Company to enable Title Company to remove the pre-printed standard exceptions for gap, parties in possession and construction liens from the Title Policy.

ARTICLE VII
**INTERIM OPERATING COVENANTS**

*Purchaser Initials*

Section 7.1     Interim Operating Covenants.  Seller covenants to Purchaser that Seller will:

(a)     Operations.  From the Effective Date until Closing, continue to operate, lease, manage and maintain the Improvements in the ordinary course of Seller's business and substantially in accordance with Seller's present practice, subject to ordinary wear and tear and further subject to Article IX of this Agreement, which shall include maintaining the same

21

Company to Purchaser prior to the expiration of the Property Approval Period, and (iii) not disclosed by Seller to Purchaser or the Title Company prior to the expiration of the Property Approval Period ("**New Exceptions**"); provided that Purchaser must notify Seller of any objection to any such New Exception prior to the date three (3) Business Days after being made aware of the existence of such New Exception and the Closing Date will, if necessary to allow Purchaser such three (3) Business Day period, be extended for up to three (3) Business Days. If Purchaser fails to deliver to Seller a Gap Notice on or before such date, Purchaser will be deemed to have waived any objection to the New Exceptions, and the New Exceptions will be Permitted Exceptions. Seller will have not less than three (3) Business Days from the receipt of Purchaser's Gap Notice (and, if necessary, Seller may extend the Closing Date to provide for such three (3) Business Day period and for three (3) Business Days following such period for Purchaser's response), within which time Seller may, but is under no obligation to, agree to remove or otherwise obtain affirmative insurance over the objectionable New Exceptions. If, within the three (3) Business Day period, Seller does not agree to remove or otherwise obtain affirmative insurance over the objectionable New Exceptions, then Purchaser may terminate this Agreement upon delivering a Termination Notice to Seller in accordance with Section 5.4 no later than three (3) Business Days following expiration of the three (3) Business Day cure period, in which case, Purchaser shall be entitled to return of the Earnest Money Deposit. If Purchaser fails to terminate this Agreement in the manner set forth above, the New Exceptions (except those which Seller has agreed to remove or otherwise affirmatively insure over) will be Permitted Exceptions.

Section 6.3    Title Insurance. At the Closing, the Title Company shall issue to Purchaser the Title Policy with only such endorsements as the Title Company agreed to issue on or before the Contingency Date, with liability in the aggregate amount of the Purchase Price, showing title to the Real Property and the Improvements vested in the Purchaser, subject only to (i) the pre-printed standard exceptions in such Title Policy, (ii) exceptions approved or deemed approved by Purchaser pursuant to Section 6.2, if also acceptable to Title Company, (iii) the Service Contracts, (iv) the Tenant Leases, (v) the Licenses and Permits, (vi) any taxes and assessments for the year of Closing and subsequent years not yet due and payable as of the Closing, (vii) all matters shown on the Survey, any updates thereto, or that would be shown on a current survey, and (viii) any exceptions arising from Purchaser's actions (collectively, the "**Permitted Exceptions**"). Notwithstanding the foregoing, Title Company's obligation with respect to issuance of the Title Policy shall run only to the proposed insured, Purchaser, and such Title Policy shall only be issued in accordance with the Commitment and the Commitment jacket. Nothing in this Section 6.3, the prior Section 6.2 or anywhere else in this Agreement shall ever operate to affect or waive any of Title Company's rights or obligations under the Commitment, but rather shall operate as covenants and conditions between Seller and Purchaser alone (except Title Company's obligations as escrow agent hereunder). Except for the obligations of Title Company as escrow agent hereunder, Title Company shall have no other obligations hereunder, including, without limitation, any obligation or liability whatsoever to Seller. At or prior to Closing, Seller shall provide to Title Company a gap indemnity and affidavit reasonably required by Title Company to enable Title Company to remove the pre-printed standard exceptions for gap, parties in possession and construction liens from the Title Policy.



## ARTICLE VII
## INTERIM OPERATING COVENANTS

Section 7.1    Interim Operating Covenants. Seller covenants to Purchaser that Seller will:

(a)    Operations. From the Effective Date until Closing, continue to operate, lease, manage and maintain the Improvements in the ordinary course of Seller's business and substantially in accordance with Seller's present practice, subject to ordinary wear and tear and further subject to Article IX of this Agreement, which shall include maintaining the same

21

personnel or equally experienced and trained replacement personnel (including the same number of positions) on-site at the Property through Closing.

(b)　Maintain Insurance. From the Effective Date until Closing, maintain fire and extended coverage insurance on the Improvements which is at least equivalent in all material respects to Seller's insurance policies covering the Improvements as of the Effective Date.

(c)　Personal Property. From the Effective Date until Closing, not transfer or remove any Personal Property from the Improvements except for the purpose of repair or replacement thereof. Any items of Personal Property replaced after the Effective Date will be installed prior to Closing and will be of substantially similar quality of the item of Personal Property being replaced.

(d)　Comply with Governmental Regulations. From the Effective Date until Closing, not knowingly take any action that Seller knows would result in a failure to comply in all material respects with all Governmental Regulations applicable to the Property, it being understood and agreed that prior to Closing, Seller will have the right to contest any such Governmental Regulations. In the event of such contest, Seller shall provide Purchaser with written notice of same if the issue will affect the Property post-Closing.

(e)　Service Contracts. From the Effective Date until Closing, not enter into any service contract, unless such service contract is terminable on thirty (30) days notice without penalty or unless Purchaser consents thereto in writing, which approval will not be unreasonably withheld, delayed or conditioned. Seller shall terminate any terminable Service Contract promptly after receiving written notice from Purchaser requesting such termination; provided, however, that Purchaser acknowledges and agrees that: (i) all costs and expenses associated with any such termination shall be paid by Purchaser; (ii) any such termination may be conditioned on the completion of the Closing; and (iii) any such termination shall be effective only after expiration of any notice or grace period specified in the provisions of the applicable Service Contract (which may not occur until after the Closing). Any and all Service Contracts not fully and effectively terminated as of Closing shall be assumed by Purchaser at Closing.

(f)　Notices. To the extent received by Seller, from the Effective Date until Closing, promptly deliver to Purchaser copies of written default notices, notices of lawsuits and notices of violations affecting the Property.

**Section 7.2　OFAC**. Pursuant to United States Presidential Executive Order 13224 ("**Executive Order**"), Seller is required to ensure that they do not transact business with persons or entities determined to have committed, or to pose a risk of committing or supporting, terrorist acts and those persons (i) described in Section 1 of the Executive Order or (ii) listed in the "Alphabetical Listing of Blocked Persons, Specially Designated Nationals, Specially Designated Terrorists, Specially Designated Global Terrorists, Foreign Terrorist Organizations, and Specially Designated Narcotics Traffickers" published by the United States Office of Foreign Assets Control ("**OFAC**"), 31 C.F.R. Chapter V, Appendix A, as in effect from time to time (as to (i) and (ii), a "**Blocked Person**"). If Seller learns that Purchaser is, becomes, or appears to be

22

a Blocked Person, Seller may delay the sale contemplated by this Agreement pending its conclusion of its investigation into the matter of Purchaser's status as a Blocked Person. If Seller determines that Purchaser is or becomes a Blocked Person, Seller shall have the right to immediately terminate this Agreement and take all other actions necessary, or in the opinion of Seller, appropriate to comply with applicable law and Purchaser shall receive a return of Additional Deposit, if previously deposited with Title Company, and Seller shall retain the Initial Deposit. The provisions of this Section 7.2 will survive termination of this Agreement.

## ARTICLE VIII
## REPRESENTATIONS AND WARRANTIES

**Section 8.1    Seller's Representations and Warranties.** The following constitute the sole representations and warranties of Seller. Subject to the limitations set forth in Article XVI of this Agreement, Seller represents and warrants to Purchaser the following as of the Effective Date:

(a)    Status. Seller is a limited liability company duly organized and validly existing under the laws of the State of Delaware.

(b)    Authority. The execution and delivery of this Agreement and the performance of Seller's obligations hereunder have been or will be duly authorized by all necessary action on the part of Seller, and this Agreement constitutes the legal, valid and binding obligation of Seller, subject to equitable principles and principles governing creditors' rights generally.

(c)    Non-Contravention. The execution and delivery of this Agreement by Seller and the performance by Seller of Seller's obligations under this Agreement will not violate any judgment, order, injunction, decree, regulation or ruling of any court or Authority or conflict with, result in a breach of, or constitute a default under the organizational documents of Seller, any note or other evidence of indebtedness, any mortgage, deed of trust or indenture, or any lease or other material agreement or instrument to which Seller is a party or by which it is bound.

(d)    Suits and Proceedings. To Seller's Knowledge as of the Effective Date, except as listed in **Exhibit D**, there are no legal actions, suits or similar proceedings pending and served, or threatened against Seller relating to the Property or Seller's ownership or operation of the Property, which are not adequately covered by existing insurance or, if adversely determined, would materially adversely affect the value of the Property, the continued operations thereof or Seller's ability to perform Seller's obligations under this Agreement.

(e)    Non-Foreign Entity. Seller is not a "foreign person" or "foreign corporation" as those terms are defined in the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

(f)    Rent Roll. The rent roll attached hereto as **Exhibit C** is a true, correct and complete copy of the rent roll currently used by Seller in its operation of the Property.

23

(g)    Service Contracts. To Seller's Knowledge as of the Effective Date, none of the service providers listed on **Exhibit E** is in default under any Service Contract. To Seller's Knowledge, the Documents made available to Purchaser pursuant to Section 5.2(a) hereof include copies of all Service Contracts listed on **Exhibit E** under which Seller is currently paying for services rendered in connection with the Property.

(h)    No Violations. To Seller's Knowledge, Seller has not received prior to the Effective Date any written notification from an Authority (i) that the Real Property and Improvements is in violation of any applicable fire, health, building, use, occupancy or zoning laws or (ii) that any work is required to be done to the Real Property and Improvements where such work remains outstanding and, if unaddressed would have a material adverse affect on the Property or use of the Property as currently operated. After the Effective Date, if Seller receives any such notification from an Authority, Seller shall promptly provide Purchaser with a copy of said notification.

(i)    Environmental. Except as shown in any environmental reports covering the Real Property and Improvements which have been made available to Purchaser pursuant to Section 5.2(a), to Seller's Knowledge, Seller has not received written notice from any Authorities of the Real Property or Improvements being in violation of any Environmental Law.

(j)    Tenant Leases. True and complete copies of all Tenant Leases and all amendments relating thereto have been delivered to Purchaser or made available for Purchaser's review.

(k)    OFAC Blocked Person. Seller is not a Blocked Person as described in Section 7.2 herein.

(l)    Permits. To Seller's Knowledge, there are no open permits, nor bonding requirements of Seller, relating to the Property. To Seller's Knowledge, Seller, or Seller's property management agent, has obtained all necessary licenses to operate the Property as presently operated.

At Closing, Seller shall deliver a certificate to Purchaser reaffirming that the above representations and warranties are true and correct as of Closing, excluding, however, any representations and warranties that are specifically limited to the Effective Date.

**Section 8.2    Purchaser's Representations and Warranties**. Purchaser represents and warrants to Seller the following:

(a)    Status. Purchaser is a limited liability company duly organized and validly existing under the laws of the State of Florida.

(b)    Authority. The execution and delivery of this Agreement and the performance of Purchaser's obligations hereunder have been or will be duly authorized by all necessary action on the part of Purchaser and its constituent owners and/or beneficiaries and this Agreement constitutes the legal, valid and binding obligation of Purchaser, subject to equitable principles and principles governing creditors' rights generally.

24

(c)     Non-Contravention.  The execution and delivery of this Agreement by Purchaser and the consummation by Purchaser of the transactions contemplated hereby will not violate any judgment, order, injunction, decree, regulation or ruling of any court or Authority or conflict with, result in a breach of, or constitute a default under the organizational documents of Purchaser, any note or other evidence of indebtedness, any mortgage, deed of trust or indenture, or any lease or other material agreement or instrument to which Purchaser is a party or by which it is bound.

(d)     Consents.  No consent, waiver, approval or authorization is required from any person or entity (that has not already been obtained) in connection with the execution and delivery of this Agreement by Purchaser or the performance by Purchaser of the transactions contemplated hereby.

(e)     Prohibited Persons.  Neither Purchaser, nor any Affiliate of Purchaser nor any Person that directly or indirectly owns 10% or more the outstanding equity in Purchaser (collectively, the "Purchaser Persons"), is, or has been determined by the U.S. Secretary of the Treasury to be acting on behalf of, a Blocked Person, or has otherwise been designated as a Person (i) with whom an entity organized under the laws of the United States is prohibited from entering into transactions or (ii) from whom such an entity is prohibited from receiving money or other property or interests in property, pursuant to the Executive Order or otherwise.  In addition, no Purchaser Person is located in, or operating from, a country subject to U.S. economic sanctions administered by OFAC.

(f)     ERISA.  Purchaser is not an "employee benefit plan," as defined in Section 3(3) of ERISA.  None of the transactions contemplated herein (including those transactions occurring after the Closing) shall constitute a "prohibited transaction" within the meaning of Section 4975(c) of the Code or Section 406 of ERISA, which transaction is not exempt under Section 4975(d) of the Code or Section 408 of ERISA.

## ARTICLE IX
## CONDEMNATION AND CASUALTY

**Section 9.1**  **Significant Casualty**.  If, prior to the Closing Date, all or a Significant Portion of the Real Property and Improvements is destroyed or damaged by fire or other casualty, Seller will notify Purchaser in writing of such casualty.  Purchaser will have, as its sole and exclusive remedy therefor, the option to terminate this Agreement upon written notice to Seller given not later than ten (10) days after receipt of Seller's notice.  If this Agreement is terminated pursuant to the preceding sentence, the Initial Deposit and the Additional Deposit, if previously deposited with Title Company, will be returned to Purchaser upon Purchaser's compliance with Section 4.5 and thereafter neither Seller nor Purchaser will have any further rights or obligations to the other hereunder except with respect to the Termination Surviving Obligations and return of the Initial Deposit and the Additional Deposit, as applicable.  If Purchaser does not elect to terminate this Agreement, Seller will not be obligated to repair such damage or destruction but (a) Seller will assign and turn over to Purchaser all of the insurance proceeds net of reasonable, documented out-of-pocket collection costs of Seller's attorneys or consultants (or, if such have not been awarded, all of its right, title and interest therein) payable with respect to such fire or other casualty (excluding any proceeds of insurance that are payable

25

on account of any business interruption, rental insurance or similar coverage intended to compensate Seller for loss of rental or other income from the Property attributable to periods prior to the Closing), and (b) the parties will proceed to Closing pursuant to the terms hereof without abatement of the Purchase Price, except that Purchaser will receive a credit for the lesser of (i) any insurance deductible amount, or (ii) the cost of such repairs (other than repairs which are the responsibility of Tenants under Tenant Leases) as reasonably estimated by an arms-length, third party inspector selected by Seller and reasonably agreed to by Purchaser (the "Inspector"). The estimate of the Inspector shall then be binding on all parties for purposes of this Section 9.1.

Section 9.2     Casualty of Less Than a Significant Portion. If less than a Significant Portion of the Real Property and Improvements is damaged as aforesaid, Purchaser shall not have the right to terminate this Agreement and Seller will not be obligated to repair such damage or destruction but (a) Seller will assign and turn over to Purchaser all of the insurance proceeds net of reasonable, documented out-of-pocket collection costs of Seller's attorneys or consultants (or, if such have not been awarded, all of its right, title and interest therein) payable with respect to such fire or other casualty (excluding any proceeds of insurance that are payable on account of any business interruption, rental insurance or similar coverage intended to compensate Seller for loss of rental or other income from the Property attributable to periods prior to the Closing), and (b) the parties will proceed to Closing pursuant to the terms hereof without abatement of the Purchase Price, except that Purchaser will receive a credit for the lesser of (i) any insurance deductible amount, or (ii) the cost of such repairs (other than repairs which are the responsibility of Tenants under Tenant Leases) as reasonably estimated by the Inspector. The estimate of the Inspector shall then be binding on all parties for purposes of this Section 9.2.

Section 9.3     Condemnation of Property. In the event of condemnation or sale in lieu of condemnation of all or any portion of the Real Property and Improvements prior to the Closing, Purchaser will have the option, as its sole and exclusive remedy, of terminating Purchaser's obligations under this Agreement by providing Seller written notice within ten (10) days after receipt of Seller's notice of such condemnation or sale. In the event Purchaser does not terminate this Agreement pursuant to the preceding sentence, Seller will assign to Purchaser any and all claims for the proceeds of such condemnation or sale to the extent the same are applicable to the Real Property and Improvements, and Purchaser will take title to the Property with the assignment of such proceeds and subject to such condemnation and without reduction of the Purchase Price. Should Purchaser elect to terminate Purchaser's obligations under this Agreement under the provisions of this Section 9.3, the Initial Deposit and the Additional Deposit, if previously deposited with Title Company, will be returned to Purchaser upon Purchaser's compliance with Section 4.5, and neither Seller nor Purchaser will have any further obligation under this Agreement except for the Termination Surviving Obligations. Notwithstanding anything to the contrary herein, if any eminent domain or condemnation proceeding is instituted (or notice of same is given) solely for the taking of any subsurface rights for utility easements or for any right-of-way easement, and the surface may, after such taking, be used in substantially the same manner as though such rights have not been taken, Purchaser will not be entitled to terminate this Agreement as to any part of the Property, but any award resulting therefrom will be assigned to Purchaser at Closing and will be the exclusive property of Purchaser upon Closing.

26

**ARTICLE X**
**CLOSING**

**Section 10.1** **Closing**. The Closing of the sale of the Property by Seller to Purchaser will occur on the Closing Date (or the Extended Closing Date if exercised in compliance with this Section 10.1) through the escrow established with the Title Company. At least ten (10) days prior to the Closing Date, Purchaser shall provide to Seller in writing Purchaser's good faith estimate of the financing-related costs that would be incurred by Purchaser should the Closing be extended to the Extended Closing Date. Immediately upon confirmation by Purchaser's lender of the actual amount of the financing-related costs that would be incurred by Purchaser should the Closing be extended to the Extended Closing Date (the "**Financing Charge**"), Purchaser shall provide written notice thereof to Seller. Purchaser and Seller shall each have the right to extend Closing to the Extended Closing Date by providing the other party written notice of such extension at least three (3) days prior to the Closing Date. In the event Seller elects to extend Closing to the Extended Closing Date in accordance with this Section 10.1, the Financing Charge shall be credited to Purchaser at Closing. In the event Purchaser elects to extend Closing to the Extended Closing Date, contemporaneously with delivery of written notice of its exercise of the extension option to Seller, Purchaser shall pay directly to Seller the Extension Payment, which shall be nonrefundable to Purchaser (except in the event of a default by Seller under this Agreement whereupon Purchaser elects to terminate this Agreement in accordance with the terms hereof), but shall be applied to the payment of the Purchase Price at Closing. If Purchaser elects to extend the Closing to the Extended Closing Date by delivering timely written notice to Seller, but fails to deliver the Extension Payment to Seller, then Purchaser's election shall be deemed null and void and the Closing Date shall remain unchanged. If either Purchaser or Seller extends Closing to the Extended Closing Date in accordance with this Section 10.1, then all references to the Closing Date herein shall be deemed to refer to the Extended Closing Date. In the event that Purchaser is unable to bind insurance on the Closing Date as a result of a hurricane quadrant, the Closing Date shall be delayed until five (5) days after the hurricane quadrant ban is lifted. Notwithstanding anything herein to the contrary, in no event shall the Closing Date be delayed more than fifteen (15) days due to a hurricane quadrant ban. At Closing, the events set forth in this Article X will occur, it being understood that the performance or tender of performance of all matters set forth in this Article X are mutually concurrent conditions which may be waived by the party for whose benefit they are intended.

**Section 10.2** **Purchaser's Closing Obligations**. At least one (1) Business Day prior to the Closing Date, Purchaser, at its sole cost and expense, will deliver the following items in escrow with the Title Company pursuant to Section 4.3, for delivery to Seller at Closing as provided herein:

(a)     The Purchase Price, after all adjustments are made at the Closing as herein provided, by Federal Reserve wire transfer of immediately available funds, in accordance with the timing and other requirements of Section 3.3;

(b)     A counterpart of the General Conveyance, Bill of Sale, and Assignment and Assumption substantially in the form attached hereto as **Exhibit F** (the "**General Conveyance**") duly executed by Purchaser;

27

(c)     Evidence reasonably satisfactory to Seller that the person executing the Closing documents on behalf of Purchaser has full right, power, and authority to do so;

(d)     The Tenant Notice Letters, duly executed by Purchaser;

(e)     A counterpart of any required State, County or Municipal transfer declaration forms; and

(f)     Such other documents as may be reasonably necessary or appropriate to effect the consummation of the transactions which are the subject of this Agreement.

**Section 10.3    Seller's Closing Obligations**.    Seller, at its sole cost and expense, will deliver (y) the following items (a), (b), (c), (d), (e), (f), (h), (k) and (l) in escrow with the Title Company pursuant to Section 4.3, and (z) upon receipt of the Purchase Price, Seller shall deliver the following items (g), (i) and (j) to Purchaser at the Property:

(a)     A special warranty deed substantially in the form attached hereto as **Exhibit G** (the **"Deed"**), duly executed and acknowledged by Seller conveying to Purchaser the Real Property and the Improvements subject only to the Permitted Exceptions, which Deed shall be delivered to Purchaser by the Title Company agreeing to cause same to be recorded in the Official Records;

(b)     The General Conveyance duly executed by Seller;

(c)     The Tenant Notice Letters, duly executed by Seller;

(d)     Evidence reasonably satisfactory to Title Company and Purchaser that the person executing the Closing documents on behalf of Seller has full right, power and authority to do so;

(e)     A certificate in the form attached hereto as **Exhibit H** (**"Certificate as to Foreign Status"**) certifying that Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code of 1986, as amended;

(f)     The Tenant Deposits, at Seller's option, either (i) in the form of a cashier's check issued by a bank reasonably acceptable to Purchaser, or (ii) as part of an adjustment to the Purchase Price (provided that Seller shall retain, and Purchaser shall not receive any credit for, any non-refundable tenant fees, including, without limitation, cleaning fees, application fees and pet fees);

(g)     The Personal Property;

(h)     The Rent Roll, updated to show any changes, to Seller's Knowledge, as of one (1) Business Day prior to the Closing Date (which shall be deemed a part of the Documents for purposes of this Agreement);

(i)     All original Licenses and Permits, Tenant Leases, and Service Contracts in Seller's possession and control;

28

(j)    All keys to the Improvements which are in Seller's possession;

(k)    A counterpart of any required State, County or Municipal transfer declaration forms;

(l)    Certificate of Seller reaffirming that the representations and warranties set forth in Section 8.1 are true and correct as of the Closing Date; excluding, however, any representations and warranties that are specifically limited to the Effective Date; and

(m)    Such other documents as may be reasonably necessary or appropriate to effect the consummation of the transactions which are the subject of this Agreement.

### Section 10.4    Prorations.

(a)    Seller and Purchaser agree to adjust, as of 11:59 p.m. on the day immediately preceding the Closing Date (the **"Closing Time"**), all items of income and expense applicable to the Property (collectively, the **"Proration Items"**), including, without limitation, real estate and personal property taxes and assessments which are required to be paid for the calendar year in which the Closing occurs, utility bills (except as hereinafter provided), collected Rents (subject to the terms of (c) below) and operating expenses payable by the Seller. Seller will be charged and credited for the amounts of all of the Proration Items relating to the period up to and including the Closing Time, and Purchaser will be charged and credited for all of the Proration Items relating to the period after the Closing Time. Such preliminary estimated Closing prorations shall be set forth on a preliminary closing statement to be prepared by Seller and submitted to Purchaser for Purchaser's approval (which approval shall not be unreasonably withheld, delayed or conditioned) five (5) days prior to the Closing Date (the **"Closing Statement"**). The Closing Statement, once agreed upon, shall be signed by Purchaser and Seller and delivered to the Title Company for purposes of making the preliminary proration adjustment at Closing subject to the final cash settlement provided for below. The preliminary proration shall be paid at Closing by Purchaser to Seller (if the preliminary prorations result in a net credit to Seller) or by Seller to Purchaser (if the preliminary prorations result in a net credit to Purchaser) by increasing or reducing the cash to be delivered by Purchaser in payment of the Purchase Price at the Closing. If the actual amounts of the Proration Items are not known as of the Closing Time, the prorations will be made at Closing on the basis of the best evidence then available; thereafter, when actual figures are received, re-prorations will be made on the basis of the actual figures, and a final cash settlement will be made between Seller and Purchaser. No prorations will be made in relation to insurance premiums, and Seller's insurance policies will not be assigned to Purchaser. Final readings and final billings for utilities will be made if possible as of the Closing Time, in which event no proration will be made at the Closing with respect to utility bills and Seller shall pay such bills in full at Closing. Seller will be entitled to all deposits presently in effect with the utility providers, and Purchaser will be obligated to make its own arrangements for deposits with the utility providers. A final reconciliation of Proration Items shall be made by Purchaser and Seller within twenty (20) days after the end of the month in which the Closing occurs (i.e. by the 20th of the month following the month of Closing); provided that such reconciliation, as it relates to real estate taxes, shall be made within thirty (30) days following the issuance of the tax bills for each Real Property. The provisions of this Section 10.4 will survive the Closing for six (6) months, and in the event any items subject

29

to proration hereunder are discovered within such 6-month period, the same shall be promptly prorated by the parties in accordance with the terms of this Section 10.4.

(b)    All rent and other amounts paid by the Tenants under the Tenant Leases (collectively, "**Rent**") for the month of Closing shall be prorated as of the Closing Date based on the respective number of days of ownership of Seller and Purchaser for such month; provided, however, that neither Purchaser nor Seller shall receive credit at Closing for any Rent that is past due (the "**Past Due Rent**"). Following the Closing, if Purchaser or Seller receives any payment from any Tenant for which Past Due Rent is outstanding, such payment shall be distributed in the following order of priority: (a) first, on a prorated basis to Purchaser and Seller for Rent due and payable by such Tenant under its Tenant Lease which accrues in the month in which the Closing Date occurs, (b) next, to Purchaser for Rent due and payable by such Tenant under its Tenant Lease which accrues on or after the Closing Date, and (c) then, after payment in full of all such amounts then due and payable to Purchaser from such Tenant, to Seller to the extent of all Past Due Rent owed by such Tenant, together with interest and late charges, if applicable. If any Past Due Rent is not paid to Seller within (60) days after Closing, Seller shall have the right to attempt to effect collection by litigation or otherwise so long as Seller does not take any action to terminate the Tenant's Tenant Lease or right to possession. Purchaser shall cooperate with Seller in its efforts to collect Past Due Rent but shall not be required to take any action against any Tenant to terminate its Tenant Lease or right to possession. If Seller receives any Rent or other Tenant payments after Closing (whether for Past Due Rent or otherwise), Seller shall deliver to Purchaser such Rent and other payments within three (3) days of receipt; subject, however, to the priority payment allocation set forth in this Section 10.4(b) above.

(c)    With respect to specific Tenant billings for work orders, special items performed or provided at the request of a given Tenant or other specific services, which are collected by Purchaser or Seller after the Closing Time but relate to any such specific services rendered by Seller or its property manager prior to the Closing Time and which are identified on the Tenant's payment as relating to such specific services or which are clearly identifiable as being payment for any such specific services, Purchaser shall cause such collected amounts to be paid to Seller, or Seller may retain such payment if such payment is received by Seller after the Closing Time.

**Section 10.5    Delivery of Real Property**. Upon completion of the Closing, Seller will deliver to Purchaser possession of the Real Property and Improvements, subject to the Tenant Leases and the Permitted Exceptions.

**Section 10.6    Costs of Title Company and Closing Costs**. Costs of the Title Company and other Closing costs incurred in connection with the Closing will be allocated as follows:

(a)    Seller shall pay the following expenses incurred in connection with the transactions described herein: (i) one-half of all closing fees charged by the Title Company (including escrow and New York Style closing charges), (ii) Seller's legal fees and expenses, and (iii) all documentary stamp taxes in connection with the Deed;

(b)    Purchaser shall pay the following expenses incurred in connection with the transaction described herein: (i) the premium and costs for the owner's title insurance policy and any title endorsements; (ii) one-half of all closing fees charged by the Title Company; (iii) the cost of the Updated Survey; (iv) the fee for the recording of the Deed; (v) Purchaser's legal fees and expenses; (vi) all costs of Purchaser's investigations and inspections; and (vii) documentary stamp taxes in connection with any mortgage;

(c)    Any other costs and expenses of Closing not provided for in this Section 10.6 shall be allocated between Purchaser and Seller in accordance with the custom in the county in which the Real Property is located; and

(d)    If the Closing does not occur on or before the Closing Date (or Extended Closing Date, if such extension is exercised in accordance with Section 10.1) for any reason whatsoever (other than Purchaser's inability to bind insurance because of a hurricane quadrant ban as described in Section 10.1), the costs incurred through the date of termination will be borne by the party incurring same (excluding, however, any termination costs incurred by Seller arising from Seller's termination of Service Contracts at Purchaser's direction, which costs shall be paid by Purchaser).

Section 10.7    **Post-Closing Delivery of Tenant Notice Letters**.  Immediately following Closing, Purchaser will deliver to each Tenant (via either, hand delivery, messenger or certified mail, return receipt requested) a written notice executed by Purchaser and Seller (i) acknowledging the sale of the Property to Purchaser, (ii) acknowledging that Purchaser has received and is responsible for the Tenant Deposits (acknowledging that each Tenant Deposit is in accordance with the applicable Tenant Lease) and (iii) indicating that rent should thereafter be paid to Purchaser and giving instructions therefor (the "**Tenant Notice Letters**").  At least five (5) days prior to Closing, Purchaser shall provide to Seller a copy of the form of Tenant Notice Letter to be delivered to the Tenants for Seller's reasonable approval.  This Section 10.7 shall survive Closing.

## ARTICLE XI
## BROKERAGE

Section 11.1    **Brokers**.  Seller agrees to pay to Apartment Realty Advisors of Florida, LLC ("**Broker**") a real estate commission at Closing (but only in the event of Closing in strict compliance with this Agreement) pursuant to a separate agreement.  The payment of the commission by Seller to Broker will fully satisfy the obligations of the Seller for the payment of a real estate commission hereunder.  Other than as stated in the first sentence of this Section 11.1, Purchaser and Seller represent to the other that no real estate brokers, agents or finders' fees or commissions are due or will be due or arise in conjunction with the execution of this Agreement or consummation of this transaction by reason of the acts of such party, and Purchaser and Seller will indemnify, defend and hold the other party harmless from any brokerage or finder's fee or commission claimed by any person asserting his entitlement thereto at the alleged instigation of the indemnifying party for or on account of this Agreement or the transactions contemplated hereby.  Martin Pechter, a principal in the Purchaser is a licensed real estate broker but is acting solely as a principal in this transaction and no fees or commissions of

31

any kind are due to him as a result of the transaction contemplated hereunder. The provisions of this Article XI will survive any Closing or termination of this Agreement.

## ARTICLE XII
## CONFIDENTIALITY

**Section 12.1** **Confidentiality.** Seller and Purchaser each expressly acknowledges and agrees that, unless and until the Closing occurs, this Agreement, the transactions contemplated by this Agreement, and the terms, conditions, and negotiations concerning the same will be held in the strictest confidence by each of them and will not be disclosed by either of them except to their respective legal counsel, accountants, consultants, officers, investors, clients, partners, directors, and shareholders, and except and only to the extent that such disclosure may be necessary for their respective performances hereunder or as otherwise required by applicable law. Purchaser further acknowledges and agrees that, until the Closing occurs, all information obtained by Purchaser in connection with the Property will not be disclosed by Purchaser to any third persons other than those described above without the prior written consent of Seller. Nothing contained in this Article XII will preclude or limit either party to this Agreement from disclosing or accessing any information otherwise deemed confidential under this Article XII in connection with that party's enforcement of its rights following a disagreement hereunder, or in response to lawful process or subpoena or other valid or enforceable order of a court of competent jurisdiction or any filings with governmental authorities required by reason of the transactions provided for herein pursuant to an opinion of counsel; provided, however, in the event such disclosure is required pursuant to a subpoena or court order, the applicable party shall promptly notify the other party thereof so that the other party may seek a protective order, waive compliance with this Article XII, and/or take any other action mutually agreed upon by the parties. Upon the full execution hereof, Seller shall notify its onsite staff and its management agent of the confidentiality of this Agreement, including the identity of the Purchaser and shall use its reasonable efforts to assure that the onsite staff and management agent maintains the confidentiality of Purchaser as required herein. Notwithstanding anything herein to the contrary, Seller shall not include the name of Purchaser nor the Purchase Price in any press release issued by Seller following Closing relating to the transactions described herein. The provisions of this Article XII will survive any termination of this Agreement.

## ARTICLE XIII
## REMEDIES

**Section 13.1** **Default by Seller.** In the event the Closing of the purchase and sale transaction provided for herein does not occur as herein provided by reason of any default of Seller, Purchaser may, as Purchaser's sole and exclusive remedy, elect by notice to Seller within ten (10) Business Days following the scheduled Closing Date, either of the following: (a) terminate this Agreement, in which event Purchaser will receive from the Title Company the Additional Deposit and will receive from Seller the Initial Deposit and the Extension Payment, if applicable, whereupon Seller and Purchaser will have no further rights or obligations under this Agreement, except with respect to the Termination Surviving Obligations; or (b) seek to enforce specific performance of the Agreement, and in either event, Purchaser hereby waives all other remedies, including without limitation, any claim against Seller for damages of any type or kind including, without limitation, consequential or punitive damages. Failure of Purchaser to make

32

the foregoing election within the foregoing ten (10) Business Day period shall be deemed an election by Purchaser to terminate this Agreement and receive from the Title Company the Additional Deposit and receive from Seller the Initial Deposit and the Extension Payment, if applicable, whereupon Seller and Purchaser will have no further rights or obligations under this Agreement, except with respect to the Termination Surviving Obligations. Notwithstanding the foregoing, nothing contained in this Section 13.1 will limit Purchaser's remedies at law, in equity or as herein provided in the event of a breach by Seller of any of the Closing Surviving Obligations after Closing or the Termination Surviving Obligations after termination.

Section 13.2 **DEFAULT BY PURCHASER**. IN THE EVENT THE CLOSING AND THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED HEREIN DO NOT OCCUR AS PROVIDED HEREIN BY REASON OF ANY DEFAULT OF PURCHASER, PURCHASER AND SELLER AGREE IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE DAMAGES WHICH SELLER MAY SUFFER. PURCHASER AND SELLER HEREBY AGREE THAT (i) AN AMOUNT EQUAL TO THE EARNEST MONEY DEPOSIT AND THE EXTENSION PAYMENT, IF APPLICABLE, TOGETHER WITH ALL INTEREST ACCRUED THEREON, IS A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT SELLER WOULD SUFFER IN THE EVENT PURCHASER DEFAULTS AND FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY, AND (ii) SUCH AMOUNT WILL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR PURCHASER'S DEFAULT AND FAILURE TO COMPLETE THE PURCHASE OF THE PROPERTY, AND WILL BE SELLER'S SOLE AND EXCLUSIVE REMEDY (WHETHER AT LAW OR IN EQUITY) FOR ANY DEFAULT OF PURCHASER RESULTING IN THE FAILURE OF CONSUMMATION OF THE CLOSING, WHEREUPON THIS AGREEMENT WILL TERMINATE AND SELLER AND PURCHASER WILL HAVE NO FURTHER RIGHTS OR OBLIGATIONS HEREUNDER, EXCEPT WITH RESPECT TO THE TERMINATION SURVIVING OBLIGATIONS. NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED IN THIS SECTION 13.2 HEREIN WILL LIMIT SELLER'S REMEDIES AT LAW, IN EQUITY OR AS HEREIN PROVIDED IN THE EVENT OF A BREACH BY PURCHASER OF ANY OF THE CLOSING SURVIVING OBLIGATIONS OR THE TERMINATION SURVIVING OBLIGATIONS.

| | |
|---|---|
| Purchaser Initials | Seller Initials |

Section 13.3 **Consequential and Punitive Damages**. Each of Seller and Purchaser waive any right to sue the other for any consequential or punitive damages for matters arising under this Agreement (it being understood that each of Seller and Purchaser have waived the right to obtain incidental, special, exemplary or consequential damages in connection with any default of Purchaser or Seller respectively, or otherwise, which, in the case of Purchaser, include, without limitation, loss of profits or inability to secure lenders, investors or buyers). This Section 13.3 shall survive Closing or termination of this Agreement.

33

the foregoing election within the foregoing ten (10) Business Day period shall be deemed an election by Purchaser to terminate this Agreement and receive from the Title Company the Additional Deposit and receive from Seller the Initial Deposit and the Extension Payment, if applicable, whereupon Seller and Purchaser will have no further rights or obligations under this Agreement, except with respect to the Termination Surviving Obligations. Notwithstanding the foregoing, nothing contained in this Section 13.1 will limit Purchaser's remedies at law, in equity or as herein provided in the event of a breach by Seller of any of the Closing Surviving Obligations after Closing or the Termination Surviving Obligations after termination.

**Section 13.2** **DEFAULT BY PURCHASER.** IN THE EVENT THE CLOSING AND THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED HEREIN DO NOT OCCUR AS PROVIDED HEREIN BY REASON OF ANY DEFAULT OF PURCHASER, PURCHASER AND SELLER AGREE IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE DAMAGES WHICH SELLER MAY SUFFER. PURCHASER AND SELLER HEREBY AGREE THAT (i) AN AMOUNT EQUAL TO THE EARNEST MONEY DEPOSIT AND THE EXTENSION PAYMENT, IF APPLICABLE, TOGETHER WITH ALL INTEREST ACCRUED THEREON, IS A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT SELLER WOULD SUFFER IN THE EVENT PURCHASER DEFAULTS AND FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY, AND (ii) SUCH AMOUNT WILL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR PURCHASER'S DEFAULT AND FAILURE TO COMPLETE THE PURCHASE OF THE PROPERTY, AND WILL BE SELLER'S SOLE AND EXCLUSIVE REMEDY (WHETHER AT LAW OR IN EQUITY) FOR ANY DEFAULT OF PURCHASER RESULTING IN THE FAILURE OF CONSUMMATION OF THE CLOSING, WHEREUPON THIS AGREEMENT WILL TERMINATE AND SELLER AND PURCHASER WILL HAVE NO FURTHER RIGHTS OR OBLIGATIONS HEREUNDER, EXCEPT WITH RESPECT TO THE TERMINATION SURVIVING OBLIGATIONS. NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED IN THIS SECTION 13.2 HEREIN WILL LIMIT SELLER'S REMEDIES AT LAW, IN EQUITY OR AS HEREIN PROVIDED IN THE EVENT OF A BREACH BY PURCHASER OF ANY OF THE CLOSING SURVIVING OBLIGATIONS OR THE TERMINATION SURVIVING OBLIGATIONS.

_____   _____
Purchaser Initials         Seller Initials

**Section 13.3** **Consequential and Punitive Damages.** Each of Seller and Purchaser waive any right to sue the other for any consequential or punitive damages for matters arising under this Agreement (it being understood that each of Seller and Purchaser have waived the right to obtain incidental, special, exemplary or consequential damages in connection with any default of Purchaser or Seller respectively, or otherwise, which, in the case of Purchaser, include, without limitation, loss of profits or inability to secure lenders, investors or buyers). This Section 13.3 shall survive Closing or termination of this Agreement.

33

## ARTICLE XIV
## NOTICES

**Section 14.1** **Notices.** All notices or other communications required or permitted hereunder will be in writing, and will be given by (a) personal delivery, or (b) professional expedited delivery service with proof of delivery, or (c) United States mail, postage prepaid, registered or certified mail, return receipt requested, or (d) by e-mailing a .pdf or .tif file (provided that such e-mail shall be immediately followed by delivery of such notice pursuant to clause (a), (b) or (c) above), sent to the intended addressee at the address or email address set forth below, or to such other address or to the attention of such other person as the addressee will have designated by written notice sent in accordance herewith and will be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery on a Business Day at the address or in the manner provided herein, or, in the case of email, on the date of transmission if sent by facsimile or electronic mail (and confirmation of completed transmission is received) prior to 5:00 P.M. Eastern time (and if sent later than such time, then the next business day). Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant to this Agreement will be as follows:

To Purchaser:

        Southstar Capital Group I, LLC
        8230 210th Street South
        Boca Raton, FL 33433
        Attn:  Gina Williams, President
        Fax:  (561) 431-3362

with copy to:

        Nancy B. Colman, Esq.
        Baritz & Colman LLP.
        1075 Broken Sound Parkway NW, Suite 102
        Boca Raton, FL 33487
        Fax:  (561) 864-5101

To Seller:      c/o Hines Interests Limited Partnership
        535 N. Park Avenue, Suite 222
        Winter Park, Florida 32789
        Attention:  Jon Wood
        Email: jon.wood@hines.com

        c/o Hines Interests Limited Partnership
        1 South Dearborn Street, Suite 2000
        Chicago, Illinois 60603-2302
        Attention:  Mr. C. Kevin Shannahan
        Email: Kevin.Shannahan@hines.com

c/o Hines Interests Limited Partnership
Five Ravinia Drive
Atlanta, Georgia 30346
Attention:   Mr. Michael T. Harrison
Email: Michael.Harrison@hines.com

c/o Hines Interests Limited Partnership
2800 Post Oak Blvd, Suite 4800
Houston, Texas 77056
Attention:   Mr. Doug Donovan
Email: Doug.Donovan@hines.com

with copy to:   1662 Multifamily LLC
c/o Hines Interests Limited Partnership
2800 Post Oak Blvd, Suite 4800
Houston, Texas 77056
Attention:   Corporate Counsel
Email: corporate.counsel@hines.com

## ARTICLE XV
## ASSIGNMENT AND BINDING EFFECT

**Section 15.1    Assignment; Binding Effect**. Purchaser will not have the right to assign this Agreement without Seller's prior written consent.  Notwithstanding the foregoing, Purchaser and Seller may each assign its rights under this Agreement to an Affiliate of such assigning party without the consent of the non-assigning party, provided that any such assignment does not relieve the assigning party of its obligations hereunder.  This Agreement will be binding upon and inure to the benefit of Seller and Purchaser and their respective successors and permitted assigns, and no other party will be conferred any rights by virtue of this Agreement or be entitled to enforce any of the provisions hereof.  Whenever a reference is made in this Agreement to Seller or Purchaser, such reference will include the successors and permitted assigns of such party under this Agreement.

## ARTICLE XVI
## PROCEDURE FOR INDEMNIFICATION AND LIMITED SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS

**Section 16.1    Survival of Representations, Warranties and Covenants**.

(a)      Notwithstanding anything to the contrary contained in this Agreement, the representations, warranties and certifications (collectively, the **"Representations"**) and covenants of Seller set forth in this Agreement and Seller's liability under any provision of this Agreement and under any Closing Document (as defined below), will survive the Closing for a period of six (6) months.  Purchaser will not have any right to bring any action against Seller as a result of (i) any untruth, inaccuracy or breach of such representations and warranties under

35

any provision of this Agreement, or (ii) the failure of Seller to perform its obligations under any other provision of this Agreement or under any other document or agreement executed in connection with this Agreement, including all documents and agreements executed at Closing ("**Closing Documents**"), unless and until the aggregate amount of all liability and losses arising out of all such untruths, inaccuracies, breaches and failures exceeds $50,000, and then only to the extent of such excess. In addition, in no event will Seller's liability for all such untruths, inaccuracies, breaches, and/or failures under any provision of this Agreement (including Seller's liability for attorneys' fees and costs in connection with such untruths, inaccuracies, breaches and/or failures) exceed, in the aggregate, $1,000,000, except with regard to the fraud of Seller.

(b)     Notwithstanding anything contained in this Agreement to the contrary, all of the Representations that are made by Seller and set forth herein or in any of the documents or instruments required to be delivered by Seller hereunder shall be subject to the following conditions and limitations: (i) there shall be no liability on the part of Seller for any breach of a Representation arising from any matter or circumstance of which Purchaser had knowledge at Closing; and (ii) in the event that prior to the time of Closing, during the course of Purchaser's inspections, studies, tests and investigations conducted pursuant to Article V hereof or through other sources, Purchaser gains knowledge of a fact or circumstance which, by its nature, indicates that a Representation was or has become untrue or inaccurate, and such fact or circumstance was not intentionally withheld from Purchaser by Seller with the intent to defraud Purchaser, then Purchaser shall not have the right to bring any lawsuit or other legal action against Seller nor pursue any other remedies against Seller as a result of the breach of the Representation caused thereby, but Purchaser's sole and exclusive right and remedy shall be to terminate this Agreement, in which event the Initial Deposit, the Additional Deposit, if previously deposited with Title Company, and the Extension Payment, if applicable, shall be returned to Purchaser and neither party shall have any further obligations to the other party hereunder, except for the Termination Surviving Obligations; provided, however, that such right of termination shall not be available for breaches of Representations that have no material impact on the value of the Property. Without limiting any other provision hereof, the parties hereto expressly acknowledge and agree that none of Seller's representations, warranties or covenants herein may be relied on by the Title Company, whether by subrogation or otherwise. The provisions of this Section 16.1(b) shall survive the Closing.

(c)     The Closing Surviving Obligations will survive Closing without limitation unless a specified period is otherwise provided in this Agreement. All other representations, warranties, covenants and agreements made or undertaken by Seller under this Agreement, unless otherwise specifically provided herein, will not survive the Closing Date but will be merged into the Closing documents delivered at the Closing. The Termination Surviving Obligations shall survive termination of this Agreement without limitation unless a specified period is otherwise provided in this Agreement. The limitations on Seller's liability contained in this Article XVI are in addition to, and not limitation of, any limitation on liability provided elsewhere in this Agreement or by law or any other contract, agreement or instrument.

## ARTICLE XVII
## MISCELLANEOUS

**Section 17.1    Waivers.**    No waiver of any breach of any covenant or provisions contained herein will be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision contained herein. No extension of time for performance of any obligation or act will be deemed an extension of the time for performance of any other obligation or act.

**Section 17.2    Recovery of Certain Fees.**    In the event a party hereto files any action or suit against another party hereto by reason of any breach of any of the covenants, agreements or provisions contained in this Agreement, then in that event the prevailing party will be entitled to have and recover of and from the other party all attorneys' fees and costs resulting therefrom, subject, however, in the case of Seller, to the limitations set forth in Section 16.1 above. For purposes of this Agreement, the term "attorneys' fees" or "attorneys' fees and costs" shall mean all court costs and the fees and expenses of counsel to the parties hereto, which may include printing, photostatting, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals and other persons not admitted to the bar but performing services under the supervision of an attorney, and the costs and fees incurred in connection with the enforcement or collection of any judgment obtained in any such proceeding. The provisions of this Section 17.2 shall survive the entry of any judgment, and shall not merge, or be deemed to have merged, into any judgment.

**Section 17.3    Time of Essence.**    Seller and Purchaser hereby acknowledge and agree that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof.

**Section 17.4    Construction.**    Headings at the beginning of each article and section are solely for the convenience of the parties and are not a part of this Agreement. Whenever required by the context of this Agreement, the singular will include the plural and the masculine will include the feminine and vice versa. This Agreement will not be construed as if it had been prepared by one of the parties, but rather as if both parties had prepared the same. All exhibits and schedules referred to in this Agreement are attached and incorporated by this reference, and any capitalized term used in any exhibit or schedule which is not defined in such exhibit or schedule will have the meaning attributable to such term in the body of this Agreement. In the event the date on which Purchaser or Seller is required to take any action under the terms of this Agreement is not a Business Day, the action will be taken on the next succeeding Business Day.

**Section 17.5    Counterparts; Electronic Signatures Binding.**    To facilitate execution of this Agreement, this Agreement may be executed in multiple counterparts, each of which, when assembled to include an original, faxed or electronic mail (in .PDF or similar file) signature for each party contemplated to sign this Agreement, will constitute a complete and fully executed agreement. All such fully executed original, faxed or electronic mail (in .PDF or similar file) counterparts will collectively constitute a single agreement, and such signatures shall be legally binding upon the party sending the signature by such electronic means immediately upon being sent by such party.

37

**Section 17.6   Severability.** If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any rule of law or public policy, all of the other conditions and provisions of this Agreement will nevertheless remain in full force and effect, so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner to either party. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto will negotiate in good faith to modify this Agreement so as to reflect the original intent of the parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

**Section 17.7   Entire Agreement.** This Agreement is the final expression of, and contains the entire agreement between, the parties with respect to the subject matter hereof, and supersedes all prior understandings with respect thereto. This Agreement may not be modified, changed, supplemented or terminated, nor may any obligations hereunder be waived, except by written instrument, signed by the party to be charged or by its agent duly authorized in writing, or as otherwise expressly permitted herein.

**Section 17.8   Governing Law and Venue.** THIS AGREEMENT WILL BE CONSTRUED, PERFORMED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED. THE PARTIES AGREE THAT ANY ACTION IN CONNECTION WITH THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN THE STATE OR FEDERAL COURTS THAT ARE SEATED IN THE CITY AND COUNTY IN WHICH THE PROPERTY IS LOCATED, AND THE PARTIES HEREBY CONSENT AND AGREE TO THE JURISDICTION OF SUCH COURTS.

**Section 17.9   No Recording.** The parties hereto agree that neither this Agreement nor any affidavit concerning it will be recorded.

**Section 17.10   Further Actions.** The parties agree to execute such instructions to the Title Company and such other instruments and to do such further acts as may be reasonably necessary to carry out the provisions of this Agreement.

**Section 17.11   No Other Inducements.** The making, execution and delivery of this Agreement by the parties hereto has been induced by no representations, statements, warranties or agreements other than those expressly set forth herein.

**Section 17.12   Exhibits.   Exhibits A** through **H**, inclusive, are incorporated herein by reference.

**Section 17.13   No Partnership.** Notwithstanding anything to the contrary contained herein, this Agreement shall not be deemed or construed to make the parties hereto partners or joint venturers, it being the intention of the parties to merely create the relationship of Seller and Purchaser with respect to the Property to be conveyed as contemplated hereby.

**Section 17.14   Limitations on Benefits.** It is the explicit intention of Purchaser and Seller that no person or entity other than Purchaser and Seller and their permitted successors and assigns is or shall be entitled to bring any action to enforce any provision of this Agreement against any of the parties hereto, and the covenants, undertakings and agreements set forth in this

Agreement shall be solely for the benefit of, and shall be enforceable only by, Purchaser and Seller or their respective successors and assigns as permitted hereunder. Nothing contained in this Agreement shall under any circumstances whatsoever be deemed or construed, or be interpreted, as making any third party (including, without limitation, Broker or any Tenant) a beneficiary of any term or provision of this Agreement or any instrument or document delivered pursuant hereto, and Purchaser and Seller expressly reject any such intent, construction or interpretation of this Agreement.

Section 17.15 Exculpation. In no event whatsoever shall recourse be had or liability asserted against any of Seller's or Purchaser's partners, members, shareholders, employees, agents, directors, officers or other owners of Seller or Purchaser or their respective constituent members, partners, shareholders, employees, agents, directors, officers or other owners. Neither Seller's nor Purchaser's direct or indirect shareholders, partners, members, beneficiaries or owners or their respective trustees, officers, directors, employees, agents or security holders, assume any personal liability for any obligations entered into on behalf of Seller or Purchaser, respectively, under this Agreement and the Closing Documents.

Section 17.16 Waiver of Jury Trial. THE PARTIES HERETO KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREE THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

Section 17.17 PROHIBITION ON CONDOMINIUM CONVERSION. AS AN ESSENTIAL INDUCEMENT TO SELLER TO ENTER INTO THIS AGREEMENT, PURCHASER ACKNOWLEDGES, UNDERSTANDS AND AGREES THAT THE REAL PROPERTY AND IMPROVEMENTS MAY NOT BE CONVERTED TO A CONDOMINIUM FOR A PERIOD OF ELEVEN (11) YEARS FOLLOWING CLOSING AND THAT, ON OR PRIOR TO CLOSING, SELLER SHALL RECORD AGAINST THE PROPERTY A RESTRICTIVE COVENANT PROHIBITING ANY SUCH CONVERSION DURING SUCH 11-YEAR PERIOD.

Section 17.18 Radon Gas. The following notification is hereby given pursuant to Florida Statutes Section 404.056(5) (2005):

RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health department.

Section 17.19 Energy-Efficiency Rating Information. Purchaser acknowledges that it has received a copy of The Florida Building Energy-Efficiency System Brochure as provided by the State of Florida, Department of Community Affairs, as required by Section 553.996, Florida Statues.

39

THE SUBMISSION OF THIS AGREEMENT FOR EXAMINATION IS NOT INTENDED TO NOR SHALL IT CONSTITUTE AN OFFER TO SELL, OR A RESERVATION OF, OR OPTION OR PROPOSAL OF ANY KIND FOR THE PURCHASE OF THE PROPERTY. EITHER PARTY MAY TERMINATE DISCUSSIONS OR NEGOTIATIONS AT ANY TIME FOR ANY REASON.   THE DELIVERY OF ANY DRAFT DOCUMENTS AND THE PROVISION OF ANY COMMENTS IN RESPONSE THERETO BY THE PARTIES' COUNSEL WILL NOT PRECLUDE THE PARTIES FROM RAISING COMMENTS OR RESPONDING TO PROVISIONS, EVEN IF THOSE PROVISIONS WERE SET FORTH IN PRIOR DRAFTS OR COMMENTARY.  IN NO EVENT SHALL ANY DRAFT OF THIS AGREEMENT CREATE ANY OBLIGATION OR LIABILITY, IT BEING UNDERSTOOD THAT THIS AGREEMENT SHALL BE EFFECTIVE AND BINDING ONLY WHEN A COUNTERPART HEREOF HAS BEEN EXECUTED AND DELIVERED BY EACH PARTY HERETO AND THE EARNEST MONEY DEPOSIT IS DELIVERED TO THE TITLE COMPANY.

**Section 17.20 Redirection of Website Traffic and Signage**. From and after the Closing Date, all website traffic that goes to www.avivaatcelebrationapartments.com and www.avivacelebration.com shall be redirected by Seller to a website designated by Purchaser at Closing. The parties shall reasonably cooperate with each other to accommodate the foregoing. The Purchaser shall have ten (10) Business Days after Closing to change all signage to Purchaser's designated name. This provision shall survive Closing.

**Section 17.21 IRS §1031 Cooperation**. Purchaser and Seller acknowledge that either party may wish to structure this transaction as a tax deferred exchange of like-kind property within the meaning of Section 1031 of the Code (an "**Exchange**"). Each party agrees to reasonably cooperate with the other party to effect such an Exchange; provided, however, that: (i) the cooperating party shall not be required to acquire or take title to any Exchange property; (ii) the cooperating party shall not be required to incur any expense (excluding attorneys' fees) or liability whatsoever in connection with the Exchange, including, without limitation, any obligation for the payment of any escrow, title, brokerage or other costs incurred with respect to the exchange; (iii) no substitution of the effectuating party shall release said party from any of its obligations, warranties or representations set forth in this Agreement or from liability for any prior or subsequent default under this Agreement by the effectuating party, its successors, or assigns, which obligations shall continue as the obligations of a principal and not of a surety or guarantor; (iv) the effectuating party shall give the cooperating party at least ten (10) Business Days prior notice of the proposed changes required to effect such Exchange and the identity of any party to be substituted in the escrow; (v) the effectuating party shall be responsible for preparing all additional agreements, documents and escrow instructions (collectively, the "**Exchange Documents**") required by the Exchange, at its sole cost and expense; (vi) the effectuating party shall be responsible for making all determinations as to Exchange Documents and the transactions contemplated thereby, and the cooperating party shall in no event be responsible for, or in any way be deemed to warrant or represent any tax or other consequences of the Exchange arising by reason of the cooperating party's performance of the acts required hereby; and (vii) any such Exchange shall not serve to extend the Closing Date or entitle either party hereto to extend the Closing Date.

40

IN WITNESS WHEREOF, Seller and Purchaser have respectively executed this Agreement to be effective as of the date first above written.

PURCHASER:

**SOUTHSTAR CAPITAL GROUP I, LLC,**
a Florida limited liability company

By:_____
Name:_____
Title:_____

SELLER:

**1662 MULTIFAMILY LLC,**
a Delaware limited liability company

By:    Hines 1662 Multifamily LLC,
       a Delaware limited liability company,
       its managing member

    By:    Hines Investment Management Holdings Limited Partnership,
         a Texas limited partnership,
         its managing member

        By:    HIMH GP LLC,
            a Delaware limited liability company,
            its general partner

            By:    Hines Real Estate Holdings Limited Partnership,
                a Texas limited partnership,
                its sole member

                By:    JCH Investments, Inc.,
                    a Texas corporation,
                    its general partner

                    By:_____
                    Name:_____
                    Title:_____

41

IN WITNESS WHEREOF, Seller and Purchaser have respectively executed this Agreement to be effective as of the date first above written.

PURCHASER:

**SOUTHSTAR CAPITAL GROUP I, LLC,**
a Florida limited liability company

By:_____
Name:_____
Title:_____

SELLER:

**1662 MULTIFAMILY LLC,**
a Delaware limited liability company

By:    Hines 1662 Multifamily LLC,
       a Delaware limited liability company,
       its managing member

       By:    Hines Investment Management Holdings Limited Partnership,
              a Texas limited partnership,
              its managing member

              By:    HIMH GP LLC,
                     a Delaware limited liability company,
                     its general partner

                     By:    Hines Real Estate Holdings Limited Partnership,
                            a Texas limited partnership,
                            its sole member

                            By:    JCH Investments, Inc.,
                                   a Texas corporation,
                                   its general partner

                                   By:_____
                                   Name:    ~~C. KEVIN SHANNAHAN~~
                                   Title:    ~~SENIOR MANAGING DIRECTOR/CEO~~

41

## JOINDER BY TITLE COMPANY

**CHICAGO TITLE INSURANCE COMPANY**, referred to in this Agreement as the "Title Company," hereby acknowledges that it received this Agreement executed by Seller and Purchaser on the 7th day of ___July___, 2016, and executes this joinder solely to accept the obligations of the Title Company as escrow agent hereunder. The Title Company hereby agrees to hold and distribute the Earnest Money Deposit, and interest thereon, and Closing proceeds in accordance with the terms and provisions of this Agreement. It further acknowledges that it hereby assumes all responsibilities for information reporting required under Section 6045(e) of the Internal Revenue Code.

**CHICAGO TITLE INSURANCE COMPANY**

By: _____
Printed Name: ___Andrew Baker___
Title: _____

Agreement of
Purchase and Sale

42

## JOINDER BY BROKER

The undersigned Broker joins herein to evidence such Broker's agreement to the provisions of Section 11.1 and to represent to Seller and Purchaser that such Broker (i) knows of no other brokers, salespersons or other parties entitled to any compensation for brokerage services arising out of this transaction other than those whose names appear in this Agreement, (ii) has not made any of the representations or warranties specifically disclaimed by Seller in Article V and (iii) is duly licensed and authorized to do business in the State in which the Property is located

**APARTMENT REALTY ADVISORS OF FLORIDA, LLC,**
a Florida limited liability company

By:    Apartment Realty Advisors of Florida, Inc.,
       its Managing Member

       By: _____
       Name: _Richard Donnellan_
       Title: _Vice Chairman_

Date: _7/5/16_, 2016

Address: _750 Park of Commerce Blvd_
         _Boca Raton, FL 33487_

License No.: _BK3159746_
Tax I.D. No.: _65-0723832_

# EXHIBIT A

## PERSONAL PROPERTY

[See Attached]

A-1

# Aviva at Celebration

## Inventory Listing

## Maintenance Shop

| Description | Brand | Model | Serial |
|---|---|---|---|
| Key Machine | Ilco | 045HD | PD018586 |
| A/C gauges | Yellow Jacket | Series 41 | |
| Infrared thermometer | Mastercool | 52224-C | |
| Refrigerant scale | Wey-TEC Inficon | | |
| Elec. Leak Detector | Mastercool | 55100 | 474085 |
| Gas Blower | STIHL | BR550 | 503856860 |
| Wet/Dry Vac | Shop Vac | | |
| Appliance dolly | Milwaukee | 40714 | |
| Portable A/C | Haier | HPN14XCM | H150402639 |
| Portable A/C | Haier | HPN14XCM | H150402643 |
| Sprayer 1.5 gal. | Chapin | 2002 | |
| Hand sprayer 48 Oz | Chapin | 1002 | |
| Hand sprayer 48 Oz | Chapin | 1002 | |
| 100ft extension cord | | | |
| 100ft water hose | | | |
| Stepladder 10ft | Louisville | | |
| Stepladder 6ft | Louisville | | |
| Water hose reel | Ames | | |
| Sawhorses plastic folding | Stanley | | |
| Commode hand auger 6ft | General Pipe Cleaners | | |
| Clamp 36" | Irwin | | |
| Clamp 12" | Irwin | | |
| Clamp 12" | Irwin | | |
| Push brooms x 4 | | | |
| Deck brush | | | |

| Description | Brand | Model | Serial |
|---|---|---|---|
| Gas can plastic 5 gal. | | | |
| Gas can metal 2.5 gal. | JustRite | | |
| Mop bucket w/strainer | | | |
| Power washer | Mi-T-M | WP-3000-HDHB | 10879491 |
| Plunger | | | |
| Light bulb ext. pole | | | |
| 2 wheel dolly | | | |

## Manager's Office (1)

HP computer Serial #MXL5211H7G

Wireless mouse

Keyboard

Office Phone Serial #TDX73R717F2B

Canon Adding Machine

HP 1102w Printer

Check Scanner Serial #60615719354

## Manager's Office (2)

Office Phone Serial #TDX73R717F9DB

Laptop Serial # CND5050FCW

Canon Adding Machine

Wireless Mouse

Keyboard

Acer Monitor Serial # 53301-499885

## Leasing Office

IPad DMPPD12SF4YD

IPad DMPPD12CF4YD

HP Computer Serial #MXL5211H72

HP Computer Serial #MXL5211H7M

Office Phone Serial #TDX74K71A8DE4

Office Phone Serial #TDX73R717F2C1

# Clubhouse

Elo Touch Screen (unable to obtain serial number from mounted device)

(2) LG Wall mounted Televisions (unable to obtain serial number from mounted device)

# Sports Lounge

(3) LG Wall mounted Televisions (unable to obtain serial number from mounted device)

Dart Board

Shuffle Board Table

Stainless Steel Trash Bin

Whirlpool Microwave Serial #WM30516ASO

Kitchen Aid Icemaker Serial #K51814919

Kitchen Aid Refrigerator Serial #EK51502541

# Fitness Center

Multifunction Trainer

Pro Maxima free weights (1 set- 5 lbs, 10lbs, 15 lbs, 20 lbs, 25 lbs, 30 lbs, 35 lbs, 40 lbs, 45 lbs, 50 lbs)

Body Solid Kettle Bells (1 each of 5 lbs, 10lbs, 15 lbs, 20 lbs, 25 lbs, 30 lbs, 35 lbs, 40 lbs, 45 lbs, 50 lbs)

Pro Maxima Medicine Balls- (1) 4 lbs, (2) 6 lbs, (2) 8 lbs, (1) 10 lbs, (1) 12 lbs, (1) 14 lbs

Pro Maxima Seated Row P4300

(2) Weight Benches

Pro Maxima Chest Incline/Shoulder Press P1350

Pro Maxima Seated Leg Curl/Leg Extension P5500

(4) Life Fitness Treadmills

(2) Life Fitness Elipticals

Concept 2 Rower

(2) Peleton Exercise Bikes

TRX exercise system- free standing

(8) Yoga Mats

(3) Exercise Balls

Stainless Steel Trash Bin

Exercise Wipe container- wall mounted

Pro Maxima Seated Leg Press P5600

Multifunction machine

## Pool

(20) Table Height Chairs

(23) Lounge Chairs

(5) Umbrellas

(5) Single Wicker Chairs

Wicker Love Seat

Wicker Couch

Trash containers

(10) Small Tables

(2) Rectangle Tables

(2) Round Tables

(4) Beach Chairs

(3) Cabanas

(3) Cabana Lounge Beds

(3) Cabana Carts

## Work Room/Kitchen

Cannon Multifunction Copier Serial # L1QNN04794

Royal Shredder

Filing Cabinets (2)

Safe

Dishwasher

Refrigerator

Rubbermaid Trash Can

Folding Table

(4) Folding Chairs



Inventory
Celebration Clubhouse
December 2015
Page 1

| | | | |
|---|---|---|---|
| Men's Restroom | 1 | Each | Art: Frey |
| Men's Restroom | 1 | Each | Plant: Bird of paradise |
| | | | |
| Women's Restroom | 1 | Each | Art: Frenchy |
| Women's Restroom | 1 | Each | Art: Fine Perfume |
| Women's Restroom | 1 | Each | Plant: Fiddle leaf fig in square metal planter |
| | | | |
| Sports Lounge | 1 | Each | Plant: Birdnest fern in black planter |
| Sports Lounge | 1 | Each | Plant: 7' Dracena in metal planter |
| Sports Lounge | 4 | Each | Gold wingback chair |
| Sports Lounge | 1 | Each | Plant: Succulent, aloe and echeveria in round |
| Sports Lounge | 1 | Each | Plant: Mini dracaena, aloe and echeveria in round |
| Sports Lounge | 1 | Each | Glass tray |
| Sports Lounge | 1 | Each | Yellow vases, set of 2 |
| Sports Lounge | 1 | Each | Blue keyhole vases, set of 2 |
| Sports Lounge | 1 | Each | Custom working sheer panels on a commercial track |
| Sports Lounge | 1 | Each | Art deco train image printed on mechanical room doors |
| Sports Lounge | 1 | Each | Plant: Echeveria in ceramic planter, set of 2 |
| Sports Lounge | 2 | Each | Round wood accent table |
| Sports Lounge | 12 | Each | Wood and cream leather adjustable barstool |
| Sports Lounge | 1 | Each | Art: Juene Fille en Vert |
| Sports Lounge | 1 | Each | Tic tac toe game set of 3 |
| Sports Lounge | 1 | Each | Plant: Echeveria in ceramic planter |
| Sports Lounge | 1 | Each | Round gold mirror |
| | | | |
| Lobby | 2 | Each | Metallic gourd vase |
| Lobby | 2 | Each | Cobalt gold swirl vase |
| Lobby | 1 | Each | Custom working sheer panels on a commercial track |
| Lobby | 2 | Set of 2 | Dark grey linen club chairs with a decorative pillows |
| Lobby | 1 | Each | Cow hide area rug |
| Lobby | 1 | Each | Round espresso table |
| | | | |
| Fitness Room | 1 | Each | Art: High Dive |
| Fitness Room | 1 | Each | Silver starburst, set of 2 |
| Fitness Room | 1 | Each | Custom working sheer panels on a commercial rod |
| | | | |
| Leasing | 1 | Each | Custom bow front desks, set of 2 |
| Leasing | 1 | Each | Plant: Lace fern and lichen spray in ceramic pot |
| Leasing | 1 | Each | Plant: Magnolia waterlike, set of 2 |
| Leasing | 1 | Each | Brass owl on stand |

Inventory
Celebration Club
Page 2

| Leasing | 1 | Each | Ombre ball vase |
|---|---|---|---|
| Leasing | 2 | Each | Smalll green chalice vase |
| Leasing | 2 | Each | Large green chalice vase |
| Leasing | 1 | Each | Tall white table lamp with a shade, set of 2 |
| Leasing | 1 | Each | Custom working sheer panels on a commercial track |
| Leasing | 1 | Each | Faux leather executive chair, set of 2 |
| Leasing | 2 | | Dark grey fabric wingback hostess chair |
| | | | |
| Manager's Vestibule | 1 | Each | Art:  City Pop |
| | | | |
| Club Room | 1 | Each | White stock books |
| Club Room | 2 | Each | Cobalt gold swirl vase, small |
| Club Room | 2 | Each | Speed sculpture |
| Club Room | 1 | Each | Ombre ball vase, set of 2 |
| Club Room | 2 | Each | White spiked vase |
| Club Room | 1 | Each | Textured grey vase, set of 2 |
| Club Room | 1 | Yards | Fabric for built-in banquettes |
| Club Room | 4 | Each | Custom data tables |
| Club Room | 2 | Each | Bronze damask egg with lid |
| Club Room | 1 | Each | Aqua bowl, set of 2 |
| Club Room | 1 | Each | Gold dipped silver vase |
| Club Room | 1 | Each | Tall mercury gourd vase, set of 2 |
| Club Room | 1 | Each | Mercury gourd vase, set of 2 |
| Club Room | 1 | Each | Gold sculptured sphere |
| Club Room | 1 | Each | White crystal figural, set of 2 |
| Club Room | 1 | Each | White wavy vase, set of 2 |
| Club Room | 4 | Each | Upholstered arm chairs with a decorative pillow |
| Club Room | 2 | Each | Ivory accent table |
| Club Room | 4 | Each | Brass floor lamp with a shade |
| Club Room | 2 | Each | Custom upholstered sofas with decorative pillows |
| Club Room | 2 | Each | Gray linen bench |
| Club Room | 1 | Each | Art:  Party Crashers |
| Club Room | 1 | Each | Plant:  Orchid lily |
| Club Room | 2 | Each | Credenza |
| Club Room | 1 | Each | Plant:  Lace fern and lichen spray in ceramic pot |
| Club Room | 1 | Each | Plant:  Zamifolia in a black fishbowl pot |
| Club Room | 1 | Each | Round gold mirror |
| Club Room | 1 | Each | Book:  50's Decorative Art |
| Club Room | 1 | Each | Book:  Essentials of Pyschology |
| Club Room | 1 | Each | Book:  Extreme Bricks |
| Club Room | 1 | Each | White glass vases, set of 2 |
| Club Room | 1 | Each | White glass canister with stopper |
| Club Room | 1 | Each | Agate on a gold stand |
| Club Room | 1 | Each | White faux shagreen tray |
| Club Room | 1 | Each | Aqua stacked glass candle holder |
| Club Room | 1 | Each | Gold sphere |
| Club Room | 4 | Each | Grey adjustable desk chair with nailhead trim |
| Club Room | 2 | Each | Bunching cocktail table |

Inventory
Celebration Club
Page 3

| Club Room | 1 | Each | Custom area rug |
|---|---|---|---|
| Club Room | 1 | Each | Bunching cocktail table |
| Club Room | 1 | Each | Plant: Artichoke jade in glass vase |
| Club Room | 1 | Each | Plant: Walking stick palm |
| Club Room | 2 | Pairs | Pair of custom stationary sheer panels |
| Club Room | 1 | Each | Book: Designa |
| Club Room | 1 | Each | Book: History Decoded |
| Club Room | 1 | Each | Book: LogoLounge |
| Club Room | 1 | Each | White glass vases, set of 2 |
| Club Room | 1 | Each | White glass canister with stopper |
| Club Room | 1 | Each | Agate on a gold stand |
| Club Room | 1 | Each | Gold sphere |
| Club Room | 1 | Each | White faux shagreen tray |
| Club Room | 1 | Each | Aqua stacked glass candle holder |
| | | | |
| Assistant Manager's Offi | 1 | Each | Custom bow front desk and credenza set |
| Assistant Manager's Offi | 1 | Each | Art: Urban Life Style |
| Assistant Manager's Offi | 1 | Each | Art: Contemporary Monoprints, set of 2 |
| Assistant Manager's Offi | 1 | Each | Plant: Areca grass in white contemporary |
| Assistant Manager's Offi | 1 | Each | Plant: Artichoke jade in glass vase |
| Assistant Manager's Offi | 1 | Each | Plant: Calla lily coil waterlike |
| Assistant Manager's Offi | 1 | Each | Custom working sheer panels on a commercial track |
| Assistant Manager's Offi | 1 | Each | Faux leather executive chair |
| Assistant Manager's Offi | 1 | Each | Tall silver lamp with a shade |
| Assistant Manager's Offi | 1 | Set of 2 | Dark grey fabric wingback hostess chair, set of 2 |
| | | | |
| Manager's Office | 1 | Each | Custom bow front desk and credenza set |
| Manager's Office | 1 | Each | Right lateral file credenza |
| Manager's Office | 1 | Each | Art: Jellly, set of 2 |
| Manager's Office | 1 | Each | Art: Jelly I |
| Manager's Office | 1 | Each | Art: Portrait |
| Manager's Office | 1 | Each | Plant: Bamboo |
| Manager's Office | 1 | Each | Tulip side table |
| Manager's Office | 3 | Each | Wooden side chairs with green upholstery |
| Manager's Office | 1 | Each | Tall silver lamp with a shade |
| Manager's Office | 1 | Each | Silver jagged edge vase, set of 2 |
| Manager's Office | 1 | Each | Faux leather executive chair |
| Manager's Office | 1 | Each | Plant: Artichoke jade in glass vase |
| Manager's Office | 1 | Set of 2 | Dark grey fabric wingback hostess chair |
| | | | |
| Breakroom | 1 | Each | Art: Poptarts |
| Breakroom | 1 | Each | Plant: Lace fern and lichen spray in ceramic pot |
| | | | |
| Restrooms Corridor | 1 | Each | Art: Magenta Feather, set of 2 |



Inventory
Celebration Model 1
Feb-2016

| Room | Item Description |
| --- | --- |
| Entry | Blue wall clock |
| Entry | Floor plant in white pot |
| Entry | Blue patterned rug |
| | |
| Kitchen | Green chevron vase |
| Kitchen | Orange chevron vase |
| Kitchen | Flat green vase |
| Kitchen | Mixing bowl with 2 yellow hand towels and 2 bags of scone mix |
| Kitchen | Small table lamp with shade |
| Kitchen | Turquoise table clock |
| Kitchen | Cutting board with measuring spoons, timer and 4 baking dishes |
| Kitchen | Plant: Grass in white pot |
| Kitchen | Book: The Slow Cooker Cookbook |
| Kitchen | Book: The Ice Cream Machine |
| Kitchen | Spoon rest |
| Kitchen | Yellow tea kettle |
| Kitchen | Turquoise polka dot oven mitts, set of 2 |
| Kitchen | Old fashioned radio |
| Kitchen | Plant: Succulent in yellow pot |
| Kitchen | Art: Create Your Own Sunshine |
| Kitchen | Green and metal barstools, set of 2 |
| Kitchen | Round yellow tray with 2 striped dish towels, a white pitcher, 4 orange striped glasses |
| Kitchen | Plant: Succulent in green pot |
| Kitchen | Bacon and eggs rug |
| | |
| Dinning Room | White table |
| Dinning Room | Wood chairs, set of 4 |
| Dinning Room | White pendant lamp |
| Dinning Room | Round wood mirror |
| Dinning Room | Place setting with bowl, salad plate, dinner plate, glass, napkin and napkin ring, set of 4 |
| Dinning Room | Turquoise vase |
| Dinning Room | Yellow vase |
| Dinning Room | Plant: Grass in white pot, set of 2 |
| Dinning Room | Beige table runner |
| | |
| Living Room | Coral accent chair |
| Living Room | Floor lamp with shade |
| Living Room | Sofa with 3 decorative pillows |
| Living Room | Art: City Scape |
| Living Room | Custom drapery panels, set of 2 |
| Living Room | Multi-tier coffee table |
| Living Room | Book: The French Cat |
| Living Room | Book: Kinfolk |
| Living Room | Plant: Succulent in white pot |
| Living Room | Decorative wood block |



Inventory
Celebration Model 1
Feb-2016

| | |
|---|---|
| Living Room | Console table |
| Living Room | Yellow table lamp with shade |
| Living Room | Plant: Succulent in wood bowl |
| Living Room | Turquoise glass owl |
| Living Room | Book: A short Guide to A Happy Life |
| Living Room | Book: 3 Year Journal |
| Living Room | Book: Poems from the Typewriter Series |
| Living Room | Old fashioned record player |
| Living Room | Art: Watercolor |
| Living Room | Non Art: Metal "&" wall décor |
| Living Room | Yellow and grey area rug |
| | |
| Bedroom | 8 drawer dresser |
| Bedroom | Round slate mirror |
| Bedroom | Wood and mother of pearl box |
| Bedroom | Octopus dish |
| Bedroom | Plants: Flowers in clear vase with rocks |
| Bedroom | Book: Art of the House |
| Bedroom | Wrapped stock books, set of 6 |
| Bedroom | Hand sculpture |
| Bedroom | Tall yellow honeycomb vase |
| Bedroom | Green round vase |
| Bedroom | Custom drapery panels, set of 2 |
| Bedroom | White round enightstand |
| Bedroom | Turquoise table lamp with shade |
| Bedroom | White upholstered headboard with frame and matterss set, green duvet, 6 decorative pillows, a stuffed flamingo, and a yellow throw |
| Bedroom | Light turquoise desk |
| Bedroom | Yellow ottoman |
| Bedroom | Art: Abstract Figure |
| Bedroom | Metal desk lamp |
| Bedroom | Journals, set of 3 |
| Bedroom | Square blue 3" x 3" frame |
| Bedroom | Plant: Succulents in white pot |
| Bedroom | Gold decorative bird figure |
| | |
| Bathroom | Tall wire bird cage |
| Bathroom | Plant: Fern in white pot |
| Bathroom | Coral 5" x 7" frame |
| Bathroom | Patterned hand towel |
| Bathroom | Blue glass candle holder with votive canle inside |
| Bathroom | Plant: Grass in white pot |
| Bathroom | Art: Abstract Blue and Brown |
| Bathroom | Green glass dish with white hand napkins |
| Bathroom | Blue shower curtain panels on stainless steel rod |
| Bathroom | 2 white bath towels with patterned hand towel |
| Bathroom | Art: Birds on the Beach |
| Bathroom | Art: Rundown Pier |
| Bathroom | Cream and beige bathmat |

Inventory
Celebration Model 1
Feb-2016

| | |
|---|---|
| Balcony | Blue metal retro chairs with green cushion and multicolor accent pillow, set of 2 |
| Balcony | Green metal retro accent table |
| Balcony | Green hurricane |
| Balcony | White lantern |



Inventory
Celebration
Model 2
Feb-16

| Room | Item Description |
| --- | --- |
| Entry | Blue wall clock |
| Entry | Floor plant in white pot |
| | |
| Kitchen | 2 wood crates with 5 grey dish towels inside |
| Kitchen | Black tray with coordinating black bowl, set of 2 |
| Kitchen | Plant: Succulent in green pot |
| Kitchen | Blue 8" x 10" frame |
| Kitchen | Black chevron 5" x 7" frame |
| Kitchen | Red toaster |
| Kitchen | Glass canister with beans, set of 2 |
| Kitchen | White and black salt and pepper shakers |
| Kitchen | Plant: Succulent in stone pot |
| Kitchen | Red blender |
| Kitchen | Wrapped stock book |
| Kitchen | Book: Cocktails |
| Kitchen | Book: The Craft of Cocktails |
| Kitchen | Book: Caffeine for the Creative Mind |
| Kitchen | " & " metal decorative figure |
| Kitchen | Black barstools, set of 2 |
| Kitchen | Place settings - red placemat, glass w/straw, white napkin, square charger, dinner plate and bowl, set of 2 |
| Kitchen | Plant: Succulent glass vase with stones |
| Kitchen | White ceramic bowl with assorted fillers and blue napkin, set of 2 |
| Kitchen | Grey and white rug |
| | |
| Office Area | White chairs, set of 2 |
| Office Area | Wood vase |
| Office Area | White and black cylinder vase |
| Office Area | Blue vase |
| Office Area | Black 5" x 7" frame, set of 2 |
| Office Area | Plant: Succulent in black pot |
| Office Area | Wrapped stock books, set of 2 |
| Office Area | Blue box |
| Office Area | Plant: Grass in black pot |
| Office Area | Black 5" x 7" frame |
| Office Area | Stock books, set of 4 |
| Office Area | Clear red box, set of 4 |
| Office Area | Decorative ceramic pig |
| Office Area | Blue vase |
| Office Area | Stock books, set of 4 |
| Office Area | Large decorative metal jack |
| Office Area | Plant: Succulent in dark grey pot |
| Office Area | Chevron 5" x 7" frame |
| Office Area | White 8" x 10" frame |



Inventory
Celebration
Model 2
Feb-16

| | |
|---|---|
| Office Area | Decorative black gem figure |
| Office Area | Mug filled with pencils |
| Office Area | Red tray with 3 notebooks |
| Office Area | Plant: Succulent in black pot |
| Office Area | Multi-colored striped 5" x 7" frame |
| | |
| | |
| Living Room | Blue accent chair |
| Living Room | Floor lamp |
| Living Room | Sofa with chaise lounge and 5 decorative pillows |
| Living Room | Art: Love Song |
| Living Room | Art: Rock n' Roll |
| Living Room | Art: Country |
| Living Room | Custom drapery panels, set of 2 |
| Living Room | Kidney shaped coffee table |
| Living Room | Book: The New Bohemians |
| Living Room | Book: The Outsiders |
| Living Room | Plant: Aloe plant in white pot |
| Living Room | Blue vase |
| Living Room | Plant: Palm in white pot |
| Living Room | Open display bookshelf |
| Living Room | Black and white 5" x 7" frame |
| Living Room | White round vase |
| Living Room | Love completely decorative box |
| Living Room | Book box |
| Living Room | Large glass hurricane holder with candle and sand inside |
| Living Room | Round textured 4" x 4" frame |
| Living Room | Metallic vase |
| Living Room | Wrapped stock books, set of 12 |
| Living Room | Blue round vase |
| Living Room | Book: Alex Katz |
| Living Room | Book: Kandinsky |
| Living Room | Plant: Succulent in white pot |
| Living Room | Metallic gem stone figure |
| Living Room | Plant: Grass in tin pot |
| Living Room | Book: The Daily Book of Art |
| Living Room | Glass pillar candle holder with round candle |
| Living Room | Spiked decorative figure |
| Living Room | Red jar candle |
| Living Room | Votive holder with candles |
| Living Room | Cream box |
| Living Room | Turtle shell accent box |
| Living Room | Woven tray |
| Living Room | Gold and silver bowl |

Inventory
Celebration
Model 2
Feb-16

| | |
|---|---|
| Bedroom 1 | Tall 5 drawer dresser |
| Bedroom 1 | Plant: Grass in white pot |
| Bedroom 1 | Large decorative metal jax |
| Bedroom 1 | British flag 5" x 7" frame |
| Bedroom 1 | Brown wood 8" x 10" frame |
| Bedroom 1 | Art: Woman with Cat |
| Bedroom 1 | Leather accent chair |
| Bedroom 1 | Custom drapery panels, set of 2 |
| Bedroom 1 | Mirrored door night stand, set of 2 |
| Bedroom 1 | Mannequin head with fedora hat |
| Bedroom 1 | Notebooks, set of 3 |
| Bedroom 1 | Black task lamp |
| Bedroom 1 | Plant: Grass in white pot |
| Bedroom 1 | Art: Fire Escape |
| Bedroom 1 | Upholstered headboard with mattress and frame set, sheets, patterned duvet with 2 euro pillows and 3 decorative throw pillows |
| Bedroom 1 | Art: Regatta Flags, set of 3 |
| Bedroom 1 | Wood base table lamp with shade |
| Bedroom 1 | Wrapped stock books, set of 3 |
| Bedroom 1 | Decorative blue stone |
| Bedroom 1 | Plant: Grass in dented white pot |
| Bedroom 1 | Non Art: Miniture metal fire escape |
| Bedroom 1 | Plant: Succulent in sqrare tan container |
| Bedroom 1 | Art: Black and White Stripes |
| | |
| Bath 1 | Plant: Bonsai tree in white pot |
| Bath 1 | Blue soap dish |
| Bath 1 | Woven basket with 3 white hand towels |
| Bath 1 | Bottle of hand lotion and Hand sugar scrub |
| Bath 1 | Navy bath towels, set of 2 |
| Bath 1 | White hand towel, set of 2 |
| Bath 1 | Navy hand towel |
| Bath 1 | Chevron runner rug |
| | |
| Bedroom 2 | Oval night stand with marble top, set of 2 |
| Bedroom 2 | Upholstered headboard with frame and mattress set, sheets, bed skirt, multi-color duvet, 4 pillows with shams, 2 round grey pillows, a gold lumbar pillow and a grey throw |
| Bedroom 2 | Wood table lamp, set of 2 |
| Bedroom 2 | Non Art: Papier-mache white deer , set of 2 |
| Bedroom 2 | Art: Scribbles, set of 2 |
| Bedroom 2 | Custom drapery panel, set of 2 |
| Bedroom 2 | Plant: Palm in black square container |
| Bedroom 2 | Reclaimed wood dresser |
| Bedroom 2 | Stock books, set of 3 |
| Bedroom 2 | Purple vases, set of 2 |
| Bedroom 2 | Stock books, set of 3 |
| Bedroom 2 | Mother of pearl box |



Inventory
Celebration
Model 2
Feb-16

| Bath | Grey bath towel, set of 2 |
| Bath | Green patterned hand towel, set of 2 |
| Bath | Grey shower curtain panel, set of 2 with shower curtain rod |
| Bath | Art: Wood Grain, set of 2 |
| Bath | Sea coral dish with bath fizz balls, set of 3 |
| Bath | White hand towels, set of 2 |
| Bath | Glass tray with bar of soap and mercury glass votiave holder with candle |
| Bath | Plant: Orchid in glass vase |
| Bath | Plant: Grass in wicket pot |
| Bath | Grey and white area rug |

| Balcony | Metal folding chairs, set of 2 |
| Balcony | Metal folding bistro table |
| Balcony | Round candle holder with candle |

# Aviva at Celebration

## Inventory Listing- Corporate Suite

## 05-210

8 wall art/frames
1 couch
1 side chair
9 tables
2 pairs curtain panels
4 individual chairs (3 barstools, 1 reg)
4 lamps
19 hangers
4 rugs included outdoor mat
21 decorative free stand items
13 decorative pillows
1 king size bed/ mattress and box spring

1 king size headboard
1 king size bedding set
4 regular pillows
2 TV's
1 toaster
1 coffee pot
1 garbage bin
15 glass cups
4 wine glasses
4 coffee mugs
4 plates
4 bowls
4 small plates
1 strainer
5 pot/pans
25 cooking utensils
1 alarm clock
7 towels
1 extra set of linen sheets

## EXHIBIT B

### LEGAL DESCRIPTION

Lot 3, CELEBRATION BOULEVARD COMMERCIAL PARCELS, according to the Plat thereof as recorded in Plat Book 18, Pages 104-115, of the Public Records of Osceola County, Florida.

B-1

# EXHIBIT C

## RENT ROLL

[See Attached]

C-1

# Rent Roll with Lease Charges

Aviva at Celebration ·A8 (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Charge Rent. Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|-------------------------|--------|------------------|---------------|---------|------------------|----------|---------|
| **Current/Notice/Vacant Residents** | | | | | | | | | | | | |
| 01-101 | 69195c1 | 1,371.00 | t0833465 | Tammy Lavarro | 2,065.00 rent | 1,860.00 | 0.00 | 0.00 | 8/14/2015 | 8/13/2016 | 8/13/2016 | 83.04 |
| | | | | | petrent | 10.00 | | | | | | |
| | | | | | garage | 135.00 | | | | | | |
| | | | | | Total | 2,005.00 | | | | | | |
| 01-102 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,715.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 01-104 | 69195a2 | 746.00 | t1008333 | Alyssa Grassadonio | 1,295.00 rent | 1,295.00 | 500.00 | 0.00 | 6/23/2016 | 7/22/2017 | | -27.00 |
| | | | | | petrent | 10.00 | | | | | | |
| | | | | | Total | 1,305.00 | | | | | | |
| 01-106 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,635.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 01-108 | 69195a2 | 746.00 | t0960510 | Lloyd Lambright | 1,295.00 rent | 1,295.00 | 500.00 | 0.00 | 4/21/2016 | 5/20/2017 | | 70.01 |
| | | | | | Total | 1,295.00 | | | | | | |
| 01-110 | 69195a1 | 741.00 | VACANT | VACANT | 1,295.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 01-112 | 69195a2 | 746.00 | VACANT | VACANT | 1,295.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 01-113 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,715.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 01-114 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,750.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 01-201 | 69195c1 | 1,371.00 | t0971275 | Stephen Kapusta | 2,050.00 rent | 2,000.00 | 700.00 | 0.00 | 4/30/2016 | 5/29/2017 | | 67.88 |
| | | | | | Total | 2,000.00 | | | | | | |
| 01-202 | 69195b2 | 1,097.00 | t0859268 | Alice Hardison | 1,700.00 rent | 1,549.00 | 0.00 | 0.00 | 10/22/2015 | 10/21/2016 | | 0.00 |
| | | | | | garage | 175.00 | | | | | | |
| | | | | | Total | 1,724.00 | | | | | | |
| 01-203 | 69195a2 | 746.00 | t0897846 | Garrett Adams | 1,255.00 rent | 1,255.00 | 500.00 | 0.00 | 1/8/2016 | 2/7/2017 | | 70.40 |
| | | | | | Total | 1,255.00 | | | | | | |
| 01-204 | 69195a2 | 746.00 | t0992896 | Karla Holick | 1,225.00 rent | 1,225.00 | 500.00 | 0.00 | 5/27/2016 | 6/26/2017 | | 65.40 |
| | | | | | xonetime | -1,225.00 | | | | | | |
| | | | | | petrent | 10.00 | | | | | | |
| | | | | | Total | 10.00 | | | | | | |
| 01-205 | 69195b1 | 1,093.00 | t083B242 | Tomika Brooks | 1,595.00 rent | 1,475.00 | 0.00 | 0.00 | 8/28/2015 | 8/27/2016 | 8/27/2016 | 97.62 |
| | | | | | Total | 1,475.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 68 of 104

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 69 of 104

## Rent Roll with Lease Charges

Aviva at Celebration -A8 (69195)
As Of = 06/30/2016
Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| 01-206 | 69195b1 | 1,093.00 | t0837572 | Alexis Ojeda | 1,620.00 | rent | 1,500.00 | 600.00 | 0.00 | 8/19/2015 | 8/18/2016 | | 79.71 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,560.00 | | | | | | |
| 01-207 | 69195b1 | 1,093.00 | t0846940 | Grace Ebonia | 1,595.00 | rent | 1,475.00 | 0.00 | 0.00 | 8/31/2015 | 8/30/2016 | | 0.00 |
| | | | | | | Total | 1,475.00 | | | | | | |
| 01-208 | 69195a2 | 746.00 | t0851186 | Lauren Van Cavage | 1,280.00 | rent | 1,240.00 | 0.00 | 0.00 | 9/11/2015 | 9/10/2016 | | 0.00 |
| | | | | | | Total | 1,240.00 | | | | | | |
| 01-209 | 69195a2 | 746.00 | t0861070 | Naparat Elg | 1,255.00 | rent | 1,215.00 | 0.00 | 0.00 | 10/31/2015 | 10/30/2016 | | 72.48 |
| | | | | | | Total | 1,215.00 | | | | | | |
| 01-210 | 69195a1 | 741.00 | t0837448 | Robert Ludwig | 1,280.00 | rent | 1,170.00 | 500.00 | 0.00 | 9/25/2015 | 9/24/2016 | | 69.41 |
| | | | | | | Total | 1,170.00 | | | | | | |
| 01-211 | 69195a2 | 746.00 | t0849799 | Henry Wright | 1,255.00 | rent | 1,215.00 | 500.00 | 0.00 | 9/2/2015 | 9/1/2016 | 9/1/2016 | -1,215.00 |
| | | | | | | Total | 1,215.00 | | | | | | |
| 01-212 | 69195a2 | 746.00 | t0877050 | Elyssa Catalvano | 1,280.00 | rent | 1,260.00 | 500.00 | 0.00 | 11/15/2015 | 11/14/2016 | | 0.00 |
| | | | | | | Total | 1,260.00 | | | | | | |
| 01-213 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 01-214 | 69195b2 | 1,097.00 | t0875741 | Robert Cawein | 1,735.00 | rent | 1,735.00 | 0.00 | 0.00 | 12/4/2015 | 12/3/2016 | | 78.22 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,795.00 | | | | | | |
| 01-301 | 69195c1 | 1,371.00 | t0918457 | Lisa Lesperance | 2,050.00 | rent | 2,000.00 | 700.00 | 0.00 | 2/15/2016 | 2/14/2017 | | 72.48 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 2,195.00 | | | | | | |
| 01-302 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 01-303 | 69195a2 | 746.00 | t0961805 | Heather Concannon | 1,255.00 | rent | 1,199.00 | 500.00 | 0.00 | 4/30/2016 | 5/29/2017 | | 69.46 |
| | | | | | | Total | 1,199.00 | | | | | | |
| 01-304 | 69195a2 | 746.00 | t0846302 | Joseph Thibeault | 1,280.00 | rent | 1,240.00 | 0.00 | 0.00 | 8/31/2015 | 8/30/2016 | 9/30/2016 | 70.29 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,250.00 | | | | | | |
| 01-305 | 69195b1 | 1,093.00 | t0883315 | Mercia Soares Dos Santos Teles | 1,595.00 | rent | 1,575.00 | 600.00 | 0.00 | 12/1/2015 | 11/30/2016 | | 83.72 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,760.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 70 of 104

# Rent Roll with Lease Charges

Aviva at Celebration ·AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01-306 | 69195b1 | 1,093.00 | t0865897 | Daniele Graton | 1,620.00 | rent | 1,600.00 | 600.00 | 0.00 | 10/27/2015 | 10/26/2016 | | 101.17 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,610.00 | | | | | | |
| 01-307 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,595.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 01-308 | 69195a2 | 746.00 | t0841411 | Justin Lore | 1,280.00 | rent | 1,220.00 | 0.00 | 0.00 | 8/21/2015 | 8/20/2016 | | 76.03 |
| | | | | | | Total | 1,220.00 | | | | | | |
| 01-309 | 69195a2 | 746.00 | t0886129 | Reggie Landaeta | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 12/14/2015 | 12/13/2016 | | 74.47 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 01-310 | 69195a1 | 741.00 | t0836961 | Rosaria Quesada | 1,280.00 | rent | 1,170.00 | 0.00 | 0.00 | 8/15/2015 | 8/14/2016 | | 74.64 |
| | | | | | | garage | 160.00 | | | | | | |
| | | | | | | Total | 1,330.00 | | | | | | |
| 01-311 | 69195a2 | 746.00 | t0851897 | Jonathan Otto | 1,255.00 | rent | 1,195.00 | 500.00 | 0.00 | 9/7/2015 | 9/6/2016 | | 72.37 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 160.00 | | | | | | |
| | | | | | | Total | 1,365.00 | | | | | | |
| 01-312 | 69195a2 | 746.00 | t0905817 | Rebecca Kirby | 1,280.00 | rent | 1,280.00 | 500.00 | 0.00 | 1/31/2016 | 2/28/2017 | | 70.35 |
| | | | | | | Total | 1,280.00 | | | | | | |
| 01-313 | 69195b2 | 1,097.00 | t0960818 | Madeline Olsen | 1,700.00 | rent | 1,650.00 | 600.00 | 0.00 | 4/30/2016 | 5/29/2017 | | -1,610.47 |
| | | | | | | Total | 1,650.00 | | | | | | |
| 01-314 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,735.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 01-401 | 69195c1 | 1,371.00 | t0833443 | Jerome Smith | 2,100.00 | rent | 1,880.00 | 0.00 | 0.00 | 9/7/2015 | 9/6/2016 | | 77.43 |
| | | | | | | Total | 1,880.00 | | | | | | |
| 01-402 | 69195b2 | 1,097.00 | t0849586 | Lutz Hirsch | 1,750.00 | rent | 1,730.00 | 600.00 | 0.00 | 9/1/2015 | 8/31/2016 | | 76.36 |
| | | | | | | Total | 1,730.00 | | | | | | |
| 01-403 | 69195a2 | 746.00 | t0924740 | Austin Glasper | 1,305.00 | rent | 1,305.00 | 500.00 | 0.00 | 5/16/2016 | 5/15/2017 | | 141.72 |
| | | | | | | Total | 1,305.00 | | | | | | |
| 01-404 | 69195a2 | 746.00 | VACANT | VACANT | 1,330.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 01-405 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,645.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 01-406 | 69195b1 | 1,093.00 | t0833837 | Craig Graham | 1,670.00 | rent | 1,650.00 | 0.00 | 0.00 | 8/14/2015 | 2/28/2017 | | 604.49 |
| | | | | | | xmaint | -915.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 71 of 104

# Rent Roll with Lease Charges

Aviva at Celebration -A8 (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|-------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| | | | | | | garage | 64.00 | | | | | | |
| | | | | | | Total | 799.00 | | | | | | |
| 01-407 | 69195b1 | 1,093.00 | t0848461 | Scotty Anderson | 1,645.00 | rent | 1,555.00 | 0.00 | 0.00 | 8/28/2015 | 8/27/2016 | | 78.71 |
| | | | | | | Total | 1,555.00 | | | | | | |
| 01-408 | 69195a2 | 746.00 | t0923607 | Jeffrey Bohlmann | 1,330.00 | rent | 1,330.00 | 500.00 | 0.00 | 2/27/2016 | 3/26/2017 | | 71.51 |
| | | | | | | Total | 1,330.00 | | | | | | |
| 01-409 | 69195a2 | 746.00 | VACANT | VACANT | 1,305.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 01-410 | 69195a1 | 741.00 | t0836690 | Yvonne Crowder | 1,330.00 | rent | 1,200.00 | 500.00 | 0.00 | 8/18/2015 | 8/17/2016 | 8/17/2016 | 70.54 |
| | | | | | | Total | 1,200.00 | | | | | | |
| 01-411 | 69195a2 | 746.00 | t0877804 | Ok sun Bender | 1,305.00 | rent | 1,285.00 | 0.00 | 0.00 | 12/9/2015 | 12/8/2016 | | 0.00 |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | Total | 1,485.00 | | | | | | |
| 01-412 | 69195a2 | 746.00 | t0833592 | Lois Donahue | 1,330.00 | rent | 1,250.00 | 0.00 | 0.00 | 8/14/2015 | 8/13/2016 | | 70.87 |
| | | | | | | Total | 1,250.00 | | | | | | |
| 01-413 | 69195b2 | 1,097.00 | t0853768 | Diana Osborne | 1,750.00 | rent | 1,730.00 | 0.00 | 0.00 | 9/16/2015 | 9/15/2016 | | 75.72 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 160.00 | | | | | | |
| | | | | | | Total | 1,900.00 | | | | | | |
| 01-414 | 69195b2 | 1,097.00 | t0839339 | Georgina McCormack | 1,785.00 | rent | 1,755.00 | 0.00 | 0.00 | 9/1/2015 | 8/31/2016 | | 0.00 |
| | | | | | | garage | 160.00 | | | | | | |
| | | | | | | Total | 1,915.00 | | | | | | |
| 02-101 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,715.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-102 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,715.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-103 | 69195a2 | 746.00 | VACANT | VACANT | 1,270.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-105 | 69195a1 | 741.00 | t0884952 | Stephen Melnychuck | 1,270.00 | rent | 1,235.00 | 0.00 | 0.00 | 5/6/2016 | 5/5/2017 | | 100.87 |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,410.00 | | | | | | |
| 02-107 | 69195a2 | 746.00 | VACANT | VACANT | 1,270.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-109 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,610.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 72 of 104

# Rent Roll with Lease Charges

Aviva at Celebration -A8 (69195)
As Of = 06/30/2016
Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|-------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| 02-111 | 69195a2 | 746.00 | t0980373 | Joseph Criscuolo | 1,270.00 | rent | 1,270.00 | 500.00 | 0.00 | 5/15/2016 | 6/14/2017 | | 164.91 |
| | | | | | | xonetime | -1,270.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 02-113 | 69195b2 | 1,097.00 | t0941452 | Charles Harris Berrios | 1,715.00 | rent | 1,715.00 | 600.00 | 0.00 | 4/2/2016 | 5/1/2017 | | -1,790.17 |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | Total | 1,915.00 | | | | | | |
| 02-114 | 69195c1 | 1,371.00 | t0942122 | Colleen Garganta | 2,065.00 | rent | 2,015.00 | 700.00 | 0.00 | 4/14/2016 | 5/13/2017 | | 87.18 |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | Total | 2,215.00 | | | | | | |
| 02-201 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-202 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-203 | 69195a2 | 746.00 | t1005822 | GAIL GOODAN | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 6/18/2016 | 7/17/2017 | | 0.00 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 02-204 | 69195a2 | 746.00 | VACANT | VACANT | 1,255.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-205 | 69195a1 | 741.00 | t0871048 | Norman Ofstead | 1,255.00 | rent | 1,165.00 | 0.00 | 0.00 | 3/26/2016 | 3/25/2017 | | 70.46 |
| | | | | | | Total | 1,165.00 | | | | | | |
| 02-206 | 69195a2 | 746.00 | VACANT | VACANT | 1,255.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-207 | 69195a2 | 746.00 | t0931665 | Justin Clavet | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 3/14/2016 | 4/13/2017 | | 79.13 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | storage | 45.00 | | | | | | |
| | | | | | | Total | 1,310.00 | | | | | | |
| 02-208 | 69195b1 | 1,093.00 | t0980431 | Stephanie Hughes | 1,595.00 | rent | 1,595.00 | 0.00 | 0.00 | 6/11/2016 | 6/10/2017 | | 0.00 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,605.00 | | | | | | |
| 02-209 | 69195b1 | 1,093.00 | t0979420 | Priscilla Vera | 1,595.00 | rent | 1,595.00 | 0.00 | 0.00 | 5/11/2016 | 6/10/2017 | | 100.43 |
| | | | | | | xonetime | -1,595.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 02-210 | 69195b1 | 1,093.00 | t0986506 | Alejandro Solano | 1,595.00 | rent | 1,595.00 | 0.00 | 0.00 | 5/31/2016 | 6/30/2017 | | -118.26 |
| | | | | | | xonetime | -1,595.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 02-211 | 69195a2 | 746.00 | VACANT | VACANT | 1,255.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 73 of 104

# Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Total | 0.00 | | | | | | |
| 02-212 | 69195a2 | 746.00 | VACANT | VACANT | 1,255.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-213 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-214 | 69195c1 | 1,371.00 | t0995528 | John Chamberlain | 2,050.00 | rent | 2,050.00 | 0.00 | 0.00 | 6/15/2016 | 7/14/2017 | | -0.01 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 2,060.00 | | | | | | |
| 02-301 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-302 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-303 | 69195a2 | 746.00 | VACANT | VACANT | 1,255.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-304 | 69195a2 | 746.00 | t0954183 | Ashok Goyal | 1,255.00 | rent | 1,255.00 | 0.00 | 0.00 | 4/12/2016 | 5/11/2017 | | 81.18 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 02-305 | 69195a1 | 741.00 | t0868082 | Rupert Heirs | 1,255.00 | rent | 1,165.00 | 0.00 | 0.00 | 4/1/2016 | 3/31/2017 | | 72.73 |
| | | | | | | Total | 1,165.00 | | | | | | |
| 02-306 | 69195a2 | 746.00 | VACANT | VACANT | 1,255.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-307 | 69195a2 | 746.00 | t0908151 | Michelle Smits | 1,255.00 | rent | 1,255.00 | 0.00 | 0.00 | 4/15/2016 | 4/14/2017 | | 73.75 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,265.00 | | | | | | |
| 02-308 | 69195b1 | 1,093.00 | t0978500 | Howard Gumbs Jr. | 1,595.00 | rent | 1,595.00 | 600.00 | 0.00 | 5/13/2016 | 6/12/2017 | | 99.33 |
| | | | | | | xonetime | -1,595.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 02-309 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,595.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-310 | 69195b1 | 1,093.00 | t0978491 | Nicholas Darato | 1,595.00 | rent | 1,595.00 | 0.00 | 0.00 | 5/15/2016 | 6/14/2017 | | 90.11 |
| | | | | | | xonetime | -1,595.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 02-311 | 69195a2 | 746.00 | VACANT | VACANT | 1,255.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-312 | 69195a2 | 746.00 | t0937335 | Linda Courter | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 3/29/2016 | 4/28/2017 | | -1,203.76 |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 74 of 104

## Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|-------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,275.00 | | | | | | |
| 02-313 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-314 | 69195c1 | 1,371.00 | VACANT | VACANT | 2,050.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-401 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,750.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-402 | 69195b2 | 1,097.00 | t0954450 | Alisia Verdoarn | 1,750.00 | rent | 1,750.00 | 0.00 | 0.00 | 4/14/2016 | 5/13/2017 | | 0.00 |
| | | | | | | Total | 1,750.00 | | | | | | |
| 02-403 | 69195a2 | 746.00 | t0967598 | Frederick Ehmke | 1,305.00 | rent | 1,305.00 | 500.00 | 0.00 | 4/30/2016 | 5/29/2017 | | -1,505.00 |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | Total | 1,505.00 | | | | | | |
| 02-404 | 69195a2 | 746.00 | VACANT | VACANT | 1,305.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-405 | 69195a1 | 741.00 | t0890116 | Syreeta Jones | 1,305.00 | rent | 1,255.00 | 0.00 | 0.00 | 3/24/2016 | 3/23/2017 | | 73.26 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,265.00 | | | | | | |
| 02-406 | 69195a2 | 746.00 | t0942220 | Henri Kelta | 1,305.00 | rent | 1,305.00 | 0.00 | 0.00 | 4/1/2016 | 4/30/2017 | | 73.12 |
| | | | | | | Total | 1,305.00 | | | | | | |
| 02-407 | 69195a2 | 746.00 | t0879219 | Michael Rising | 1,305.00 | rent | 1,305.00 | 0.00 | 0.00 | 4/29/2016 | 4/28/2017 | | 74.89 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,375.00 | | | | | | |
| 02-408 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,645.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-409 | 69195b1 | 1,093.00 | t0855505 | Milan Ortiz | 1,645.00 | rent | 1,555.00 | 0.00 | 0.00 | 3/16/2016 | 3/15/2017 | | 80.49 |
| | | | | | | garage | 160.00 | | | | | | |
| | | | | | | Total | 1,715.00 | | | | | | |
| 02-410 | 69195b1 | 1,093.00 | t0985051 | Arielle Ducharme | 1,645.00 | rent | 1,645.00 | 600.00 | 0.00 | 5/17/2016 | 6/16/2017 | | 62.21 |
| | | | | | | xonetime | -1,645.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 02-411 | 69195a2 | 746.00 | t0979151 | John Smith | 1,305.00 | rent | 1,305.00 | 0.00 | 0.00 | 5/11/2016 | 6/10/2017 | | 0.00 |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | xonetime | -1,305.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 75 of 104

## Rent Roll with Lease Charges

Aviva at Celebration ·AB (69195)

As Of = 06/30/2016

Month Year = ▓▓▓▓

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Charge Rent Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|------------------------|--------|-----------------|---------------|---------|-----------------|----------|---------|
| | | | | | Total | 200.00 | | | | | | |
| ▓▓▓▓▓▓▓▓▓▓▓▓ | | | | Marcos Geraldes | 1▓▓▓▓ | 1,305.00 | 500.00 | 0.00 | 5/27/2016 | 6/26/2017 | | 64.31 |
| | | | | | xonetime | -1,305.00 | | | | | | |
| | | | | | Total | 0.00 | | | | | | |
| 02-413 | 69195b2 | 1,097.00 | t0864595 | John Dziuba | 1,750.00 rent | 1,730.00 | 0.00 | 0.00 | 5/15/2016 | 5/14/2017 | | 92.24 |
| | | | | | garage | 160.00 | | | | | | |
| | | | | | Total | 1,890.00 | | | | | | |
| 02-414 | 69195c1 | 1,371.00 | t0929213 | Chloe Rice | 2,100.00 rent | 2,050.00 | 0.00 | 0.00 | 3/19/2016 | 4/18/2017 | | 74.56 |
| | | | | | storage | 60.00 | | | | | | |
| | | | | | petrent | 10.00 | | | | | | |
| | | | | | Total | 2,120.00 | | | | | | |
| 03-101 | 69195c1 | 1,371.00 | t0968982 | Luis Cabello | 2,065.00 storage | 60.00 | 0.00 | 0.00 | 6/1/2016 | 5/31/2017 | | -21.26 |
| | | | | | rent | 2,015.00 | | | | | | |
| | | | | | xonetime | 201.50 | | | | | | |
| | | | | | Total | 2,276.50 | | | | | | |
| 03-102 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,715.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 03-104 | 69195a2 | 746.00 | VACANT | VACANT | 1,270.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 03-106 | 69195b1 | 1,093.00 | t0913961 | Elena Garcia | 1,610.00 rent | 1,605.00 | 0.00 | 0.00 | 2/29/2016 | 3/25/2017 | | 80.01 |
| | | | | | Total | 1,605.00 | | | | | | |
| 03-108 | 69195a2 | 746.00 | t0915527 | James Robinson | 1,320.00 rent | 1,320.00 | 0.00 | 0.00 | 2/12/2016 | 3/11/2017 | | 74.06 |
| | | | | | Total | 1,320.00 | | | | | | |
| 03-110 | 69195a1 | 741.00 | t0889254 | John Zahars | 1,320.00 rent | 1,285.00 | 0.00 | 0.00 | 2/15/2016 | 2/14/2017 | | 72.37 |
| | | | | | garage | 175.00 | | | | | | |
| | | | | | storage | 60.00 | | | | | | |
| | | | | | Total | 1,520.00 | | | | | | |
| 03-112 | 69195a2 | 746.00 | VACANT | VACANT | 1,320.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 03-113 | 69195b2 | 1,097.00 | t0892882 | Jeffrey Bratta | 1,715.00 rent | 1,730.00 | 0.00 | 0.00 | 3/23/2016 | 3/22/2017 | | 72.76 |
| | | | | | Total | 1,730.00 | | | | | | |
| 03-114 | 69195b2 | 1,097.00 | t1005687 | Daniel O'connor | 1,765.00 rent | 1,765.00 | 300.00 | 0.00 | 6/30/2016 | 7/29/2017 | | 283.83 |
| | | | | | Total | 1,765.00 | | | | | | |
| 03-201 | 69195c1 | 1,371.00 | t0931186 | Mark Simon | 2,050.00 garage | 200.00 | 0.00 | 0.00 | 4/15/2016 | 5/14/2017 | | 68.10 |
| | | | | | rent | 2,000.00 | | | | | | |
| | | | | | Total | 2,200.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 76 of 104

6/30/2016 12:39 PM

# Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|------------|----------|------|-------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| 03-202 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-203 | 69195a2 | 746.00 | t0945085 | Kathryn Mills | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 4/5/2016 | 5/4/2017 | | 0.00 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 03-204 | 69195a2 | 746.00 | t0983573 | Courtney Lewis | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 5/31/2016 | 6/30/7017 | | -279.22 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 03-205 | 69195b1 | 1,093.00 | t0992787 | Kevin Rhody | 1,595.00 | rent | 1,595.00 | 300.00 | 0.00 | 6/25/2016 | 7/24/2017 | | 619.00 |
| | | | | | | Total | 1,595.00 | | | | | | |
| 03-206 | 69195b1 | 1,093.00 | t0991494 | Douglas Van Auken | 1,595.00 | rent | 1,595.00 | 600.00 | 0.00 | 5/31/2016 | 6/30/2017 | | -1,643.35 |
| | | | | | | xonetime | -1,595.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 03-207 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,595.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-208 | 69195a2 | 746.00 | VACANT | VACANT | 1,305.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-209 | 69195a2 | 746.00 | t0936618 | Marilyn Thomason | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 4/15/2016 | 5/14/2017 | | 70.73 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 03-210 | 69195a1 | 741.00 | t0910378 | Thomas Towers | 1,305.00 | rent | 1,255.00 | 0.00 | 0.00 | 2/9/2016 | 2/8/2017 | | 74.30 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,325.00 | | | | | | |
| 03-211 | 69195e2 | 746.00 | t0972865 | Lovelyne Salomon | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 5/6/2016 | 6/5/2017 | 7/31/2016 | 1,481.58 |
| | | | | | | xonetime | -202.42 | | | | | | |
| | | | | | | Total | 1,052.58 | | | | | | |
| 03-212 | 69195a2 | 746.00 | t0992458 | Shashank Rai | 1,305.00 | xonetime | -1,305.00 | 0.00 | 0.00 | 5/29/2016 | 6/28/2017 | | -176.34 |
| | | | | | | rent | 1,305.00 | | | | | | |
| | | | | | | storage | 45.00 | | | | | | |
| | | | | | | Total | 45.00 | | | | | | |
| 03-213 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-214 | 69195b2 | 1,097.00 | t0982285 | Diana Narvaez | 1,750.00 | rent | 1,750.00 | 0.00 | 0.00 | 5/31/2016 | 6/30/2017 | | -1,694.71 |
| | | | | | | xonetime | -1,750.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 03-301 | 69195c1 | 1,371.00 | t0986802 | Antonio Dacquel | 2,050.00 | rent | 2,050.00 | 0.00 | 0.00 | 5/18/2016 | 5/17/2017 | | 81.83 |
| | | | | | | garage | 200.00 | | | | | | |

# Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|-------------|-------------|--------|------------------|---------------|---------|-------------------|----------|---------|
| | | | | | | Total | 2,250.00 | | | | | | |
| 03-302 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-303 | 69195a2 | 746.00 | t0976662 | Joshua Aich | 1,255.00 | rent | 1,225.00 | 0.00 | 0.00 | 5/8/2016 | 6/7/2017 | | 110.79 |
| | | | | | | xonetime | -276.61 | | | | | | |
| | | | | | | Total | 948.39 | | | | | | |
| 03-304 | 69195a2 | 746.00 | t0981439 | Abdulaziz Alzougibi | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 5/12/2016 | 6/11/2017 | | 96.47 |
| | | | | | | xonetime | -1,255.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 03-305 | 69195b1 | 1,093.00 | t0986914 | Angle Ramos | 1,595.00 | rent | 1,595.00 | 600.00 | 0.00 | 5/29/2016 | 6/28/2017 | | -11.14 |
| | | | | | | xonetime | -1,595.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 03-306 | 69195b1 | 1,093.00 | t0963392 | Justin Wescoat | 1,645.00 | rent | 1,575.00 | 0.00 | 0.00 | 4/30/2016 | 5/29/2017 | | 75.86 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,585.00 | | | | | | |
| 03-307 | 69195b1 | 1,093.00 | t0938766 | Claudia De Loera Flores | 1,595.00 | rent | 1,575.00 | 600.00 | 0.00 | 3/25/2016 | 4/24/2017 | | 70.15 |
| | | | | | | Total | 1,575.00 | | | | | | |
| 03-308 | 69195a2 | 746.00 | t0966548 | Mary Jo Sauars | 1,305.00 | rent | 1,305.00 | 500.00 | 0.00 | 4/30/2016 | 5/29/2017 | | 67.80 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | Total | 1,565.00 | | | | | | |
| 03-309 | 69195a2 | 746.00 | VACANT | VACANT | 1,255.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-310 | 69195a1 | 741.00 | t0870281 | Maryann Tillsley | 1,305.00 | rent | 1,215.00 | 0.00 | 0.00 | 2/5/2016 | 2/4/2017 | | 71.21 |
| | | | | | | Total | 1,215.00 | | | | | | |
| 03-311 | 69195a2 | 746.00 | t1000451 | Francisco Lugo | 1,225.00 | rent | 1,225.00 | 0.00 | 0.00 | 6/15/2016 | 7/14/2017 | | 0.00 |
| | | | | | | xonetime | -612.50 | | | | | | |
| | | | | | | Total | 612.50 | | | | | | |
| 03-312 | 69195a2 | 746.00 | t0877129 | Helen Thomas | 1,305.00 | rent | 1,265.00 | 500.00 | 0.00 | 3/22/2016 | 3/21/2017 | | 69.96 |
| | | | | | | Total | 1,265.00 | | | | | | |
| 03-313 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-314 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,750.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-401 | 69195c1 | 1,371.00 | t0899942 | Michael Lasalla | 2,100.00 | rent | 2,050.00 | 700.00 | 0.00 | 3/1/2016 | 2/28/2017 | | 74.01 |

# Rent Roll with Lease Charges

Aviva at Celebration ·AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 2,245.00 | | | | | | |
| 03-402 | 69195b2 | 1,097.00 | t0917576 | Johnny Dominguez | 1,750.00 | rent | 1,750.00 | 600.00 | 0.00 | 3/1/2016 | 2/28/2017 | | 73.31 |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | Total | 2,150.00 | | | | | | |
| 03-403 | 69195a2 | 746.00 | t0985372 | Elizabeth Cowling | 1,305.00 | xonetime | -715.65 | 0.00 | 0.00 | 5/18/2016 | 6/17/2017 | | 81.91 |
| | | | | | | rent | 1,305.00 | | | | | | |
| | | | | | | Total | 589.35 | | | | | | |
| 03-404 | 69195a2 | 746.00 | VACANT | VACANT | 1,305.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-405 | 69195b1 | 1,093.00 | t0886981 | Deana Lamert | 1,645.00 | rent | 1,625.00 | 0.00 | 0.00 | 3/1/2016 | 2/28/2017 | | 0.00 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,810.00 | | | | | | |
| 03-406 | 69195b1 | 1,093.00 | t0955190 | Lauren Paffenback | 1,695.00 | rent | 1,675.00 | 0.00 | 0.00 | 4/30/2016 | 5/29/2017 | | 76.36 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,695.00 | | | | | | |
| 03-407 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,645.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-408 | 69195a2 | 746.00 | t0928872 | Andrew Benenati | 1,355.00 | rent | 1,355.00 | 0.00 | 0.00 | 4/8/2016 | 5/7/2017 | | 71.34 |
| | | | | | | Total | 1,355.00 | | | | | | |
| 03-409 | 69195a2 | 746.00 | t0983930 | Mohamed Attar | 1,305.00 | rent | 1,305.00 | 0.00 | 0.00 | 5/19/2016 | 6/18/2017 | | -1,113.84 |
| | | | | | | storage | 45.00 | | | | | | |
| | | | | | | xonetime | -1,305.00 | | | | | | |
| | | | | | | Total | 45.00 | | | | | | |
| 03-410 | 69195a1 | 741.00 | t0918182 | Angela Kolessar | 1,355.00 | rent | 1,305.00 | 0.00 | 0.00 | 4/15/2016 | 4/14/2017 | | 81.81 |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,515.00 | | | | | | |
| 03-411 | 69195a2 | 746.00 | t0969109 | Phillip Fisher | 1,305.00 | rent | 1,305.00 | 0.00 | 0.00 | 4/30/2016 | 5/29/2017 | | 70.98 |
| | | | | | | Total | 1,305.00 | | | | | | |
| 03-412 | 69195a2 | 746.00 | t0963725 | Amy Erickson | 1,355.00 | rent | 1,355.00 | 500.00 | 0.00 | 6/6/2016 | 6/5/2017 | | 0.00 |
| | | | | | | Total | 1,355.00 | | | | | | |

## Rent Roll with Lease Charges
Aviva at Celebration -AB (69195)
As Of = 06/30/2016
Month Year = 06/2016

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 79 of 104

| Unit | Unit Type | Unit Sq Ft Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03-413 | 69195b2 | 1,097.00 t0833498 | Kim Pollack | 1,750.00 | rent | 1,635.00 | 0.00 | 0.00 | 1/26/2016 | 1/25/2017 | | 72.28 |
| | | | | | garage | 160.00 | | | | | | |
| | | | | | storage | 60.00 | | | | | | |
| | | | | | Total | 1,855.00 | | | | | | |
| 03-414 | 69195b2 | 1,097.00 t0833509 | Joseph Brown | 1,800.00 | rent | 1,630.00 | 0.00 | 0.00 | 2/16/2016 | 2/15/2017 | | 0.00 |
| | | | | | petrent | 10.00 | | | | | | |
| | | | | | petrent | 10.00 | | | | | | |
| | | | | | garage | 135.00 | | | | | | |
| | | | | | Total | 1,785.00 | | | | | | |
| 04-101 | 69195b2 | 1,097.00 VACANT | VACANT | 1,715.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 04-102 | 69195b2 | 1,097.00 VACANT | VACANT | 1,750.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 04-103 | 69195a2 | 746.00 VACANT | VACANT | 1,270.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 04-105 | 69195a1 | 741.00 VACANT | VACANT | 1,270.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 04-107 | 69195a2 | 746.00 VACANT | VACANT | 1,320.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 04-109 | 69195b1 | 1,093.00 VACANT | VACANT | 1,660.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 04-111 | 69195a2 | 746.00 t0912603 | Xiomara Raba | 1,320.00 | rent | 1,335.00 | 500.00 | 0.00 | 2/6/2016 | 2/5/2017 | | 71.34 |
| | | | | | Total | 1,335.00 | | | | | | |
| 04-113 | 69195b2 | 1,097.00 VACANT | VACANT | 1,765.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 04-114 | 69195c1 | 1,371.00 t0833538 | Helen Lyons | 2,100.00 | rent | 1,955.00 | 0.00 | 0.00 | 10/30/2015 | 10/29/2016 | | 82.87 |
| | | | | | Total | 1,955.00 | | | | | | |
| 04-201 | 69195b2 | 1,097.00 VACANT | VACANT | 1,650.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 04-202 | 69195b2 | 1,097.00 VACANT | VACANT | 1,735.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 04-201 | 69195a2 | 746.00 t0890960 | Breit Katz | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 12/29/2015 | 1/28/2017 | | 72.83 |
| | | | | | petrent | 10.00 | | | | | | |
| | | | | | Total | 1,265.00 | | | | | | |
| 04-204 | 69195a2 | 746.00 t0917661 | Geoffrey Kelly | 1,290.00 | rent | 1,290.00 | 0.00 | 0.00 | 2/20/2016 | 3/19/2017 | | 79.35 |

## Rent Roll with Lease Charges
Aviva at Celebration -AB (69195)
As Of = 06/30/2016
Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|------------|----------|------|-------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| | | | | | | storage | 45.00 | | | | | | |
| | | | | | | Total | 1,335.00 | | | | | | |
| 04-205 | 69195a1 | 741.00 | t0857599 | Evelyn Green-Stephens | 1,255.00 | rent | 1,165.00 | 500.00 | 0.00 | 10/15/2015 | 10/14/2016 | | 73.42 |
| | | | | | | Total | 1,165.00 | | | | | | |
| 04-206 | 69195a2 | 746.00 | t0966003 | Kelly Morse | 1,255.00 | rent | 1,199.00 | 0.00 | 0.00 | 4/24/2016 | 5/23/2017 | | 72.59 |
| | | | | | | Total | 1,199.00 | | | | | | |
| 04-207 | 69195a2 | 746.00 | t0917847 | Waseem Albunayyan | 1,305.00 | rent | 1,305.00 | 500.00 | 0.00 | 2/22/2016 | 3/21/2017 | | -1,305.00 |
| | | | | | | Total | 1,305.00 | | | | | | |
| 04-208 | 69195b1 | 1,093.00 | t0971205 | Ronald Holtzman | 1,630.00 | rent | 1,610.00 | 300.00 | 0.00 | 5/15/2016 | 6/14/2017 | | 89.10 |
| | | | | | | xonetime | -1,610.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 04-209 | 69195b1 | 1,093.00 | t0844399 | Jeffrey Scott Long | 1,645.00 | rent | 1,525.00 | 0.00 | 0.00 | 9/28/2015 | 9/27/2016 | | 0.00 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,545.00 | | | | | | |
| 04-210 | 69195b1 | 1,093.00 | t0886196 | Eric Root | 1,630.00 | rent | 1,610.00 | 600.00 | 0.00 | 1/9/2016 | 1/8/2017 | | 75.36 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,620.00 | | | | | | |
| 04-211 | 69195a2 | 746.00 | t0988629 | Robert Renzini | 1,305.00 | rent | 1,305.00 | 0.00 | 0.00 | 6/11/2016 | 6/10/2017 | | 0.00 |
| | | | | | | Total | 1,305.00 | | | | | | |
| 04-212 | 69195a2 | 746.00 | t0846893 | William Bohn | 1,290.00 | rent | 1,230.00 | 500.00 | 0.00 | 10/10/2015 | 10/9/2016 | | 70.23 |
| | | | | | | garage | 160.00 | | | | | | |
| | | | | | | Total | 1,390.00 | | | | | | |
| 04-213 | 69195b2 | 1,097.00 | t0876990 | Jamie Davis | 1,750.00 | rent | 1,750.00 | 0.00 | 0.00 | 11/13/2015 | 11/12/2016 | | 76.58 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,820.00 | | | | | | |
| 04-214 | 69195c1 | 1,371.00 | t0947505 | Marlo Alvarado | 2,085.00 | rent | 2,035.00 | 0.00 | 0.00 | 4/30/2016 | 5/29/2017 | | 77.94 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 2,095.00 | | | | | | |
| 04-301 | 69195b2 | 1,097.00 | t0867923 | Lester Weiner | 1,700.00 | rent | 1,700.00 | 600.00 | 0.00 | 11/15/2015 | 11/14/2016 | | 76.61 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,710.00 | | | | | | |
| 04-302 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,735.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 04-303 | 69195a2 | 746.00 | t0960199 | Jennifer Manni | 1,255.00 | rent | 1,199.00 | 500.00 | 0.00 | 4/30/2016 | 5/29/2017 | | 72.48 |

Case 4:19-cv-04211 Document 80-1 Filed 06/01/20 in TXSD Page 80 of 104

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 81 of 104

## Rent Roll with Lease Charges
Aviva at Celebration -AB (69195)
As Of = 06/10/2016
Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent. Code | Charge | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|------------|----------|------|-------------------|--------|--------|------------------|---------------|---------|------------------|----------|---------|
| | | | | | | Total | 1,199.00 | | | | | | |
| 04-304 | 69195a2 | 746.00 | t1005701 | Flavia Jonsten | 1,290.00 | rent | 1,290.00 | 500.00 | 0.00 | 6/15/2016 | 7/14/2017 | | 0.00 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,350.00 | | | | | | |
| 04-105 | 69195a1 | 741.00 | t0853585 | Donald Felth | 1,305.00 | rent | 1,215.00 | 0.00 | 0.00 | 11/28/2015 | 11/27/2016 | | 71.09 |
| | | | | | | Total | 1,215.00 | | | | | | |
| 04-306 | 69195a2 | 746.00 | t0930257 | Philip Fitzpatrick | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 3/15/2016 | 4/14/2017 | | 73.00 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,265.00 | | | | | | |
| 04-307 | 69195a2 | 746.00 | t0862109 | Assad Mogharbel | 1,305.00 | rent | 1,285.00 | 500.00 | 0.00 | 10/7/2015 | 10/6/2016 | | 0.00 |
| | | | | | | Total | 1,285.00 | | | | | | |
| 04-308 | 69195b1 | 1,093.00 | t0853631 | Ngoc Tran | 1,630.00 | rent | 1,560.00 | 600.00 | 0.00 | 11/1/2015 | 10/31/2016 | | 76.25 |
| | | | | | | Total | 1,560.00 | | | | | | |
| 04-309 | 69195b1 | 1,093.00 | t0847892 | Yelena Dandurova | 1,645.00 | rent | 1,525.00 | 0.00 | 0.00 | 10/30/2015 | 10/29/2016 | | 82.59 |
| | | | | | | Total | 1,525.00 | | | | | | |
| 04-310 | 69195b1 | 1,093.00 | t0850232 | Nancy Smith | 1,630.00 | rent | 1,560.00 | 0.00 | 0.00 | 10/21/2015 | 10/20/2016 | | 72.48 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,620.00 | | | | | | |
| 04-311 | 69195a2 | 746.00 | t0876136 | Brian Cournoyer | 1,305.00 | rent | 1,285.00 | 0.00 | 0.00 | 11/29/2015 | 11/28/2016 | | 73.70 |
| | | | | | | Total | 1,285.00 | | | | | | |
| 04-312 | 69195a2 | 746.00 | t0873089 | Juan Rodriguez | 1,290.00 | rent | 1,270.00 | 500.00 | 0.00 | 12/2/2015 | 12/1/2016 | | 76.56 |
| | | | | | | Total | 1,270.00 | | | | | | |
| 04-313 | 69195b2 | 1,097.00 | t0842164 | William Conn | 1,750.00 | rent | 1,750.00 | 600.00 | 0.00 | 10/3/2015 | 10/2/2016 | | 75.00 |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,925.00 | | | | | | |
| 04-314 | 69t95c1 | 1,371.00 | t0850314 | Stephanie Doane | 2,085.00 | rent | 2,035.00 | 0.00 | 0.00 | 10/7/2015 | 10/6/2016 | | 81.04 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 2,115.00 | | | | | | |
| 04-401 | 69195b2 | 1,097.00 | t0854034 | Roy Haygood | 1,750.00 | rent | 1,730.00 | 600.00 | 0.00 | 10/17/2015 | 10/16/2016 | | 73.31 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 160.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,970.00 | | | | | | |

Case 4:19-cv-04211 Document 80-1 Filed 06/01/20 in TXSD Page 82 of 104

6/30/2016 12:39 PM

## Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Charge Rent Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04-402 | 69195b2 | 1,097.00 | t0972804 | Maureen Jannetta | 1,785.00 rent | 1,785.00 | 0.00 | 0.00 | 5/15/2016 | 6/14/2017 | | 87.74 |
| | | | | | Total | 1,785.00 | | | | | | |
| 04-403 | 69195a2 | 746.00 | t0863133 | Andrew Meidenbauer | 1,355.00 rent | 1,295.00 | 500.00 | 0.00 | 11/17/2015 | 11/14/2016 | | 71.53 |
| | | | | | Total | 1,295.00 | | | | | | |
| 04-404 | 69195a2 | 746.00 | t0833575 | Tricia Weinz | 1,340.00 rent | 1,260.00 | 0.00 | 0.00 | 11/25/2015 | 11/24/2016 | | -1,260.00 |
| | | | | | Total | 1,260.00 | | | | | | |
| 04-405 | 69195a1 | 741.00 | t0937080 | George Kann | 1,355.00 rent | 1,330.00 | 500.00 | 0.00 | 4/15/2016 | 5/14/2017 | | 74.47 |
| | | | | | Total | 1,330.00 | | | | | | |
| 04-406 | 69195a2 | 746.00 | t0844575 | Steven Hicks | 1,305.00 rent | 1,260.00 | 0.00 | 0.00 | 10/24/2015 | 10/23/2016 | | 77.69 |
| | | | | | petrent | 10.00 | | | | | | |
| | | | | | Total | 1,270.00 | | | | | | |
| 04-407 | 69195a2 | 746.00 | t0859086 | Jonathan Bownas | 1,355.00 rent | 1,295.00 | 0.00 | 0.00 | 9/29/2015 | 9/28/2016 | | 0.00 |
| | | | | | garage | 175.00 | | | | | | |
| | | | | | Total | 1,470.00 | | | | | | |
| 04-408 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,680.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 04-409 | 69195b1 | 1,093.00 | t0858491 | Timothy Peltier | 1,695.00 rent | 1,655.00 | 0.00 | 0.00 | 12/31/2015 | 12/30/2016 | | 73.12 |
| | | | | | petrent | 10.00 | | | | | | |
| | | | | | garage | 175.00 | | | | | | |
| | | | | | Total | 1,840.00 | | | | | | |
| 04-410 | 69195b1 | 1,093.00 | t0846141 | Casey Carpenter | 1,680.00 rent | 1,540.00 | 0.00 | 0.00 | 10/21/2015 | 10/20/2016 | | -1,550.00 |
| | | | | | petrent | 10.00 | | | | | | |
| | | | | | Total | 1,550.00 | | | | | | |
| 04-411 | 69195a2 | 746.00 | t0859242 | Allyson Hahn | 1,355.00 rent | 1,315.00 | 250.00 | 0.00 | 10/1/2015 | 9/30/2016 | 7/31/2016 | 2,069.34 |
| | | | | | Total | 1,315.00 | | | | | | |
| 04-412 | 69195a2 | 746.00 | t0836699 | Susan Kiwior | 1,340.00 rent | 1,260.00 | 500.00 | 0.00 | 10/14/2015 | 10/13/2016 | | 0.00 |
| | | | | | garage | 200.00 | | | | | | |
| | | | | | Total | 1,460.00 | | | | | | |
| 04-413 | 69195b2 | 1,097.00 | t0833462 | Kevin Kubala | 1,800.00 rent | 1,630.00 | 0.00 | 0.00 | 9/28/2015 | 9/27/2016 | | 76.27 |
| | | | | | garage | 135.00 | | | | | | |
| | | | | | storage | 45.00 | | | | | | |
| | | | | | Total | 1,810.00 | | | | | | |
| 04-414 | 69195c1 | 1,371.00 | VACANT | VACANT | 2,135.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |
| 05-101 | 69195c1 | 1,371.00 | VACANT | VACANT | 2,065.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | Total | 0.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 83 of 104

## Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)
As Of = 06/30/2016
Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|-------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| 05-102 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,750.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-104 | 69195a2 | 746.00 | VACANT | VACANT | 1,305.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-106 | 69195b1 | 1,093.00 | t0853464 | Kyla Bennett | 1,645.00 | rent | 1,590.00 | 600.00 | 0.00 | 12/7/2015 | 12/6/2016 | | 78.10 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 160.00 | | | | | | |
| | | | | | | Total | 1,760.00 | | | | | | |
| 05-108 | 69195a2 | 746.00 | VACANT | VACANT | 1,305.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-110 | 69195a1 | 741.00 | t0859682 | Lacey Westover | 1,305.00 | storage | 60.00 | 0.00 | 0.00 | 4/30/2016 | 5/29/2017 | | 75.41 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | rent | 1,195.00 | | | | | | |
| | | | | | | Total | 1,265.00 | | | | | | |
| 05-112 | 69195a2 | 746.00 | VACANT | VACANT | 1,305.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-113 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,715.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-114 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,715.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-201 | 69195c1 | 1,371.00 | t0880940 | Carla Aguilar | 2,050.00 | rent | 2,000.00 | 700.00 | 0.00 | 12/16/2015 | 12/15/2016 | | 109.10 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 2,010.00 | | | | | | |
| 05-202 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,735.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-203 | 69195a2 | 746.00 | t0903978 | Kristen Stewart | 1,255.00 | rent | 1,255.00 | 0.00 | 0.00 | 1/21/2016 | 2/20/2017 | | -1,187.25 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 05-204 | 69195a2 | 746.00 | t0988540 | Eric Routhier | 1,290.00 | rent | 1,290.00 | 0.00 | 0.00 | 5/28/2016 | 6/27/2017 | | -220.77 |
| | | | | | | xonetime | -1,290.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 05-205 | 69195b1 | 1,093.00 | t0894764 | Emilya Ortiz | 1,595.00 | rent | 1,575.00 | 600.00 | 0.00 | 1/2/2016 | 2/1/2017 | | 73.12 |
| | | | | | | Total | 1,575.00 | | | | | | |
| 05-206 | 69195b1 | 1,093.00 | t0905579 | Nicole Shimminger | 1,630.00 | rent | 1,610.00 | 600.00 | 0.00 | 1/31/2016 | 2/28/2017 | | 84.47 |
| | | | | | | Total | 1,610.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 84 of 104

# Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent. | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05-207 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,595.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-208 | 69195a2 | 746.00 | t0986640 | Abigail Shaw | 1,290.00 | rent | 1,290.00 | 500.00 | 0.00 | 5/31/2016 | 6/30/2017 | | 55.24 |
| | | | | | | xonetime | -1,290.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 05-209 | 69195e2 | 746.00 | t0892439 | Brittany Hood | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 12/31/2015 | 1/30/2017 | | -1,327.60 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 05-210 | 69195a1 | 741.00 | t0974264 | Aviva Celebration- Corporate Suite | 1,290.00 | rent | 1,265.00 | 0.00 | 0.00 | 5/5/2016 | 5/4/2017 | | 116.87 |
| | | | | | | xonetime | -1,265.00 | | | | | | |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | garage | -200.00 | | | | | | |
| | | | | | | garage | -200.00 | | | | | | |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | garage | -200.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 05-211 | 69195a2 | 746.00 | t0896718 | Juan Rivera Mattei | 1,255.00 | rent | 1,255.00 | 0.00 | 0.00 | 1/31/2016 | 2/28/2017 | | 0.00 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 05-212 | 69195a2 | 746.00 | t1003765 | Brian Aragon | 1,290.00 | rent | 1,290.00 | 250.00 | 0.00 | 6/30/2016 | 7/29/2017 | | 218.00 |
| | | | | | | Total | 1,290.00 | | | | | | |
| 05-213 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-214 | 69195b2 | 1,097.00 | t0920756 | Robin Keen | 1,700.00 | rent | 1,700.00 | 0.00 | 0.00 | 3/6/2016 | 4/5/2017 | 6/30/2016 | 71.26 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,780.00 | | | | | | |
| 05-301 | 69195c1 | 1,371.00 | t0884874 | Kimberly Szerletich | 2,050.00 | rent | 2,000.00 | 700.00 | 0.00 | 12/20/2015 | 12/19/2016 | | 75.36 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 2,060.00 | | | | | | |
| 05-302 | 69195b2 | 1,097.00 | t0922053 | Douglas Shippy | 1,735.00 | rent | 1,735.00 | 0.00 | 0.00 | 3/1/2016 | 3/31/2017 | | 70.95 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,755.00 | | | | | | |
| 05-303 | 69195a2 | 746.00 | t0877698 | Jose Dones | 1,255.00 | rent | 1,235.00 | 0.00 | 0.00 | 1/28/2016 | 1/27/2017 | | 78.49 |
| | | | | | | Total | 1,235.00 | | | | | | |
| 05-304 | 69195a2 | 746.00 | t0922496 | Melody Brown | 1,290.00 | rent | 1,290.00 | 500.00 | 0.00 | 3/15/2016 | 4/14/2017 | | 72.48 |
| | | | | | | storage | 30.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 85 of 104

## Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|------------|----------|------|-------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| | | | | | | storage | 30.00 | | | | | | |
| | | | | | | Total | 1,350.00 | | | | | | |
| 05-305 | 69195b1 | 1,093.00 | t0979525 | Lisa Myers | 1,595.00 | rent | 1,595.00 | 600.00 | 0.00 | 5/15/2016 | 6/14/2017 | | 90.25 |
| | | | | | | xonetime | -1,595.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 05-306 | 69195b1 | 1,093.00 | t0859175 | William Calicchia | 1,630.00 | rent | 1,610.00 | 600.00 | 0.00 | 12/24/2015 | 12/23/2016 | | 72.40 |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,785.00 | | | | | | |
| 05-307 | 69195b1 | 1,093.00 | t0942179 | Cynthia Melendez | 1,595.00 | rent | 1,575.00 | 600.00 | 0.00 | 3/31/2016 | 4/30/2017 | | 75.50 |
| | | | | | | Total | 1,575.00 | | | | | | |
| 05-308 | 69195a2 | 746.00 | t0978690 | Daniel Wiggins | 1,290.00 | rent | 1,290.00 | 500.00 | 0.00 | 5/13/2016 | 6/12/2017 | | 95.97 |
| | | | | | | xonetime | -499.35 | | | | | | |
| | | | | | | Total | 790.65 | | | | | | |
| 05-309 | 69195a2 | 746.00 | VACANT | VACANT | 1,255.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-310 | 69195a1 | 741.00 | t0886174 | Holly Comney | 1,290.00 | rent | 1,240.00 | 0.00 | 0.00 | 12/28/2015 | 12/27/2016 | | 74.56 |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,415.00 | | | | | | |
| 05-311 | 69195a2 | 746.00 | t0928587 | Gabriella Mancella | 1,255.00 | rent | 1,255.00 | 0.00 | 0.00 | 3/25/2016 | 4/24/2017 | | 74.61 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,275.00 | | | | | | |
| 05-312 | 69195a2 | 746.00 | t0966573 | General Thomas | 1,290.00 | rent | 1,290.00 | 500.00 | 0.00 | 4/28/2016 | 5/27/2017 | | 69.74 |
| | | | | | | Total | 1,290.00 | | | | | | |
| 05-313 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 05-314 | 69195b2 | 1,097.00 | t0994603 | Lindsey Joslyn | 1,700.00 | rent | 1,700.00 | 0.00 | 0.00 | 6/15/2016 | 7/14/2017 | | 0.00 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,770.00 | | | | | | |
| 05-401 | 69195c1 | 1,371.00 | t0833456 | Anthony Shydohub | 2,100.00 | rent | 1,905.00 | 700.00 | 0.00 | 12/18/2015 | 12/17/2016 | | 74.66 |
| | | | | | | garage | 150.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 2,115.00 | | | | | | |
| 05-402 | 69195b2 | 1,097.00 | t0833598 | Lee Williams | 1,785.00 | rent | 1,640.00 | 0.00 | 0.00 | 12/15/2015 | 12/14/2016 | | 72.48 |
| | | | | | | garage | 150.00 | | | | | | |
| | | | | | | Total | 1,790.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 86 of 104

# Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent. | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|--------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| 05-403 | 69195a2 | 746.00 | t0877257 | Chester Tom | 1,305.00 | rent | 1,285.00 | 500.00 | 0.00 | 12/20/2015 | 12/19/2016 | | 72.25 |
| | | | | | | Total | 1,285.00 | | | | | | |
| 05-404 | 69195a2 | 746.00 | t0973729 | Danielle Benson | 1,340.00 | rent | 1,340.00 | 0.00 | 0.00 | 5/10/2016 | 6/9/2017 | | 0.00 |
| | | | | | | xonetime | -1,340.00 | | | | | | |
| | | | | | | Total | 0.00 | | | | | | |
| 05-405 | 69195b1 | 1,093.00 | t0875840 | Andrew Graf | 1,645.00 | rent | 1,625.00 | 0.00 | 0.00 | 1/15/2016 | 1/14/2017 | | 73.06 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,635.00 | | | | | | |
| 05-406 | 69195b1 | 1,093.00 | t0848403 | Benjamin Toland | 1,680.00 | rent | 1,590.00 | 0.00 | 0.00 | 12/15/2015 | 12/14/2016 | | 72.20 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,600.00 | | | | | | |
| 05-407 | 69195b1 | 1,093.00 | t0896673 | Brannon Cowart | 1,645.00 | rent | 1,625.00 | 0.00 | 0.00 | 1/23/2016 | 2/22/2017 | | 74.44 |
| | | | | | | Total | 1,625.00 | | | | | | |
| 05-408 | 69195a2 | 746.00 | t0882402 | Gage Lewis | 1,340.00 | rent | 1,340.00 | 0.00 | 0.00 | 12/15/2015 | 12/14/2016 | | 77.96 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,350.00 | | | | | | |
| 05-409 | 69195a2 | 746.00 | t0893017 | Nosakhare Tunde-oni | 1,305.00 | rent | 1,305.00 | 500.00 | 0.00 | 12/29/2015 | 1/28/2017 | | 72.48 |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,480.00 | | | | | | |
| 05-410 | 69195a1 | 741.00 | t0860781 | Antonio Bianchi | 1,340.00 | rent | 1,230.00 | 500.00 | 0.00 | 1/23/2016 | 1/22/2017 | | 0.00 |
| | | | | | | Total | 1,230.00 | | | | | | |
| 05-411 | 69195a2 | 746.00 | t0895682 | Isaura Pichardo | 1,305.00 | rent | 1,305.00 | 500.00 | 0.00 | 12/28/2015 | 12/27/2016 | 7/31/2016 | 2,186.71 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,490.00 | | | | | | |
| 05-412 | 69195a2 | 746.00 | t0967464 | Christopher Alberts | 1,340.00 | rent | 1,340.00 | 0.00 | 0.00 | 4/30/2016 | 5/29/2017 | | 71.65 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,350.00 | | | | | | |
| 05-413 | 69195b2 | 1,097.00 | t0962061 | Carlos Acosta | 1,750.00 | rent | 1,750.00 | 600.00 | 0.00 | 5/12/2016 | 5/11/2017 | | 133.70 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | Total | 2,020.00 | | | | | | |
| 05-414 | 69195b2 | 1,097.00 | t0868072 | Robert King | 1,750.00 | petrent | 10.00 | 0.00 | 0.00 | 12/7/2015 | 12/6/2016 | | 75.05 |
| | | | | | | rent | 1,765.00 | | | | | | |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,950.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 87 of 104

# Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|-------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| 06-101 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,765.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-102 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,715.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-103 | 69195a2 | 746.00 | t0939974 | Joshua McCall | 1,320.00 | petrent | 10.00 | 0.00 | 0.00 | 4/30/2016 | 5/29/2017 | | -714.74 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | rent | 1,320.00 | | | | | | |
| | | | | | | Total | 1,400.00 | | | | | | |
| 06-105 | 69195a1 | 741.00 | VACANT | VACANT | 1,270.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-107 | 69195a2 | 746.00 | t0853817 | Ella O'riley | 1,320.00 | rent | 1,290.00 | 0.00 | 0.00 | 1/30/2016 | 1/29/2017 | | 69.85 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 160.00 | | | | | | |
| | | | | | | Total | 1,460.00 | | | | | | |
| 06-109 | 69195b1 | 1,093.00 | t1009744 | Gil Marie Baez Palma | 1,660.00 | xonetime | -603.17 | 600.00 | 0.00 | 6/21/2016 | 7/20/2017 | | 650.00 |
| | | | | | | rent | 1,645.00 | | | | | | |
| | | | | | | Total | 1,041.83 | | | | | | |
| 06-111 | 69195a2 | 746.00 | t0935599 | Claire Bochenek | 1,320.00 | rent | 1,320.00 | 500.00 | 0.00 | 4/1/2016 | 4/30/2017 | | 67.80 |
| | | | | | | Total | 1,320.00 | | | | | | |
| 06-113 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,765.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-114 | 69195c1 | 1,371.00 | VACANT | VACANT | 2,065.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-201 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,750.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-202 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-203 | 69195a2 | 746.00 | t0914428 | Denise Baird | 1,305.00 | rent | 1,305.00 | 0.00 | 0.00 | 2/11/2016 | 3/10/2017 | | 79.13 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,365.00 | | | | | | |
| 06-204 | 69195a2 | 746.00 | t0846469 | Taylor Morrow | 1,255.00 | rent | 1,255.00 | 0.00 | 0.00 | 3/17/2016 | 3/16/2017 | 6/29/2016 | 0.00 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 06-205 | 69195a1 | 741.00 | t0905038 | Bonnie McDowall | 1,305.00 | rent | 1,230.00 | 0.00 | 0.00 | 1/29/2016 | 1/28/2017 | | 0.00 |
| | | | | | | petrent | 10.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 88 of 104

# Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Total | 1,240.00 | | | | | | |
| 06-206 | 69195a2 | 746.00 | t0922322 | Kenaz Acevedo | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 3/15/2016 | 4/14/2017 | | 72.40 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 06-207 | 69195a2 | 746.00 | t0933008 | Keely Martinez | 1,305.00 | rent | 1,305.00 | 0.00 | 0.00 | 4/8/2016 | 5/7/2017 | | 70.82 |
| | | | | | | Total | 1,305.00 | | | | | | |
| 06-208 | 69195b1 | 1,093.00 | t0887685 | Juan Avalos | 1,595.00 | rent | 1,575.00 | 600.00 | 0.00 | 2/3/2016 | 2/2/2017 | | 67.91 |
| | | | | | | Total | 1,575.00 | | | | | | |
| 06-209 | 69195b1 | 1,093.00 | t0919625 | Julie Stronberg | 1,645.00 | rent | 1,625.00 | 0.00 | 0.00 | 2/24/2016 | 3/23/2017 | 7/31/2016 | 75.58 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,705.00 | | | | | | |
| 06-210 | 69195b1 | 1,093.00 | VACANT | VACANT | 1,595.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-211 | 69195a2 | 746.00 | t0900781 | Pamela Beuttel | 1,305.00 | rent | 1,280.00 | 500.00 | 0.00 | 1/30/2016 | 2/28/2017 | | 0.00 |
| | | | | | | Total | 1,280.00 | | | | | | |
| 06-212 | 69195a2 | 746.00 | t0920974 | Travion Cockfield | 1,255.00 | rent | 1,255.00 | 0.00 | 0.00 | 3/6/2016 | 4/5/2017 | | 72.42 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 06-213 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,750.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-214 | 69195c1 | 1,371.00 | t0973247 | Mary Robeants | 2,050.00 | rent | 2,000.00 | 700.00 | 0.00 | 5/16/2016 | 6/15/2017 | | 85.68 |
| | | | | | | xonetime | -967.74 | | | | | | |
| | | | | | | Total | 1,032.26 | | | | | | |
| 06-301 | 69195b2 | 1,097.00 | t1010730 | Andres Scoane | 1,750.00 | rent | 1,750.00 | 300.00 | 0.00 | 6/30/2016 | 7/29/2017 | | 358.33 |
| | | | | | | Total | 1,750.00 | | | | | | |
| 06-302 | 69195b2 | 1,097.00 | VACANT | VACANT | 1,700.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-303 | 69195a2 | 746.00 | t0881803 | Pe'er Klein | 1,305.00 | rent | 1,280.00 | 500.00 | 0.00 | 1/31/2016 | 1/30/2017 | | 75.41 |
| | | | | | | Total | 1,280.00 | | | | | | |
| 06-304 | 69195a2 | 746.00 | t0898107 | Victor Flores Del Cid | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 1/15/2016 | 2/14/2017 | | 0.00 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | Total | 1,265.00 | | | | | | |
| 06-305 | 69195a1 | 741.00 | t0889715 | Steven Defoliart | 1,305.00 | rent | 1,230.00 | 500.00 | 0.00 | 1/31/2016 | 1/30/2017 | | 70.85 |
| | | | | | | Total | 1,230.00 | | | | | | |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 89 of 104

# Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06-306 | 69195a2 | 746.00 | t0896508 | Jasmine Butler | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 1/7/2016 | 2/6/2017 | | 73.12 |
| | | | | | | Total | 1,255.00 | | | | | | |
| 06-307 | 69195a2 | 746.00 | t0970486 | Mohammad Chehab | 1,305.00 | rent | 1,305.00 | 500.00 | 0.00 | 4/29/2016 | 5/28/2017 | | 78.16 |
| | | | | | | Total | 1,305.00 | | | | | | |
| 06-308 | 69195b1 | 1,093.00 | t0928858 | Michelle Ballard | 1,595.00 | petrent | 10.00 | 600.00 | 0.00 | 4/14/2016 | 5/12/2017 | | 77.60 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | rent | 1,575.00 | | | | | | |
| | | | | | | Total | 1,595.00 | | | | | | |
| 06-309 | 69195b1 | 1,093.00 | t0891125 | Marcus Altamirano | 1,645.00 | rent | 1,600.00 | 600.00 | 0.00 | 1/31/2016 | 2/28/2017 | | 78.44 |
| | | | | | | Total | 1,600.00 | | | | | | |
| 06-310 | 69195b1 | 1,093.00 | t0889338 | Charles Vickery Jr | 1,595.00 | rent | 1,575.00 | 600.00 | 0.00 | 2/23/2016 | 2/22/2017 | | 75.97 |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | Total | 1,775.00 | | | | | | |
| 06-311 | 69195a2 | 746.00 | t0846250 | Marion Nelson | 1,305.00 | rent | 1,220.00 | 500.00 | 0.00 | 1/15/2016 | 1/14/2017 | | -105.00 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | storage | 45.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,935.00 | | | | | | |
| 06-312 | 69195a2 | 746.00 | t0928356 | Patrick Younkins | 1,255.00 | rent | 1,255.00 | 500.00 | 0.00 | 3/15/2016 | 4/14/2017 | | 76.49 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,335.00 | | | | | | |
| 06-313 | 69195b2 | 1,097.00 | t0898090 | Daniel Swinford | 1,750.00 | rent | 1,725.00 | 300.00 | 0.00 | 2/3/2016 | 3/2/2017 | | 72.51 |
| | | | | | | Total | 1,725.00 | | | | | | |
| 06-314 | 69195c1 | 1,371.00 | t0902309 | Elaine Clarke | 2,050.00 | rent | 2,000.00 | 700.00 | 0.00 | 1/29/2016 | 1/28/2017 | | 83.59 |
| | | | | | | Total | 2,000.00 | | | | | | |
| 06-401 | 69195b2 | 1,097.00 | t0870663 | Mark Montelth | 1,800.00 | rent | 1,750.00 | 0.00 | 0.00 | 1/16/2016 | 1/15/2017 | | 84.08 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,935.00 | | | | | | |
| 06-402 | 69195b2 | 1,097.00 | t0875826 | Leonardo Melendez | 1,750.00 | rent | 1,750.00 | 0.00 | 0.00 | 1/2/2016 | 1/1/2017 | | 77.55 |
| | | | | | | Total | 1,750.00 | | | | | | |
| 06-403 | 69195a2 | 746.00 | t0928971 | James Webber | 1,355.00 | rent | 1,355.00 | 0.00 | 0.00 | 4/11/2016 | 5/10/2017 | | 71.38 |
| | | | | | | Total | 1,355.00 | | | | | | |
| 06-404 | 69195a2 | 746.00 | t0853844 | Katja Dowd | 1,305.00 | rent | 1,245.00 | 0.00 | 0.00 | 1/29/2016 | 1/28/2017 | | 76.44 |
| | | | | | | storage | 60.00 | | | | | | |

## Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|-----------|----------|------|-------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| | | | | | | Total | 1,305.00 | | | | | | |
| 06-405 | 69195a1 | 741.00 | t0898585 | Ryan Cipriani | 1,355.00 | rent | 1,280.00 | 500.00 | 0.00 | 1/30/2016 | 2/28/2017 | | 71.09 |
| | | | | | | Total | 1,280.00 | | | | | | |
| 06-406 | 69195a2 | 746.00 | VACANT | VACANT | 1,305.00 | | 0.00 | 0.00 | 0.00 | | | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 06-407 | 69195a2 | 746.00 | t0848897 | Thomas Mcadoo | 1,355.00 | rent | 1,250.00 | 500.00 | 0.00 | 1/31/2016 | 1/30/2017 | | 70.85 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 160.00 | | | | | | |
| | | | | | | Total | 1,430.00 | | | | | | |
| 06-408 | 69195b1 | 1,093.00 | t0893739 | Darnell Glenn | 1,645.00 | rent | 1,605.00 | 0.00 | 0.00 | 12/30/2015 | 12/21/2016 | | 77.07 |
| | | | | | | petrent | 10.00 | | | | | | |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 1,850.00 | | | | | | |
| 06-409 | 69195b1 | 1,093.00 | t0863877 | Bernice Cooks | 1,695.00 | rent | 1,630.00 | 600.00 | 0.00 | 2/28/2016 | 2/27/2017 | | 73.94 |
| | | | | | | Total | 1,630.00 | | | | | | |
| 06-410 | 69195b1 | 1,093.00 | t0915395 | Nanette Ortiz | 1,645.00 | rent | 1,625.00 | 600.00 | 0.00 | 2/11/2016 | 3/10/2017 | | -1,625.00 |
| | | | | | | Total | 1,625.00 | | | | | | |
| 06-411 | 69195a2 | 746.00 | t0867495 | Skylar Galayda | 1,355.00 | rent | 1,290.00 | 0.00 | 0.00 | 2/10/2016 | 2/9/2017 | | 74.64 |
| | | | | | | Total | 1,290.00 | | | | | | |
| 06-412 | 69195a2 | 746.00 | t1004507 | Erikmartin Zarsuelo | 1,305.00 | rent | 1,305.00 | 500.00 | 0.00 | 6/15/2016 | 7/14/2017 | | 0.00 |
| | | | | | | garage | 200.00 | | | | | | |
| | | | | | | Total | 1,505.00 | | | | | | |
| 06-413 | 69195b2 | 1,097.00 | t0890924 | Luis Alarcon | 1,800.00 | rent | 1,775.00 | 0.00 | 0.00 | 1/29/2016 | 2/28/2017 | | 78.27 |
| | | | | | | garage | 175.00 | | | | | | |
| | | | | | | Total | 1,950.00 | | | | | | |
| 06-414 | 69195c1 | 1,371.00 | t0833588 | Jonathan Bornkamp | 2,100.00 | rent | 1,955.00 | 0.00 | 0.00 | 1/29/2016 | 1/28/2017 | | 78.85 |
| | | | | | | storage | 60.00 | | | | | | |
| | | | | | | Total | 2,015.00 | | | | | | |
| **Future Residents/Applicants** | | | | | | | | | | | | | |
| 01-102 | 69195b2 | 1,097.00 | t0870343 | Donna Montero | 1,715.00 | | 0.00 | 0.00 | 0.00 | 7/1/2016 | 6/30/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 01-113 | 69195b2 | 1,097.00 | t0865839 | John Mikkelsen | 1,715.00 | | 0.00 | 0.00 | 0.00 | 7/1/2016 | 6/30/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 01-213 | 69195b2 | 1,097.00 | t0833600 | Aaron Vaccar | 1,700.00 | | 0.00 | 0.00 | 0.00 | 7/1/2016 | 6/30/2017 | | -300.00 |

## Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 91 of 104

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Rent | Charge Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|------|-----------|------------|----------|------|-------------|-------------|--------|------------------|---------------|---------|------------------|----------|---------|
| | | | | | | Total | 0.00 | | | | | | |
| 01-307 | 69195b1 | 1,093.00 | t1013967 | Ray Deleon | 1,595.00 | | 0.00 | 0.00 | 0.00 | 6/30/2016 | 7/29/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 01-404 | 69195a2 | 746.00 | t0851844 | Emily Williams | 1,330.00 | | 0.00 | 0.00 | 0.00 | 7/1/2016 | 6/30/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-109 | 69195b1 | 1,093.00 | t0924320 | Michael Davis | 1,610.00 | | 0.00 | 0.00 | 0.00 | 7/15/2016 | 8/14/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-211 | 69195a2 | 746.00 | t1016741 | Terina Ashby | 1,255.00 | | 0.00 | 0.00 | 0.00 | 6/30/2016 | 6/29/2017 | | -450.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-303 | 69195a2 | 746.00 | t1007081 | Samantha Sanders | 1,255.00 | | 0.00 | 0.00 | 0.00 | 6/30/2016 | 7/29/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-309 | 69195b1 | 1,093.00 | t0862174 | Assad Nogharbel | 1,595.00 | | 0.00 | 0.00 | 0.00 | 7/1/2016 | 6/30/2017 | | 0.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-314 | 69195c1 | 1,371.00 | t0996917 | HOPE FOSTER | 2,050.00 | | 0.00 | 0.00 | 0.00 | 7/15/2016 | 7/14/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-401 | 69195b2 | 1,097.00 | t1014064 | David Pinkerton | 1,750.00 | | 0.00 | 0.00 | 0.00 | 6/29/2016 | 6/28/2017 | | -375.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 02-408 | 69195b1 | 1,093.00 | t1015769 | Steven Foose | 1,645.00 | | 0.00 | 0.00 | 0.00 | 6/27/2016 | 6/26/2017 | | -450.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-104 | 69195a2 | 746.00 | t0986355 | Yasmeen Awada | 1,270.00 | | 0.00 | 0.00 | 0.00 | 7/1/2016 | 6/30/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-112 | 69195a2 | 746.00 | t1014724 | Mallory Nguyen | 1,320.00 | | 0.00 | 0.00 | 0.00 | 6/30/2016 | 7/29/2017 | | -375.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-207 | 69195b1 | 1,093.00 | t0987582 | Danielle Jolly | 1,595.00 | | 0.00 | 0.00 | 0.00 | 7/23/2016 | 7/22/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-208 | 69195a2 | 746.00 | t0928316 | Jennifer Didomenico | 1,305.00 | | 0.00 | 0.00 | 0.00 | 7/30/2016 | 8/29/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-213 | 69195b2 | 1,097.00 | t0833569 | Judith Stroka | 1,700.00 | | 0.00 | 0.00 | 0.00 | 7/1/2016 | 6/30/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-309 | 69195a2 | 746.00 | t0994188 | Alexandra Goe | 1,255.00 | | 0.00 | 0.00 | 0.00 | 7/5/2016 | 7/4/2017 | | -300.00 |
| | | | | | | Total | 0.00 | | | | | | |
| 03-313 | 69195b2 | 1,097.00 | t0998087 | Ada Rivera cruz | 1,700.00 | | 0.00 | 0.00 | 0.00 | 7/2/2016 | 7/1/2017 | | -375.00 |
| | | | | | | Total | 0.00 | | | | | | |

# Rent Roll with Lease Charges

Aviva at Celebration -AB (69195)

As Of = 06/30/2016

Month Year = 06/2016

| Unit | Unit Type | Unit Sq Ft | Resident | Name | Market Charge Rent Code | Amount | Resident Deposit | Other Deposit | Move In | Lease Expiration | Move Out | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03-314 | 69195b2 | 1,097.00 | t0999636 | Wilma Colon Rivera | 1,750.00 | | 0.00 | 0.00 | 0.00 6/30/2016 | 7/29/2017 | | -300.00 |
| | | | | | Total | | 0.00 | | | | | |
| 04-103 | 69195a2 | 746.00 | t0849437 | Anthony Derosa | 1,270.00 | | 0.00 | 0.00 | 0.00 7/1/2016 | 6/30/2017 | | -300.00 |
| | | | | | Total | | 0.00 | | | | | |
| 04-113 | 69195b2 | 1,097.00 | t1016855 | Margaret Withers | 1,765.00 | | 0.00 | 0.00 | 0.00 7/9/2016 | 6/30/2017 | | -375.00 |
| | | | | | Total | | 0.00 | | | | | |
| 04-201 | 69195b2 | 1,097.00 | t1012454 | Luis Grosso | 1,650.00 | | 0.00 | 0.00 | 0.00 6/30/2016 | 7/29/2017 | | 75.00 |
| | | | | | Total | | 0.00 | | | | | |
| 05-108 | 69195a2 | 746.00 | t0902328 | Steven Fox | 1,305.00 | | 0.00 | 0.00 | 0.00 7/1/2016 | 7/31/2017 | | -300.00 |
| | | | | | Total | | 0.00 | | | | | |
| 05-214 | 69195b2 | 1,097.00 | t1018815 | Sarah Veety | 1,700.00 | | 0.00 | 0.00 | 0.00 7/14/2016 | 7/13/2017 | | -450.00 |
| | | | | | Total | | 0.00 | | | | | |
| 06-201 | 69195b2 | 1,097.00 | t1011191 | Kelly Novitski | 1,750.00 | | 0.00 | 0.00 | 0.00 6/30/2016 | 6/29/2017 | | -375.00 |
| | | | | | Total | | 0.00 | | | | | |
| 06-210 | 69195b1 | 1,093.00 | t1014850 | William Reuschel | 1,595.00 | | 0.00 | 0.00 | 0.00 6/30/2016 | 7/29/2017 | | -375.00 |
| | | | | | Total | | 0.00 | | | | | |
| 06-406 | 69195a2 | 746.00 | t0993613 | LANCE RHODES | 1,305.00 | | 0.00 | 0.00 | 0.00 7/9/2016 | 7/8/2017 | | -300.00 |
| | | | | | Total | | 0.00 | | | | | |
| | | Total | | Aviva at Celebration -AB(69195) | 465,805.00 | | 302,549.06 | 58,400.00 | 0.00 | | | -9,454.80 |

## Summary Groups

| | Square Footage | Market Rent | Actual Rent | Security Deposit | Other Deposits | # Of Units | % Unit Occupancy | % Sqft Occupied | Balance |
|---|---|---|---|---|---|---|---|---|---|
| Current/Notice/Vacant Residents | | | 302,549.06 | 58,400.00 | 0 | | | | -829.8 |
| Future Residents/Applicants | | | 0 | 0 | 0 | | | | -8,625.00 |
| Occupied Units | 205,895.00 | 333,310.00 | | | | | | | |
| Total Non Rev Units | 0 | 0 | | | | 222 | 72.55 | 71.18 | |
| Total Vacant Units | 83,353.00 | 132,495.00 | | | | 0 | 0 | 0 | |
| Totals: | 289,248.00 | 465,805.00 | 302,549.06 | 58,400.00 | 0 | 84 | 27.45 | 28.82 | |
| | | | | | | 306 | 100 | 100 | -9,454.80 |

## Summary of Charges by Charge Code

(Current/Notice Residents Only)

| Charge Code | Amount |
|---|---|
| rent | 325,796.00 |
| petrent | 760 |
| garage | 8,839.00 |
| xonetime | -34,000.94 |
| storage | 2,070.00 |
| xmaint | -915 |
| Total | 302,549.06 |

Case 4:19-cv-04211   Document 80-1   Filed 06/01/20 in TXSD   Page 92 of 104

**EXHIBIT D**

<u>LAWSUITS</u>

None.

# EXHIBIT E

## SERVICE CONTRACTS

[See Attached]

E-1

| Supplier/Vendor | Product/Service | Own/Lease | Term (Mos.) | Start Date | End Date | Cost (monthly) | Cost (annually) | Early Termination Clause | Early Termination Fee |
|---|---|---|---|---|---|---|---|---|---|
| Scent Air | Air Freshners | Lease | 12 | 8/4/2015 | 8/3/2016 | $474.00 | $5,688.00 | 30 day notice after expiration of initial 1 year term | N/A |
| Smart City* | Building 1 Voice POTS Lines (2) | N/A | 36 | 7/21/2015 | 7/20/2018 | $51.t2 | $613.44 | 30 day notice | Balance of unpaid term at monthly agreed rate. |
| Smart City* | Building 2 Voice POTS Lines (2) | N/A | 36 | 12/2/2015 | 12/1/2018 | $51.12 | $613.44 | 30 day notice | Balance of unpaid term at monthly agreed rate. |
| Smart City* | Building 3 Voice POTS Lines (2) | N/A | 36 | 10/6/2015 | 10/5/2018 | $51.12 | $613.44 | 30 day notice | Balance of unpaid term at monthly agreed rate. |
| Smart City* | Building 4 Voice POTS Lines (2) | N/A | 36 | 9/1/2015 | 8/31/2018 | $51.12 | $613.44 | 30 day notice | Balance of unpaid term at monthly agreed rate. |
| Smart City* | Building 5 Voice POTS Lines (2) | N/A | 36 | 10/8/2015 | 10/7/2018 | $51.12 | $613.44 | 30 day notice | Balance of unpaid term at monthly agreed rate. |
| Smart City* | Building 6 Voice POTS Lines (2) | N/A | 36 | 11/16/2015 | 11/15/2018 | $51.12 | $613.44 | 30 day notice | Balance of unpaid term at monthly agreed rate. |
| Smart City* | Clubhouse Phone & Internet | N/A | 36 | 7/10/2015 | 7/9/2018 | $739.99 | $8,879.88 | 30 day notice | Balance of unpaid term at monthly agreed rate. |
| SmartCity | Exclusive Marketing / Revenue Sharing | N/A | 120 | 5/22/2015 | 6/1/2026 | N/A | N/A | varies - see agreement | see agreement |
| Direct Plus / DirecTV | Revenue Sharing | N/A | 120 | 4/22/2015 | 4/21/2025 | N/A | N/A | 90 day notice | $300 per unit ($91,800) reduced by 10% for each year of contract fulfilled. |
| Valet Waste | Door to door trash removal | N/A | 60 | 6/15/2015 | 6/14/2020 | $3,717.90 | $44,614.80 | Assumable contract- new owner can release with 180 day notice | 6 mos. fee ($22,307.40) |
| Republic Services | Compactor Rental | Lease | 36 | 4/30/2015 | 4/29/2018 | $375.00 | $4,500.00 | 10 day notice | Amount equal to most recent month's monthly charges multiplied by the lesser of (a) six months or (b) the number of months remaining in the term |
| Republic Services | Trash Removal | N/A | 36 | 6/1/2015 | 5/31/2018 | $165.00 per haul | | 10 day notice | Amount equal to most recent month's monthly charges multiplied by the lesser of (a) six months or (b) the number of months remaining in the term |
| Dex Imaging | Copier maintenance | N/A | 12 | 7/29/2015 | 7/28/2016 | $10.00 | $120.00 | 30 day notice prior to current 1 year term - auto renew 1 year term | Varies based on timing of termination notice |
| KeyTrak | KeyTrak Maintenance | N/A | 12 | 10/15/2015 | 10/14/2016 | $192.00 | $2,304.00 | 45 day notice prior to current 1 year term - auto renew 1 year term | Varies based on timing of termination notice |
| KingsIII | Emergency Pool Phone | Lease | 12 | 6/26/2015 | 6/25/2016 | $29.24 | $350.88 | 30 day notice | N/A |
| Valley Crest | Landscape Maintenance | N/A | 36 | 8/4/2015 | 7/31/2018 | $3,717.90 | $44,614.80 | 30 day notice | N/A |
| Constellation Towing | Towing | N/A | MTM | MTM | MTM | N/A | N/A | No notice required | N/A |
| Cort Furniture | Furniture rental in 04-101 | Lease | MTM | MTM | MTM | $500.00 | $6,000.00 | 15 day notice | N/A |
| One Point Technologies | 3rd party billing- water | N/A | 12 | 8/12/2015 | 8/11/2016 | $3.25 per unit | | 30 day notice | N/A |
| AAGO | A-Pass Education | N/A | 12 | 10/5/2015 | 10/4/2016 | $69.00 | $828.00 | 30 day notice | N/A |
| American Pool Service | Pool Service | N/A | 12 | 7/1/2015 | 6/30/2016 | $470.00 | $5,640.00 | 30 day notice | N/A |
| Aramark | Coffee Machine & Service | Leased | 36 | 8/1/2015 | 7/31/2018 | Actual supplies cost. $0 for machine. | | 30 day notice | N/A |
| Massey Services | Pest Control | N/A | 12 | 8/1/2015 | 7/31/2016 | $367.00 | $4,404.00 | 30 day notice | N/A |
| Commercial Systems Group | Clubhouse Alarm | N/A | MTM | MTM | MTM | $36.38 | $436.56 | 30 day notice | N/A |
| Pynwheel | Leasing Display in Clubhouse | N/A | 12 | 10/1/2015 | 9/30/2016 | N/A | $1,800.00 | 1 year annual fee paid in advance; set to expire on 9/30/16 unless renewed in writing | N/A |

| Supplier/Vendor | Product/Service | Own/Lease | Term (Mos.) | Start Date | End Date | Cost (monthly) | Cost (annually) | Early Termination Clause | Early Termination Fee |
|---|---|---|---|---|---|---|---|---|---|
| Mixed Media | Website Hosting | N/A | 12 | | | N/A | $990.00 | 1 year annual fee paid in advance | N/A |
| . | | | | | | | | | |
| | | | | | | | | | |

* Smart City actual start dates for each 36 month contract term are based on the installation date of the phone lines, which occurred subsequent to the dates the phone line agreements were executed. So, actual Smart City start dates vary somewhat from the dates listed herein.

## EXHIBIT F

### GENERAL CONVEYANCE, BILL OF SALE, ASSIGNMENT AND ASSUMPTION

_____, a _____ ("Seller"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration to Seller paid by _____, a _____ ("Purchaser"), the receipt of which is hereby acknowledged, hereby bargains, sells, transfers, conveys and assigns to Purchaser the following described property:

(a)     Seller's right, title and interest in and to all equipment, appliances, tools, supplies, machinery, artwork, furnishings and other tangible personal property, attached to, appurtenant to, located in the improvements (the **"Improvements"**) located on the real property described on Exhibit A attached hereto and made a part hereof for all purposes (the **"Real Property"**) and used exclusively in connection with the ownership or operation of the Improvements (the **"Personal Property"**) as listed on Exhibit B, but specifically excluding items of personal property owned by lawful tenants (each a **"Tenant"**) of the Improvements and further excluding any items of personal property owned by third parties and leased to Seller;

(b)     Any and all of Seller's right, title and interest in and to the service agreements, maintenance contracts, equipment leasing agreements, warranties, guarantees and contracts listed on Exhibit C attached hereto together with all other assignable service agreements, maintenance contracts, equipment leasing agreements, warranties, guarantees, bonds and other contracts for the provision of labor, services, materials or supplies relating solely to the Real Property or the Improvements or Personal Property to the extent assignable without the necessity of consent or assignable only with consent and such consent has been obtained (**"Service Contracts"**);

(c)     All of Seller's right, title and interest, as lessor, under all leases, rental agreements, occupancy agreements or license agreements, and all amendments, modifications and supplements thereto (**"Tenant Leases"**) with the Tenants set forth on Exhibit D attached hereto, together with all refundable security deposits (**"Tenant Deposits"**) of Tenants held by Seller as listed on Exhibit D attached hereto; and

(d)     Any and all of Seller's right, title and interest in and to all licenses, permits, certificates of occupancy, approvals, dedications, subdivision maps and entitlements issued, approved or granted in connection with the Real Property and the Improvements, to the extent assignable without the necessity of consent or assignable only with consent and such consent has been obtained (the **"Licenses and Permits"**).

The Personal Property, Service Contracts, Tenant Leases, Tenant Deposits and Licenses and Permits are hereinafter collectively referred to as the **"Property."** The term "Property" as used herein shall exclude, however, the rights to any and all (i) operation manuals, (ii) property belonging to any Tenants or service providers, (iii) websites or domain names maintained by Seller or its property manager with respect to the Real Property and/or Improvements (including, without limitation, www.avivaatcelebrationapartments.com), (iv) trade names applicable to the

F-1

Real Property and/or Improvements (including, without limitation, the name "Aviva at Celebration") and (v) signage containing such trade names and logos.

Seller has executed this General Conveyance, Bill of Sale, Assignment and Assumption (this "**General Conveyance**") and BARGAINED, SOLD, TRANSFERRED, CONVEYED and ASSIGNED the Property and Purchaser has accepted this General Conveyance and purchased the Property AS IS AND WHEREVER LOCATED, WITH ALL FAULTS AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF WHATSOEVER NATURE, EXPRESS, IMPLIED, OR STATUTORY, EXCEPT AS EXPRESSLY SET FORTH IN THE AGREEMENT OF SALE AND PURCHASE BETWEEN SELLER AND PURCHASER DATED _____, 201__, REGARDING THE PROPERTY (the "**Purchase Agreement**") AND THE WARRANTIES SET FORTH HEREIN, IT BEING THE INTENTION OF SELLER AND PURCHASER TO EXPRESSLY NEGATE AND EXCLUDE ALL WARRANTIES WHATSOEVER, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, ANY IMPLIED OR EXPRESS WARRANTY OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS, ANY RIGHTS OF PURCHASER UNDER APPROPRIATE STATUTES TO CLAIM DIMINUTION OF CONSIDERATION, ANY CLAIM BY PURCHASER FOR DAMAGES BECAUSE OF DEFECTS, WHETHER KNOWN OR UNKNOWN WITH RESPECT TO THE PROPERTY, WARRANTIES CREATED BY AFFIRMATION OF FACT OR PROMISE AND ANY OTHER WARRANTIES CONTAINED IN OR CREATED BY THE UNIFORM COMMERCIAL CODE AS NOW OR HEREAFTER IN EFFECT IN THE STATE IN WHICH THE REAL PROPERTY IS LOCATED, OR CONTAINED IN OR CREATED BY ANY OTHER LAW.

Purchaser accepts the foregoing bargain, sale, transfer, conveyance and assignment and (1) assumes and agrees to perform or pay, as applicable, (i) all of the covenants and obligations of Seller, Seller's predecessor in title (if any) and Seller's Affiliates pursuant to the Tenant Leases and Service Contracts assigned to Purchaser and which are to be performed on or subsequent to the date hereof, and (ii) all of the covenants and obligations of Seller under the Tenant Leases and the Service Contracts and the Licenses and Permits assigned to Purchaser and relating to the physical or environmental condition of the Real Property, the Improvements and the Property, regardless of whether such obligations arise before or after the date hereof; and (2) assumes and agrees to discharge, perform and comply with each and every liability, duty, covenant, debt or obligation of Seller or any of its Affiliates resulting from, arising out of or in any way related to the Licenses and Permits and arising or accruing on or after the date hereof. Purchaser further agrees to indemnify Seller and hold Seller harmless from and against any and all claims, liens, damages, demands, causes of action, liabilities, lawsuits, judgments, losses, costs and expenses (including but not limited to attorneys' fees and expenses) asserted against or incurred by Seller by reason of or arising out of any failure by Purchaser to perform, pay, discharge or comply with the obligations, covenants, liabilities, duties, or debts assumed by Purchaser hereunder.

As used herein, the term "**Affiliate**" shall mean means any person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with Purchaser or Seller, as the case may be. For the purposes of this definition, "**control**" means the possession, direct or indirect, of the power to direct or cause the direction of

F-2

the management and policies of a person or entity, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have the meanings correlative to the foregoing.

To facilitate execution of this General Conveyance, this General Conveyance may be executed in multiple counterparts, each of which, when assembled to include an original signature for each party contemplated to sign this General Conveyance, will constitute a complete and fully executed original. All such fully executed original counterparts will collectively constitute a single agreement.

EXECUTED as of the _____ day of _____, 201__.

SELLER:

_____,

a _____

By:_____

      Name:_____

      Title:_____

PURCHASER:

_____,

a _____

By:_____

      Name:_____

      Title:_____

General Conveyance, Bill of Sale,
Assignment and Assumption

F-3

## EXHIBIT G

### FORM OF DEED

PREPARED BY:

_____

_____

_____

_____

WHEN RECORDED RETURN TO:

_____

_____

_____

_____

Tax Parcel ID No. _____

### SPECIAL WARRANTY DEED

THIS SPECIAL WARRANTY DEED is made this _____ day of _____, 2016, by **1662 MULTIFAMILY LLC**, a Delaware limited liability company (the "**Grantor**"), to _____, a _____ (the "**Grantee**").

WITNESSETH:

That, for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor does hereby grant, bargain, sell and convey unto the Grantee, those certain parcels of land situate, lying and being in Osceola County, Florida being described on **Exhibit A** attached hereto and made a part hereof (the "**Land**").

TOGETHER WITH all right, title and interest of Grantor in and to (i) any and all structures and improvements on the Land; (ii) any land lying in the bed of any street or highway, opened or proposed, in front of or adjoining the Land; and (iii) all easements, rights of way, privileges, and licenses appurtenant to the Land.

TO HAVE AND TO HOLD, the same in fee simple forever.

SUBJECT TO (a) all easements, covenants, restrictions, reservations and limitations of record, without reimposing same; (b) taxes and assessments for the year 2016 and thereafter; (c) matters that would be disclosed by an accurate survey; (d) all present and future zoning, building, and other laws, ordinances, codes, restrictions, and regulations of all governmental authorities having jurisdiction; (e) rights of tenants under leases; and (f) _____.

G-1

SUBJECT TO the matters described above, Grantor specially warrants the title to the said Land and will defend the same against the lawful claims of all persons whomsoever claiming by, through or under Grantor, but not otherwise.

IN WITNESS WHEREOF, the Grantor has caused this Special Warranty Deed to be executed as of the date first above written.

**GRANTOR:**

**1662 MULTIFAMILY LLC,**
a Delaware limited liability company

By:    Hines 1662 Multifamily LLC,
        a Delaware limited liability company,
        its managing member

By:    Hines Investment Management Holdings Limited Partnership,
        a Texas limited partnership,
        its managing member

Signed, sealed and delivered in the presence of:

By:    HIMH GP LLC,
        a Delaware limited liability company,
        its general partner

Witness:_____
Printed Name:_____

By:    Hines Real Estate Holdings Limited Partnership,
        a Texas limited partnership,
        its sole member

Witness:_____
Printed Name:_____

By:    JCH Investments, Inc.,
        a Texas corporation,
        its general partner

        By:_____
        Printed name:_____
        Its:_____

STATE OF _____     )
                 ) ss:
COUNTY OF _____  )

The foregoing instrument was acknowledged before me this ____ day of _____, 2016, by _____, as _____ of JCH Investments, Inc., a Texas corporation, general partner of Hines Real Estate Holdings Limited Partnership, a Texas limited partnership, sole member of HIMH GP LLC, a Delaware limited liability company, general partner of Hines Investment Management Holdings Limited Partnership, a Texas limited partnership, managing member of Hines 1662 Multifamily LLC, a Delaware limited liability company, managing member of 1662 Multifamily LLC, a Delaware limited liability company, on behalf of the latter limited liability company. He/She is personally known to me or has produced a driver's license as identification

_____
Notary Public

Commission Number: _____
My Commission Expires: _____

(NOTARY SEAL)

G-3

## Exhibit A

## Legal Description

## EXHIBIT H

### NON-FOREIGN ENTITY CERTIFICATION

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by _____, a _____ (the "Transferor"), the undersigned hereby certifies the following on behalf of the Transferor:

1.     Transferor is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.     Transferor's U.S. employer identification number is _____; and

3.     Transferor's office address is
1662 Multifamily LLC
2800 Post Oak Boulevard, Suite 4800
Houston, Texas 77056

Transferor understands that this certification may be disclosed to the Internal Revenue Service and that any false statement made within this certification could be punished by fine, imprisonment, or both.

Under penalties of perjury the undersigned declares that he has examined this certification and that to the best of his knowledge and belief it is true, correct and complete, and the undersigned further declares that he has the authority to sign this document on behalf of the Transferor.

TRANSFEROR:

_____,

a _____

By:_____
     Name:_____
     Title:_____