**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| URBAN OAKS BUILDERS LLC, *et al.* | § | |
| | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-4211 |
| | § | *Related Bankruptcy Case No.* |
| GEMINI INSURANCE COMPANY, *et al.* | § | 18-34892 (Ch. 11) |
| | § | |
| Defendants. | § | |

**DEFENDANT GREAT AMERICAN ASSURANCE COMPANY'S ANSWER AND
AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

Subject to its Partial Motion to Dismiss (Doc. 91), Defendant Great American Assurance
Company ("Great American") for its Answer and Affirmative Defenses to the First Amended
Complaint (Doc. 78) (the "Amended Complaint") filed in this matter by Plaintiffs Urban Oaks
Builders LLC ("UOB"), Hines Interests Limited Partnership ("Hines"), 1662 Multifamily LLC,
Hines 1662 Multifamily LLC, Hines Investment Management Holdings Limited Partnership,
HIMH GP LLC, Hines Real Estate Holdings Limited Partnership, and JCH Investments, Inc.,
hereby states as follows.  Any allegations not expressly admitted, denied, qualified, or otherwise
responded to in the following paragraphs are hereby denied.

**NATURE OF THE ACTION**

1.     The allegations contained in paragraph 1 do not pertain to Great American, and as
such, no response is required.  To the extent a response is required, the allegations are admitted.

2.     The allegations against Great American in paragraph 2 are denied.  The
allegations against other defendants do not pertain to Great American and should not require a

response.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

3.      The allegations against Great American in paragraph 3 are denied.  The allegations pertaining to other parties do not concern Great American and should not require a response.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

## JURISDICTION AND VENUE

4.      The statements of law contained in paragraph 4 do not require a response from Great American.  To the extent a response is required, Great American denies the allegations in paragraph 4.

5.      The statements of law contained in paragraph 5 do not require a response from Great American.  To the extent a response is required, Great American admits that the Court has jurisdiction, but denies this is a core proceeding pursuant to 28 U.S.C. § 157.

6.      The statements of law contained in paragraph 6 do not require a response from Great American.  To the extent a response is required, denied as written.

7.      The statements of law contained in paragraph 7 do not require a response from Great American.  To the extent a response is required, admitted for jurisdictional purposes only.

## ISSUES TO BE RULED UPON

8.      The allegations contained in paragraph 8 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

9.      The allegations contained in paragraph 9 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

10.      The allegations contained in paragraph 10 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

11.      The allegations contained in paragraph 11 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

12.      The allegations contained in paragraph 12 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

13.      The allegations contained in paragraph 13 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

14.      The allegations contained in paragraph 14 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

15.      The allegations contained in paragraph 15 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

16.      The allegations contained in paragraph 16 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, Great American admits

that, on information and belief, Gemini is a corporation organized under the state of Delaware and can be served through the Commission of Insurance but denies the remaining allegations for lack of information sufficient to justify a belief in the truth thereof.

17.    The allegations contained in paragraph 17 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, Great American admits that, on information and belief, Ironshore is a corporation organized under the laws of the state of Arizona but denies the remaining allegations for lack of information sufficient to justify a belief in the truth thereof.

18.    The allegations contained in paragraph 18 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, Great American admits the allegations in paragraph 18 on information and belief.

19.    The allegations contained in paragraph 19 are admitted.

20.    The allegations contained in paragraph 20 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

21.    The allegations contained in paragraph 21 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

22.    The allegations contained in paragraph 22 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

23.    Great American admits the allegations in paragraph 23.

24.    Great American admits the allegations in paragraph 24.

25.     Great American admits the allegations in paragraph 25.

26.     Great American admits the allegations in paragraph 26.

27.     The allegations contained in paragraph 27 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are admitted.

## **BACKGROUND**

A.     **The Construction Project**

28.      The allegations contained in paragraph 28 do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, the allegations are admitted on information and belief.

29.     The allegations contained in paragraph 29 do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, the allegations are denied as written.

30.     The allegations contained in paragraph 30 do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, the allegations are denied as written.

31.     The allegations contained in paragraph 31 do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, the Subcontracts referenced in paragraph 31 are the best evidence of their contents.  Great American refers to those documents for their terms and conditions and denies all allegations inconsistent therewith.

32.     The allegations contained in paragraph 32 do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, the Subcontracts

referenced in paragraph 32 are the best evidence of their contents. Great American refers to those documents for their terms and conditions and denies all allegations inconsistent therewith.

33.    The allegations contained in paragraph 33 do not pertain to Great American, and as such, no response should be required. To the extent a response is required, the allegations are denied as written. The Subcontractor Defendants were required to obtain other applicable insurance outside of the CIP program.

34.    The allegations contained in paragraph 34 do not pertain to Great American, and as such, no response should be required. To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

35.    The allegations contained in paragraph 35 do not pertain to Great American, and as such, no response should be required. To the extent a response is required, the allegations are denied as written. The Subcontractor Defendants were required to obtain other applicable insurance outside of the CIP program.

36.    The allegations contained in paragraph 36 do not pertain to Great American, and as such, no response should be required. To the extent a response is required, the Subcontracts and CIP referenced in paragraph 36 are the best evidence of their contents. Great American refers to those documents for their terms and conditions and denies all factual allegations inconsistent therewith.

**B.    The Carriers' Insurance Policies**

37.    The allegations contained in paragraph 37 against Great American are admitted. The allegations against other defendants do not pertain to Great American, and as such, no response is required. To the extent a response is required, that allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

6

38.     The allegations contained in paragraph 38 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 38 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

39.     The allegations contained in paragraph 39 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 39 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

40.     The allegations contained in paragraph 40 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 40 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

41.     The allegations contained in paragraph 41 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 41 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

42.     The allegations contained in paragraph 42 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 42 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

43.     The allegations contained in paragraph 43 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in

paragraph 43 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

44.    The allegations contained in paragraph 44 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 44 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

45.    The allegations contained in paragraph 45 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 45 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

46.    The allegations contained in paragraph 46 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 46 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

47.    The allegations contained in paragraph 47 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 47 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

48.    The allegations contained in paragraph 48 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 48 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

49.    The allegations contained in paragraph 49 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the policy referenced in paragraph 49 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

50.    Great American admits that it issued excess liability Policy No. EXC 2101385 with a policy period from June 28, 2012 through July 31, 2017.  Except as specifically admitted, the allegations contained in paragraph 50 are denied as written.

51.    The policy referenced in paragraph 51 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

52.    The policy referenced in paragraph 52 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

53.    The policy referenced in paragraph 53 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

54.    The policy referenced in paragraph 54 is the best evidence of its contents.  Great American refers to that policy for its terms and conditions and denies all allegations inconsistent therewith.

**C.    The Southstar Lawsuit**

55.    The allegations contained in paragraph 55 do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

56.     The allegations contained in paragraph 56 do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, Great American is aware of the allegations but denies the truth thereof.

57.     The allegations contained in paragraph 57 do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, Great American is aware of the allegations but denies the truth thereof.

58.     The allegations contained in paragraph 58 do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, Great American is aware of the allegations but denies the truth thereof.

59.     The allegations contained in paragraph 59 do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, Great American is aware of the allegations but denies the truth thereof.

**D.     The Carriers' Refusal to Provide a Defense and to Acknowledge Their Indemnity Obligations**

60.     The allegations contained in paragraph 60 pertaining to Great American are denied.  Great American's obligations, if any, are not owed prior to exhaustion of the underlying insurance, and are further subject to coverage defenses.  The allegations against other parties do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, the allegations are denied.

61.     The allegations contained in paragraph 61 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, admitted.

62.     The allegations contained in paragraph 62 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, admitted insofar as Gemini

contends it has exhausted its obligations by the $2 million payment to UOB.  Great American does not agree with Gemini's position.

63.    The allegations contained in paragraph 63 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, admitted.  Great American agrees with Ironshore's position in this regard.

64.    The allegations contained in paragraph 64 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

65.    The allegations contained in paragraph 65 pertaining to Great American are denied.  Great American's obligations, if any, are not owed prior to exhaustion of the underlying insurance, and are further subject to coverage defenses.  The allegations against other parties do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

66.    The allegations contained in paragraph 66 are admitted.

67.    The allegations contained in paragraph 67 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, denied for lack of information sufficient to justify a belief in the truth thereof.

68.    The allegations contained in paragraph 68 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, denied for lack of information sufficient to justify a belief in the truth thereof.

69.     The allegations contained in paragraph 69 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, denied for lack of information sufficient to justify a belief in the truth thereof.

70.     The allegations contained in paragraph 70 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, admitted.

71.     The allegations contained in paragraph 71 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, admitted insofar as UOB's objection to Southstar's proof of claim proceeded to a hearing on January 27, 2020 and denied as to any remaining allegations for lack of information sufficient to justify a belief in the truth thereof.

72.     The allegations contained in paragraph 72 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the Judgment referenced in paragraph 72 is the best evidence of its contents.  Great American refers to the Judgment for its contents and denies all allegations inconsistent therewith.

73.     The allegations contained in paragraph 73 do not pertain to Great American and contain legal conclusions, and as such, no response is required.  To the extent a response is required, admitted insofar as neither UOB no Southstar has filed an appealed the Judgment.

74.     The allegations contained in paragraph 74 pertaining to Great American are denied.  Great American's obligations, if any, are not owed prior to exhaustion of the underlying insurance, and are further subject to coverage defenses.  The allegations against other parties do not pertain to Great American, and as such, no response should be required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

75.    The allegations contained in paragraph 75 pertaining to Great American are denied. Great American's obligations, if any, are not owed prior to exhaustion of the underlying insurance, and are further subject to coverage defenses. The allegations against other parties do not pertain to Great American, and as such, no response should be required. To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

76.    The allegations contained in paragraph 76 pertaining to Great American are denied. Great American's obligations, if any, are not owed prior to exhaustion of the underlying insurance, and are further subject to coverage defenses. The allegations against other parties do not pertain to Great American, and as such, no response should be required. To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

77.    The allegations contained in paragraph 77 pertaining to Great American are denied. Great American's obligations, if any, are not owed prior to exhaustion of the underlying insurance, and are further subject to coverage defenses. The allegations against other parties do not pertain to Great American, and as such, no response should be required. To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

## CONDITIONS PRECEDENT

78.    The allegations pertaining to Great American contained in paragraph 78 are denied. The allegations against other defendants do not pertain to Great American, and as such, no response is required. To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

13

79.     The allegations pertaining to Great American contained in paragraph 79 are denied.  The allegations against other defendants do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

## COUNT 1 - TURNOVER - 11 U.S.C. § 542

80.     Great American realleges and reavers its answers to the specific allegations in paragraphs 1 to 79.

81-85.  Paragraphs 81 though 85 relate to counts not pleaded against Great American, and to which no response is required.  To the extent a response is required, any allegations pertaining to Great American contained in paragraphs 81 though 85 are denied.  The allegations against other defendants do not pertain to Great American, and as such, no response is required.  To the extent a response is required, those allegations are also denied for lack of information sufficient to justify a belief in the truth thereof.

## COUNT 2 - BREACH OF CONTRACT

86-91.  Great American has moved to dismiss Count 2 against it.  To the extent a response is necessary, Great American admits that it issued excess liability Policy No. EXC 2101385 with a policy period from June 28, 2012 through July 31, 2017, and avers that said policy is the best evidence of its terms, conditions and exclusions.  Great American has issued a reservation of rights outlining its coverage defenses.  Except as specifically admitted, the allegations against Great American in paragraphs 86-91 are denied.  The remaining allegations do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

## COUNT 3 - REQUEST FOR DECLARATORY RELIEF

92.    Great American realleges and reavers its answers to the specific allegations in paragraphs 1 to 79.

93.    The allegations against Great American contained in paragraph 93 are denied. The remaining allegations do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

94.    The allegations against Great American contained in paragraph 94 are denied. The remaining allegations do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

95.    The statements of law contained in paragraph 95 do not require a response.  To the extent a response is required, the allegations are denied as written.

96.    The allegations against Great American contained in paragraph 96 are denied. The remaining allegations do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

**A.    Request for Declaratory Relief Against Gemini**

97.    The allegations contained in paragraph 97 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are admitted.

98.    The allegations contained in paragraph 98 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied.

15

**B.    Request for Declaratory Relief Against Ironshore**

99.    The allegations contained in paragraph 99 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied.

100.    The allegations contained in paragraph 99 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied.

**C.    Request for Declaratory Relief Against Navigators**

101.    The allegations contained in paragraph 101 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied.

102.    The allegations contained in paragraph 102 do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied.

**D.    Request for Declaratory Relief Against Great American**

103.    The allegations contained in paragraph 103 are denied.

104.    The allegations contained in paragraph 104 are denied.

## COUNT 4 - VIOLATION OF TEXAS INSURANCE CODE

105-112.    Great American has moved to dismiss Count 4 against it.  To the extent a response is necessary, the allegations against Great American in paragraphs 105-112 are denied. The remaining allegations do not pertain to Great American, and as such, no response is required.  To the extent a response is required, the allegations are denied for lack of information sufficient to justify a belief in the truth thereof.

## COUNT 5 - VIOLATIONS OF SECTION 624.155, FLORIDA STATUTES

113-118.    Great American has moved to dismiss Count 5 against it.  To the extent a response is necessary, the allegations against Great American in paragraphs 113-118 are denied. The remaining allegations do not pertain to Great American, and as such, no response is

required.  To the extent a response is required, the allegations are denied for lack of information

sufficient to justify a belief in the truth thereof.

### COUNT 6 - FLORIDA COMMON LAW BAD FAITH

119-124.    Great American has moved to dismiss Count 6 against it.  To the extent a

response is necessary, the allegations against Great American in paragraphs 119-124 are denied.

The remaining allegations do not pertain to Great American, and as such, no response is

required.  To the extent a response is required, the allegations are denied for lack of information

sufficient to justify a belief in the truth thereof.

### PRAYER

All allegations and claims in the PRAYER paragraph are denied including that

Plaintiffs are entitled to any relief.

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

1.    The Complaint fails to state a cause or right of action against Great American

upon which relief can be granted.  Plaintiffs have failed to plead facts demonstrating that Great

American had or breached a duty to indemnify or defend or otherwise acted improperly or in bad

faith.

### SECOND DEFENSE

2.    The rights and obligations of Great American are defined and controlled by

the limits of liability, terms, exclusions, conditions and other provisions of the insurance

policy at issue herein which are specifically incorporated by reference as if copied *in extenso.*

### THIRD DEFENSE

3.    Plaintiffs have failed to mitigate their damages.

## FOURTH DEFENSE

4.      Great American invokes the doctrine of comparative fault on the part of

plaintiff.

## FIFTH DEFENSE

5.      Great American did not owe or breach any duties to Plaintiffs.

## SIXTH DEFENSE

6.      Great American was in no way negligent or otherwise at fault in contributing

to Plaintiffs' alleged damages.

## SEVENTH DEFENSE

7.      Great American avers that the injuries/damages alleged by Plaintiffs were

caused by the fault/negligence of others for whose negligence Great American is not liable.

## EIGHTH DEFENSE

8.      The claims asserted herein do not exceed the value of the underlying

insurance.

## NINTH DEFENSE

9.      Great American reserves its right to rely upon such other defenses as may

become available by law, or pursuant to statute, or during discovery proceedings in this case.

## TENTH DEFENSE

10.      Great American hereby adopts all separate defenses hereto and hereafter pled

by any other defendants, except as such other defenses may make an allegation of fault on

the part of Great American.

## ELEVENTH DEFENSE

11.      The Great American policy is a follow form excess liability policy that has no obligations to defend Plaintiffs and no obligation to "pay anything" until a minimum of $27 million per occurrence or $44 million in the aggregate has been paid by "underlying insurance" in judgment or settlements.  The "first underlying insurance" that it follows is the Ironshore policy.  The Ironshore policy provides, "the Insured shall not, except at its own expense, settle any claim or suit or incur any defense costs for any amount to which this Policy applies without the Insurer's written consent."  Any costs incurred by the insured were made without Great American's consent.  If certain of the "Hines Defendants" do not qualify as insureds under the Gemini policy, they are not insureds under the Great American policy and Great American has no obligation to indemnify those entities.

## TWELFTH DEFENSE

12.      The claims against Plaintiffs include causes of action alleging fraud, intentional withholding of information and piercing the corporate veil.  These causes of action do not an "occurrence" nor do they include claims for "property damage."  These claims would not be covered by "underlying insurance" and are not covered by the Great American Policy.  Defective work is not "property damage" and costs and expenses associated with repairing or replacing solely defective work are not damages covered by the Great American Policy.  Claims for consequential damages, including but not limited to, overhead, lost profits, and diminution and value are not damages covered by "underlying insurance" and are not covered by the Great American Policy.  The facts as currently known implicate certain exclusions in the Gemini Policy.  These exclusions are incorporated into the Great American policy, and include, but are not limited to the following: (a) Mold

exclusion; (b) EIFS Exclusion; (c) Damage to Property; (d) Damage to Your Product; (e) Contractors-Professionals Liability; and (f) Impaired Property Exclusion.  The Great American Policy only applies to property damage that happens while the Policy is in effect. Great American specifically reserves its right to assert any and all applicable terms, conditions, exclusions and provisions of the Great American policy and "underlying insurance" that may become applicable as discovery remains ongoing.

### THIRTEENTH DEFENSE

13.     Notice of the claim to Great American was not timely

### FOURTEENTH DEFENSE

14.     This matter is not a core proceeding.

### FIFTEENTH DEFENSE

15.     The Complaint fails to present a justiciable controversy because it lacks any allegations indicating Gemini, Ironshore or Navigators have paid the full limits of their policies in judgments or settlement of claims.

### SIXTEENTH DEFENSE

16.     Defective work is not "property damage" and costs and expenses associated with repairing or replacing solely defective work are not damages covered by "underlying insurance" and are not covered by the Great American Policy.

### SEVENTEENTH DEFENSE

17.     Claims for consequential damages, including but not limited to, overhead, lost profits, and diminution and value are not damages covered by "underlying insurance" and are not covered by the Great American Policy.

## EIGHTEENTH DEFENSE

18.     Although limited following form, the Great American Policy is governed by its own terms, conditions, provisions, exclusions and endorsements.

## NINETEENTH DEFENSE

19.      Plaintiffs' claims against Great American are barred to the extent that the underlying damages at issue in the Southstar Litigation were "expected or intended" from the standpoint of the insured, or otherwise uninsurable, including based on any evidence presented concerning the insureds' alleged knowledge of and failure to repair the alleged defects and deficiencies in the construction of the Project.

## TWENTIETH DEFENSE

20.     Great American specifically reserves its right to assert any and all applicable te1ms, conditions, exclusions and provisions of the Great American policy and "underlying insurance" that may become applicable as discovery remains ongoing.

## TWENTY-FIRST DEFENSE

21.     Court 2 for breach of contract fails to state a claim for which relief may be granted.  Plaintiffs allege that combined total limits of the Gemini, Navigators, and Ironshore Policies are $27 million per occurrence and $44 million in the aggregate.  Count 2 asserts that Great American is liable for breach of contract because it "failed to pay or indemnify the Judgment" of $26.1 million and "refused to provide . . . a defense" in the Southstar Lawsuit and they ask the Court to rule, "[t]hat the damages alleged in the Southstar Lawsuit constitute more than one 'occurrence.'"  Great American has no duty to indemnify Plaintiffs for a judgment that falls almost $18 million below what Plaintiffs assert is the applicable attachment point of the Great American Policy.

**TWENTY-SECOND DEFENSE**

22.     Count 4 for violation of Texas Insurance Code fails to state a claim for which relief may be granted.  Count 4 fails to allege injury independent of those that would have resulted from a wrongful denial of policy benefits and is not sufficiently supported by specific factual allegations.

**TWENTY-THIRD DEFENSE**

23.     Count 5 for violation of Fla. Stat. § 624.155 fails to state a claim for which relief can be granted.  Count 5 is not ripe until there has been a final determination of coverage issues and is not sufficiently supported by specific factual allegations.

**TWENTY-FOURTH DEFENSE**

24.     Count 6 for Florida common law bad faith fails to state a claim for which relief can be granted.  Count 6 is not ripe until there has been a final determination of coverage issues and is not sufficiently supported by specific factual allegations.

**WHEREFORE**, Great American respectfully requests that after due proceedings had, that any and all claims asserted against it by Plaintiffs in this matter be dismissed, at Plaintiffs' costs, and for all other general and equitable relief as this court deems just and proper.

**DEFENDANT GREAT AMERICAN ASSURANCE COMPANY'S CROSSCLAIM
AGAINST CO-DEFENDANTS GEMINI INSURANCE COMPANY, IRONSHORE
SPECIALTY INSURANCE COMPANY, COLLIS ROOFING, INC., DA PAU
ENTERPRSISES, INC., FLORIDA CONSTRUCTION SERVICES, INC.,
STRUCTURAL CONTRACTORS SOUTH, INC.,**

Defendant Great American Assurance Company ("Great American"), through its
undersigned counsel, hereby crossclaims against co-defendants Gemini Insurance Company
("Gemini"), Ironshore Specialty Insurance Company ("Ironshore"), Collis Roofing, Inc.
("Collis"), Da Pau Enterprises, Inc. ("Da Pau"), Florida Construction Services, Inc. ("FCS"), and
Structural Contractors South, Inc. ("Structural"), and states:

## PARTIES

1.      Great American is a corporation organized and existing under the laws of Ohio
with its principal place of business in Ohio.

2.      Defendant Gemini is a corporation organized and existing under the laws of the
state of Delaware with its principal place of business in Arizona.

3.      Defendant Ironshore is a corporation organized under the laws of the state of
Arizona.

4.      Defendant Collis is a corporation organized and existing under the laws of the
state of Florida with its principal place of business in Florida.

5.      Defendant Da Pau is a corporation organized and existing under the laws of the
state of Florida with its principal place of business in Florida.

6.      Defendant FCS is a corporation organized and existing under the laws of the state
of Florida with its principal place of business in Florida.

7.      Defendant Structural a corporation organized and existing under the laws of the
state of Florida with its principal place of business in Florida.

23

8.      Collis, Da Pau, FCS, and Structural shall each be referred to herein as the "Subcontractor Defendants."

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 because this proceeding is related to the Chapter 11 Bankruptcy Case of Urban Oaks Builders, LLC, captioned as *In re Urban Oaks Builders, LLC*, Case No. 18-34892, currently pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"); this proceeding was initially filed as an adversary proceeding in the Bankruptcy Court under Case No. 19-3357 (the "Adversary Proceeding") and this Court has withdrawn the reference to the Bankruptcy Court pursuant to the Order Withdrawing Reference entered on November 14, 2019 (Doc. 11) (the "Withdrawal Order").

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409 because this action is related to the Bankruptcy Case and because of the Withdrawal Order.

## BACKGROUND

11.     The insurance coverage action filed in this matter by Plaintiffs Urban Oaks Builders, LLC, Hines Interests Limited Partnership, 1662 Multifamily LLC, Hines 1662 Multifamily, LLC, Hines Investment Management Holdings Limited Partnership, HIMH GP, LLC, Hines Real Estate Holdings Limited Partnership, and JCH Investments (collectively "Plaintiffs") arises out of a state court construction defect action concerning the construction of a 306-unit apartment project in Celebration, Florida (the "Project").

12.     In connection with the Project, the developer, Hines Interests Limited Partnership ("Hines"), and the general contractor, Urban Oaks Builders, LLC ("UOB") (collectively, "Hines/UOB"), procured insurance policies pursuant to a controlled insurance program ("CIP")

24

through Gemini, Ironshore, Navigators Specialty Insurance Company ("Navigators"), and Great American.

13.    The Subcontractor Defendants enrolled in the CIP for the Project pursuant to their respective subcontracts with UOB (the "Subcontracts").  Copies of the Subcontracts are attached as Exhibits 1, 2, 3 and 4 to Plaintiffs' Amended Complaint (Docs. 78-1, 78-2, 78-3, and 78-4) and are incorporated by reference herein.  A copy of the Wrap Manual for the CIP was attached as Exhibit A to Great American's Cross-Motion for Partial Summary Judgment filed in the Adversary Proceeding and subsequently filed in this proceeding as Doc. 33-2 and is incorporated by reference herein.

14.    In conjunction with the CIP, Gemini issued a primary commercial general liability insurance policy to Hines/UOB which was in effect between June 28, 2012 and July 31, 2017, with limits of $2 million each occurrence/$4 million general aggregate/$4 million products-completed operations aggregate (the "Gemini Policy").  A copy of the Gemini Policy is attached as Exhibit C to Gemini's Counterclaim (Doc 80-3) and is incorporated by reference herein.

15.    Ironshore issued an excess policy to Hines/UOB which was in effect between June 28, 2012 and July 31, 2017, with limits of $10 million each occurrence, per claim or per loss/$25 million general aggregate/$20 million products-completed operations aggregate (the "Ironshore Excess Policy").  A copy of the Ironshore Policy is attached as Exhibit 7 to Plaintiffs' Amended Complaint (Doc. 78-7), and is incorporated by reference herein.

16.    The Ironshore Policy identifies the Gemini Policy as the Controlling Underlying Policy.

17.    The Ironshore Policy is excess over the Gemini Policy, and provides that Ironshore "shall have the right but not the duty to assume charge of the defense or settlement of any claim or suit against the Insured to which this Policy may apply *upon exhaustion of the applicable limits of liability* of the [Gemini Policy]" (emphasis added).

18.    Navigators issued a second layer excess policy to Hines/UOB which was in effect between June 28, 2012 and July 31, 2017, with limits of $15 million each event/$15 million general aggregate/$15 million products-completed operations aggregate (the "Navigators Excess Policy"). A copy of the Navigators Policy is attached as Exhibit 8 to Plaintiffs' Amended Complaint (Doc. 78-8).

19.    The Navigators Policy identifies the Ironshore Policy as controlling underlying insurance and is excess over the Ironshore Policy and its underlying insurance policies.

20.    Great American issued an excess policy to Hines/UOB which was in effect between June 28, 2012 and June 28, 2917, with limits of $25 million each occurrence/$25 million aggregate ("the Great American Policy"), a copy of which was attached as Exhibit 9 to Great American's Answer to Plaintiffs' complaint filed in the Adversary Proceeding and subsequently filed in this proceeding as Doc. 23-1 and which is incorporated by reference herein.

21.    The Great American Policy identifies the Ironshore Policy as First Underlying Excess Insurance. The Great American Policy applies as excess insurance over the Gemini Policy, the Ironshore Policy and the Navigators Excess Policy.

22.    In 2016, UOB completed construction of the Project.

23.    Thereafter, Southstar Capital Group I, LLC ("Southstar"), and its affiliates, Cottington Road TIC, LLC and Durban Road TIC, LLC (collectively, the "Southstar Entities"), purchased the Project from its original owner, an affiliate of Hines.

26

24.     The Southstar Entities subsequently made claims against UOB and Hines regarding the Project, seeking damages for, among other things, allegedly defective construction.

25.      On February 13, 2018, the Southstar Entities filed a lawsuit against UOB and various business entities affiliated with Hines in the Circuit Court for the Ninth Judicial Circuit in and for Osceola County, Florida styled *Southstar Capital Group, I, LLC, et al. v. 1662 Multifamily LLC, et al.*, asserting claims for damages caused by defects and deficiencies in the construction of the Project (the "Underlying Lawsuit").   A copy of the Complaint in the Underlying Lawsuit is attached as Exhibit 10 to Plaintiffs' Amended Complaint (Doc. 78-10), and is incorporated by reference herein.

26.     On November 14, 2017, the Southstar Entities and UOB entered into a Standstill Agreement, delaying the filing of the Underlying Lawsuit against UOB/Hines for three to four weeks in exchange for a payment of $2,000,000.00.

27.     Gemini tendered $2,000,000 in partial reimbursement of amounts UOB  paid pursuant to the Standstill Agreement.

28.     The Standstill Agreement does not constitute a release of claims.

29.     Upon information and belief, Gemini never provided UOB  and  Hines  with  a defense to the Underlying Lawsuit.

30.     Having tendered the $2,000,000, Gemini took the position that it no longer had any defense or indemnity obligations under the Gemini Policy.

31.     Upon information and belief, following receipt of the complaint in the Underlying Lawsuit, Ironshore agreed to defend UOB and Hines in the Underlying Lawsuit under a full and complete reservation of rights.

## COUNT I – DECLARATORY RELIEF AGAINST GEMINI

32.    Great American hereby incorporates by reference and restates paragraphs 1 through 31 as if fully stated herein.

33.    The policy limits of the Gemini Policy have not been exhausted, and any payments made by Gemini to UOB for alleged damages may not be covered under the policy and therefore do not act to exhaust the applicable limits of any covered, claimed damages.

34.    The policy limits of the Gemini Policy have not been exhausted.

35.    The Gemini Policy provides that "[Gemini's] duty to defend ends when    we have used up the applicable limit of insurance in the payment of judgments or settlements...."

36.    The mere payment by an underlying carrier of its limits without procurement of a release is not payment of loss, and the underlying carrier retains the duty to defend.

37.    The $2,000,000 amount paid by Gemini was not for a judgment or settlement.

38.    An actual, present and justiciable controversy exists between Great American and Gemini regarding whether the policy limits of the Gemini Policy have been exhausted, warranting the entry of declaratory judgment by this Court.

WHEREFORE, Defendant/Crossclaim Plaintiff Great American Assurance Company, respectfully requests this Honorable Court to enter a judgment in its favor, declaring that:

a.    Gemini has an ongoing duty to defend UOB/Hines in the Underlying Lawsuit;

b.    The policy limits of the Gemini Policy have not been exhausted;

c.    There are multiple occurrences as defined under the Gemini Policy; and,

d.    Any and all such other relief this Honorable Court deems just and proper under the circumstances.

28

## COUNT II – DECLARATORY RELIEF AGAINST IRONSHORE

39.    Great American hereby incorporates by reference and restates paragraphs 1 through 31 as if fully stated herein.

40.    Item 3 in the Ironshore Policy declarations indicates that the Ironshore Policy has a $10 million aggregate limit.  Specifically, Item 3 provides:

> **Item 3:        Limits Of Liability**
>
> **a. Per Occurrence, Per Claim or Per Loss**         $10,000,000
> (as in Controlling underlying Policy)
>
> **b. Aggregate,** where applicable                              $10,000,000
> (Per Schedule of Underlying Policies (See Endorsement No. 1))

41.    Endorsement 15, however, makes clear that "Item 3: of the Declarations is deleted in its entirety" and is "replaced" by Endorsement 15, which indicates that the Ironshore Policy as a $25 million aggregate limit.  Specifically, Endorsement 15 provides:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE
> READ IT CAREFULLY.
>
> **EXCESSPROTECT℠**
> **AGGREGATE LIMITS OF LIABILITY**
> **(PER PROJECT)**
>
> It is agreed and understood that Item 3: of the Declarations is
> deleted in its entirety and replaced as follows:
>
> **Item 3:        Limits Of Liability**
> **a. Per Occurrence, Per Claim or Per Loss**
> (as in **Controlling Underlying Policy**)
>
> **b. Aggregate**, where applicable
> (Per Schedule of Underlying Policies (See Endorsement No. 1))
>
> The aggregate limit(s) of liability under this Policy apply in the
> same manner as the aggregate limit(s) of liability of the
> **Controlling Underlying Policy** including, if available, any:

29

1. Product-completed operations additional policy period as defined in the **Controlling Underlying Policy**, **or**
2. Designated Project General Aggregate or Designated Project Products/Completed Operations aggregate limit attributed to operations at a single designated construction project and as defined in the **Controlling Underlying Policy**.

It is further agreed that, regardless of the number projects insured under the Controlling Underlying Policy, the following ultimate aggregate limit(s) of liability delineate the maximum amounts we will pay under this Policy:

a. $25,000,000 General Aggregate
b. $20,000,000 Products/Completed Operations Aggregate

42.    Accordingly, at least Plaintiffs and Great American take the position that the Ironshore Policy has a $25 million aggregate limit. *See* Amended Complaint ¶ 43.

43.    Notwithstanding Endorsement 15, Ironshore disputes that the aggregate limit of its policy is $25 million and takes the position the Ironshore Policy has a $10 million aggregate limit.

44.    Given that Great American's obligations, if any, are not owed prior to exhaustion of the underlying insurance, an actual, present and justiciable controversy exists between Great American and Ironshore regarding the policy limits of the Ironshore Policy, warranting the entry of declaratory judgment by this Court.

WHEREFORE, Defendant/Crossclaim Plaintiff Great American Assurance Company, respectfully requests this Honorable Court to enter a judgment in its favor, declaring that:

a.    The aggregate limit of the Ironshore Policy is $25,000,000;

b.    There are multiple occurrences as defined under the Gemini Policy; and,

c.    Any and all such other relief this Honorable Court deems just and proper under the circumstances.

## COUNTI III – DECLARATORY RELIEF AGAINST THE
## SUBCONTRACTOR DEFENDANTS

45.     Great American hereby incorporates by reference and restates paragraphs 1

through 31 as if fully stated herein.

46.     The Subcontractor Defendants enrolled in the CIP for the Project.

47.     The Wrap Manual for the CIP provides that Hines must provide primary

insurance but only for amounts well below the attachment point of the Great American Policy.

The Subcontractor Defendants are also required to maintain their own insurance.

48.     The Subcontractor Defendants have broad indemnity obligations to UOB pursuant

to the Subcontracts:

> SECTION 29:  SUBCONTRACTOR'S INDEMNITY
> OBLIGATIONS
>
> A.     SUBCONTRACTOR AGREES TO PROTECT, DEFEND,
> PAY, INDEMNIFY AND HOLD THE OWNER AND
> CONTRACTOR AND THEIR RESPECTIVE AFFILIATES,
> MEMBERS, OFFICERS, EMPLOYEES AND AGENTS
> HARMLESS FROM ALL CLAIMS, DEMANDS, ACTIONS,
> LIABILITIES, LOSSES, DAMAGES, OR EXPENSES
> (INCLUDING BUT NOT LIMITED TO FEES AND CHARGES
> OF ATTORNEYS, CONSULTANTS, EXPERT WITNESSES,
> AND OTHER PROFESSIONALS AND COURT AND/OR
> MEDIATION AND/OR ARBITRATION COSTS) WHICH MAY
> ARISE FROM THE FOLLOWING:
>
> ***
>
> ALLEGED OR ACTUAL DAMAGE TO ANY PROPERTY;
>
> ***
>
> C.     Subcontractor agrees that it will obtain comprehensive
> general  liability or commercial  liability insurance, as required by
> Section 18 hereof, which will provide contractual liability
> insurance applicable to Subcontractor's indemnity obligations set
> forth in this Section. Further, Subcontractor agrees that the
> comprehensive general liability or commercial liability insurance

31

policy obtained by Subcontractor shall name Contractor as an additional insured.

49.    The Great American Policy provides as follows:

**I.    Other Insurance**

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

50.    As a true excess policy, the Great American Policy is excess over any valid and collectible insurance available to the insured, including but not limited to, the insurance policies of the Subcontractor Defendants

51.    It is the position of UOB/Hines that they are entitled to a defense and indemnity of the Underlying Lawsuit under the Great American Policy. Great American disputes any such right to a defense due to the failure to exhaust the policy limits of all other valid and collectable insurance, including the insurance policies of the Subcontractor Defendants. This dispute constitutes an actual, ripe and justiciable controversy between the parties.

52.    An actual, present and justiciable controversy exists between Great American and the Subcontractor Defendants warranting the entry of declaratory judgment by this Court.

WHEREFORE, Defendant/Crossclaim Plaintiff Great American Assurance Insurance Company, respectfully requests this Honorable Court to enter a judgment in its favor, declaring that:

a.    The Great American Policy is excess over the insurance policies of the Subcontractor Defendants;

b. The policy limits of the insurance policies of the Subcontractor Defendants have not been exhausted; and,

c. Any and all such other relief this Honorable Court deems just and proper under the circumstances.

Date:   July 1, 2020                    Respectfully submitted,

**SHIPMAN & GOODWIN LLP**

/s/  *James P. Ruggeri*
James P. Ruggeri (*pro hac vice*)
***Attorney-in-Charge***
D.C. Bar No. 431034
jruggeri@goodwin.com

Sara K. Hunkler (*pro hac vice*)
***Of Counsel***
D.C. Bar No. 1658051
shunkler@goodwin.com

1875 K Street, N.W., Suite 600
Washington, D.C. 20006
Tel:    (202) 469-7750
Fax:    (202) 469-7751

**FOGLER BRAR O'NEIL & GRAY**

Michelle E. Gray
***Of Counsel***
State Bar No. 24078586
mgray@foglerbrar.com

2 Houston Center
909 Fannin, Suite 1640
Houston, Texas 77010
Tel:    (713) 325-8243
Fax:    (713) 574-3224

*Attorneys for Great American Assurance Company*

## **CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of this document was forwarded by electronic transmission to all registered ECF users appearing in the case on July 1, 2020.

/s/ *Michelle E. Gray*
Michelle E. Gray