**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| URBAN OAKS BUILDERS LLC, *et al.,* | § § | Civil Action No. 4:19-cv-4211 *Related Bankruptcy Case No.* |
| Plaintiffs, | § § | 19-34892 (Ch. 11) |
| v. | § § | |
| GEMINI INSURANCE COMPANY, *et al.,* | § § § | |
| Defendants. | § | |

**DEFENDANT NAVIGATORS SPECIALTY INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND CROSS-CLAIM AGAINST CO-DEFENDANTS**

Defendant, Navigators Specialty Insurance Company ("Navigators"), hereby files its Answer and Affirmative Defenses to the First Amended Complaint (the "Complaint") filed by Plaintiffs, Urban Oaks Builders, LLC, Hines Interests Limited Partnership, 1662 Multifamily LLC, Hines 1662 Multifamily, LLC, Hines Investment Management Holdings Limited Partnership, HIMH GP, LLC, Hines Real Estate Holdings Limited Partnership, and JCH Investments (collectively "Plaintiffs") [Dkt. #78] and Cross-Claim, and states:

**ANSWER**

**I.
NATURE OF THE ACTION**

1.    Navigators admits that Plaintiffs are currently defendants in the lawsuits described in paragraph 1. Navigators has insufficient information to admit or deny the remaining allegations of paragraph 1 of the Complaint and, therefore, denies those allegations.

2.    To the extent the allegations of paragraph 2 are directed to Navigators, they are denied. Navigators has insufficient information to admit or deny the remaining allegations of paragraph 2 of the Complaint and, therefore, denies those allegations.

3. To the extent the allegations of paragraph 3 are directed to Navigators, they are denied. Navigators has insufficient information to admit or deny the remaining allegations of paragraph 3 of the Complaint and, therefore, denies those allegations.

**II.**
**JURISDICTION AND VENUE**

4. Paragraph 4 contains legal conclusions to which no response from Navigators is necessary.

5. Paragraph 5 contains legal conclusions to which no response from Navigators is necessary. Navigators admits that this Court has jurisdiction and denies that this is a core proceeding.

6. Paragraph 6 contains legal conclusions to which no response from Navigators is necessary.

7. Paragraph 7 contains legal conclusions to which no response from Navigators is necessary.

**III.**
**PARTIES**

8. Navigators has insufficient information to admit or deny all of the allegations of paragraph 8 of the Complaint and, therefore, denies those allegations.

9. Navigators has insufficient information to admit or deny all of the allegations of paragraph 9 of the Complaint and, therefore, denies those allegations.

10. Navigators has insufficient information to admit or deny all of the allegations of paragraph 10 of the Complaint and, therefore, denies those allegations.

11. Navigators has insufficient information to admit or deny all of the allegations of paragraph 11 of the Complaint and, therefore, denies those allegations.

12. Navigators has insufficient information to admit or deny all of the allegations of paragraph 12 of the Complaint and, therefore, denies those allegations.

13. Navigators has insufficient information to admit or deny all of the allegations of paragraph 13 of the Complaint and, therefore, denies those allegations.

14. Navigators has insufficient information to admit or deny all of the allegations of paragraph 14 of the Complaint and, therefore, denies those allegations.

15. Navigators has insufficient information to admit or deny all of the allegations of paragraph 15 of the Complaint and, therefore, denies those allegations.

16. Navigators has insufficient information to admit or deny all of the allegations of paragraph 16 of the Complaint and, therefore, denies those allegations.

17. Navigators has insufficient information to admit or deny all of the allegations of paragraph 17 of the Complaint and, therefore, denies those allegations.

18. Admitted.

19. Navigators has insufficient information to admit or deny all of the allegations of paragraph 19 of the Complaint and, therefore, denies those allegations.

20. Navigators has insufficient information to admit or deny all of the allegations of paragraph 20 of the Complaint and, therefore, denies those allegations.

21. Navigators has insufficient information to admit or deny all of the allegations of paragraph 21 of the Complaint and, therefore, denies those allegations.

22. Navigators has insufficient information to admit or deny all of the allegations of paragraph 22 of the Complaint and, therefore, denies those allegations.

23. Navigators has insufficient information to admit or deny all of the allegations of paragraph 23 of the Complaint and, therefore, denies those allegations.

24.     Navigators has insufficient information to admit or deny all of the allegations of paragraph 24 of the Complaint and, therefore, denies those allegations.

25.     Navigators has insufficient information to admit or deny all of the allegations of paragraph 25 of the Complaint and, therefore, denies those allegations.

26.     Navigators has insufficient information to admit or deny all of the allegations of paragraph 26 of the Complaint and, therefore, denies those allegations.

27.     Navigators has insufficient information to admit or deny all of the allegations of paragraph 27 of the Complaint and, therefore, denies those allegations.

**IV.**
**BACKGROUND**

**A.     The Construction Project**

28.     Navigators has insufficient information to admit or deny all of the allegations of paragraph 28 of the Complaint and, therefore, denies those allegations.

29.     Navigators has insufficient information to admit or deny all of the allegations of paragraph 29 of the Complaint and, therefore, denies those allegations.

30.     Navigators has insufficient information to admit or deny all of the allegations of paragraph 30 of the Complaint and, therefore, denies those allegations.

31.     The Subcontracts referenced in paragraph 31 speak for themselves.  Navigators refers to those documents for their terms and conditions, and denies any allegations in paragraph 31 of the Complaint inconsistent therewith.

32.     Navigators has insufficient information to admit or deny all of the allegations of paragraph 32 of the Complaint and, therefore, denies those allegations.

33.     Navigators has insufficient information to admit or deny all of the allegations of paragraph 33 of the Complaint and, therefore, denies those allegations.

34. Navigators has insufficient information to admit or deny all of the allegations of paragraph 34 of the Complaint and, therefore, denies those allegations.

35. The CIP Manual attached to the Complaint speaks for itself. Navigators has insufficient information to admit or deny the remaining allegations of paragraph 35 of the Complaint and, therefore, denies those allegations.

36. Navigators has insufficient information to admit or deny all of the allegations of paragraph 36 of the Complaint and, therefore, denies those allegations.

**B. The Carriers' Insurance Policies**

37. Navigators admits that it issued a "Follow Form Excess Liability Policy" identifying Urban Oaks Builders, LLC as a named insured. Navigators has insufficient information to admit or deny the remaining allegations of paragraph 37 of the Complaint and, therefore, denies those allegations.

38. The Gemini Policy speaks for itself. Navigators has insufficient information to admit or deny the remaining allegations of paragraph 38 of the Complaint and, therefore, denies those allegations.

39. Navigators has insufficient information to admit or deny all of the allegations of paragraph 39 of the Complaint and, therefore, denies those allegations.

40. Navigators has insufficient information to admit or deny all of the allegations of paragraph 40 of the Complaint and, therefore, denies those allegations.

41. Navigators has insufficient information to admit or deny all of the allegations of paragraph 41 of the Complaint and, therefore, denies those allegations.

42.    The Ironshore Excess Policy speaks for itself.  Navigators has insufficient information to admit or deny the remaining allegations of paragraph 42 of the Complaint and, therefore, denies those allegations.

43.    Navigators has insufficient information to admit or deny all of the allegations of paragraph 43 of the Complaint and, therefore, denies those allegations.

44.    Navigators has insufficient information to admit or deny all of the allegations of paragraph 44 of the Complaint and, therefore, denies those allegations.

45.    Navigators has insufficient information to admit or deny all of the allegations of paragraph 45 of the Complaint and, therefore, denies those allegations.

46.    Navigators admits that it issued Policy Number SE12FXS754225IC with a Policy Period of June 28, 2012 to June 28, 2017 (the "Navigators Excess Policy").  Navigators denies that Exhibit 8 is a true and accurate copy of the Navigators Excess Policy and attaches a complete copy of the Navigators Excess Policy as Exhibit A hereto.  As pled, Navigators has insufficient information to admit or deny the remaining allegations of paragraph 46 of the Complaint and, therefore, denies those allegations.

47.    The Navigators Excess Policy speaks for itself, and, therefore, Navigators denies any allegations in paragraph 47 of the Complaint inconsistent therewith.

48.    The Navigators Excess Policy speaks for itself, and, therefore, Navigators denies any allegations in paragraph 48 of the Complaint inconsistent therewith.

49.    The Navigators Excess Policy speaks for itself, and, therefore, Navigators denies any allegations in paragraph 49 of the Complaint inconsistent therewith.

50. The Great American Excess Policy speaks for itself. Navigators has insufficient information to admit or deny the remaining allegations of paragraph 50 of the Complaint and, therefore, denies those allegations.

51. Navigators has insufficient information to admit or deny all of the allegations of paragraph 51 of the Complaint and, therefore, denies those allegations.

52. Navigators has insufficient information to admit or deny all of the allegations of paragraph 52 of the Complaint and, therefore, denies those allegations.

53. Navigators has insufficient information to admit or deny all of the allegations of paragraph 53 of the Complaint and, therefore, denies those allegations.

54. Navigators has insufficient information to admit or deny all of the allegations of paragraph 54 of the Complaint and, therefore, denies those allegations.

**C. The Southstar Lawsuit**

55. Navigators has insufficient information to admit or deny all of the allegations of paragraph 55 of the Complaint and, therefore, denies those allegations.

56. Navigators has insufficient information to admit or deny all of the allegations of paragraph 56 of the Complaint and, therefore, denies those allegations.

57. The Southstar Complaint speaks for itself. Navigators has insufficient information to admit or deny the remaining allegations of paragraph 57 of the Complaint and, therefore, denies those allegations.

58. Navigators has insufficient information to admit or deny all of the allegations of paragraph 58 of the Complaint and, therefore, denies those allegations.

59. Navigators has insufficient information to admit or deny all of the allegations of paragraph 59 of the Complaint and, therefore, denies those allegations.

**D.      The Carriers' Refusal to Provide a Defense and to Acknowledge their Indemnity Obligations**

60.      To the extent the allegations of paragraph 60 are directed to Navigators, they are denied.  Navigators has insufficient information to admit or deny the remaining allegations of paragraph 60 of the Complaint and, therefore, denies those allegations.

61.      The allegations in paragraph 61 are not directed to Navigators, and therefore no response is required.  To the extent that a response by Navigators is required, Navigators admits that Gemini has taken the position that it no longer has any defense or indemnity obligations under the Gemini Policy (a position which Navigators disputes), and otherwise has insufficient information to admit or deny the remaining allegations of paragraph 61 of the Complaint and, therefore, denies those allegations.

62.      The allegations in paragraph 62 are not directed to Navigators, and therefore no response is required.  To the extent that a response by Navigators is required, Navigators admits that Gemini has taken the position that payments have exhausted the applicable limits of the Gemini Policy (a position which Navigators disputes), and otherwise Navigators has insufficient information to admit or deny the remaining allegations of paragraph 62 of the Complaint and, therefore, denies those allegations.

63.      The allegations in paragraph 63 are not directed to Navigators, and therefore no response is required.  To the extent that a response by Navigators is required, Navigators admits that Ironshore contends that Gemini has not properly exhausted its policy limits and otherwise Navigators has insufficient information to admit or deny the remaining allegations of paragraph 63 of the Complaint and, therefore, denies those allegations.

64.      The allegations in paragraph 64 are not directed to Navigators, and therefore no response is required.  To the extent that a response by Navigators is necessary, Navigators has

insufficient information to admit or deny all of the allegations of paragraph 64 of the Complaint and, therefore, denies those allegations.

65. The allegations in paragraph 65 are not directed to Navigators, and, therefore, no response is required. To the extent the allegations of paragraph 65 are directed to Navigators, Navigators has insufficient information to admit or deny those allegations and, therefore, denies those allegations.

66. Composite Exhibit 12 speaks for itself, and, therefore, Navigators denies any allegations in paragraph 66 of the Complaint inconsistent therewith.

67. The allegations in paragraph 67 are not directed to Navigators, and therefore no response is required. To the extent that a response by Navigators is necessary, Navigators has insufficient information to admit or deny all of the allegations of paragraph 67 of the Complaint and, therefore, denies those allegations.

68. Navigators has insufficient information to admit or deny all of allegations of paragraph 68 of the Complaint and, therefore, denies those allegations.

69. Navigators admits that it agreed to defend Plaintiffs under a full and complete reservation of rights and pursuant to a defense agreement and denies any allegations in paragraph 69 of the Complaint inconsistent therewith.

70. The allegations in paragraph 70 are not directed to Navigators, and therefore no response is required. To the extent that a response is necessary, Navigators admits.

71. The allegations in paragraph 71 are not directed to Navigators, and therefore no response is required. To the extent that a response is necessary, Navigators admits that it agreed to defend Plaintiffs under a full and complete reservation of rights and pursuant to a defense

agreement, that Plaintiffs' objection to the proof of claim proceeded to a hearing on January 27, 2020, and denies the remaining allegations in paragraph 71 of the Complaint.

72. The allegations in paragraph 72 are not directed to Navigators, and therefore no response is required. To the extent that a response by Navigators is necessary, Navigators admits that Exhibit 13 speaks for itself and denies any allegations inconsistent therewith, and otherwise has insufficient information to admit or deny the remaining allegations of paragraph 72 of the Complaint and, therefore, denies those allegations.

73. The allegations of paragraph 73 of the Complaint contain a legal conclusion and are not directed to Navigators, and therefore no response is required. To the extent that a response by Navigators is necessary, Navigators admits that neither UOB nor Southstar appealed the Judgment and otherwise has insufficient information to admit or deny the remaining allegations of paragraph 73 of the Complaint and, therefore, denies those allegations.

74. To the extent the allegations in paragraph 74 are directed to Navigators, they are denied. Any indemnity obligation by Navigators is subject to the proper exhaustion of the underlying policies and Navigators' defenses, as set forth herein. To the extent the allegations are directed at other parties, Navigators has insufficient information to admit or deny those allegations in paragraph 74 of the Complaint and, therefore, denies those allegations.

75. To the extent the allegations in paragraph 75 are directed to Navigators, they are denied. Any indemnity obligation by Navigators is subject to the proper exhaustion of the underlying policies and Navigators' defenses, as set forth herein. To the extent the allegations are directed at other parties, Navigators has insufficient information to admit or deny those allegations in paragraph 75 of the Complaint and, therefore, denies those allegations.

76.     To the extent the allegations of paragraph 76 are directed to Navigators, Navigators admits that Composite Exhibit 14 speaks for itself and denies any allegations inconsistent therewith.  Any indemnity obligation by Navigators is subject to the proper exhaustion of the underlying policies and Navigators' defenses, as set forth herein.  To the extent the allegations are directed at other parties, Navigators has insufficient information to admit or deny those allegations in paragraph 76 of the Complaint and, therefore, denies those allegations.

77.     To the extent the allegations of paragraph 77 are directed to Navigators, they are denied.  Any indemnity obligation by Navigators is subject to the proper exhaustion of the underlying policies and Navigators' defenses, as set forth herein.  To the extent the allegations are directed at other parties, Navigators has insufficient information to admit or deny those allegations in paragraph 77 of the Complaint and, therefore, denies those allegations.

## V.
## CONDITIONS PRECEDENT

78.     To the extent the allegations of paragraph 78 are directed to Navigators, they are denied.  Navigators has insufficient information to admit or deny the remaining allegations of paragraph 78 of the Complaint and, therefore, denies those allegations.

79.     To the extent the allegations of paragraph 79 are directed to Navigators, they are denied.  Navigators has insufficient information to admit or deny the remaining allegations of paragraph 79 of the Complaint and, therefore, denies those allegations.

## VI.
## COUNT 1 – TURNOVER – 11 U.S.C. § 542

80. – 85.  Navigators incorporates its responses to the allegations contained in paragraphs one (1) through seventy-nine (79) as though fully set forth herein.  Navigators further states that the allegations of Count 1 do not appear to be directed to Navigators and are only directed at

11

Gemini and Ironshore, and, therefore, no response is required from this defendant. To the extent the allegations in paragraphs 80 – 85 are directed to Navigators, they are denied. To the extent the allegations are directed at other parties, Navigators has insufficient information to admit or deny those allegations and, therefore, denies those allegations.

## VII.
## COUNT 2 – BREACH OF CONTRACT

86. – 91. Navigators incorporates its responses to the allegations contained in paragraphs one (1) through seventy-nine (79) as though fully set forth herein. Navigators further states that the allegations of Count 2 do not appear to be directed to Navigators and are only directed at Gemini, Ironshore, and Great American. Therefore, no response is required from Navigators. To the extent the allegations in paragraphs 86 – 91 are directed to Navigators, they are denied. To the extent the allegations are directed at other parties, Navigators has insufficient information to admit or deny those allegations and, therefore, denies those allegations.

## VIII.
## COUNT 3 – REQUEST FOR DECLARATORY RELIEF

92. Navigators incorporates its responses to the allegations contained in paragraphs one (1) through seventy-nine (79) as though fully set forth herein.

93. To the extent the allegations of paragraph 93 are directed to Navigators, they are denied. Navigators has insufficient information to admit or deny the remaining allegations of paragraph 93 of the Complaint and, therefore, denies those allegations.

94. To the extent the allegations of paragraph 94 are directed to Navigators, they are denied. Navigators has insufficient information to admit or deny the remaining allegations of paragraph 94 of the Complaint and, therefore, denies those allegations.

95.    The allegations in paragraph 95 of the Complaint simply state a legal conclusion to which no response is required.  To the extent a response is required, Navigators has insufficient information to admit or deny all of the allegations of paragraph 95 of the Complaint and, therefore, denies those allegations.

96.    The allegations in paragraph 96 of the Complaint simply state a legal conclusion to which no response is required.  To the extent a response is required, Navigators has insufficient information to admit or deny all of the allegations of paragraph 96 of the Complaint and, therefore, denies those allegations.

**A.    Request for Declaratory Relief against Gemini**

97.    The allegations in paragraph 97 of the Complaint are not directed to Navigators and, therefore, no response is required.  To the extent a response is required, Navigators admits that Gemini failed to honor its contractual and common law obligations.

98.    The allegations in paragraph 98 of the Complaint are not directed to Navigators and, therefore, no response is required.  To the extent a response is required, Navigators has insufficient information to admit or deny all of the allegations of paragraph 98 of the Complaint and, therefore, denies those allegations.

**B.    Request for Declaratory Relief against Ironshore**

99.    The allegations in paragraph 99 of the Complaint are not directed to Navigators and, therefore, no response is required.  To the extent a response is required, Navigators has insufficient information to admit or deny all of the allegations of paragraph 99 of the Complaint and, therefore, denies those allegations.

100.    The allegations in paragraph 100 of the Complaint are not directed to Navigators and, therefore, no response is required.  To the extent a response is required, Navigators has

insufficient information to admit or deny all of the allegations of paragraph 100 of the Complaint and, therefore, denies those allegations.

**C.      Request for Declaratory Relief against Navigators**

101.    Denied.

102.    Denied and specifically denied as to all subparts.

**D.      Request for Declaratory Relief against Great American**

103.    The allegations in paragraph 103 of the Complaint are not directed to Navigators and, therefore, no response is required.  To the extent a response is required, Navigators has insufficient information to admit or deny all of the allegations of paragraph 103 of the Complaint and, therefore, denies those allegations.

104.    The allegations in paragraph 104 of the Complaint are not directed to Navigators and, therefore, no response is required.  To the extent a response is required, Navigators has insufficient information to admit or deny all of the allegations of paragraph 104 of the Complaint and, therefore, denies those allegations.

## IX.
## COUNT 4 – VIOLATIONS OF TEXAS INSURANCE CODE

105. – 112.    Navigators has joined in Great American's motion to dismiss Count 4 of the Complaint to the extent that Count 4 is directed against Navigators.  To the extent the allegations (including sub-parts) of paragraphs 105 - 112 are directed to Navigators and a response is required, they are denied and specifically denied as to sub-parts.  To the extent the allegations are directed at other parties, Navigators has insufficient information to admit or deny those allegations and, therefore, denies those allegations.

14

## X.
## COUNT 5 – VIOLATIONS OF SECTION 624.155, FLORIDA STATUTES

113. – 118.    Navigators has joined in Great American's motion to dismiss Count 5 of the Complaint to the extent that Count 5 is directed against Navigators.  To the extent the allegations (including sub-parts) of paragraphs 113 – 118 are directed to Navigators and a response is required, they are denied and specifically denied as to sub-parts.  To the extent the allegations are directed at other parties, Navigators has insufficient information to admit or deny those allegations and, therefore, denies those allegations.

## XI.
## COUNT 6 – FLORIDA COMMON LAW BAD FAITH

119. – 124.    Navigators has joined in Great American's motion to dismiss Count 6 of the Complaint to the extent that Count 6 is directed against Navigators.  To the extent the allegations (including sub-parts) of paragraphs 119 – 124 are directed to Navigators and a response is required, they are denied and specifically denied as to sub-parts.  To the extent the allegations are directed at other parties, Navigators has insufficient information to admit or deny those allegations and, therefore, denies those allegations.

## XII.
## PRAYER

Navigators denies that Plaintiffs are entitled to the relief requested in Plaintiffs' prayer for relief.

## GENERAL DENIAL

Navigators denies any allegations not expressly admitted herein.

15

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state cause of action against Navigators upon which relief can be granted.

### SECOND DEFENSE

The Complaint fails to present a justiciable controversy because the Complaint lacks any allegations indicating that either Gemini or Ironshore Specialty Insurance Company ("Ironshore") have paid the full limits of their policies in judgments or settlement of claims. By its terms, the Ironshore excess policy does not apply until the primary insurance issued by Gemini has been exhausted. Likewise, the express terms of the Navigators Excess Policy require that the limits of the Ironshore excess policy be paid in judgments or settlements before the Navigators Excess Policy is triggered. As a result, with respect to Navigators, the Complaint, at best, only presents a hypothetical question for the Court and, therefore, fails to present a justiciable case or controversy, is not ripe for adjudication, and should be dismissed for lack of subject matter jurisdiction.

### THIRD DEFENSE

The rights and obligations of Navigators are defined and controlled by the limits of liability, terms, exclusions, conditions and other provisions of the insurance policy at issue herein which are specifically incorporated by reference as if copied *in extenso*.

### FOURTH DEFENSE

Plaintiffs have failed to mitigate their damages.

### FIFTH DEFENSE

Plaintiffs' claims do not exceed the value of the underlying insurance and/or any valid and collectable insurance available to the insured.

16

## SIXTH DEFENSE

The Navigators Excess Policy is a follow form excess liability policy that has no obligation to defend the insured and no obligation to "pay anything" until the applicable limits of "underlying insurance" have been paid in judgment or settlements.

## SEVENTH DEFENSE

The Navigators Excess Policy identifies the Ironshore Excess Policy as controlling underlying insurance and is excess over the Ironshore Excess Policy and its underlying insurance policies. The Ironshore Excess Policy provides, "the Insured shall not, except at its own expense, settle any claim or suit or incur any defense costs for any amount to which this Policy applies without the Insurer's written consent." Any costs incurred by the insured were made without Navigators' consent.

## EIGHTH DEFENSE

The Navigators Excess Policy identifies the Ironshore Excess Policy as controlling underlying insurance and is excess over the Ironshore Excess Policy and its underlying insurance policies. If certain of the Plaintiffs do not qualify as insureds under the Ironshore Excess Policy, they are not insureds under the Navigators Excess Policy and Navigators will have no obligation to defend or indemnify those entities.

## NINTH DEFENSE

The claims against the insured include causes of action alleging fraud, intentional without holding of information and piercing the corporate veil. These causes of action do not constitute an "occurrence" nor do they include claims for "property damage." These claims would not be covered by "underlying insurance" and are not covered by the Navigators Excess Policy.

17

**TENTH DEFENSE**

Defective work is not "property damage" and costs and expenses associated with repairing or replacing solely defective work are not damages covered by "underlying insurance" and are not covered by the Navigators Excess Policy.

**ELEVENTH DEFENSE**

Claims for consequential damages, including, but not limited to, overhead, lost profits, and diminution and value are not damages covered by "underlying insurance" and are not covered by the Navigators Excess Policy.

**TWELFTH DEFENSE**

The facts as currently known implicate certain exclusions in the Gemini Primary Policy, including, but not limited to, the Mold exclusion.

**THIRTEENTH DEFENSE**

The facts as currently known implicate certain exclusions in the Gemini Primary Policy, including, but not limited to, the EIFS exclusion.

**FOURTEENTH DEFENSE**

The facts as currently known implicate certain exclusions in the Gemini Primary Policy, including, but not limited to, the Damage to Property exclusion.

**FIFTEENTH DEFENSE**

The facts as currently known implicate certain exclusions in the Gemini Primary Policy, including, but not limited to, the Damage to Your Product exclusion.

**SIXTEENTH DEFENSE**

The facts as currently known implicate certain exclusions in the Gemini Primary Policy, including, but not limited to, the Contractors-Professional Liability exclusion.

## SEVENTEENTH DEFENSE

The facts as currently known implicate certain exclusions in the Gemini Primary Policy, including, but not limited to, the Impaired Property exclusion.

## EIGHTEENTH DEFENSE

The Navigators Excess Policy only applies to property damage that happens while the policy is in effect. To the extent UOB/Hines or Owners and/or its managing members rented the units prior to the sale to Southstar, coverage may be excluded pursuant to Exclusion 2.b.3. in the Construction Project Endorsement Completed Operations Extension Endorsement (No. 4) of the Navigators Excess Policy.

## NINETEENTH DEFENSE

Although limited following form, the Navigators Excess Policy is governed by its own terms, conditions, provisions, exclusions and endorsements.

## TWENTIETH DEFENSE

The Navigators Excess Policy does not cover "damages arising from the Repair Work" to the extent they do not constitute "loss" arising out of an "event" or did not occur prior to the expiration of the Navigators policy period.

## TWENTY-FIRST DEFENSE

The Complaint fails to state a cause of action against Navigators upon which relief can be granted, because, among other things, the "Judgment" referred to in paragraph 72 and attached to the Complaint as Exhibit 13 is a valuation of the Amended Proof of Claim filed in the Bankruptcy Action and is not the entry of a final judgment against Plaintiffs.

## TWENTY-SECOND DEFENSE

Plaintiffs' claims against Navigators are barred, in whole in part, by the equitable doctrines of estoppel, waiver and laches and to the extent there was a breach of any conditions in the Navigators Excess Policy.

## TWENTY-THIRD DEFENSE

The Complaint fails to state a cause of action against Navigators upon which relief can be granted, because, among other things, Navigators has agreed to defend under a full and complete reservation of rights and pursuant to a defense agreement, which includes an agreement by Plaintiffs not to pursue any bad faith claim prior to Navigators' assumption of the defense.

## RESERVATION OF RIGHTS

Navigators specifically reserves its right to assert any and all applicable terms, conditions, exclusions and provisions of the Navigators Excess Policy and "underlying insurance" that may become applicable as discovery remains ongoing.

**WHEREFORE**, Navigators respectfully requests that after due proceedings had, that any and all claims asserted against it by Plaintiffs be dismissed, at Plaintiffs' costs, and for all other general and equitable relief as this court deems just and proper.

**DEFENDANT NAVIGATORS SPECIALTY INSURANCE COMPANY'S CROSS-CLAIM AGAINST GEMINI INSURANCE COMPANY, IRONSHORE SPECIALITY INSURANCE COMPANY, COLLIS ROOFING, INC., DA PAU ENTERPRSISES, INC., FLORIDA CONSTRUCTION SERVICES, INC. AND STRUCTURAL CONTRACTORS SOUTH, INC.**

Defendant, Navigators Specialty Insurance Company ("**Navigators**"), through its undersigned counsel, hereby cross-claims against Co-Defendants, Gemini Insurance Company ("**Gemini**"), Ironshore Specialty Insurance Company ("**Ironshore**"), Collis Roofing, Inc. ("**Collis**"), Da Pau Enterprises, Inc. ("**Da Pau**"), Florida Construction Services, Inc. ("**FCS**"), and Structural Contractors South, Inc. ("**Structural**"), and states:

## PARTIES

1.    Navigators is a corporation organized and existing under the laws of New York with its principal place of business in Hartford, Connecticut.

2.    Defendant Gemini is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Arizona.

3.    Defendant Ironshore is a corporation organized and existing under the laws of the state of Arizona.

4.    Defendant Collis is a corporation organized and existing under the laws of the state of Florida with its principal place of business in Florida.

5.    Defendant Da Pau is a corporation organized and existing under the laws of the state of Florida with its principal place of business in Florida.

6.    Defendant FCS is a corporation organized and existing under the laws of the state of Florida with its principal place of business in Florida.

7.    Defendant Structural a corporation organized and existing under the laws of the state of Florida with its principal place of business in Florida.

21

8.      Collis, Da Pau, FCS, and Structural shall each be referred to herein as the "**Subcontractor Defendants**."

## JURISDICTION AND VENUE

8.      This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

9.      This proceeding relates to *In re Urban Oaks Builders LLC*, Case No. 18-34892, under Chapter 11 of the Bankruptcy Code, pending in the Houston Division of the United States Bankruptcy Court for the Southern District of Texas.  This matter is non-core pursuant to 28 U.S.C. § 157.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL ALLEGATIONS

11.     This insurance coverage action filed by Plaintiffs Urban Oaks Builders, LLC, Hines Interests Limited Partnership, 1662 Multifamily LLC, Hines 1662 Multifamily, LLC, Hines Investment Management Holdings Limited Partnership, HIMH GP, LLC, Hines Real Estate Holdings Limited Partnership, and JCH Investments (collectively "**Plaintiffs**") arises out of a state court construction defect action concerning the construction of a 306-unit apartment project in Celebration, Florida (the "**Project**").

12.     In connection with the Project, the developer, Hines Interests Limited Partnership ("**Hines**"), and the general contractor, Urban Oaks Builders, LLC ("**UOB**") (collectively, "**Hines/UOB**"), procured insurance policies pursuant to a controlled insurance program ("**CIP**") through Gemini, Ironshore, Navigators, and Great American Assurance Company.

13.     The Subcontractor Defendants enrolled in the CIP for the Project pursuant to their respective subcontracts with UOB (the "**Subcontracts**").  Copies of the Subcontracts are attached

22

as **Exhibits 1, 2, 3 and 4** to Plaintiffs' First Amended Complaint [Dkt. #78-1, 78-2, 78-3, 78-4] and are incorporated by reference herein. A copy of the Wrap Manual for the CIP is attached as **Exhibit 5** to Plaintiffs' First Amended Complaint [Dkt. #78-5] and is incorporated by reference herein.

14. In conjunction with the CIP, Gemini issued a primary commercial general liability insurance policy to Hines/UOB which was in effect between June 28, 2012 and July 31, 2017, with limits of $2 million each occurrence/$4 million general aggregate/$4 million products-completed operations aggregate (the "**Gemini Primary Policy**"). A copy of the Gemini Primary Policy is attached as **Exhibit 6** to Plaintiffs' First Amended Complaint [Dkt. #78-6] and is incorporated by reference herein.

15. Ironshore issued an excess policy to Hines/UOB which was in effect between June 28, 2012 and July 31, 2017, with limits of as set forth in endorsement 15 of the "**Ironshore Excess Policy**". A copy of the Ironshore Excess Policy is attached as **Exhibit 7** to Plaintiffs' First Amended Complaint [Dkt. #78-7] and is incorporated by reference herein.

16. The Ironshore Excess Policy identifies the Gemini Primary Policy as the Controlling Underlying Policy.

17. The Ironshore Excess Policy is excess over the Gemini Primary Policy, and provides that Ironshore "shall have the right but not the duty to assume charge of the defense or settlement of any claim or suit against the Insured to which this Policy may apply *upon exhaustion of the applicable limits of liability* of the [Gemini Primary Policy]."

18. Navigators issued a second layer excess policy to Hines/UOB which was in effect between June 28, 2012 and July 31, 2017, with limits of $15 million each event/$15 million general

23

aggregate/$15 million products-completed operations aggregate (the "**Navigators Excess Policy**"). A copy of the Navigators Excess Policy is attached hereto as **Exhibit A**.

19.　　The Navigators Excess Policy identifies the Ironshore Excess Policy as controlling underlying insurance and is excess over the Ironshore Excess Policy and its underlying insurance policies.

20.　　The insuring agreement of the Navigators Excess Policy provides that Navigators will have a duty to defend the insured *only* if the Ironshore Excess Policy is first exhausted by payment of the full limit of insurance in judgments or settlement of claims:

**SECTION I ‒ COVERAGE**

　1. Insuring Agreement

**\*\*\***

> c. We have the right but not the duty to associate with the insured or any other insurer in the investigation of claims or defense of suits to which this insurance could be reasonably expected to apply. ***We will have the duty to*** investigate such claims or ***defend such suits only if the "controlling underlying insurance's" [Ironshore's] expressed duty to investigate or defend ends because it has paid the full limit of insurance in judgments or settlement of claims***.

*See Exhibit A*, p. 2.

21.　　The Navigators Policy has no obligation to pay indemnity absent proper underlying exhaustion.

22.　　Upon information and belief, UOB completed construction of the Project in 2016.

23.　　Thereafter, upon information and belief, Southstar Capital Group I, LLC ("**Southstar**"), and its affiliates, Cottington Road TIC, LLC and Durban Road TIC, LLC (collectively, the "**Southstar Entities**"), purchased the Project from its original owner, an affiliate of Hines.

24

24.     Upon information and belief, the Southstar Entities subsequently made claims against UOB and Hines regarding the Project, seeking damages for, among other things, allegedly defective construction.

25.     Upon information and belief, on February 13, 2018, the Southstar Entities filed a lawsuit against UOB and various business entities affiliated with Hines in the Circuit Court for the Ninth Judicial Circuit in and for Osceola County, Florida styled *Southstar Capital Group, I, LLC, et al. v. 1662 Multifamily LLC, et al.*, asserting claims for damages caused by defects and deficiencies in the construction of the Project (the "**Underlying Lawsuit**").  A copy of the Complaint in the Underlying Lawsuit is attached as **Exhibit 10** to Plaintiffs' First Amended Complaint [Dkt. #78-10] and is incorporated by reference herein.

26.     On November 14, 2017, the Southstar Entities and UOB entered into a Standstill Agreement, delaying the filing of the Underlying Lawsuit for three to four weeks in exchange for a payment of approximately $2,000,000.00.  A copy of the Standstill Agreement is attached hereto as **Exhibit B.**

27.     The Standstill Agreement does not constitute a release of claims.  (*See* Exhibit B, ¶6.)

28.     Upon information and belief, Gemini issued three payments to Hines/UOB in connection with the Underlying Lawsuit (the "Payment") and took the position that the Payment exhausted its $2,000,000.00 per occurrence limits and that it no longer had any defense or indemnity obligations under the Gemini Primary Policy.

29.     The Insuring Agreement of the Gemini Primary Policy provides:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPRERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

25

a.       We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. ... But:

***

**(2)**       Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A ...

*See* Exhibit 6 to Plaintiffs' First Amended Complaint [Dkt. #78-6].

30.      Upon information and belief, Gemini ceased providing UOB and Hines with a defense to the Underlying Lawsuit following the Payment.

31.      Upon information and belief, on or about August 31, 2018, UOB filed a voluntary petition in the United States Bankruptcy Court for the Southern District of Texas for relief under Chapter 11 of Title 11 of the United States Code in the case *In Re: Urban Oaks Builders, LLC*, Case No. 18-34892 (the "**Bankruptcy Action**").  Subsequently, Southstar filed a Proof of Claim in the Bankruptcy Action (the "**Proof of Claim**").

32.      On or about October 2019, Navigators agreed to defend Hines/UOB under a full and complete reservation of rights and subject to a defense agreement.

33.      Upon information and belief, Gemini never provided Hines/UOB with a defense to the Proof of Claim Hearing in the Bankruptcy Action.

### COUNT I – DECLARATORY RELIEF AGAINST GEMINI

34.      Navigators hereby incorporates by reference and restates paragraphs 1 through 33 as if fully stated herein.

35.      Payments made by Gemini to UOB or others in investigating or defending against the claim do not erode the limits of the Gemini Primary Policy.

36.      Payment of amounts for damages not covered under the Navigators Excess Policy do not exhaust the limits of "underlying insurance".

37.      The policy limits of the Gemini Primary Policy have not been exhausted.

26

38. The Gemini Primary Policy provides that "[Gemini's] duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements...."

39. The mere payment by an underlying carrier of its limits without procurement of a release is not the payment of a judgment or settlement, and the underlying carrier retains the duty to defend.

40. The amount paid by Gemini was not for a judgment or settlement.

41. Gemini's defense obligations persist.

42. An actual, present and justiciable controversy exists between Navigators and Gemini regarding whether the policy limits of the Gemini Primary Policy have been exhausted, warranting the entry of declaratory judgment by this Court.

WHEREFORE, Defendant/Cross-Claim Plaintiff, Navigators Specialty Insurance Company, respectfully requests this Honorable Court to enter a judgment in its favor, declaring that:

A. Gemini has an ongoing duty to defend Hines/UOB in the Underlying Lawsuit and the Bankruptcy Action;

B. The policy limits of the Gemini Primary Policy have not been exhausted;

C. There are multiple occurrences as defined under the Gemini Policy;

D. Gemini must pay its aggregate limit prior to exhausting the Gemini Primary Policy; and

E. Any and all such other relief this Honorable Court deems just and proper under the circumstances.

### COUNT II – EQUITABLE AND/OR CONTRACTUAL SUBROGATION AGAINST GEMINI

43. Navigators hereby incorporates by reference and restates paragraphs 1 through 42 as if fully stated herein.

44.　　Under the terms of the Gemini Primary Policy, Gemini had and has an ongoing duty to defend Hines/UOB in the Underlying Lawsuit and the Bankruptcy Action, which duty did not cease until Gemini "used up the applicable limit of insurance in the payment of judgments or settlements....".

45.　　Pursuant to the terms of the Gemini Primary Policy, Gemini was primarily liable to provide a defense to Hines/UOB in the Underlying Lawsuit and the Bankruptcy Action.

46.　　By failing to provide a defense, Gemini has breached a contracted-for duty to its insureds.

47.　　Following Gemini's breach of its contractual duty by failing to defend Hines/UOB, Navigators agreed to provide a defense to Hines/UOB under a full and complete reservation of rights and subject to a defense agreement.

48.　　The defense costs paid by Navigators are primarily owed by Gemini to Hines/UOB.

49.　　Gemini will be unjustly enriched if it is allowed to escape its ongoing defense obligations.

50.　　As a result, Navigators is entitled to a reimbursement from Gemini of the amounts Navigators expended in defending Hines/UOB through equitable and/or contractual subrogation.

WHEREFORE, Defendant/Cross-Claim Plaintiff, Navigators Specialty Insurance Company, respectfully requests this Honorable Court to enter a judgment in its favor, declaring that:

A. Navigators is entitled to equitable and/or contractual subrogation from Gemini for the amounts it incurred in defending Hines/UOB; and

B. Any and all such other relief this Honorable Court deems just and proper under the circumstances.

## COUNT III – DECLARATORY RELIEF AGAINST IRONSHORE

51.     Navigators hereby incorporates by reference and restates paragraphs 1 through 33 as if fully stated herein.

52.     Item 3 in the Ironshore Policy declarations indicates that the Ironshore Policy has a $10 million aggregate limit.

53.     Endorsement 15 in the Ironshore Policy states that Item 3 of the Ironshore Policy is deleted in its entirety and replaced by the text of Endorsement 15, which includes a $25 million aggregate limit.

54.     Accordingly, the Ironshore Policy has a $25 million aggregate limit applicable to the present claim involving the Project.

55.     Ironshore disputes that the aggregate limit of the Ironshore Policy is $25 million, and instead contends that the aggregate limit of the Ironshore Policy is $10 million.

56.     Because the exhaustion of the limits of underlying insurance is required before Navigators owes any policy obligations, an actual, present and justiciable controversy exists between Navigators and Ironshore regarding the extent of the Ironshore Policy's limits, warranting the entry of declaratory judgment by this Court.

WHEREORE Defendant/Cross-Claim, Plaintiff Navigators Specialty Insurance Company, respectfully requests this Honorable Court to enter a judgment in its favor, declaring that:

A.  The aggregate limit of the Ironshore Policy is $25 million; and

B.  Any and all such other relief this Honorable Court deems just and proper under the circumstances.

## COUNT IV – DECLARATORY RELIEF AGAINST SUBCONTRACTOR DEFENDANTS

57.     Navigators hereby incorporates by reference and restates paragraphs 1 through 33 as if fully stated herein.

58.     The Subcontractor Defendants enrolled in the CIP for the Project.

59.     The CIP Manual provides that UOB must provide commercial general liability insurance with limits of $2 million each occurrence, $4 million general aggregate, $4 million products/completed operations aggregate and Excess Liability insurance with limits of $5 million each occurrence, $5 million annual aggregate for a total of $7-9 million primary noncontributory insurance.   Thereafter, all enrolled contractors, including subcontractors, are required to have insurance and include Hines/UOB as an additional insured.

60.     The Subcontractor Defendants have broad indemnity and additional insured obligations to Hines/UOB pursuant to the Subcontracts:

> SECTION 29: SUBCONTRACTOR'S INDEMNITY OBLIGATIONS
>
> A.      SUBCONTRACTOR AGREES TO PROTECT, DEFEND, PAY, INDEMNIFY AND HOLD THE OWNER AND CONTRACTOR AND THEIR RESPECTIVE AFFILIATES, MEMBERS, OFFICERS, EMPLOYEES AND AGENTS HARMLESS FROM ALL CLAIMS, DEMANDS, ACTIONS, LIABILITIES, LOSSES, DAMAGES, OR EXPENSES (INCLUDING BUT NOT LIMITED TO FEES AND CHARGES OF ATTORNEYS, CONSULTANTS, EXPERT WITNESSES, AND OTHER PROFESSIONALS AND COURT AND/OR MEDIATION AND/OR ARBITRATION COSTS) WHICH MAY ARISE FROM THE FOLLOWING:
>
> ***
>
> 2. ALLEGED OR ACTUAL DAMAGE TO ANY PROPERTY;
>
> ***
>
> C.      Subcontractor agrees that it will obtain comprehensive general liability or commercial liability insurance, as required by Section 18 hereof, which will provide contractual liability insurance applicable to Subcontractor's indemnity obligations set forth in this Section. Further, Subcontractor agrees that the comprehensive general liability or commercial liability insurance policy obtained by Subcontractor shall name Contractor as an additional insured.

*See* Exhibits 1-4 to Plaintiffs' First Amended Complaint [Dkt. #78-1, 78-2, 78-3, 78-4]

61.    The Navigators Excess Policy is excess over any valid and collectible insurance available to the insured, including but not limited to, the insurance policies of the Subcontractor Defendants.

62.    It is the position of Hines/UOB that they are entitled to a defense and indemnity of the Underlying Lawsuit and the Bankruptcy Action under the Navigators Excess Policy. Navigators disputes any such right to a defense due to the failure to exhaust the policy limits of all other valid and collectable insurance, including the insurance policies of the Subcontractor Defendants.    This dispute constitutes an actual, ripe and justiciable controversy between the parties.

63.    An actual, present and justiciable controversy exists between Navigators and the Subcontractor Defendants warranting the entry of declaratory judgment by this Court.

WHEREFORE,    Defendant/Cross-Claim    Plaintiff,    Navigators    Specialty    Insurance Company, respectfully requests this Honorable Court to enter a judgment in its favor, declaring that:

A. The Navigators Excess Policy is excess over the insurance policies of the Subcontractor Defendants;

B. The policy limits of the insurance policies of the Subcontractor Defendants have not been exhausted; and

C. Any and all such other relief this Honorable Court deems just and proper under the circumstances.

Dated:  July 31, 2020

Respectfully Submitted,

By:  */s/ Susan N.K. Gummow*

31

Susan N.K. Gummow (Admitted Pro Hac Vice)
Igor Shleypak (Admitted Pro Hac Vice)
Foran Glennon Palandech Ponzi & Rudloff PC
222 N. LaSalle St., Suite 1400
Chicago, IL 60601
Telephone:        (312) 863-5000
Fax:                   (312) 863-5099
Email:  sgummow@fgppr.com
          ishleypak@fgppr.com
*Bankruptcy Counsel for Navigators Specialty Insurance Company*

and

/s/ Wayne *S.* Karbal
Wayne S. Karbal
Illinois Bar No. 6207190
Thomas D. Ferguson
Illinois Bar No. 6312788
Karbal, Cohen, Economou, Silk & Dunne, LLC
150 S. Wacker, Ste. 1700
Chicago, IL  60606
Telephone:        (312) 431-3700
Fax:                   (312) 431-3670
Email:  wkarbal@karballaw.com
          tferguson@karballaw.com
*Admitted pro hac vice*
*Counsel for Navigators Specialty Insurance Company*

32

# EXHIBIT A



# FOLLOW FORM EXCESS LIABILITY POLICY DECLARATIONS

| | | | |
|---|---|---|---|
| Policy Number: | **SE12FXS754225IC**<br>**New** | Producer Number: | **RTSP0001** |

| | | | |
|---|---|---|---|
| Insuring Company: | **Navigators Specialty**<br>**Insurance Company**<br>**One Penn Plaza, 32nd Floor**<br>**New York, NY 10019** | Producer: | **RT Specialty Insurance Services,**<br>**LLC**<br>**3400 W. Olive Avenue, Suite 350**<br>**Burbank, CA 91515** |

1. Named Insured: **Urban Oaks Builders, LLC**
   Address: **2800 Post Oak Blvd**
   **Houston , TX 77056**

2. Policy Period: From **06/28/2012** to **06/28/2017**
   (At 12:01 A.M. Standard Time at your mailing address shown above.)

3. Limits of Insurance:

| | |
|---|---|
| Each Event | **$15,000,000** |
| General Aggregate | **$15,000,000** |
| Products-Completed Operations Aggregate | **$15,000,000** |

4. Controlling Underlying Insurance:

| Coverage/Carrier | Policy Term |
|---|---|
| **Ironshore Specialty Insurance Company/**<br>**001402500 / Excess Liability** | **6/28/2012 - 6/28/2017** |

5. Underlying Limits:

| | |
|---|---|
| Each Event: | **$10,000,000** |
| General Aggregate: | **$10,000,000** |
| Products-Completed Operations Aggregate: | **$10,000,000** |

6. Premium:

| | | |
|---|---|---|
| a. | Policy Premium: | **$110,000** |
| b. | Minimum Earned Premium: | **$27,500** |
| c. | Terrorism Premium: | **Excluded** |

7. Endorsements Attached to this Policy

| | |
|---|---|
| Follow Form Excess Liability Policy | NAV-FXS-001 (04/10) |
| Claim Reporting Procedures | NAV-PHN-200 (06/08) |
| (OFAC) Advisory Notice to Policyholders | NAV-ECD-PHN-201 |
| Policyholder Notice / Important Notice | NAV-ECD-PHN-205 |
| Service of Suit Endorsement | NAV-ECD-300 (04/05) |
| Exclusion - Condos and Townhomes | NAV-FXS-327 (04/10) |
| Exclusion of Certified Acts of Terrorism | NAV-FXS-401 (04/10) |
| Amendment - Aggregate Limits of Insurance | NAV-ECD-100 (03/05) |
| Construction Project Endorsement Completed Operations Extension | NAV-ECD-100 (03/05) |
| Construction Project Endorsement Completed Operations And Repair Work | NAV-ECD-100 (03/05) |

Signed at: _____  by_____
                                                                          Authorized Representative

This day of: _____

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.



**Following Form Excess Liability Policy**

Various provisions of this policy restrict coverage. Read the entire policy carefully to determine your rights, duties and what is and is not covered.

Throughout the policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the company providing this insurance. Other words and phrases that appear in quotations in this policy have the meanings given them in SECTION V – DEFINITIONS of this policy.  Words and phrases defined in "underlying insurance" have the meanings given them in that policy.

**SECTION I – COVERAGE**

   1.  Insuring Agreement

     a.  We will pay those sums the insured becomes legally obligated to pay as damages for "loss" to which this insurance applies.  This insurance only applies to:

        1.  "loss" to which the "controlling underlying insurance" applies, or would apply but for the exhaustion of an Aggregate Limit; and

        2.  Damages that exceed the "underlying limits" paid by "underlying insurance" with our consent;

     b.  This insurance is subject to the provisions of the "controlling underlying insurance" in effect at the beginning of this policy period unless a conflicting provision is contained in, or endorsed to, this policy;

     c.  We have the right but not the duty to associate with the insured or any other insurer in the investigation of claims or defense of suits to which this insurance could be reasonably expected to apply.  We will have the duty to investigate such claims or defend such suits only if the "controlling underlying insurance's" expressed duty to investigate or defend ends because it has paid the full limit of insurance in judgments or settlement of claims. We have the right, at our discretion, to settle any claim to which this insurance applies. Expenses we incur to investigate any claim or defend any suit will be paid in addition to the Limits of Insurance except when such costs reduce the limits of any "underlying insurance," in which case they will reduce our Limits of Insurance;

     d.  The amount we pay is limited. See SECTION III – LIMITS OF INSURANCE.

   2.  Exclusions

     This insurance does not apply to any liability for "loss:"

     a.  arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of "asbestos;"

**SECTION II – WHO IS AN INSURED**

Any person or organization that is an insured in "controlling underlying insurance" is an insured in this insurance to the same extent.

**SECTION III – LIMITS OF INSURANCE**

The Limits of Insurance shown in item 3 of the Declarations and the rules below fix the most we will pay regardless of the number of insureds, claims made or suits brought, or persons or organizations making claims or bringing suits.

   1.  The General Aggregate Limit is the most we will pay for all damages under this policy, except damages because of bodily injury or property damage included with the Products-Completed Operations Aggregate if applicable. The General Aggregate Limit will apply to the same Coverages and in the same manner as Aggregate Limits apply to the "controlling underlying insurance;"

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.



2. The Product-Completed Operations Aggregate Limit is the most we will pay for all damages because of bodily injury or property damage included within any applicable products-completed operations hazard;

3. Subject to paragraphs 1. and 2. above, the Each Event Limit  is the most we will pay for all damages arising out of any one "event."

**SECTION IV – CONDITIONS**
Conditions applicable to the "controlling underlying insurance" apply to this insurance unless contrary to the following:

1. Appeals
   We may appeal any judgment which could result in a payment under this policy. We will pay all costs associated with such appeal in addition to our Limits of Insurance. Any such appeal will not increase our Limits of Insurance.

2. Duties When There is a Claim or Suit
   You must see to it that we are notified as soon as practicable of any claim reported to the "controlling underlying insurance."  Notice may be sent to our address shown in the Declarations.

3. Legal Action Against Us
   No person or organization has a right under this insurance:
   a.  to join us as a party or otherwise bring us into a suit asking for damages from an insured; or
   b.  to sue us on this insurance unless all of its terms have been fully complied with.

4. Maintenance of Underlying Insurance
   During this policy period you will maintain "underlying insurance" with the same coverage and limits that were in effect at the beginning of this policy period. If changes are made to the "underlying insurance" that increase our exposure under this policy, you must notify us of such changes.  We have the right to decline to follow such changes or make an additional premium charge.
   If you fail to comply with any part of this Condition we will only be liable to the extent to which we would have been liable had you complied.
   Reduction of "underlying limits" by the payment of judgments or settlements because of "loss," during this policy period and to which this insurance applies, or would apply but for the amount of the damages, will not be considered a failure to maintain "underlying insurance."

5. Other Insurance
   This insurance is excess over any valid and collectable insurance available to the insured except insurance purchased specifically to apply in excess of this policy. Nothing in this condition will reduce the amount of "underlying limits."

6. Payment of Damages
   When the amount of damages payable under this policy has been determined by final judgment or a written settlement agreement to which we agree, we will pay that amount, up to our applicable Limits of Insurance, after the insured or the "controlling underlying insurance" has paid, or agreed to pay, the full amount of the "underlying limits."

7. Cancellation
   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, at least 10 days before the effective date of cancellation for non-payment of premium, or 30 days before the effective date of cancellation for any other reason. If we cancel, return premium, if any, will be calculated on a pro rate basis, subject to any Minimum Earned Premium shown in the Declarations.

   You may cancel this policy at any time after returning it to us or the Producer shown in the Declarations. If you cancel, return premium, if any, will be calculated on a short rate basis, subject to any Minimum Earned Premium shown in the Declarations.

NAV-FXS-001 (04/10)　　　　　Navigators Specialty Insurance Company　　　　　Page 3 of 4

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.



8. Non-Renewal

We may non-renew this policy by mailing or delivering to the first Named Insured written notice of Non-Renewal at least 30 days before the expiration date.

9. Premium

The Premium shown in item 6.a. of the Declarations is the premium for the Coverage we provide. The Premium shown in item 6.b. of the Declarations is the minimum amount that we will retain in the event the policy is cancelled at any time for any reason.

The first Named Insured is responsible for the payment of premium when due under this policy and will be the recipient of all return premiums, if any.

10. Representations

By accepting this policy you agree:

a. the statements in the applications for this policy and the "underlying insurance," and the Declarations are accurate and complete;

b. we have issued this policy in reliance upon those statements; and

c. misrepresentation of, or concealment of, material information will void coverage under this policy.


**SECTION V – DEFINITIONS**

Words and phrases defined by the "controlling underlying insurance" have the same meanings in this policy, except for the following:

1. "Asbestos" means the mineral in any form.

2. "Controlling underlying insurance" means the policy listed in item 4 of the Declarations, or its renewal or replacement.

3. "Event" means an accident, incident, occurrence, offense, wrongful act or other "loss" causing event defined by and to which the "controlling underlying insurance" applies.

4. "Loss" means bodily injury, property damage, personal and advertising injury or other loss defined by and to which the "underlying insurance" applies.

5. "Underlying insurance" means the "controlling underlying insurance" and its underlying insurance policies, if any, including their renewals or replacements.

6. "Underlying limits" means the amount shown in item 5 of the Declarations. This is the minimum amount which must be paid by "underlying insurance" before we pay anything.


**In Witness whereof, the issuing Company has caused this policy to be signed below and countersigned by a duly authorized representative of such Company.**


Stanley A. Galanski, President                 Jeff L. Saunders, Vice President

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

# Policyholder Notice



## CLAIM REPORTING PROCEDURES

Conditions of the policy require that in the event of a claim, you notify us as soon as practicable. All claims notifications are to be reported to the Rye Brook Claims Office by electronic mail to RBClaims@navg.com.

In the alternative, claim notices may also be:

- mailed to the Rye Brook Claims Office at:

  Navigators Management Co., Inc.
  Claims Division
  6 International Drive, Suite 100
  Rye Brook, NY 10573

- or faxed to 914-933-6018

All claims notifications must be accompanied by an ACORD loss form and should contain current contact information for the insured and claimant(s) as well as detailed description of the loss.

If the insured files a claim with the agent, it is the agent's responsibility to forward the claim to the Rye Brook Claim Office.

**NAV-PHN-200 (6/08)**              Navigators Specialty Insurance Company

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

| **Policyholder Notice** |  |
|---|---|

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

| NAV-ECD-PHN-201 (4/05) | Navigators Specialty Insurance Company | Page 1 of 1 |
|---|---|---|

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

| Policyholder Notice |  |
|---|---|

**IMPORTANT NOTICE**

To obtain information or make a complaint you may call Navigators Insurance Company's toll-free telephone number at:

**1-888-222-2642**

You may also write to Navigators Insurance Company at:

Navigators Insurance Company
1375 E. Woodfield Road, Suite 720
Schaumburg, IL 60173

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance at:

P.O. Box 149104
Austin TX 78714-9104
FAX # (512) 475-1771

PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact your agent or Navigators Insurance Company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the policy.

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**COMMERCIAL UMBRELLA/EXCESS LIABILITY**
**NAV-ECD-300 (4/05)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE PART
EXECUTIVE PERSONAL EXCESS PROTECTION

In the event we fail to pay any amount due under this insurance, we will, at your request, submit to the jurisdiction of a court of competent jurisdiction within the United States of America. This does not constitute a waiver of our right to remove, remand, or transfer any such suit to any other court of competent jurisdiction in accordance with the applicable statutes of the state of United States. In any suit instituted against us, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

Service of process in such suit may be made upon the Superintendent, Commissioner or Director of Insurance or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by you or on your behalf.

We designate the President of NIC Insurance Company, One Penn Plaza, 32nd Floor, New York, NY 10119, as the person to whom the Superintendent, Commissioner or Director of Insurance is authorized to mail such process, or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this policy arises.

All other terms of the policy remain unchanged.

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**FOLLOW FORM EXCESS LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONDOS AND TOWNHOMES

This endorsement modifies insurance provided under the following:

FOLLOW FORM EXCESS LIABILITY COVERAGE PART

A.  The following is added to SECTION I – COVERAGE, 2. Exclusions:
This insurance does not apply to:

1.  any liability arising out of any goods, materials or work provided or performed by or for any insured to or upon any "condominium or townhouse;"

B.  The following is added to SECTION V – DEFINITIONS:

"Condominium or townhouse" means any property whose deed or Codes, Covenants and Restrictions describe the structure as a condominium or townhouse, including any unit that has been converted to a condominium or townhouse.

All other terms of the policy remain unchanged.

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**FOLLOW FORM EXCESS LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

A.  The following exclusion is added to SECTION I – COVERAGE, 2. Exclusions:

This insurance does not apply to any liability:

1. for "loss" arising out of a "certified act of terrorism."

B.  The following is added to SECTION V - DEFINITIONS:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.

All other terms of the policy remain unchanged.

**NAV-FXS-401 (04/10)**                 Navigators Specialty Insurance Company                 **Page 1 of 1**

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - AGGREGATE LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE PART
EXECUTIVE PERSONAL EXCESS PROTECTION

A.   Item 3. of the Declarations, Limits of Insurance: is replaced by the following:

Each Event      $15,000,000
Aggregate       $15,000,000

B.   SECTION III - LIMITS OF INSURANCE is deleted and replaced by the following:

The Limits of Insurance show in item 3. of the Declarations and the rules below fix the most we will pay regardless of the number of insureds, claims made or suits brought, or person or organizations making claims or bringing suits.

1.   If limits of "controlling underlying insurance" are aggregated, the Aggregate Limit of this policy will apply to the same Coverages and in the same manner as the Aggregate Limits apply to "controlling underlying insurance." However, we will not pay more than:
a. $37,500,000 for all damages subject to a General Aggregate; or
b. $30,000,000 for all damages subject to a Products-Completed Operations Aggregate

2.   Subject to paragraph 1. above, the Each Event Limit is the most we will pay for all damages arising out of any one "event."

All other terms of the policy remain unchanged.

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**COMMERCIAL UMBRELLA/EXCESS LIABILITY**
**NAV-ECD-100 (3/05)**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# Construction Project Endorsement
# Completed Operations Extension

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE PART
EXECUTIVE PERSONAL EXCESS PROTECTION

SEE ENDT #4 adding Aviva at Celebration

SCHEDULE
Project Name: 1. Ashford at Brookhaven
                       2. One Waterfall
Project Address: 1. 1377 Dresden Drive Atlanta, GA
                          2. 5050 Hidalgo Houston, TX 77056
Project Description: 1. Atlanta, GA 4 story wood frame building with 215 apartments
                              2. Houston, TX - commercial grade building with 323 apartment u

A.   SECTION I – COVERAGE, 1. Insuring Agreement, paragraph a. is deleted and rep
       the following:
       a.   We will pay those sums the insured becomes legally obligated to pay as dama
            bodily injury or property damage to which this insurance applies.  This insurance only
            applies to:
            1.   bodily injury or property damage to which the "controlling underlying insurance"
                 applies, or would apply but for the exhaustion of an Aggregate Limit, caused by an
                 occurrence or offense that takes place at the "covered project;"
            2.   damages that exceed the "underlying limits" paid by "underlying insurance" with our
                 consent; and
            3.   bodily injury or property damage that occurs during this policy period;
            Bodily injury or property damage occurring after the end of this policy period will be
            deemed to have occurred during this policy period when the bodily injury or property
            damage is included within the products-completed operations hazard, occurs, and a
            claim is made or a suit is brought during any applicable statute of limitations or repose,
            but not more than 10 years after the end of this policy period and each of the following
            apply:
            i.   the policy period was not shortened by any cancellation; and
            ii.  you have paid all premiums, including any audit premiums billed after the end of
                 the policy period;

B.   The following are added to SECTION I – COVERAGE, 2. Exclusions:
       a.   any liability arising out of the actual, alleged, suspected or threatened discharge,
            dispersal, seepage, migration, escape or release of "pollutants." If "controlling underlying
            insurance" applies, this exclusion does not apply to bodily injury caused by smoke,
            fumes, vapor or soot produced by equipment used to heat, cool or dehumidify a building
            or equipment used to heat water for personal use by the building's occupants; or bodily
            injury or property damage arising out of heat, smoke or fumes from a hostile fire;

NAV-ECD-100 (3/05)                 Navigators Specialty Insurance Company                 Page 1 of 2

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

   b.  Property damage to:

     1.  Property loaned to or personal property in the care, custody or control of any insured;

     2.  your work arising out of it or any part of it. If "controlling underlying insurance" applies, this exclusion does not apply to property damage included within an applicable products-completed operations hazard;

     3.  premises you sell, give away or abandon.  If "controlling underlying insurance" applies, this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you;

C.  SECTION IV – CONDITIONS, paragraph 9., Premium, is deleted and replaced by the following:

9. Premium and Minimum Earned Premium

The first Named insured shown in the Declarations is responsible for the payment of all premiums under this policy and will be payee of any return premiums we pay.

   a.  Flat Premium

If no Rate is shown below in paragraph 9.b. the premium shown in item 6.a. of the Declarations is the premium for the Coverage we provide.

The premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months.

   b.  Adjustable Premium

Rate: _____ per _____ of _____ (premium basis).

If a Rate is shown:

     1.  the premium shown in item 6.a of the Declarations is a deposit premium. The deposit premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months. The deposit premium and will be credited toward the amount of earned premium for the policy period;

     2.  We may examine your books and records as they relate to this policy at any time during the policy period or within three years of the expiration of this policy. Final premium for this policy will be determined by multiplying the rate by the units of premium basis. If an additional premium is due, you will promptly pay our invoice.

D.  The following are added to SECTION V – DEFINITIONS:

"Covered project" means the project described in the Schedule of this endorsement.
"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms of the policy remain unchanged.

NAV-ECD-100 (3/05)       Navigators Specialty Insurance Company       Page 2 of 2

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Construction Project Endorsement Completed Operations And Repair Work Extension

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE PART
EXECUTIVE PERSONAL EXCESS PROTECTION

SCHEDULE
Project Name: 1. Ashford at Brookhaven
               2. One Waterfall
Project Address: 1. 1377 Dresden Drive Atlanta, GA
                2. 5050 Hidalgo Houston, TX 77056
Project Sponsor: Urban Oaks Builders, LLC
Project Description: 1. Atlanta, GA 4 story wood frame building with 215 apartments
                   2. Houston, TX - commercial grade building with 323 apartment units

A.   SECTION I – COVERAGE, 1. Insuring Agreement, paragraph a. is deleted and replaced by the following:
   a.   We will pay those sums the insured becomes legally obligated to pay as damages for bodily injury or property damage to which this insurance applies.  This insurance only applies to:
      1.   bodily injury or property damage to which the "controlling underlying insurance" applies, or would apply but for the exhaustion of an Aggregate Limit, caused by an occurrence or offense that takes place at the "covered project;"
      2.   damages that exceed the "underlying limits" paid by "underlying insurance" with our consent; and
      3.   bodily injury or property damage that occurs during this policy period;
Bodily injury or property damage occurring after the end of this policy period will be deemed to have occurred during this policy period when:
         a.   the bodily injury or property damage occurs within 24 months after the expiration date of this policy and arises out of your operations to correct or repair a defect or deficiency in your work that was completed during this policy period; or
         b.   the bodily injury or property damage is included within the applicable products-completed operations hazard and arises out of your work that was completed during the policy period, occurs and a claim is made or a suit is brought during any applicable statute of limitations or repose, but not more than 10 years after the end of this policy period;
      and each of the following apply:
         i.   the policy period was not shortened by any cancellation; and
         ii.   you have paid all premiums, including any audit premiums billed after the end of the policy period;

B.   The following are added to SECTION I – COVERAGE, 2. Exclusions:
   a.   any liability arising out of the actual, alleged, suspected or threatened discharge, dispersal, seepage, migration, escape or release of "pollutants." If "controlling underlying

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

insurance" applies, this exclusion does not apply to bodily injury caused by smoke, fumes, vapor or soot produced by equipment used to heat, cool or dehumidify a building or equipment used to heat water for personal use by the building's occupants; or bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire;

    b.  Property damage to:

        1.  Property loaned to or personal property in the care, custody or control of any insured;

        2.  your work arising out of it or any part of it. If "controlling underlying insurance" applies, this exclusion does not apply to property damage included within the applicable products-completed operations hazard;

        3.  premises you sell, give away or abandon.  If "controlling underlying insurance" applies, this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you;

C.  SECTION IV – CONDITIONS, paragraph 9., Premium, is deleted and replaced by the following:

    9.  Premium and Minimum Earned Premium

        The first Named insured shown in the Declarations is responsible for the payment of all premiums under this policy and will be payee of any return premiums we pay.

        a.  Flat Premium

           If no Rate is shown below in paragraph 9.b. the premium shown in item 6.a. of the Declarations is the premium for the Coverage we provide.

           The premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months.

        b.  Adjustable Premium

           Rate: [ ] per [ ] of [   ] (premium basis).

           If a Rate is shown:

           1.  the premium shown in item 6.a of the Declarations is a deposit premium. The deposit premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months. The deposit premium and will be credited toward the amount of earned premium for the policy period;

    2.  We may examine your books and records as they relate to this policy at any time during the policy period or within three years of the expiration of this policy. Final premium for this policy will be determined by multiplying the rate by the units of premium basis. If an additional premium is due, you will promptly pay our invoice.

D.  The following are added to SECTION V – DEFINITIONS:

    "Covered project" means the project described in the Schedule of this endorsement. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms of the policy remain unchanged.

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

POLICY NUMBER: SE12FXS754225IC                    **COMMERCIAL EXCESS/UMBRELLA LIABILITY**
ENDORSEMENT NUMBER: 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - FORMS AND ENDORSEMENTS

Effective 11/28/2012, and in consideration of an additional premium of  $0.00, the following is   added:

Construction Project Endorsement Completed Operations Extension                    NAV-ECD-100 (3/05)

All other terms of the policy remain unchanged.

NAV-ECD-101 (05/10)              Navigators Specialty Insurance Company              Page 1 of 1

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Construction Project Endorsement
# Completed Operations Extension

This endorsement modifies insurance provided under this policy:

SCHEDULE
Covered Project:  Carillon at Reserve Multifamily Development
Project Address:  540 Trinity Lane North St. Petersburg, FL 33701
Project Description:  There are 7 three-story apartment buildings with 308 apartment units and 1 four-story apartment building and 526 parking spaces.

A.  SECTION I – COVERAGE, 1. Insuring Agreement, paragraph a. is deleted and replaced by the following:
   a.  We will pay those sums the insured becomes legally obligated to pay as damages for bodily injury or property damage to which this insurance applies.  This insurance only applies to:
      1.  bodily injury or property damage to which the "controlling underlying insurance" applies, or would apply but for the exhaustion of an Aggregate Limit, caused by an occurrence or offense that takes place at the "covered project;"
      2.  damages that exceed the "underlying limits" paid by "underlying insurance" with our consent; and
      3.  bodily injury or property damage that occurs during this policy period;
      Bodily injury or property damage occurring after the end of this policy period will be deemed to have occurred during this policy period when the bodily injury or property damage is included within the products-completed operations hazard, occurs, and a claim is made or a suit is brought during any applicable statute of limitations or repose, but not more than 10 years after the end of this policy period and each of the following apply:
         i.   the policy period was not shortened by any cancellation; and
         ii.  you have paid all premiums, including any audit premiums billed after the end of the policy period;

B.  The following are added to SECTION I – COVERAGE, 2. Exclusions:
   a.  any liability arising out of the actual, alleged, suspected or threatened discharge, dispersal, seepage, migration, escape or release of "pollutants." If "controlling underlying insurance" applies, this exclusion does not apply to bodily injury caused by smoke, fumes, vapor or soot produced by equipment used to heat, cool or dehumidify a building or equipment used to heat water for personal use by the building's occupants; or bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire;

   b.  Property damage to:
      1.  Property loaned to or personal property in the care, custody or control of any insured;
      2.  your work arising out of it or any part of it. If "controlling underlying insurance" applies, this exclusion does not apply to property damage included within an applicable products-completed operations hazard;
      3.  premises you sell, give away or abandon.  If "controlling underlying insurance" applies, this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you;

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

C.  SECTION IV – CONDITIONS, paragraph 9., Premium, is deleted and replaced by the following:

9. Premium and Minimum Earned Premium

The first Named insured shown in the Declarations is responsible for the payment of all premiums under this policy and will be payee of any return premiums we pay.

   a.  Flat Premium

If no Rate is shown below in paragraph 9.b. the premium shown in item 6.a. of the Declarations is the premium for the Coverage we provide.

The premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months.

   b.  Adjustable Premium

Rate: _____ per _____ of _____ (premium basis).

If a Rate is shown:

1.  the premium shown in item 6.a of the Declarations is a deposit premium. The deposit premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months. The deposit premium and will be credited toward the amount of earned premium for the policy period;

2.  We may examine your books and records as they relate to this policy at any time during the policy period or within three years of the expiration of this policy. Final premium for this policy will be determined by multiplying the rate by the units of premium basis. If an additional premium is due, you will promptly pay our invoice.

D.  The following are added to SECTION V – DEFINITIONS:

"Covered project" means the project described in the Schedule of this endorsement.
"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms of the policy remain unchanged.

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

POLICY NUMBER: SE12FXS754225IC                    **COMMERCIAL EXCESS/UMBRELLA LIABILITY**
ENDORSEMENT NUMBER: 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - FORMS AND ENDORSEMENTS

Effective 08/01/2013, and in consideration of an additional premium of  $17,980.00, the following is   added:

Construction Project Endorsement Completed Operations Extension                    NAV-ECD-100 (3/05)

All other terms of the policy remain unchanged.

NAV-ECD-101 (05/10)          Navigators Specialty Insurance Company          Page 1 of 1

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Construction Project Endorsement Completed Operations Extension

This endorsement modifies insurance provided under this policy:

SCHEDULE
Covered Project:      Twenty-One 11
Project Address:      2111 Westheimer Houston, TX 77098
Project Description:  215 Unit Multifamily Apartment Development.  2 Buildings, 215 units.

A.  SECTION I – COVERAGE, 1. Insuring Agreement, paragraph a. is deleted and replaced by the following:
   a.  We will pay those sums the insured becomes legally obligated to pay as damages for bodily injury or property damage to which this insurance applies.  This insurance only applies to:
      1.  bodily injury or property damage to which the "controlling underlying insurance" applies, or would apply but for the exhaustion of an Aggregate Limit, caused by an occurrence or offense that takes place at the "covered project;"
      2.  damages that exceed the "underlying limits" paid by "underlying insurance" with our consent; and
      3.  bodily injury or property damage that occurs during this policy period;
   Bodily injury or property damage occurring after the end of this policy period will be deemed to have occurred during this policy period when the bodily injury or property damage is included within the products-completed operations hazard, occurs, and a claim is made or a suit is brought during any applicable statute of limitations or repose, but not more than 10 years after the end of this policy period and each of the following apply:
      i.  the policy period was not shortened by any cancellation; and
      ii. you have paid all premiums, including any audit premiums billed after the end of the policy period;

B.  The following are added to SECTION I – COVERAGE, 2. Exclusions:
   a.  any liability arising out of the actual, alleged, suspected or threatened discharge, dispersal, seepage, migration, escape or release of "pollutants." If "controlling underlying insurance" applies, this exclusion does not apply to bodily injury caused by smoke, fumes, vapor or soot produced by equipment used to heat, cool or dehumidify a building or equipment used to heat water for personal use by the building's occupants; or bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire;

   b.  Property damage to:
      1.  Property loaned to or personal property in the care, custody or control of any insured;
      2.  your work arising out of it or any part of it. If "controlling underlying insurance" applies, this exclusion does not apply to property damage included within an applicable products-completed operations hazard;
      3.  premises you sell, give away or abandon.  If "controlling underlying insurance" applies, this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you;

NAV-ECD-100 (3/05)              Navigators Specialty Insurance Company              Page 1 of 2
Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

C.  SECTION IV – CONDITIONS, paragraph 9., Premium, is deleted and replaced by the following:

9. Premium and Minimum Earned Premium

The first Named insured shown in the Declarations is responsible for the payment of all premiums under this policy and will be payee of any return premiums we pay.

a.  Flat Premium

If no Rate is shown below in paragraph 9.b. the premium shown in item 6.a. of the Declarations is the premium for the Coverage we provide.

The premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months.

b.  Adjustable Premium

Rate: _____ per _____ of _____ (premium basis).

If a Rate is shown:

1.  the premium shown in item 6.a of the Declarations is a deposit premium. The deposit premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months. The deposit premium and will be credited toward the amount of earned premium for the policy period;

2.  We may examine your books and records as they relate to this policy at any time during the policy period or within three years of the expiration of this policy. Final premium for this policy will be determined by multiplying the rate by the units of premium basis. If an additional premium is due, you will promptly pay our invoice.

D.  The following are added to SECTION V – DEFINITIONS:

"Covered project" means the project described in the Schedule of this endorsement.
"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms of the policy remain unchanged.

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

POLICY NUMBER: SE12FXS754225IC                    **COMMERCIAL EXCESS/UMBRELLA LIABILITY**
ENDORSEMENT NUMBER: 03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - FORMS AND ENDORSEMENTS

Effective 10/15/2013, and in consideration of an additional premium of  $43,398.00, the following is   added:

Construction Project Endorsement Completed Operations Extension                    NAV-ECD-100 (3/05)

All other terms of the policy remain unchanged.

NAV-ECD-101 (05/10)              Navigators Specialty Insurance Company              Page 1 of 1

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Construction Project Endorsement Completed Operations Extension

This endorsement modifies insurance provided under this policy:

Covered Project:      Helios fka Market Center @ DTC
Project Address:      7901 East Belleview, Denver, CO 80111
Project Description:  Construction Value: $39,452,640

A.  SECTION I – COVERAGE, 1. Insuring Agreement, paragraph a. is deleted and replaced by the following:
   a.  We will pay those sums the insured becomes legally obligated to pay as damages for bodily injury or property damage to which this insurance applies.  This insurance only applies to:
      1.  bodily injury or property damage to which the "controlling underlying insurance" applies, or would apply but for the exhaustion of an Aggregate Limit, caused by an occurrence or offense that takes place at the "covered project;"
      2.  damages that exceed the "underlying limits" paid by "underlying insurance" with our consent; and
      3.  bodily injury or property damage that occurs during this policy period;
      Bodily injury or property damage occurring after the end of this policy period will be deemed to have occurred during this policy period when the bodily injury or property damage is included within the products-completed operations hazard, occurs, and a claim is made or a suit is brought during any applicable statute of limitations or repose, but not more than 10 years after the end of this policy period and each of the following apply:
         i.   the policy period was not shortened by any cancellation; and
         ii.  you have paid all premiums, including any audit premiums billed after the end of the policy period;

B.  The following are added to SECTION I – COVERAGE, 2. Exclusions:
   a.  any liability arising out of the actual, alleged, suspected or threatened discharge, dispersal, seepage, migration, escape or release of "pollutants." If "controlling underlying insurance" applies, this exclusion does not apply to bodily injury caused by smoke, fumes, vapor or soot produced by equipment used to heat, cool or dehumidify a building or equipment used to heat water for personal use by the building's occupants; or bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire;

   b.  Property damage to:
      1.  Property loaned to or personal property in the care, custody or control of any insured;
      2.  your work arising out of it or any part of it. If "controlling underlying insurance" applies, this exclusion does not apply to property damage included within an applicable products-completed operations hazard;
      3.  premises you sell, give away or abandon.  If "controlling underlying insurance" applies, this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you;

C.  SECTION IV – CONDITIONS, paragraph 9., Premium, is deleted and replaced by the

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

following:

9. Premium and Minimum Earned Premium

The first Named insured shown in the Declarations is responsible for the payment of all premiums under this policy and will be payee of any return premiums we pay.

   a.  Flat Premium

If no Rate is shown below in paragraph 9.b. the premium shown in item 6.a. of the Declarations is the premium for the Coverage we provide.

The premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months.

   b.  Adjustable Premium

Rate: _____ per _____ of _____ (premium basis).

If a Rate is shown:

1. the premium shown in item 6.a of the Declarations is a deposit premium. The deposit premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months. The deposit premium and will be credited toward the amount of earned premium for the policy period;

2. We may examine your books and records as they relate to this policy at any time during the policy period or within three years of the expiration of this policy. Final premium for this policy will be determined by multiplying the rate by the units of premium basis. If an additional premium is due, you will promptly pay our invoice.

D.   The following are added to SECTION V – DEFINITIONS:

"Covered project" means the project described in the Schedule of this endorsement. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms of the policy remain unchanged.

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

POLICY NUMBER: SE12FXS754225IC                                    **COMMERCIAL EXCESS/UMBRELLA LIABILITY**
ENDORSEMENT NUMBER: 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - FORMS AND ENDORSEMENTS

Effective 07/01/2014, and in consideration of an additional premium of  $37,176.00, the following is   added:

Construction Project Endorsement Completed Operations Extension                          NAV-ECD-100 (3/05)

All other terms of the policy remain unchanged.

NAV-ECD-101 (05/10)              Navigators Specialty Insurance Company                    Page 1 of 1

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Construction Project Endorsement Completed Operations Extension

This endorsement modifies insurance provided under this policy:

SCHEDULE

Covered Project:        The Lofts at Celebration
Project Address:        1662 Celebration Blvd, Celebration, FL 34747
Project Description:      4-Story Fame Apartment, with 306 units.  Surface parked garden apartments.

A.  SECTION I – COVERAGE, 1. Insuring Agreement, paragraph a. is deleted and replaced by the following:
   a.  We will pay those sums the insured becomes legally obligated to pay as damages for bodily injury or property damage to which this insurance applies.  This insurance only applies to:
      1.  bodily injury or property damage to which the "controlling underlying insurance" applies, or would apply but for the exhaustion of an Aggregate Limit, caused by an occurrence or offense that takes place at the "covered project;"
      2.  damages that exceed the "underlying limits" paid by "underlying insurance" with our consent; and
      3.  bodily injury or property damage that occurs during this policy period;
      Bodily injury or property damage occurring after the end of this policy period will be deemed to have occurred during this policy period when the bodily injury or property damage is included within the products-completed operations hazard, occurs, and a claim is made or a suit is brought during any applicable statute of limitations or repose, but not more than 10 years after the end of this policy period and each of the following apply:
         i.   the policy period was not shortened by any cancellation; and
         ii.  you have paid all premiums, including any audit premiums billed after the end of the policy period;

B.  The following are added to SECTION I – COVERAGE, 2. Exclusions:
   a.  any liability arising out of the actual, alleged, suspected or threatened discharge, dispersal, seepage, migration, escape or release of "pollutants." If "controlling underlying insurance" applies, this exclusion does not apply to bodily injury caused by smoke, fumes, vapor or soot produced by equipment used to heat, cool or dehumidify a building or equipment used to heat water for personal use by the building's occupants; or bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire;

   b.  Property damage to:
      1.  Property loaned to or personal property in the care, custody or control of any insured;
      2.  your work arising out of it or any part of it. If "controlling underlying insurance" applies, this exclusion does not apply to property damage included within an applicable products-completed operations hazard;
      3.  premises you sell, give away or abandon.  If "controlling underlying insurance" applies, this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you;

NAV-ECD-100 (3/05)              Navigators Specialty Insurance Company              Page 1 of 2

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

C.  SECTION IV – CONDITIONS, paragraph 9., Premium, is deleted and replaced by the following:

9. Premium and Minimum Earned Premium

The first Named insured shown in the Declarations is responsible for the payment of all premiums under this policy and will be payee of any return premiums we pay.

a.  Flat Premium

If no Rate is shown below in paragraph 9.b. the premium shown in item 6.a. of the Declarations is the premium for the Coverage we provide.

The premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months.

b.  Adjustable Premium

Rate: _____ per _____ of _____ (premium basis).

If a Rate is shown:

1.  the premium shown in item 6.a of the Declarations is a deposit premium. The deposit premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months. The deposit premium and will be credited toward the amount of earned premium for the policy period;

2.  We may examine your books and records as they relate to this policy at any time during the policy period or within three years of the expiration of this policy. Final premium for this policy will be determined by multiplying the rate by the units of premium basis. If an additional premium is due, you will promptly pay our invoice.

D.  The following are added to SECTION V – DEFINITIONS:

"Covered project" means the project described in the Schedule of this endorsement.
"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms of the policy remain unchanged.

NAV-ECD-100 (3/05)                Navigators Specialty Insurance Company                Page 2 of 2

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

POLICY NUMBER: SE12FXS754225IC                    **COMMERCIAL EXCESS/UMBRELLA LIABILITY**
ENDORSEMENT NUMBER: 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - FORMS AND ENDORSEMENTS

Effective 10/24/2014, and in consideration of an additional premium of  $82,033.00, the following is   added:

Construction Project Endorsement Completed Operations Extension                    NAV-ECD-100 (3/05)

All other terms of the policy remain unchanged.

NAV-ECD-101 (05/10)              Navigators Specialty Insurance Company                    Page 1 of 1

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Construction Project Endorsement Completed Operations Extension

This endorsement modifies insurance provided under this policy:

SCHEDULE
Covered Project:          The Southmore
Project Address:          5280 Caroline, Houston, TX 77004
Project Description:    25 story cast in place concrete building, 5 levels of garage, 18 levels of residential, 2
                                  levels amenity.  233 units of for rent apartments with associated amenities and parking.

A.  SECTION I – COVERAGE, 1. Insuring Agreement, paragraph a. is deleted and replaced by
    the following:
    a.  We will pay those sums the insured becomes legally obligated to pay as damages for
        bodily injury or property damage to which this insurance applies.  This insurance only
        applies to:
        1.  bodily injury or property damage to which the "controlling underlying insurance"
            applies, or would apply but for the exhaustion of an Aggregate Limit, caused by an
            occurrence or offense that takes place at the "covered project;"
        2.  damages that exceed the "underlying limits" paid by "underlying insurance" with our
            consent; and
        3.  bodily injury or property damage that occurs during this policy period;
        Bodily injury or property damage occurring after the end of this policy period will be
        deemed to have occurred during this policy period when the bodily injury or property
        damage is included within the products-completed operations hazard, occurs, and a
        claim is made or a suit is brought during any applicable statute of limitations or repose,
        but not more than 10 years after the end of this policy period and each of the following
        apply:
            i.  the policy period was not shortened by any cancellation; and
            ii.  you have paid all premiums, including any audit premiums billed after the end of
                the policy period;

B.  The following are added to SECTION I – COVERAGE, 2. Exclusions:
    a.  any liability arising out of the actual, alleged, suspected or threatened discharge,
        dispersal, seepage, migration, escape or release of "pollutants." If "controlling underlying
        insurance" applies, this exclusion does not apply to bodily injury caused by smoke,
        fumes, vapor or soot produced by equipment used to heat, cool or dehumidify a building
        or equipment used to heat water for personal use by the building's occupants; or bodily
        injury or property damage arising out of heat, smoke or fumes from a hostile fire;

    b.  Property damage to:
        1.  Property loaned to or personal property in the care, custody or control of any insured;
        2.  your work arising out of it or any part of it. If "controlling underlying insurance"
            applies, this exclusion does not apply to property damage included within an
            applicable products-completed operations hazard;
        3.  premises you sell, give away or abandon.  If "controlling underlying insurance"
            applies, this exclusion does not apply if the premises are your work and were never
            occupied, rented or held for rental by you;

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

C.  SECTION IV – CONDITIONS, paragraph 9., Premium, is deleted and replaced by the following:

9. Premium and Minimum Earned Premium

The first Named insured shown in the Declarations is responsible for the payment of all premiums under this policy and will be payee of any return premiums we pay.

a.  Flat Premium

If no Rate is shown below in paragraph 9.b. the premium shown in item 6.a. of the Declarations is the premium for the Coverage we provide.

The premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months.

b.  Adjustable Premium

Rate: _____ per _____ of _____ (premium basis).

If a Rate is shown:

1.  the premium shown in item 6.a of the Declarations is a deposit premium. The deposit premium is the minimum amount we will retain in the event you cancel this policy after it has been in effect for 12 months. The deposit premium and will be credited toward the amount of earned premium for the policy period;

2.  We may examine your books and records as they relate to this policy at any time during the policy period or within three years of the expiration of this policy. Final premium for this policy will be determined by multiplying the rate by the units of premium basis. If an additional premium is due, you will promptly pay our invoice.

D.  The following are added to SECTION V – DEFINITIONS:

"Covered project" means the project described in the Schedule of this endorsement.
"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms of the policy remain unchanged.

NAV-ECD-100 (3/05)                Navigators Specialty Insurance Company                Page 2 of 2

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

POLICY NUMBER: SE12FXS754225IC                    **COMMERCIAL EXCESS/UMBRELLA LIABILITY**
ENDORSEMENT NUMBER: 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - FORMS AND ENDORSEMENTS

Effective 06/28/2017, and in consideration of an additional premium of  $0.00, the following is   added:

AMENDMENT - POLICY TERM     NAV-ECD-106 (02/11)
AMENDMENT - SCHEDULE OF UNDERLYING     NAV-ECD-104 (05/10)


All other terms of the policy remain unchanged.

NAV-ECD-101 (05/10)              Navigators Specialty Insurance Company              Page 1 of 1

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - POLICY TERM

Item 2. of the Declarations is amended as follows:

2.  Policy Period:          From  06/28/2012  To  07/31/2017
                            (At 12:01 A.M. Standard Time at your mailing address shown above.)

All other terms of the policy remain unchanged.

NAV-ECD-106 (02/11)          Navigators Specialty Insurance Company          Page 1 of 1

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

POLICY NUMBER: SE12FXS754225IC                   **COMMERCIAL EXCESS/UMBRELLA LIABILITY**
ENDORSEMENT NUMBER: 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**


# AMENDMENT - SCHEDULE OF UNDERLYING


Effective 06/28/2017, Item 4. of the Declarations is amended as follows:

The following is  ○ Added  ⊙ Amended  ○ Deleted

4.  Underlying Insurance:

| Coverage/Carrier/Policy Number | Policy Term | Limits |
|---|---|---|
| Excess Liability | ☒ Occurrence ☐ Claims Made | |
| Ironshore Specialty Insurance Company/ 001402500 | 06/28/2012 to 07/31/2017 | $10,000,000 Each Occurrence |
| 001402500 | | $10,000,000 Aggregate |
| | | $10,000,000 Products Completed Operations Aggregate |
| | Which is in excess of at least | $2,000,000 Each Occurrence |
| | | $4,000,000 Aggregate |
| | | $4,000,000 Products Completed Operations Aggregate |

All other terms of the policy remain unchanged.

NAV-ECD-104 (05/10)            Navigators Specialty Insurance Company            Page 1 of 1

Contains copyrighted material of the
Insurance Services Office, Inc. with its permission.

# EXHIBIT B

## STANDSTILL AGREEMENT

THIS STANDSTILL AGREEMENT is made and entered into as of the 14th day of November, 2017, by and among Southstar Management I, LLC ("Southstar"), as the authorized representative of Cottington Road TIC LLC and Durban Road TIC LLC (together with Cottington Road TIC LLC, "Owner"), and Urban Oaks Builders, LLC ("UOB") in connection with a dispute regarding repair work and related damages relating to the Sola at Celebration project located at 1662 Celebration Blvd., Celebration, Florida (the "Project"). Owner, Southstar and Urban Oaks shall herein be referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, a dispute has arisen between UOB, on the one hand, and the Owner, on the other hand, concerning certain alleged defects with respect to the construction of the Project (for which UOB was the contractor) and UOB's responsibility for the scope of allegedly required repairs (the "Repair Work") and related damages arising from the Repair Work (together with the Repair Work, the "Repair Work Claims"); and

WHEREAS, the Parties have agreed to forego the formal process outlined in Chapter 558 of the Florida Statutes (the "Chapter 558 Process") and substitute discussions between the Parties regarding the possible resolution of the Repair Work Claims according to the process set forth in this Standstill Agreement.

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledge, the Parties agree as follows.

1

**Final Executed Version**

1.     The foregoing recitals are hereby incorporated by reference and made a part hereof.

2.     After execution of this Standstill Agreement, UOB and Owner shall meet promptly to review the condition of the Project and evaluate the scope of the required Repair Work in an effort to determine if a Repair Work scope can be agreed upon by the Parties, including but not limited to a meeting between Southstar, UOB, and their respective counsel and experts on November 17, 2017 to discuss the condition of the Project and the scope of the related Repair Work.

3.     Within five (5) business days of the execution of this Standstill Agreement UOB agrees to pay Southstar (for and on behalf of Owner) the amount of $2,050,398.72 (the "Standstill Payment"), by wire transfer pursuant to the directions provided by Southstar.  Owner and UOB acknowledge that the Standstill Payment is in the amount set forth in the invoice demand sent to UOB dated November 8, 2017, which represents certain costs incurred by Owner in connection with the Repair Work Claims.  The Parties hereby agree that the Standstill Payment does not constitute an admission of liability by UOB of any kind, nor an admission that any component items of the Standstill Payment invoice are valid damages for the Repair Work Claims or otherwise required to be paid to Southstar or Owner by UOB.  The Parties agree that, in the event the Parties are unable to resolve their dispute over the Repair Work Claims and proceed to a contested resolution proceeding:  (a) Owner shall have the right to include the items and amounts set forth in the November 8, 2017 invoice in its claims for damages (and UOB reserves and retains its rights to contest such amounts); (b) the Standstill Payment will be credited against any amount ultimately recovered by Owner with respect to the Repair Work

2

Claims in any such contested resolution proceeding; and (c) the Standstill Payment shall be retained by Owner as an irrevocable partial settlement payment from UOB and shall not be recoverable by or refundable to UOB, notwithstanding the provisions of paragraph 6 below and regardless of any resolution or outcome of the Repair Work Claims in any contested resolution proceeding (even if the Standstill Payment exceeds the amount of damages awarded to Owner in such contested resolution proceeding).

4. The "Standstill Period" begins with the execution of this Standstill Agreement and ends on December 8, 2017. The Parties hereby agree to terminate the Chapter 558 Process, and further agree to refrain from filing any lawsuit until the end of the Standstill Period. During the Standstill Period, the Parties agree to meet promptly and negotiate in good faith to resolve the dispute concerning the Repair Work Claims.

5. The Parties hereby agree that this Standstill Agreement, and the terms contained herein (including the Standstill Payment) and all discussions between the Parties concerning the Repair Work Claims during the Standstill Period, including but not limited to the meeting on November 17, 2017 and any other meeting between the Parties during the Standstill Period, shall constitute protected settlement communications under Section 90.404 of the Florida Evidence Code, provided however, that this Standstill Agreement will be fully admissible to the extent required to enforce its terms and the Parties agree that, except as necessary in connection with an action to enforce this Standstill Agreement, the fact and terms of this Standstill Agreement shall be held confidential by each of the Parties. The Parties further agree, however, that (a) any facts regarding the physical conditions at the Project (whether or not discussed or identified during the period of the Standstill Agreement) and (b) any written expert opinions or written reports

3

disclosed by either Party to the other at any time, shall be admissible and may be utilized for any purpose. Except as provided in (b) above, discovery and use of expert opinions and reports prepared on behalf of the Parties shall be governed by applicable Florida law.

6.      This Standstill Agreement shall not constitute a waiver, release, relinquishment or settlement of any claim, defense, right, position regarding the Repair Work Claims or any related cause of action that the Parties may have against each other, and/or their predecessors, employees, attorneys, affiliates, divisions, successors, assigns, agents, servants, representatives, parent and subsidiary companies, general and limited partners, officers, directors, shareholders, members, insurers, reinsurers, consultants, investors, or managers, and therefore such claims, defenses, rights, and position are hereby expressly reserved.

7.      This Standstill Agreement contains the entire agreement between the Parties concerning the matters set forth herein. This Standstill Agreement may be modified only by a writing signed by all Parties' representatives. This Standstill Agreement shall be governed by and construed in accordance with the laws of Florida. This Standstill Agreement may be executed in counterparts, all of which together shall constitute one and the same instrument. Facsimile and electronic signatures shall constitute original signatures and be valid and enforceable to the same extent as a signed original. This Standstill Agreement shall be deemed to have been drafted equally by the Parties, and it shall not be interpreted for or against either Party on the grounds that one Party was the drafting party.

8.      Each Party stipulates and agrees as follows: (a) that each of the Parties hereto has sole and exclusive authority to execute this Standstill Agreement and receive the consideration described herein; (b) that after careful consideration of each and every item of this Standstill

4

**Final Executed Version**

Agreement, and after consultation with counsel, the Parties hereto voluntarily, without any duress or coercion, agree that entering into this Standstill Agreement is in their best interest; (c) that the Standstill Agreement is executed without reliance upon any statement or representation by any Party other than those set forth in this Standstill Agreement; (d) that the Parties have read and understood each and every provision of this Standstill Agreement before signing it; and (e) that each Party has the authority and ability to enter into this Standstill Agreement pursuant to applicable law. If any provision of this Standstill Agreement is held to be invalid, illegal or unenforceable under applicable law by a court of competent jurisdiction, the validity, legality and enforceability of all remaining provisions shall not be affected.

9. In the event any Party is required to file a lawsuit to enforce the provisions of this Standstill Agreement, the prevailing Party shall be entitled to recover its reasonable attorneys' fees and costs including expert witness fees, and through trial, appellate and post-judgment proceedings associated with such lawsuit. This Standstill Agreement may be enforced in a court of competent jurisdiction located in the County where the Project is located.

IN WITNESS WHEREOF, the Parties have caused this Standstill Agreement to be executed, as of the date first noted above.

By: _____

Name: _Gina Williams_

Title: _President_

On behalf of each of Southstar Management I, LLC, Cottington Road TIC LLC and Durban Road TIC LLC

By: _____

Richard Mercer

President

On behalf of Urban Oaks Builders, LLC

5

**Final Executed Version**

## CERTIFICATE OF SERVICE

The undersigned certifies that, on July 31, 2020, a true and accurate copy of Defendant Navigators Specialty Insurance Company's *Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint and Crossclaim Against Gemini Insurance Company, Ironshore Specialty Insurance Company, Collis Roofing, Inc., Da Pau Enterprises, Inc., Florida Construction Services, Inc., and Structural Contractors South, Inc.* was served by ECF transmission on all parties receiving ECF service in this case.

/s/ Susan N.K. Gummow
Susan N.K. Gummow

33