United States District Court
Southern District of Texas
**ENTERED**
December 02, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| URBAN OAKS BUILDERS LLC, ET AL. | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-4211 |
| | § | |
| GEMINI INSURANCE COMPANY, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM AND RECOMMENDATION

This insurance dispute is before the Court on Great American Assurance Company's Partial Motion to Dismiss Plaintiffs' First Amended Complaint (ECF 91), Navigator Specialty Insurance Company's Joinder in Great American's Motion (ECF 123), and Great American Assurance Company's Motion to Dismiss in Part Defendants Cottington Road TIC, LLC and Durban Road TIC, LLC's Crossclaim (ECF 106).[1] Navigator's Joinder Motion is GRANTED. Having considered the parties' submissions and the law, the Court recommends that the Motions to Dismiss be GRANTED IN PART AND DENIED IN PART as set forth below.

**I.     Background**

The Plaintiffs in this case are Urban Oaks Builders LLC (UOB), Hines Interests Limited Partnership, 1662 Multifamily LLC, Hines 1662 Multifamily LLC, Hines

---

[1] The District Court has referred this case to this Magistrate Judge for pretrial management. ECF 64.

Investment Management Holdings Limited Partnership, HIMH GP LLC, Hines Real Este Holdings Limited Partnership, and JCH Investments, Inc. In July 2014, UOB contracted with 1662 Multifamily LLC to be the general contractor on an apartment construction project in Celebration, Florida. UOB entered into contracts with various subcontractors who were enrolled in a controlled insurance program (CIP) to provide general liability insurance for the project. The project owners/developers, UOB, and the subcontractors are all insureds under the CIP policies.

Defendants Gemini Insurance Company, Ironshore Specialty Insurance Company, Navigators Specialty Insurance Company, and Great American Assurance Company issued policies as part of the CIP. Gemini issued "Commercial General Liability Policy" number VCWP001075 covering the period June 28, 2012 through July 31, 2017 (Gemini Policy), which has limits of $2,000,000 each occurrence; $4,000,000 general aggregate; and $4,000,000 products-completed operations aggregate limit. Ironshore issued "ExcessProtect Commercial Excess Liability Policy" number 001402500 which covers the period from June 28, 2012 through July 31, 2017 (Ironshore Excess Policy) and is triggered once the limits of the Gemini policy have been reached. The Ironshore Excess Policy (as modified by Endorsement No. 15) has limits of $10,000,000 each occurrence, per claim, per loss; $25,000,000 general aggregate; and $20,000,000 product/completed operations aggregate. Navigators issued the next layer of insurance coverage, which in turn is triggered once the Ironshore Excess Policy limits are reached. Navigators issued "Follow Form Excess Liability Policy" number SE12FXS754225IC covering the period June 28, 2012 through July 31, 2017 (Navigators Excess Policy), with limits of $15,000,000 each

event; $15,000,000 general aggregate; and a $15,000,000 products-completed operations aggregate limit. Finally, Great American issued an excess liability policy number EXC2101385 covering the period from June 28, 2012 through July 31, 2017 (Great American Excess Policy), with limits of $25,000,000 each occurrence, and $25,000,000 in the aggregate.

The construction project in Celebration, Florida was completed in February 2016. Southstar Capital Group I, LLC, as agent for Cottington Road TIC, LLC and Durban Road TIC, LLC, (collectively Southstar) purchased the project from 1662 Multifamily in July 2016. After the purchase, Southstar asserted claims for construction defects and filed suit against UOB and others in Florida state court (Southstar Lawsuit). Gemini initially provided UOB a defense in the Southstar Lawsuit. After paying $2,000,000, Gemini took the position that the Southstar Lawsuit constitutes a single occurrence, the Gemini Policy limits were exhausted, and it had no further obligation to defend or indemnify UOB in the Southstar Lawsuit. Meanwhile, Ironshore took the position that limits under the Gemini Policy were not exhausted because the Southstar Lawsuit represents multiple occurrences, and therefore coverage under the Ironshore Excess Policy has not been triggered. In turn, Navigators and Great American, whose excess obligations attach only once the Gemini and Ironshore policy limits have been reached, deny that coverage under their excess policies has been triggered. As a result, UOB and other Plaintiffs filed a lawsuit in Florida state court against the CIP insurers for coverage and indemnity on the claims in the Southstar Lawsuit.

While the Southstar Lawsuit was pending and insurance coverage was disputed,

UOB filed a Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court for the Southern District of Texas. Southstar's claims against UOB in the Southstar Lawsuit were transferred to the Bankruptcy Court. Due to a jurisdictional dispute, Plaintiffs voluntarily dismissed the Florida case and refiled this case as an adversary action in its bankruptcy case.[2]

Southstar filed a proof of claim in the Bankruptcy action asserting over $45,000,000 in damages. UOB objected. The Bankruptcy Court held a hearing on the claim objection and entered judgment in favor of Southstar in the amount of $26,103,717.38 (Southstar Judgment). Neither UOB nor Southstar filed an appeal and the Southstar Judgment is final. Navigators defended UOB in connection with Southstar's bankruptcy proof of claim but has not paid any portion of Plaintiffs' previously incurred expenses or the Southstar Judgment. Ironshore is now defending Plaintiffs in the Southstar lawsuit in Florida, but also has not paid any portion of Plaintiffs' previously incurred expenses or the Southstar Judgment.

On the Bankruptcy Court's Recommendation, the District Court withdrew the reference to Bankruptcy Court for this adversary action. ECF 1, 11. Plaintiffs filed a First Amended Complaint in this case asserting the following claims: (1) turnover under 11 U.S.C. § 542 against Gemini and Ironshore; (2) breach of contract against Gemini, Ironshore, and Great American; (3) declaratory relief against all insurer Defendants; (4) violations of the Texas Insurance Code against all Defendants; (5) violation of Section

---

[2] The Southstar entities are also named Defendants in this lawsuit, as are the following Subcontractors: Collis Roofing, Inc., Da Pau Enterprises, Inc., Florida Construction Services, Inc., and Structural Contractors South, Inc.

624.155, Florida Statutes, against all Defendants; and (6) Florida common law bad faith against all Defendants.  ECF 78.

Great American moves to dismiss claims 2, 4, 5, and 6.  Navigators joins in the motion to dismiss as to claims 4-6.  Great American has also moved to dismiss the Crossclaim for breach of contract asserted by Defendants Cottington Road TIC LLC and Durban Road TIC, LLC on the same grounds as its motion to dismiss Plaintiffs' breach of contract claim (claim 2).

## II.     Rule 12(b)(6) Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  However, the court does not apply the same presumption to conclusory statements or legal conclusions.  *Iqbal*, 556 U.S. at 678-79.

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion.  If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary

judgment. *See* Fed. R. Civ. P. 12(d). However, the court may take judicial notice of public documents, and may also consider documents a defendant attaches to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and central to the plaintiffs' claims. *See Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011). In this case, the Court may consider the multiple attachments to the First Amended Complaint and to the motions, including the relevant Policies and court filings from related proceedings.

### III. Analysis

#### A. Claim 2: Breach of Contract

Great American moves to dismiss Plaintiffs' breach of contract claim because, as an excess insurer, its liability for coverage attaches only after the coverage in the underlying policies has been exhausted. The heart of this insurance coverage dispute involves whether the events at issue in the Southstar Lawsuit constitute a single occurrence or multiple occurrences. If found to constitute a single occurrence, the excess policy written by Great American provides coverage only after the per occurrence coverage provided by the underlying policies, which totals $27,000,000, has been exhausted. If the events at issue in the Southstar Lawsuit are found to constitute multiple occurrences, Great American's excess policy provides coverage after the underlying $44,000,000 in coverage has been exhausted. There is no dispute that the insurers responsible for the first three layers of insurance coverage have not yet paid the $27,000,000 in per occurrence limits under their respective policies.

6

Plaintiffs have pled their breach of contract claims alternatively under both Florida and Texas law.[3] Under Florida law, the elements of a breach of contract claim are: (1) a valid contract; (2) a material breach; and (3) damages. *Grove Isle Ass'n, Inc. v. Grove Isle Associates*, LLLP, 2014 137 So.3d 1081 (Fla. 3d 2014). Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (*quoting Aguiar v. Segal*,167 S.W.3d 443, 450 (Tex. App.--Houston [14th Dist.] 2005, pet. denied)). Plaintiffs argue they have alleged each element of a breach of contract claim under Florida and Texas law and therefore Great American's motion to dismiss the contract claim must be denied. *See* ECF 109 at 5-6.

Great American points out that listing the elements of the cause of action fails to satisfy federal pleading requirements and Plaintiffs must allege facts to support each of the elements of the cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Great American argues that, when read as a whole, Plaintiffs' First Amended Complaint demonstrates that Plaintiffs' breach of contract claim against Great American is not plausible because Plaintiffs expressly allege that the aggregate limit under each policy applies and thus acknowledge that the limits of the underlying Gemini, Ironshore, and Navigators policies have not been exhausted. Great American reasons that Plaintiffs cannot assert a breach of contract claim based on Great American's failure to pay the $26.1

---

[3] Unlike Gemini (ECF 79), Great American does not move to dismiss any claims based on choice of law.

million Southstar Judgment while at the same time asserting that the multiple occurrence limits apply, because Great American's excess coverage obligation for multiple occurrences arise only after $44,000,000 in underlying coverage has been paid.

Plaintiffs are permitted to plead inconsistent facts and theories of recovery. *See Westcott Holdings, Inc. v. Monitor Liab. Managers, Inc.,* No. CIV.A. H-06-1746, 2006 WL 3041606, at *3 (S.D. Tex. Oct. 24, 2006) ("Plaintiffs may plead inconsistent claims and facts in support of alternative theories of recovery."); *Laurence v. Atzenhoffer Chevrolet*, 281 F. Supp. 2d 898, 900 (S.D. Tex. 2003) ("Although parties are barred from recovering damages based on mutually exclusive theories" . . . parties can properly plead alternative, inconsistent theories of liability." Internal citation omitted). Several parties in this case dispute whether the single or multiple occurrence limits apply. Plaintiffs' Declaratory Judgment claims, which no Defendant has moved to dismiss, will resolve the question of whether the single or multiple occurrence limits apply, when coverage under each policy attaches, and the amount of each insurer's liability, if any.

Great American's argument in support of its motion to dismiss rests on the assumption that the multiple occurrence limit will apply and does not allow for the possibility that Plaintiffs' could lose the battle over single versus multiple occurrences. If Plaintiffs lose on that issue, the Great American Excess Policy would attach once the underlying coverage limit of $27,000,000 is reached. The Great American Excess Policy provides:

> Coverage under this policy will not apply unless and until the Insured or the Insured's "underlying insurance" is obligated to pay the full amount of the "Underlying Limits" of Insurance."

8

> When the amount of "loss" has been finally been determined, we will promptly pay on behalf of the insured the amount of "loss" falling within the terms of this policy.

ECF 78-9 at 20. Plaintiffs allege that its insurers are obligated to pay the full amount of its defense costs and the Southstar Judgment. ECF 78 ¶ 89. Based on the Southstar Judgment of more than $26.1 million, and costs incurred by UOB for its defense, it is plausible that the $27,000,000 single occurrence limit for the underlying coverage could be reached. Therefore, Plaintiffs have alleged liability against all insurers, including Great American. It would be premature to dismiss Plaintiffs' breach of contract claim seeking indemnity from Great American at this stage of the proceedings.[4]

### B. Claim 4: Texas Insurance Code Violations

Plaintiffs allege that the insurers' refusal to defend the Southstar Lawsuit resulted in UOB's bankruptcy and the continued failure to pay the Southstar Judgment has caused Plaintiffs to incur additional expenses in the bankruptcy proceeding. ECF 78 ¶¶ 62-64., 68, 75. Plaintiffs assert the insurers' conduct violates Texas Insurance Code §§ 541.060, 541.061, and 542 (known as the Texas Prompt Payment of Claims Act (TPPCA)). ECF 78 at ¶¶ 106-09.

In response, Great American and Navigators contend that Plaintiffs cannot state claims for bad faith under the Texas Insurance Code because they have not alleged an independent injury that is separate from loss of benefits; there has been no determination that Plaintiffs are entitled to benefits; and the First Amended Complaint consists merely of

---

[4] The Great American Excess Policy expressly disclaims any duty to defend. ECF 78 ¶¶ 45, 53; 78-9 at 17. Therefore, as a matter of law, Great American has not breached the policy by failing to provide Plaintiffs a defense in the Southstar Lawsuit.

9

legal conclusions unsupported by specific factual allegations.

### i. Sections 541.060 and 541.061

Sections 541.060[5] and 541.061[6] of the Texas Insurance Code proscribe certain fraudulent or unfair conduct by insurers and entitle a plaintiff that proves an insurer knowingly engaged in any proscribed conduct to recover treble damages and attorneys' fees. TEX. INS. CODE § 541.152. A claim for bad faith under the Texas Insurance Code requires proof of something more than a bona fide coverage dispute. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 526 (5th Cir. 2015) (affirming district court's grant of judgment as a matter of law to insurer on plaintiff's §

---

[5] Section 541.060 provides, in relevant part:
    (a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:
    (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
    (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
        (A) a claim with respect to which the insurer's liability has become reasonably clear;
        \*     \*     \*
    (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;
    (4) failing within a reasonable time to:
        (A) affirm or deny coverage of a claim to a policyholder; or
        (B) submit a reservation of rights to a policyholder;
    (5) refusing, failing, or unreasonably delaying a settlement offer under applicable first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as may be specifically provided in the policy;
    \*     \*     \*
    (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim;

[6] Section 541.0061 provides:
    It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:
    (1) making an untrue statement of material fact;
    (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
    (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;
    (4) making a material misstatement of law; or
    (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

541.060 claims because "[e]vidence establishing only a bona fide coverage dispute does not demonstrate bad faith," quoting *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex.1998)).

In the Fifth Circuit, Plaintiffs must meet the "who, what, when, where, and how" requirements of Federal Rule of Civil Procedure 9(b) to state claims for misrepresentation or fraud in violation of the Texas Insurance Code. *Aviles v. Allstate Fire & Cas., Ins. Co.*, No. 5:19-CV-00023, 2019 WL 3253077, at *2 (S.D. Tex. July 9, 2019), report and recommendation adopted, No. 5:19-CV-23, 2019 WL 3412433 (S.D. Tex. July 29, 2019). In this case, Plaintiffs' allegations of Texas Insurance Code violations are conclusory and devoid of specific supporting factual allegations. *See* ECF 78 at ¶¶ 105-112. The First Amended Complaint merely recites the provisions of §§ 541.060 and 541.061. Further, the allegations are made as to all "Carriers" collectively. *Id.* This kind of pleading fails to state a claim. *See Jacinto Med. Ctr., LP v. Nationwide Mut. Ins. Co.*, No. CV H-10-3660, 2011 WL 13249834, at *3 (S.D. Tex. Jan. 7, 2011) (Plaintiff's allegations "are merely restatements of the Texas Insurance Code provisions. The facts alleged elsewhere in the complaint add no flesh to these statutory bones."); *Mt. Hebron Missionary Baptist Church v. Scottsdale Ins. Co.*, No. 4:17-CV-3164, 2018 WL 8755785, at *5 (S.D. Tex. Jan. 25, 2018) (assertions that "merely parrot the language of the applicable sections of the Code" and do not attribute conduct to a particular defendant are "legal conclusion[s] couched as [] factual allegation[s]"); *SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 821 (S.D. Tex. 2011) (Dismissing Insurance Code claims that were "largely composed of legal conclusions couched as factual allegations, formulaic recitations of the elements of a cause

11

of action, generic paraphrases of statutory language, and conclusory statements without supporting facts.").

In addition to failing to satisfy Rule 9(b), Plaintiffs fail to state a claim for extracontractual damages as recognized by the Texas Supreme Court in *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). *Menchaca* clarifies the circumstances under which an insured can recover damages for violations of the Texas Insurance Code. An insured that is entitled to benefits under an insurance policy can recover the loss of policy benefits as actual damages under the Insurance Code, but only if the loss of benefits was caused by the insurer's statutory violation. *Id.* at 489. Even if an insured is not entitled to benefits under the insurance policy at issue it can nonetheless recover damages for an independent injury caused by the insurer's statutory violation. *Id.*; *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 451–52 (5th Cir. 2018) (addressing the rules set forth in *Menchaca*). The Texas Supreme Court recognized in *Menchaca* "that a successful independent-injury claim would be rare, and we in fact have yet to encounter one." 545 S.W.3d at 500.

Here, Plaintiffs allege they are entitled to benefits under the Great American and Navigators Excess Policies. They further allege that the denial of those benefits has caused them damage: "Had Great American agreed to defend UOB, UOB would not have had to file bankruptcy and hire its bankruptcy counsel to protect itself against the claims of Southstar." ECF 109 at 7 (citing First Amended Complaint). However, Plaintiffs fail to allege damages caused by a statutory violation, as opposed to a denial of benefits. Plaintiffs' allegation that the bankruptcy damages constitute in independent injury for

which UOB can recover fails for the same reason—Plaintiffs have failed to allege any damages caused by a violation of the statue as opposed to a denial of benefits. The Court agrees with the Defendant insurers that all of the damages alleged by Plaintiffs were caused the denial of benefits under the policies. UOB's bankruptcy was not caused by any misrepresentation or unfair settlement practice proscribed by the Texas Insurance Code. *See Menchaca*, 545 S.W.3d at 499 (insured can recover damages from an independent injury "caused by" the insurer's statutory violation).

The Court recommends that Plaintiffs claims under Texas Insurance Code §§ 541.060 and 541.061 be dismissed. Because the Court is not persuaded that Plaintiffs can allege facts to show that any statutory violation by the insurers caused its damages, the Court recommends dismissal without leave to amend.[7] However, if within the 14-day objection period Plaintiffs can in good faith put forth factual allegations to make the required showing, the Court will reconsider leave to amend.

    **ii.**    **Section 542**

The Texas Supreme Court recently explained the duties imposed on an insurer by the TPPCA:

> Taken together, the TPPCA imposes several key requirements on insurers: (1) the insurer must acknowledge receipt of the claim, commence any investigation of the claim, and request any items, statements, or forms required from the claimant within fifteen days of its receipt of notice of the claim; (2) the insurer must notify the claimant of acceptance or rejection of the claim no later than fifteen business days after the insurer receives all items, statements, and forms required to secure final proof of loss; (3) if the insurer notifies the insured that it will pay all or part of the claim, it must pay

---

[7] This is particularly true as to Great American, because the Great American Excess Policy disclaims a duty to defend. ECF 78-9 at 17.

> it by the fifth business day after the date of notice of acceptance of the claim; (4) if the insurer delays payment of a claim for more than the applicable statutory period or sixty days, the insurer shall pay TPPCA damages; and (5) an insurer that is liable for a claim under an insurance policy and violates a TPPCA provision is liable for TPPCA damages in the form of 18% interest on the amount of the claim per year, with attorney's fees. *See id*. §§ 542.055(a)(1)–(3), .056(a), .057(a), .058(a), 060(a). Thus, the TPPCA has three main components—non-payment requirements and deadlines, deadlines for paying claims, and enforcement.

*Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812–13 (Tex. 2019), reh'g denied (Dec. 13, 2019). The elements of a successful claim under the TPPCA are : 1) a claim under an insurance policy; 2) that the insurer is liable for the claim; and 3) that the insurer has failed to follow one or more sections of the Act with respect to the claim. *Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, No. CIV.A. H-07-2724, 2013 WL 4459038, at *2 (S.D. Tex. Aug. 16, 2013), amended, No. CIV.A. H-07-2724, 2014 WL 109397 (S.D. Tex. Jan. 10, 2014), aff'd, 795 F.3d 496 (5th Cir. 2015), and aff'd, 795 F.3d 496 (5th Cir. 2015). Bad faith is not a requirement for liability under the TPPCA. *Agredano v. State Farm Lloyds*, 975 F.3d 504, 507 (5th Cir. 2020). Liability under the TPPCA does not require an independent injury. *See Admiral Ins. Co. v. Petron Energy, Inc*., 1 F. Supp. 3d 501, 510 (N.D. Tex. 2014) (TPPCA liability "does not turn on whether the insured suffered an 'independent injury' or the 'reasonableness' of the insurer's position."). The TPPCA may be applied when an insurer wrongfully refuses to pay a defense benefit. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 20 (Tex. 2007).

To establish the second element of a TPPCA claim, Plaintiffs must show the insurer "***accepts liability or is adjudicated liable*** under the policy." *Lakeside FBBC, LP v. Everest Indem. Ins. Co*., No. SA-17-CV-491-XR, 2020 WL 1814405, at *11 (W.D. Tex. Apr. 8,

2020) (emphasis added) (quoting *Barbara Techs. Corp.*, 589 S.W.3d at 827); *Menchacha*, 545 S.W.3d at 491 ("addressing the statutory prompt-payment claim, we explained that there can be no liability [under the Code] if the insurance claim is not covered by the policy"). In other words, a TPPCA claim is premature until resolution of the insured's coverage. In this case, Plaintiffs have incurred defense costs and a judgment against them, but there has not yet been an adjudication of Great American's or Navigators' liability for those injuries. Therefore, the Court concludes that the TPPCA claim should be dismissed without prejudice as premature. *See Banda v. Allstate Prop. & Cas. Ins. Co.*, No. 4:19-CV-3418, 2020 WL 3972537, at *4 (S.D. Tex. July 14, 2020) (dismissing TPPCA claim without prejudice because "it is clear in this situation that prompt payment provisions cannot be violated until there is a judgment."); *Borg v. Metro. Lloyd's of Texas*, No. W:12-CV-256, 2013 WL 12091651, at *3 (W.D. Tex. Feb. 21, 2013) (dismissing plaintiffs claim under the Prompt Payment Act without prejudice for lack of subject matter jurisdiction because it was not ripe).

### C. Claims 5 & 6: Florida Statutory and Common Law Bad Faith

Under Florida law, an insured may not bring a bad faith claim until the insured has prevailed on the issue of coverage. *Braddy v. Infinity Assurance Ins. Co.*, No. 6:15-CV-119, 2016 WL 1446202, at *2 (M.D. Fla. Apr. 11, 2016) ("Coverage issues must be determined before a party can proceed with the prosecution of a bad faith action."); *Professional Plastering & Stucco, Inc. v. Admiral Ins. Co.*, No. 6:12-CV-1613, 2013 WL 12156417, at *3 (M.D. Fla. Mar. 27, 2013) ("The Court . . . will apply the clear Florida law that 'coverage and liability issues must be determined before a bad faith cause can be

prosecuted.'" (citation omitted)); *OneBeacon Ins. Co. v. Delta Fire Sprinklers, Inc.*, 898 So. 2d 113, 115 (Fla. Dist. Ct. App. 2005) (it was improper for the trial court to allow insured to assert a bad faith claim against insurer before the coverage issue had been resolved); *Maryland Cas. Co. v. Alicia Diagnostic, Inc.*, 961 So. 2d 1091, 1092 (Fla. Dist. Ct. App. 2007) ("Under Florida law, it is inappropriate to litigate a bad faith claim against an insurer until after any underlying coverage dispute is resolved."). The rule is the same for both Florida statutory and common law bad faith claims. *See Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, No. 09-80554-CIV, 2010 WL 11505165, at *2 (S.D. Fla. Jan. 19, 2010) (citing cases that hold that because common law claims "are analogous to statutory bad faith claims, they are premature if brought before the question of coverage is resolved."); *Professional Plastering*, 2013 WL 12156417, at *3 (dismissing both statutory and common law bad faith claims without prejudice as premature).

Plaintiffs argue the Florida statutory and common law bad faith claims are ripe and properly set forth in the complaint. Plaintiffs cite *Fridman v. Safeco Ins. Co. of Ill.*, 185 S. 3d 1214, 1216 (Fla. 2016) for the proposition that a bad faith action may proceed once the insured's damages are determined, and argues that the judgment in favor of Southstar for $26,103,717.38 entered against UOB in the bankruptcy proceeding determines damages.[8] ECF 85 at 15. This argument fails to address clear and substantial Florida case law holding that "[a] plaintiff cannot state a bad faith cause of action absent allegations that coverage and liability issues have been determined with finality." *Professional Plastering & Stucco,*

---

[8] In response to Gemini's motion, Plaintiffs contend that Gemini conceded coverage by providing an initial defense of the Southstar Lawsuit. But there is no dispute that Great American has not conceded coverage in any amount.

*Inc.*, Case No. 6:12-cv-1613-Orl-19DAB, 2013 WL 12156417, *3 (M.D. Fla 2013) (citing Florida Supreme Court and appellate court cases).

*Fridman* involved a different procedural context and facts than this case and did not hold that a bad faith claim can proceed against an insurer prior to the insured's success in the underlying coverage dispute. In *Fridman*, the plaintiff filed a complaint against his insurer and an uninsured motorist to recover the total amount of his damages suffered in a car accident. Years after the accident and on the eve of trial, the insurer tendered a check for policy limits. On those facts, the court held in *Fridman* that confession of judgment by the insurer does not render the uninsured motorist action moot, and an insured is entitled to recover the full of amount of its damages in a bad faith action against the insurer. *Id.* at 1224. Great American and Navigators have not confessed judgment for policy limits as had the insurer in *Fridman*. In short, the *Fridman* decision approves only of the procedure employed by the state trial court in that action; it does not hold that a bad faith claim can be asserted against an insurer prior to resolution of a coverage dispute.[9]

The Court concludes that Plaintiffs' bad faith claims under Florida law, claims 5 and 6, are premature and should be dismissed without prejudice pending determination of liability under the relevant policies.

---

[9] *Fridman* confirms that abatement of bad faith claims pending final determination of damages in an uninsured motorist action in state court is an appropriate procedure. *Id.* at 1230. But *Fridman* does not require abatement and federal courts applying Florida law have held dismissal without prejudice is the proper procedure. *See, e.g., Progressive Am. Ins. Co.v. Webster*, No. 3:16-cv-116, 2017 WL 10841497, at *2 (N.D. Fla. 2017) (distinguishing *Fridman* and dismissing unripe bad faith insurance claims without prejudice).

### IV. Conclusion and Recommendation

For the reasons set forth above, the Court RECOMMENDS that Great American's motion to dismiss Plaintiff's breach of contract claim (Claim 2) and Cross-claimant's breach of contract claim be DENIED. The Court further RECOMMENDS that Great American's and Navigators' motions to dismiss be GRANTED as to Claims 4, 5, and 6, however, the TPPCA claim in Claim 4 and Claims 5 and 6 asserted under Florida law should be DISMISSED WITHOUT PREJUDICE as premature.

The Court recommends dismissal without leave to amend. However, if within the 14-day objection period Plaintiffs can in good faith put forth factual allegations to show their damages were caused by the insurers' Texas Insurance Code violations, the Court will reconsider leave to amend the Section 541.060 and 541.061 claims.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on December 02, 2020, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge