United States District Court
Southern District of Texas
**ENTERED**
July 19, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| URBAN OAKS BUILDERS LLC, *et al.*, | § |
| *Plaintiffs,* | § |
| VS. | § CIVIL ACTION NO. 4:19-cv-4211 |
| GEMINI INSURANCE COMPANY, *et al.*, | § |
| *Defendants.* | § |

## ORDER

"This insurance coverage case raises various legal issues suitable for a law school examination."[1] At issue is Plaintiffs Urban Oaks Builders LLC ("UOB"), Hines Interests Limited Partnership, 1662 Multifamily LLC, Hines 1662 Multifamily LLC, Hines Investment Management Holdings Limited Partnership, HIMH GP LLC, Hines Real Estate Holdings Limited Partnership, and JCH Investments, Inc.'s (collectively, the "Plaintiffs") Renewed Motion for Summary Judgment as to the Duty to Indemnify against Gemini Insurance Company and Ironshore Specialty Insurance Company, and in the alternative, Navigators Specialty Insurance Company. (Doc. No. 358). Defendant Ironshore Specialty Insurance Company responded in opposition. (Doc. No. 372). Defendant Navigators Specialty Insurance Company (Doc. No. 370) and Defendant Gemini Insurance Company (Doc. No. 376) also responded. Plaintiffs replied. (Doc. Nos. 402, 403, 404). The Court heard arguments on all pending motions in this matter on April 11, 2024. After considering the arguments, the evidence, and the law, the Court **DENIES** Plaintiffs' Motion for Summary Judgment. (Doc. No. 358).

---

[1] *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, No. CV 4:09-0422, 2016 WL 5539895 (S.D. Tex. Sept. 29, 2016), amended, No. CV 4:09-0422, 2016 WL 7491858 at *1 (S.D. Tex. Dec. 30, 2016) (Atlas, J.), *and aff'd in part, rev'd in part and remanded*, 917 F.3d 352 (5th Cir. 2019).

## BACKGROUND

The following facts were previously laid out in a Memorandum and Recommendation adopted by this Court in 2022. (Doc. Nos. 313, 328). For ease of reference, they are reproduced here. The facts in this section are undisputed unless otherwise noted.

In July 2014, Urban Oaks Builders, LLC (UOB) contracted with 1662 Multifamily LLC to be the general contractor on the construction of six apartment buildings and a clubhouse in Celebration, Florida. UOB entered into contracts with various subcontractors that in turn were enrolled in a controlled insurance program ("CIP") to provide general liability insurance for the project. As a result, the term "insureds" under the CIP policies includes UOB, the project owners/developers, and the subcontractors.

Defendants Gemini Insurance Company, Ironshore Specialty Insurance Company, Navigators Specialty Insurance Company, and Great American Assurance Company issued policies as part of the CIP. Gemini issued "Commercial General Liability Policy" number VCWP001075 covering the period June 28, 2012 through July 31, 2017 ("Gemini Policy"). The Gemini Policy has limits of $2,000,000 each occurrence; $4,000,000 general aggregate; and $4,000,000 products-completed operations aggregate. Ironshore issued "ExcessProtect Commercial Excess Liability Policy" number 001402500 covering the period from June 28, 2012 through July 31, 2017 ("Ironshore Policy"). The Ironshore Policy "follows form" to the Gemini Policy. The parties dispute whether the Ironshore Policy contains a single occurrence limit of $10,000,000, but it is undisputed that the Ironshore Policy has limits of $25,000,000 general aggregate and $20,000,000 product/completed operations aggregate.

Navigators issued the next layer of insurance in excess of the Ironshore policy limits, which is "Follow Form Excess Liability Policy" number SE12FXS754225IC covering the period June

28, 2012 through July 31, 2017 ("Navigators Policy"). The Navigators Policy has limits of $15,000,000 each event; $15,000,000 general aggregate; and $15,000,000 products-completed operations aggregate limit.

The construction project in Celebration, Florida was completed in February 2016. Southstar Capital Group I, LLC, as agent for Cottington Road TIC, LLC and Durban Road TIC, LLC, (collectively "Southstar") purchased the project from 1662 Multifamily in July 2016. Southstar subsequently asserted claims against Plaintiffs due to allegedly defective construction of the project. In June 2017, Southstar entered an agreement with UOB to perform warranty work at the project. UOB made a claim on the Gemini Policy for the cost of the warranty work. Gemini paid UOB $164,734.80 on October 10, 2017 and $935,005.43 on November 9, 2017. On November 14, 2017, Southstar and UOB entered a "Standstill Agreement" pursuant to which UOB agreed to pay $2,050,398.72 (to be credited against any future judgment if Southstar prevailed in litigation). On January 23, 2018, Gemini made its final payment to UOB in the amount of $900,259.77.

In February 2018, Southstar filed suit against UOB and others in state court in Florida asserting the following claims: Count I—Piercing the Corporate Veil/Alter Ego; Count II—Fraudulent Non-Disclosure/Fraudulent Inducement; Count III—Breach of Contract—Intentional Withholding of Material Information; Count IV—Statutory Violations of Florida Statutes 553.84; and Count V—Negligence ("Southstar Complaint"). Although the Southstar Complaint alleges that all defendants are liable on all counts because they are alter egos, Counts I-III allege conduct by 1662 Multifamily and Counts IV-V allege conduct by UOB. Gemini initially hired counsel to defend UOB against Southstar's claims, but after tendering payments totaling $2,000,000, declared its policy limits were exhausted and that therefore its duty to defend terminated. With the Southstar

lawsuit pending in Florida and insurance coverage in dispute, UOB filed a petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas.

Southstar's claims against UOB were transferred to the Bankruptcy Court and incorporated into a Proof of Claim. Southstar's claims against other defendants remained pending in Florida state court. UOB and others filed a lawsuit in Florida state court against the CIP insurers for coverage and indemnity. When that suit became mired in a jurisdictional dispute, Plaintiffs voluntarily dismissed the Florida case and refiled their claims against the insurers and others as an adversary action in its bankruptcy case.[2]

Southstar filed a Proof of Claim in the bankruptcy action asserting over $45,000,000 in damages.[3] UOB objected. The Bankruptcy Court held a hearing on UOB's objection and entered an estimation judgment against UOB in favor of Southstar in the amount of $26,103,717.38 ("estimation judgment"). The estimation judgment includes "(i) $8,226,243.00 in lost profits; plus (ii) non-legal professional fees and costs in the amount of $732,262.00; plus (iii) restoration costs of $18,439,945.46; minus (iv) the Debtor's prepetition payments in the amount of $2,251,263.33," plus prejudgment interest. (Doc. No. 228-11 at 2). Southstar did not appeal. On the Bankruptcy Court's Recommendation, the District Court withdrew the reference to Bankruptcy Court for this adversary action.

Plaintiffs filed a First Amended Complaint in this case asserting claims against the insurers for (1) turnover under 11 U.S.C. § 542 (against Gemini and Ironshore); (2) breach of contract; (3) declaratory relief; (4) violations of the Texas Insurance Code; (5) violation of Section 624.155,

---

[2] The Southstar entities are also named Defendants in this lawsuit, as are subcontractors Collis Roofing, Inc., Da Pau Enterprises, Inc., Florida Construction Services, Inc., and Structural Contractors South, Inc.

[3] Southstar Capital Group I, LLC was acting as the administrative agent for Cottington Road TIC, LLC, and Durban Road, TIC, LLC. Although for ease of reference the claimants are referred to as "Southstar" here, there is no claim in favor of Southstar Capital Group I, LLC. The claim based upon a negligence theory was in favor of Cottington Road, TIC, LLC and Durban Road TIC, LLC, jointly and severally. (Doc. No. 358-10 at 64:23-65:7).

Florida Statutes; and (6) Florida common law bad faith. (Doc. No. 78). The Court previously dismissed the turnover claim with prejudice and all extracontractual claims without prejudice. (Doc. Nos. 177, 178, 194).

In 2021, the Magistrate Judge issued an M&R, which this Court adopted. The opinion concerned (in pertinent part) whether Plaintiffs' claims for defense and indemnity under the Policies involve a single occurrence or multiple occurrences as defined in the Gemini Policy.[4] In the Memorandum and Recommendation adopted by this Court, the Magistrate Judge found that the Southstar suit involves multiple occurrences rather than a single occurrence. As a result, the Court determined that Gemini had a duty to defend its insureds until it reached the aggregate limits of liability for multiple occurrences under the Gemini policy. The Court found that the precise number of occurrences was irrelevant at that juncture because the issue to be decided was whether the claimed damages resulted from "one proximate, uninterrupted, and continuing cause," rather than the number of defects or "effects" from the alleged accident. (Doc. No. 313 at 17). The Court declined to decide the exact number of occurrences. After the Court's ruling on the multiple occurrences issue, the parties filed various dispositive motions seeking rulings on the duties to indemnify and defend as both the primary carrier (Gemini) and the first and second level excess carriers (Ironshore and Navigators).[5]

In the instant motion, Plaintiffs seek a ruling that Gemini and Ironshore (and, alternatively, Navigators) owe a duty to indemnify UOB the total amount of its principal claim of the estimation judgment plus prejudgment interest in the total amount of $26,354,980.71. Specifically, Plaintiffs

---

[4] The Court previously ruled that because no party showed that a conflict exists between Texas and Florida law the Court will apply Texas law to this issue. (Doc. No. 217).
[5] The Court previously granted the third level excess carrier Great American Assurance Company's Unopposed Motion for Summary Judgment on the claims against it without prejudice (to be reinstated in the event the Court's 2022 Order on the occurrences issue is withdrawn or reversed). (Doc. No. 419).

argue that Gemini and Ironshore owe their respective general aggregate limits for Lost Profits of $8,226,243.00; Restoration Costs of $18,439,945.46; UOB's Prepetition payments of $251,263.33; and Non-Legal Professional Costs of $732,262.00, subtracting the reduction by the Bankruptcy Court of $2,251,263.33 for a total of $25,398,450.46. UOB argues that Gemini owes prejudgment interest in the amount of $956,530.25 and any post-judgment interest, pursuant to the Supplementary Payment Provision in the Gemini policy. (Doc. No. 358 at 7). Plaintiffs have requested the following discrete forms of relief:

   a. a finding that the estimation judgment is covered as "property damage" under the Policies,
   b. a finding that the estimation judgment is covered as multiple "occurrences" under the Policies,
   c. a finding that the general aggregate limits of the Policies apply,
   d. a finding that Gemini and Ironshore owe a duty to indemnify UOB for the estimation judgment;
   e. a finding that Gemini and Ironshore owe $25,398,450.46 in indemnity as to their respective policies under their general aggregate limits as to Lost Profits, Restoration Costs, Non-Legal Professional Fees, and UOB's Prepetition Payments as outlined in the estimation judgment;
   f. a finding that Gemini (or in the alternative, both Gemini and Ironshore) owe $956,530.25 as supplementary payments for prejudgment interest and an amount to be determined as to post-judgment interest,
   g. a finding that Gemini and Ironshore's breach of the Policies entitle Plaintiffs to their costs and attorneys' fees incurred in pursuing Gemini and Ironshore for such breach, and

6

h. a reservation of jurisdiction for supplemental relief and to award Plaintiffs' attorneys' fees, paralegal fees, and costs that it has incurred as a result of this action pursuant to Florida Statutes §§ 627.428, 57.104, 57.041 and/or 626.9373 and/or Tex. Ins. Code § 542.060 and Tex. Civ. Prac. & Rem. Code §38.001, et seq. and any other applicable state law's fees and costs.[6]

For the reasons outlined below, Plaintiffs' motion is **DENIED** without prejudice as to all forms of relief sought.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in

---

[6] Plaintiffs also seek relief against Navigators "in the alternative" pending this Court's ruling on the applicable aggregate limit in the Ironshore Policy.

favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## ANALYSIS

### A. Legal principles for interpretation of insurance contracts in Texas

Texas law applies to this dispute. *See* (Doc. No. 217). In Texas, an insurer's duty to indemnify an insured is triggered by the actual facts establishing liability in the underlying suit, "and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011). Complicating matters in this case is the fact that the "underlying suit" was an adversarial proof of claim proceeding in the Bankruptcy Court, and the Bankruptcy Court did not allocate between covered and uncovered claims when it issued its estimation judgment. In the estimation judgment, the Bankruptcy Court identified general categories of damages it was allowing Southstar to recover against UOB and left the coverage issues for determination by this Court. (Doc. No. 358-11).

A finding of liability in an underlying action is distinct from the question of coverage. *Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 605 (5th Cir. 1991). In cases where, as here, the underlying judgment does not address coverage, the insurer is not bound to pay any part of the judgment beyond policy coverage. *Id.* "The insured has the initial burden of establishing coverage under the terms of the policy." *Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 201 (5th Cir. 2014).

8

The language of the Gemini Policy (and, by extension, the Ironshore Policy)[7] explicitly covers "those sums that the insured becomes obligated to pay as damages **because of [...] "property damage" to which this insurance applies.** (Doc. No. 358-1 at 12) (emphasis added).

For Plaintiffs to carry their summary judgment burden on the coverage issue, they must show that there is no genuine issue of material fact that (1) there was "property damage" to which the insurance applies and (2) the estimation judgment was awarded as damages "because of" that property damage. *Mid-Continent Casualty Co.*, 2016 WL 5539895 at *21 (Atlas, J.).

In Texas, insurance policies are contracts and are controlled by the rules of contract construction. *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000). "In interpreting these insurance policies as any other contract, we must read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole." *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). Terms that are not defined in a policy are given their generally accepted or commonly understood meaning. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007) (citation omitted).

The insurance provided by the policy is limited to "property damage" caused by an "occurrence" that takes place in the "coverage territory" during the "policy period." (Doc. No. 358-1 at 12). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. No. 358-1 at 25).[8] "The requirement that property damage be caused by an 'occurrence' limits coverage in at least two ways—the 'accident' requirement excludes coverage for intentional torts and the 'continuous' element limits

---

[7] The Ironshore Policy "follows form" to the Controlling Underlying Policy, which is the Gemini Policy. (Doc. No. 358-2 at 7).
[8] The Gemini Policy also includes a "Supplementary Payments" provision, which obligates Gemini to pay costs taxed against the insured and "prejudgment interest awarded against the insured...." (Doc. No. 358-1 at 19). The Supplementary Payment Provision states "these payments will not reduce the limits of insurance." (*Id.*).

the number of occurrences that can stem from a single accident." *Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 205 (5th Cir. 2014) (citing *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008)).

The Gemini Policy defines "property damage" as follows:

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Doc. No. 358-1 at 12).

This definition of "property damage" under a Commercial General Liability (CGL) policy "grants the insured broad coverage for property damage and bodily injury liability, which is then narrowed by exclusions that restrict the shape the coverage otherwise afforded." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 11 (Tex. 2007). In *Lamar*, the Supreme Court of Texas found that "defective construction that caused a foundation to shift, thereby resulting in cracks in the interior and exterior of a house, was 'property damage' caused by an 'occurrence.'" *Crownover*, 772 F.3d at 206 (citing *Lamar*, 242 S.W.3d at 20). Accordingly, "physical injury to tangible property" can include damage caused by the insured's defective work.[9] *See Lamar*, 242 S.W.3d at 20.

Similarly, damages incurred "because of property damage" may include the cost of repairing property damage resulting from the insured's defective work. *Crownover*, 772 F.3d at 207 (citing *Lennar*, 413 S.W.3d at 757). Nonetheless, "faulty workmanship that merely diminishes

---

[9] While policies often include exclusions—for example, the "your work" exclusion—limiting coverage where the insured's own work caused the property damage, UOB paid an additional premium for an endorsement deleting the "your work" exclusion in the relevant Policy. (Doc. No. 358-1 at 60).

the value of the home without causing physical injury or loss of use does not involve 'property damage.'" *Lamar*, 242 S.W.3d at 10.

Plaintiffs argue that the evidence adduced during the proof of claim hearing is ample proof that the entire estimation judgment is covered as damages awarded "because of" property damage. (Doc. No. 431 at 15:10-18). As support for this contention, Plaintiffs point primarily to the report of Michael Horst, P.E, a retained expert. Horst's report essentially summarizes the findings of the experts who testified in the proof of claim hearing and compares those findings to the broad categories of damages identified in the estimation judgment. In his report, Horst concluded that the "restoration costs" identified in the estimation judgment included the following construction defects: (1) corner balconies; (2) shear walls; (3) stucco flashing and water resistive barrier; (4) draft stop penetrations; and (5) miscellaneous roofing conditions.

Based on the findings in this report, Plaintiffs argue that the following amounts are owed by Gemini and Ironshore under their respective general aggregate limits:

- Lost profits totaling $8,226,243.00;
- Restoration costs totaling $18,439,945.46;
- UOB's Prepetition payments of $251,263.33; and
- Non-Legal Professional Costs totaling $732,262.00.

Plaintiffs subtracted the reduction by the Bankruptcy Court in its estimation judgment of $2,251,263.33. In total, Plaintiffs argue that they are owed $25,398,450.46 in principal from Gemini and Ironshore.[10] (Doc. No. 358 at 24). In the alternative (if this Court finds that Ironshore's $20 million limit applies) Plaintiffs believe that Navigators owes $3,398,450.46 of that total. (Doc. No. 358 at 24).

---

[10] Plaintiffs also argue they are owed an additional $956,530.25 in prejudgment interest, plus any post-judgment interest. (Doc. No. 358 at 24).

11

There are several problematic issues with Plaintiffs' motion. First, the Court has excluded Horst's testimony and report. This alone is fatal for Plaintiffs—Horst's report is cited throughout their motion as the primary evidentiary foundation for the categories of "property damage" caused by the multiple "occurrences" that Plaintiffs argue are covered under the policies.

Moreover, it is clear to the Court that several fact issues remain. Navigators, Ironshore, and Gemini argue forcefully that at least two of the categories of construction defects claimed by Plaintiffs—the draft stop penetrations and shear wall defects—are not in fact covered "property damage" under Texas law because, in their view, there is no evidence that the defects "sustained damage or caused damage, only that they did not meet design criteria."[11] (Doc. No. 355 at 18). Since this Court has excluded the Horst report—cited by Plaintiffs as the primary factual basis for its motion—it is impossible to determine at this stage whether the draft stop penetrations, shear wall defects, and/or roofing issues constituted "property damage" under the policies and, relatedly, whether any portion of the estimation judgment was awarded as damages "because of" that property damage.

---

[11] Gemini also disputes that damages related to roofing replacements constitute covered "property damage" or damages awarded "because of" property damage. (Doc. No. 376 at 21).

Fact issues remain as to coverage and damages. Further, the Court sees no feasible method of ruling on the pre- and post-judgment interest issues until after a trial is held. After the oral hearing on this matter, the parties requested an opportunity to decide whether to re-open discovery on a limited basis once this Court rules on the pending motions. Accordingly, the parties are ordered to submit a proposed scheduling order by August 12, 2024, to propose a new pretrial and trial schedule to bring this matter to a conclusion.

Signed at Houston, Texas, on this the ___ day of July 2024.

                                                    _____
                                                    Andrew S. Hanen
                                                    United States District Judge