United States District Court
Southern District of Texas
**ENTERED**
July 19, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| URBAN OAKS BUILDERS LLC, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-cv-4211 |
| | § | |
| GEMINI INSURANCE COMPANY, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## ORDER

Pending before the Court is Plaintiffs, Urban Oaks Builders LLC ("UOB"), Hines Interests Limited Partnership, 1662 Multifamily LLC, Hines 1662 Multifamily LLC, Hines Investment Management Holdings Limited Partnership, HIMH GP LLC, Hines Real Estate Holdings Limited Partnership, and JCH Investments, Inc. (collectively, the "Plaintiffs") Motion for Summary Judgment and Motion for Supplemental Relief on Underlying Defense Fees, Costs, and Expenses. (Doc. No. 361). Defendant Gemini Insurance Company ("Gemini") responded in opposition. (Doc. No. 380), and Plaintiffs replied (Doc. No. 405).

Also pending before the Court is Defendant Gemini Insurance Company ("Gemini")'s related Motion for Partial Summary Judgment on Bankruptcy Legal Fees, Costs, and Expenses. (Doc. No. 359). Plaintiffs responded in opposition. (Doc. No. 389). For the reasons discussed below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Gemini's Motion (Doc. No. 359). The Court **DENIES** Plaintiff's Motion. (Doc. No. 361).

## BACKGROUND

The following facts were for the most part previously laid out in a Memorandum and Recommendation (M&R) adopted by this Court. (Doc. Nos. 313, 328). For ease of reference, they are reproduced in part here. The facts in this section are undisputed unless otherwise noted.

In July 2014, Urban Oaks Builders, LLC (UOB) contracted with 1662 Multifamily LLC to be the general contractor on the construction of six apartment buildings and a clubhouse in Celebration, Florida. UOB entered into contracts with various subcontractors that in turn were enrolled in a controlled insurance program (CIP) to provide general liability insurance for the project. As a result, the term "insureds" under the CIP policies includes UOB, the project owners/developers, and the subcontractors. Defendants Gemini Insurance Company, Ironshore Specialty Insurance Company, Navigators Specialty Insurance Company, and Great American Assurance Company issued policies as part of the CIP.

Gemini issued "Commercial General Liability Policy" number VCWP001075 covering the period June 28, 2012 through July 31, 2017 ("Gemini Policy"). The Gemini Policy has limits of $2,000,000 each occurrence; $4,000,000 general aggregate; and $4,000,000 products-completed operations aggregate. The Gemini Policy includes a "Supplementary Payments" provision that provides that "we will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend…all expenses we incur…these payments will not reduce the limits of insurance." (Doc. No. 354-3 at 14). Ironshore and Navigators (respectively) issued the next two layers of insurance in excess of the Gemini policy limits, followed by a policy issued by Great American.

The construction project in Celebration, Florida was completed in February 2016. Southstar Capital Group I, LLC, as agent for Cottington Road TIC, LLC and Durban Road TIC,

LLC, (collectively Southstar) purchased the project from 1662 Multifamily in July 2016. Southstar subsequently asserted claims against Plaintiffs due to allegedly defective construction of the project. In June 2017, Southstar entered an agreement with UOB to perform warranty work at the project. UOB made a claim on the Gemini Policy for the cost of the warranty work. Gemini paid UOB $164,734.80 on October 10, 2017 and $935,005.43 on November 9, 2017. On November 14, 2017, Southstar and UOB entered a "Standstill Agreement" pursuant to which UOB agreed to pay $2,050,398.72 (to be credited against any future judgment if Southstar prevailed in litigation). On January 23, 2018, Gemini made its most recent payment to UOB in the amount of $900,259.77.

In February 2018, Southstar filed suit against UOB and others in state court in Florida asserting the following claims: Count I—Piercing the Corporate Veil/Alter Ego; Count II—Fraudulent Non-Disclosure/Fraudulent Inducement; Count III—Breach of Contract—Intentional Withholding of Material Information; Count IV—Statutory Violations of Florida Statutes 553.84; and Count V—Negligence ("Southstar Complaint"). Although the Southstar Complaint alleges that all defendants are liable on all counts because they are alter egos, Counts I-III allege specific conduct by 1662 Multifamily and Counts IV-V allege conduct by UOB. Gemini initially hired counsel to defend UOB against Southstar's claims, but after tendering payments totaling $2,000,000, declared its policy limits were exhausted and that therefore its duty to defend terminated. With the Southstar lawsuit pending in Florida and insurance coverage in dispute, UOB filed a petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas.

Southstar's claims against UOB were transferred to the Bankruptcy Court and incorporated into a Proof of Claim. Southstar's claims against other defendants remained

3

pending in Florida state court. UOB and others filed a lawsuit in Florida state court against the CIP insurers for coverage and indemnity. When that suit became mired in a jurisdictional dispute, Plaintiffs voluntarily dismissed the Florida case and refiled their claims against the insurers and others as an adversary action in its bankruptcy case.[1]

Southstar filed a proof of claim in the bankruptcy action asserting over $45,000,000 in damages. UOB objected. The Bankruptcy Court held a hearing on UOB's objection and entered an estimation judgment against UOB in favor of Southstar in the amount of $26,103,717.38 ("estimation judgment"). The estimation judgment includes "(i) $8,226,243.00 in lost profits; plus (ii) non-legal professional fees and costs in the amount of $732,262.00; plus (iii) restoration costs of $18,439,945.46; minus (iv) the Debtor's prepetition payments in the amount of $2,251,263.33," plus prejudgment interest. (Doc. No. 228-11 at 2). The Bankruptcy Court did not apportion these charges between those covered by insurance and those that were not. Southstar did not appeal. On the Bankruptcy Court's Recommendation, the District Court withdrew the reference to the Bankruptcy Court for this adversary action.

Plaintiffs filed a First Amended Complaint in this case asserting claims against the insurers for (1) turnover under 11 U.S.C. § 542 (against Gemini and Ironshore); (2) breach of contract; (3) declaratory relief; (4) violations of the Texas Insurance Code; (5) violation of Section 624.155, Florida Statutes; and (6) Florida common law bad faith. (Doc. No. 78). The Court previously dismissed the turnover claim with prejudice and all extracontractual claims without prejudice. (Doc. Nos. 177, 178, 194).

The M&R, which this Court adopted, concerned whether Plaintiffs' claims for defense and indemnity under the Policies involve a single occurrence or multiple occurrences as defined

---

[1] The Southstar entities are also named Defendants in this lawsuit, as are subcontractors Collis Roofing, Inc., Da Pau Enterprises, Inc., Florida Construction Services, Inc., and Structural Contractors South, Inc.

in the Gemini Policy.[2] (Doc. No. 313). The Magistrate Judge found (and this Court agreed) that the Southstar claims involve multiple occurrences rather than a single occurrence. In effect, the Court determined that Gemini had a duty to defend its insureds until it reached the aggregate limits of liability for multiple occurrences under the Gemini policy. The Court did not rule on the precise number of occurrences because the issue to be decided at that point was whether the claimed damages resulted from "one proximate, uninterrupted, and continuing cause," rather than the number of defects or "effects" from the alleged accident. (Doc. No. 313 at 17). The Court accordingly saw no need to decide the exact number of occurrences. After the Court's ruling on the multiple occurrences issue, the parties filed various dispositive motions seeking rulings on the duties to indemnify and defend as both the primary carrier (Gemini) and the first and second level excess carriers (Ironshore and Navigators).[3]

The Court has already determined that Gemini breached its duty to defend UOB. (Doc. Nos. 313, 328). The cross-motions at issue (Doc. Nos. 359, 361) concern the narrow issue of the attorney's fees and expenses owed by Gemini to UOB as a result of this breach. Plaintiffs request that this Court enter judgment in the amount of $7,529,236.94 as to UOB's defense fees and costs, and $901,134.67 as to the Hines Entities' defense fees and costs. (Doc. No. 361 at 9). As to UOB, this includes $4,520,731.95 incurred in defense of the underlying action and $3,008,504.99 incurred as a result of the bankruptcy action. Gemini objects. It argues that UOB is demanding costs incurred as a result of its bankruptcy proceeding and that those costs are not recoverable either as defense costs owed directly under the Gemini Policy or as consequential damages resulting from Gemini's breach of the duty to defend. (Doc. No. 359 at 2).

---

[2] The Court previously ruled that because no party showed that a conflict exists between Texas and Florida law the Court will apply Texas law to this issue. (Doc. No. 217).

[3] The Court previously granted the third level excess carrier Great American Assurance Company's Unopposed Motion for Summary Judgment on the claims against it without prejudice (to be reinstated in the event the Court's 2022 Order on the occurrences issue is withdrawn or reversed). (Doc. No. 419).

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## ANALYSIS

As previously noted, the Court has already determined that Gemini breached its duty to defend UOB. The parties agree that Gemini owes some measure of defense costs as damages.

The parties disagree about whether those damages should be limited to the defense costs incurred in the construction defect case originally filed in Florida ("underlying action"), which Plaintiffs allege amount to $4,520,731.95, or whether those damages should also include costs incurred in UOB's subsequent bankruptcy proceeding filed in the Southern District of Texas ("bankruptcy proceeding"), which Plaintiffs allege amount to $3,008,504.99.

Gemini believes that a recent bankruptcy case out of the Southern District of Indiana, *In re USA Gymnastics*, 624 B.R. 443 (Bankr. S.D. Ind. 2021), should provide the blueprint for this Court's analysis of the policy language and the covered defense costs, and argues that all fees incurred in the bankruptcy action and outlined on a chart prepared by UOB and titled "Summary of Bankruptcy Related Costs" should be excluded from Plaintiff's recoverable damages. (Doc. No. 359-23). Plaintiffs argue that the *USA Gymnastics* is inapplicable given the unique procedural posture of this case and that the bankruptcy legal fees are recoverable as direct contract damages. Alternatively, Plaintiffs argue that the fees and costs incurred in the bankruptcy proceeding should be recoverable as consequential damages for breach of the duty to defend under Texas contract law because UOB's bankruptcy was a "direct and foreseeable consequence" of Gemini's refusal to defend UOB in the underlying action.

### A. Procedure

Plaintiffs frame their motion as a "Request for Supplemental Relief" or, in the alternative, a Motion for Summary Judgment. (Doc. No. 361 at 9). Plaintiffs' First Amended Complaint states a cause of action for declaratory judgment as to Gemini's duty to defend UOB in the underlying action. Since the Court has determined that Gemini owed a duty to defend Plaintiffs, Plaintiffs argue that they are entitled to "supplemental relief" from the Court in the form of an entry of final judgment awarding monetary damages for defense costs. *See* 28 U.S.C. § 2202

("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."). Gemini makes no procedural objection to Plaintiffs' "motion for supplemental relief."

The Court finds that a motion for supplemental relief requesting money damages under 28 U.S.C. § 2202 to effectuate a prior declaratory judgment is procedurally proper. *See U. S. Cas. Co. v. Schlein*, 338 F.2d 169, 175 (5th Cir. 1964) (holding that defense costs are recoverable as actual damages in the underlying action where the insurer is found to have breached its duty to defend in a subsequent declaratory judgment action); *see also XTO Energy Inc. v. Frontier Drilling, LLC*, No. 4:20-CV-00775-P, 2021 WL 4267286 (N.D. Tex. Sept. 20, 2021), *amended*, No. 4:20-CV-00775-P, 2021 WL 8343394 (N.D. Tex. Oct. 19, 2021).

Gemini substantively responded to Plaintiff's motion and filed its own cross-motion. Gemini's motion is titled "Motion for Partial Summary Judgment on Bankruptcy Legal Fees, Costs, and Expenses." (Doc. No. 359). Gemini "seeks a ruling from the Court that, as a matter of law, UOB is not entitled to recover the attorney's fees, consulting fees, filing fees, expenses, interest on loans, and costs that UOB incurred in its bankruptcy proceeding." (Doc. No. 359 at 3). "To be clear," Gemini continues, "this motion does not seek a ruling from the court regarding the attorney's fees, expenses, or costs UOB incurred in defending the [underlying action]." (*Id.*). The Court will jointly consider the two motions and the respective responses and replies.

### B. Attorney's fees incurred in bankruptcy as recoverable defense costs

In Texas, "a breach of the duty to defend entitles the insured to the expenses it incurred in defending the suit, including reasonable attorney's fees and court costs." *Primrose Operating Co. v. Natl. Am. Ins. Co.*, 382 F.3d 546, 559 (5th Cir. 2004); *see also Evanston Ins. Co. v. Legacy of*

*Life, Inc.*, 645 F.3d 739, 750 (5th Cir. 2011). "The wrongful refusal to defend is a breach of

contract, not a tort cause of action, and therefore a contract measure of damages applies." § 5.13.

DUTY TO DEFEND AND STOWERS DOCTRINE, 27 Tex. Prac., Consumer Rights And Remedies §

5.13 (3d ed.).[4] "This means that the insurance company is liable for all damages directly and

foreseeably resulting from the breach." *Id.* (emphasis added). "Expenditures that are the direct

result of the impermissible abandonment of the insurer's duty to defend" are recoverable as part

of the insured's damages. *Schlein*, 338 F.2d at 175. "The insured's damages are generally limited

to policy limits, expenses of the insured in defending the suit (including reasonable attorney's

fees and costs), and reasonable and necessary attorney's fees and costs incurred in the suit to

enforce the judgment or settlement against the insurer." *Willcox v. Am. Home Assur. Co.*, 900 F.

Supp. 850 (S.D. Tex. 1995).

"It is well settled that once an insurer has breached its duty to defend, the insured is free

to proceed as he sees fit; he may engage his own counsel and either settle or litigate, at his

option." *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 454 (5th Cir. 2018)

(citation omitted). However, the insurer who breached its insurance contract does not waive its

right to contest the reasonableness and necessity of the defense fees incurred by the insured.

*Yowell v. Seneca Specialty Ins. Co.*, 117 F. Supp. 3d 904, 909 (E.D. Tex. 2015).

As a general matter, the question of whether costs incurred in a bankruptcy action

triggered by (or related to) an underlying lawsuit should be included in the measure of damages

resulting from a breach of the duty to defend is not one that has been squarely addressed in this

Circuit or under Texas law. The Court will address the parties' arguments as to an insured's

---

[4] *See also* 1 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 7.06 (2024) ("Since breach of the duty to
defend is a breach of contract, the usual measure of contract damages in the jurisdiction should apply. The starting
point for damages for the failure to defend is the reasonable attorney's fees and expenses incurred by the
policyholder to defend the third-party claim.").

ability to recover bankruptcy fees as "defense costs" directly under the Policy, or, alternatively, whether these fees and costs are properly assessed as consequential damages.

### a. Bankruptcy Fees and Costs as "Direct Damages" under the Policy

Gemini argues that the costs incurred in the bankruptcy action cannot be recovered as direct defense costs under the Policy. To support this contention, Gemini points to the recent *USA Gymnastics* case as instructive. *See* 624 B.R. at 443.

In that case, USA Gymnastics ("USAG"), the national governing body for gymnastics in the United States, was sued by hundreds of former and current athletes for sexual abuse and acts of sexual misconduct perpetrated by Larry Nassar, a USAG volunteer. 624 B.R. at 446. USAG's insurers agreed to defend USAG against the athletes' lawsuits under a reservation of rights. When several mediation attempts failed, USAG filed for Chapter 11 bankruptcy protection. *Id.* USAG incurred substantial costs in the bankruptcy and asked its insurers to pay the costs incurred as well as future bankruptcy fees and costs as part of the defense obligation. *Id.* The insurers argued that they were not responsible for the fees and costs associated with USAG's "voluntary" bankruptcy filing.

The relevant policy language in *USA Gymnastics* defined "suit" for which defense costs are recoverable as a "civil proceeding" that alleges damages for "bodily injury" to which the insurance coverage applies. *Id.* at 455. The bankruptcy court found that although a bankruptcy case is a civil proceeding, for the duty to defend to be triggered, the "suit" must be a civil proceeding in which damages for "bodily injury" are alleged. *Id.* The court outlined the difference between a "suit" involving a plaintiff and specific defendants, and a "bankruptcy" involving a debtor and its collective body of creditors. *Id.* Ultimately, the court found that the bankruptcy did not constitute a "suit" under the policy and that the breaching insurers were not

obligated under the terms of the policies to pay the bankruptcy costs as part of their duty to defend. *Id.* Additionally, the court found that a bankruptcy filing is "voluntarily" filed by the insured rather than a case filed "against" the insured. Finally, the court explained that "unity of interests" no longer exists between the Chapter 11 debtor and the insurer in a bankruptcy proceeding, such that the parties are no longer aligned on the traditional objective of "minimizing an insured's liability." *Id.* at 450. As a result, the court found that damages attributable to the duty to defend as outlined in the policy did not include defense costs incurred in the bankruptcy proceeding. *Id.*

In this case, the Gemini Policy includes the following relevant language:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY**

**1. Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

(Doc. No. 359-3 at 7).

The Gemini Policy defines "suit" as a "civil proceeding in which damages because of 'bodily injury,' 'property damage,' or 'personal and advertising injury' to which this insurance applies are alleged." (Doc. No. 359-3 at 21). This is similar to the language at issue in *USA*

*Gymnastics. See* 624 B.R at 455. Gemini urges this Court to follow the bankruptcy court's reasoning in that case with respect to the distinction drawn between a bankruptcy proceeding and a "civil suit," the adversarial nature of a civil action in contrast to a bankruptcy proceeding, and the "unity of interests" analysis to find that none of the costs incurred in the "core" bankruptcy proceeding are recoverable as defense costs.[5]

Plaintiffs respond that the proof of claim hearing was "an adversarial proceeding wherein the [underlying action] was conducted to such a large extent that the bankruptcy action and the [underlying action] became one and the same." (Doc. No. 389 at 21). While this Court finds the *USA Gymnastics* case instructive, it is not convinced that the facts here squarely fit the bankruptcy court's reasoning in *USA Gymnastics*. As Plaintiffs point out, the proof of claim proceeding in the instant matter was "vigorously" litigated in bankruptcy court. "Discovery was exchanged, depositions [were] taken and motion practice occurred." (Doc. No. 389 at 20). Substantive issues regarding the merits of the underlying action were considered. Unlike the *USA Gymnastics* case, where the claims objections were merely "procedural," the objections in this case were substantive. 624 B.R. at 453.

Nonetheless, Plaintiffs have only pointed to a single case to support their contention that all of the bankruptcy-related costs are recoverable under the Policy. *See In re Milwaukee Notions, Inc.*, No. 06-25918SVK, 2009 WL 1351101 (Bankr. E.D. Wis. May 11, 2009). Even in that case, the bankruptcy court found that "because costs associated with the Debtor's motion to impose sanctions and to defend itself during discovery are either ***affirmative actions not covered by the Policy***, general bankruptcy-related costs, or costs that may be later sought as part of a

---

[5] Plaintiffs urge that Gemini never "asserted" that the bankruptcy action was not a "suit" under the Gemini Policy in its affirmative defenses. Accordingly, Plaintiffs claim that Gemini has waived that argument.

claim objection or adversary proceeding, [the insurer] is not obligated to reimburse the Debtor for those expenses at this time." *Id.* at *9.

Like the Debtor in *USA Gymnastics*, Plaintiffs point to several cases in which insurers have agreed to allow insurance proceeds to be used to pay administrative costs. (Doc. No. 389 at 22). Although there may be "economic, logistical, and systemic advantages…for insurers to voluntarily fund an insured's bankruptcy, it is not a reason for this Court to stretch or rewrite the contractual coverage obligation." *USA Gymnastics*, 624 B.R. at 455.

Since insurance policies are contracts, courts in Texas construe them according to general rules of contract construction to ascertain the parties' intent. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). In Texas, "direct damages are the necessary and usual result of the defendant's wrongful act; they flow naturally and necessarily from the wrong." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997). The Gemini Policy states that: "We will have the right and duty to defend the insured ***against*** any 'suit' seeking those damages." (Doc. No. 359-3 at 7). The Court finds that costs related to "core" bankruptcy proceedings (including, but not necessarily limited to, consulting services, filing fees, and interest on the Debtor-in-Possession loan) are not contemplated by the plain language of the policy—the bankruptcy filing was ultimately an "affirmative" or "offensive" act by UOB rather than a claim or lawsuit asserted against it. To that extent, the Court agrees that those "core" bankruptcy costs are not recoverable as direct damages.

The proof of claim hearing that resulted in the estimation judgment, however, was "a contested matter bearing many similarities to civil litigation" given the adversarial nature of that hearing and the substantive issues involved. *USA Gymnastics*, 624 B.R. at 453. Defense costs

13

directly related to that hearing might flow "naturally and necessarily" from Gemini's breach of the duty to defend if they were reasonable and necessary.

In sum, the Court finds that "core bankruptcy fees" are not recoverable as direct damages under the Policy; however, defense costs related to the adversarial proof of claim hearing (resulting in the estimation judgment) may be recoverable as direct damages if they were reasonable, necessary, and expended for that purpose. The precise amount of fees and costs attributable to each category (based on the total claimed by Plaintiffs) is a fact issue to be determined at trial. Gemini's motion is therefore granted in part and denied in part on this issue.

**b. Bankruptcy Fees and Costs as "Consequential" Damages**

The next question is whether the "core" bankruptcy costs, while not direct damages, should be considered "consequential damages" under Texas law for breach of the duty to defend. This is Plaintiffs' most forceful argument. When Gemini failed to "step up" and defend UOB, Plaintiffs contend, it was foreseeable that UOB would be forced to file for bankruptcy and incur costs related to that action.

The parties have not cited to any portion of the Gemini Policy that would bar the recovery of consequential damages under the contract. In Texas, "consequential damages are those that result naturally, but not necessarily, from the defendant's breach [of contract], and are not the usual result of the wrong." *TotalEnergies Petrochemicals & Ref. USA, Inc. v. Kinder Morgan Petcoke, LP*, 658 S.W.3d 647, 679 (Tex. App.—Houston [14th Dist.] 2022, pet. filed). "Consequential damages are not recoverable unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach." *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998). Gemini argues that Plaintiffs' claim for consequential damages fails because they have not established that such damages were foreseeable at the time

the Gemini Policy was issued. (Doc. No. 407 at 5). Essentially, Gemini contends that the parties would have no way of predicting that UOB would file for bankruptcy if its insurer failed to defend it against the underlying lawsuit.

Additionally, Gemini reads the opinion in *Willcox v. Am. Home Assur. Co.,* 900 F. Supp. 850 (S.D. Tex. 1995) to limit all recoverable damages (including attorney's fees) to policy limits.[6] It is not clear to this Court that the *Willcox* opinion should be read so broadly; that case concerned the recoverability of damages stemming from a settlement agreement between the insured and a third party after the insurer breached its duty to defend. *Willcox*, 900 F. Supp. at 855. The damages issue was squarely cabined to the settlement value rather than recoverable attorney's fees. Complicating Gemini's reliance on *Willcox* is the fact that defense costs are explicitly listed as being outside policy limits in the Gemini Policy. (Doc. No. 354-3 at 14). Moreover, the *Willcox* case cites *United Services Auto. Ass'n v. Pennington*, which stands for the principle that "the insured's damages generally will be limited to the policy limits, expenses of the insured in defending the suit (including reasonable attorney fees and court costs), and reasonable and necessary attorney fees and costs incurred in the suit to enforce the judgment against the insurer." 810 S.W.2d 777, 784 (Tex. App.—San Antonio 1991, writ denied). That case did not address the key issue here: whether attorney's fees related to a bankruptcy filing stemming from the cost of defending the underlying action are recoverable as consequential damages for breach of the duty to defend.

Plaintiffs point to caselaw in this district finding that where an insurer has breached its duty to defend, it is in "no position to object to defense-related expenditures that are supported by the record and that are not patently unreasonable." *Columbia Lloyds Ins. Co. v. Liberty Ins.*

---

[6] This excludes, of course, reasonable and necessary attorney's fees incurred in the underlying Florida lawsuit, which Gemini acknowledges are not the subject of its motion. (Doc. No. 359 at 15).

*Underwriters, Inc.*, No. 3:17-CV-005, 2019 WL 2296920 (S.D. Tex. May 30, 2019) (quoting *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 454 (5th Cir. 2018). In essence, Plaintiffs argue that Gemini is not allowed to "Monday-morning quarterback how [Plaintiffs] framed [their] damages," including the decision to file for Chapter 11 bankruptcy protection, and that those costs are ultimately recoverable as consequential damages. (Doc. No. 431 at 17:17-19).

The Court finds that the parties have raised a fact issue as to whether the "core" fees and costs incurred in the bankruptcy action (including, but not necessarily limited to, consulting services, filing fees, and interest on the Debtor-in-Possession loan) are recoverable as consequential damages for breach of the duty to defend. That issue is to be properly decided at the trial stage. Gemini and Plaintiffs' motions as to this issue are accordingly denied.

### C. Reasonableness of Attorney's Fees Expended in Underlying Action

Gemini objects generally to all of Plaintiffs' purported defense costs (including those incurred in the underlying action) for "failure to put forward competent evidence to justify any of its claims…as either reasonable or necessary." (Doc. No. 380 at 13). Plaintiffs apparently seek $4,520,731.95 in defense costs that they claim were incurred by UOB in the "underlying action" (outside of the bankruptcy action), and $901,134.67 incurred in the "underlying action" by the Hines entities (outside of the bankruptcy action).[7] (Doc. No. 361 at 17-18; Doc. No. 361-1 at 7).

"Attorney's fees sought to be recovered as damages must be reasonable and necessary." *Am. Home Assur. Co. v. United Space All., LLC*, 378 F.3d 482, 490 (5th Cir. 2004) (citations omitted). What constitutes reasonable attorneys' fees, including whether the choice of a particular law firm was reasonable, is a question of fact. *Satterwhite v. Safeco Land Title of*

---

[7] Gemini claims that the only defense costs for the underlying action that Plaintiffs have outlined total $2,448,749.47 "without acknowledging or agreeing" that it actually owes that amount.

*Tarrant*, 853 S.W.2d 202 (Tex. App.—Fort Worth 1993), *writ denied* (Sept. 10, 1993); *see also Primrose*, 382 F.3d at 560. "To show the reasonableness and necessity of attorney's fees incurred, Texas courts have generally held that a party seeking such fees must offer the testimony of a witness who has been designated as an expert...or, at the very least, some testimony by the claimant's attorney that the fees being sought as damages are reasonable." *Am. Home*, 378 F.3d at 490 (citations omitted). Where a court does not clearly take judicial notice of reasonableness, the testimony merely raises a fact issue to be determined by a jury. *Id*.

The parties agree that the factors outlined in *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812 (Tex. 1997) control the reasonableness determination. The relevant factors are as follows:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818.

"[E]vidence of each of the *Andersen* factors is not required to support an award of attorney's fees." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.— Dallas 2008, no pet.) (emphasis added). "The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. App.—Dallas 2009, pet. denied).

Plaintiffs offer only the "Declaration of Keith Borchardt" and the "Declaration of Kerry Sandberg" to support their requests for attorneys' fees for UOB and the Hines entities,

respectively. (Doc. No. 361 at 14). According to his declaration, Keith Borchardt was the Comptroller of UOB "during the relevant times" and is "generally familiar with its operations, books, and records." Kerry Sandberg is the Senior Vice President – Accounting at Hines. She is "generally familiar with its operations, books, and records." Neither is an attorney, nor are they even employees of the firms who incurred the purported fees. Both stated that they "relied on [the law firm's] knowledge, skill, and expertise to provide a defense…including their independent professional judgment on what expenses were reasonable and necessary to provide a full and complete defense to UOB."

These declarations are not sufficient to meet Plaintiffs' burden under the *Andersen* factors. As a result, the Court cannot "clearly take judicial notice of reasonableness" and their testimony "does no more than raise a fact issue[.]" *Am. Home*, 378 F.3d at 490. Plaintiffs' motion for summary judgment as to the fees incurred in the underlying action is accordingly denied.

Signed at Houston, Texas, on this the _15_ day of July 2024.

Andrew S. Hanen
United States District Judge

18