United States District Court
Southern District of Texas
**ENTERED**
July 19, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| URBAN OAKS BUILDERS LLC, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-cv-4211 |
| | § | |
| GEMINI INSURANCE COMPANY, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## ORDER

Pending before the Court is Navigators Specialty Insurance Company's ("Navigators") Renewed Motion for Summary Judgment for Subrogation Against Gemini Insurance Company. (Doc. No. 353). Gemini Insurance Company ("Gemini") responded in opposition. (Doc. No. 377). Navigators replied. (Doc. No. 395). Also pending before the Court are Navigators' Motion for Partial Summary Judgment Regarding the Duty to Defend (Doc. No. 351) and Navigators' Motion for Partial Summary Judgment Regarding the Duty to Indemnify (Doc. No. 355), both of which were fully briefed by the relevant parties. For the reasons outlined below, the Court grants in part and denies in part Navigators' Motion for Summary Judgment for Subrogation. (Doc. No. 353). The Court further grants Navigators' Motion for Partial Summary Judgment Regarding the Duty to Defend (Doc. No. 351) and denies without prejudice Navigators' Motion for Partial Summary Judgment Regarding the Duty to Indemnify. (Doc. No. 355).

## BACKGROUND

The following facts were previously laid out in a Memorandum and Recommendation (M&R) adopted by this Court. (Doc. Nos. 313, 328). For ease of reference, they are reproduced in part here. The facts in this section are undisputed unless otherwise noted.

In July 2014, Urban Oaks Builders, LLC ("UOB") contracted with 1662 Multifamily LLC to be the general contractor on the construction of six apartment buildings and a clubhouse in Celebration, Florida. UOB entered into contracts with various subcontractors that in turn were enrolled in a controlled insurance program ("CIP") to provide general liability insurance for the project. As a result, the term "insureds" under the CIP policies includes UOB, the project owners/developers, and the subcontractors.

Defendants Gemini, Ironshore Specialty Insurance Company ("Ironshore"), Navigators, and Great American Assurance Company ("Great American") issued policies as part of the CIP. Gemini issued "Commercial General Liability Policy" ("Gemini Policy") number VCWP001075 covering the period June 28, 2012, through July 31, 2017. The Gemini Policy has limits of $2,000,000 each occurrence; $4,000,000 general aggregate; and $4,000,000 products-completed operations aggregate. Ironshore issued "ExcessProtect Commercial Excess Liability Policy" number 001402500 covering the period from June 28, 2012 through July 31, 2017 ("Ironshore Policy"). The Ironshore Policy "follows form" to the Gemini Policy.

Navigators issued the next layer of insurance in excess of the Ironshore policy limits, which is "Follow Form Excess Liability Policy" number SE12FXS754225IC covering the period June 28, 2012, through July 31, 2017. ("Navigators Policy"). The Navigators Policy has limits of $15,000,000 each event; $15,000,000 general aggregate; and $15,000,000 products-completed operations aggregate limit.

The construction project in Celebration, Florida was completed in February 2016. Southstar Capital Group I, LLC, as agent for Cottington Road TIC, LLC and Durban Road TIC, LLC, (collectively "Southstar") purchased the project from 1662 Multifamily in July 2016. Southstar subsequently asserted claims against Plaintiffs due to allegedly defective construction

of the project. In June 2017, Southstar entered an agreement with UOB to perform warranty work at the project. UOB made a claim on the Gemini Policy for the cost of the warranty work. Gemini paid UOB $164,734.80 on October 10, 2017 and $935,005.43 on November 9, 2017. On November 14, 2017, Southstar and UOB entered a "Standstill Agreement" pursuant to which UOB agreed to pay $2,050,398.72 (to be credited against any future judgment if Southstar prevailed in litigation). On January 23, 2018, Gemini made its final payment to UOB in the amount of $900,259.77.

In February 2018, Southstar filed suit against UOB and others in state court in Florida asserting the following claims: Count I—Piercing the Corporate Veil/Alter Ego; Count II—Fraudulent Non-Disclosure/Fraudulent Inducement; Count III—Breach of Contract—Intentional Withholding of Material Information; Count IV—Statutory Violations of Florida Statutes 553.84; and Count V—Negligence ("Southstar Complaint"). Although the Southstar Complaint alleges that all defendants are liable on all counts because they are alter egos, Counts I-III allege conduct by 1662 Multifamily and Counts IV-V allege conduct by UOB. Gemini initially hired counsel to defend UOB against Southstar's claims, but after tendering payments totaling $2,000,000, declared its policy limits were exhausted and that therefore its duty to defend terminated. With the Southstar lawsuit pending in Florida and insurance coverage in dispute, UOB filed a petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. Southstar's claims against UOB were transferred to the Bankruptcy Court and incorporated into a Proof of Claim. Southstar's claims against other defendants remained pending in Florida state court.[1]

---

[1] UOB and others filed a lawsuit in Florida state court against the CIP insurers for coverage and indemnity. When that suit became mired in a jurisdictional dispute, Plaintiffs voluntarily dismissed the Florida case and refiled their claims against the insurers and others as an adversary action in its bankruptcy case.

In October 2019, after Ironshore declined to defend UOB and Hines, Navigators agreed to defend both entities in the Southstar lawsuit in Florida, the proof of claim hearing in the Bankruptcy Court, and "any additional litigation as further defined in the Appointed Defense Agreement" subject to a reservation of rights. Navigators appointed separate counsel for each company: the law firm of Rembold Hirschman to represent UOB, and Butler Weihmuller, Katz, and Craig to represent Hines. (Doc. No. 353-1 at 375). Navigators declined to appoint Baker Botts, for UOB, and Akerman, for Hines, as the two entities requested. (*Id.* at 376).

Southstar's proof of claim in the bankruptcy action asserted over $45,000,000 in damages. UOB objected. The Bankruptcy Court held a hearing on UOB's objection and entered an estimation judgment against UOB in favor of Southstar in the amount of $26,103,717.38 ("estimation judgment"). The estimation judgment includes "(i) $8,226,243.00 in lost profits; plus (ii) non-legal professional fees and costs in the amount of $732,262.00; plus (iii) restoration costs of $18,439,945.46; minus (iv) the Debtor's prepetition payments in the amount of $2,251,263.33," plus prejudgment interest. (Doc. No. 228-11 at 2). The Bankruptcy Court made no effort to apportion these charges between those covered by insurance and those that were not. Southstar did not appeal. On the Bankruptcy Court's Recommendation, the District Court withdrew the reference to Bankruptcy Court for this adversary action.

Plaintiffs filed a First Amended Complaint in this case asserting claims against the insurers for (1) turnover under 11 U.S.C. § 542 (against Gemini and Ironshore); (2) breach of contract; (3) declaratory relief; (4) violations of the Texas Insurance Code; (5) violation of Section 624.155, Florida Statutes; and (6) Florida common law bad faith. (Doc. No. 78). The Court previously dismissed the turnover claim with prejudice and all extracontractual claims without prejudice. (Doc. Nos. 177, 178, 194).

The M&R, which this Court adopted, concerned whether Plaintiffs' claims for defense and indemnity under the Policies involve a single occurrence or multiple occurrences as defined in the Gemini Policy.[2] (Doc. No. 313). It found (and this Court agreed) that the Southstar claims involve multiple occurrences rather than a single occurrence. As a result, the Court determined that Gemini had a duty to defend its insureds until it reached the aggregate limits of liability for multiple occurrences under the Gemini policy.

Navigators now seeks a ruling as a matter of law that it owes no duty to defend Plaintiffs in the underlying action based on the Court's determination that Gemini's duty to defend never terminated. Additionally, in its Motion for Summary Judgment for Subrogation (Doc. No. 353), Navigators seeks reimbursement from Gemini for the $742,069.38 in defense costs that it contends were "reasonable and necessary" expenses stemming from the Appointed Defense Agreement between Navigators, Hines, and UOB in October 2019. First, Navigators contends that it is entitled to contractual and/or equitable subrogation against Gemini for the defense costs and expenses it incurred in defending Plaintiffs against the Construction Defect Claims. Next, Navigators argues that it is entitled to recoup the total amount allegedly owed ($742,069.38) because that amount was "reasonable and necessary." Gemini responds with two arguments: first, and briefly, that Navigators "lacks standing" to seek subrogation because it "voluntarily" issued payment as a second level excess insurer whose duty to defend was not triggered until Ironshore's duty to defend ended. Second, and more forcefully, Gemini argues that Navigators has not put forward competent evidence that its purported defense costs in the amount of $742,069.38 were "reasonable and

---

[2] The Court previously ruled that because no party showed that a conflict exists between Texas and Florida law the Court will apply Texas law to this issue. (Doc. No. 217).

necessary" under the factors outlined in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d

812 (Tex. 1997).[3]

Finally, in its Motion for Partial Summary Judgment Regarding the Duty to Indemnify,

Navigators seeks an affirmative ruling from this Court that it has no duty to indemnify the Plaintiffs

because, in their view, Plaintiffs have not shown that the estimation judgment includes potentially

covered damages sufficient to attach to the Navigators Excess Policy. (Doc. No. 355 at 8).

Plaintiffs respond that a ruling as to Navigators' duty to indemnify would be premature given

Plaintiffs' contention that some amount of the estimation judgment (plus prejudgment interest)

may reach Navigators' Excess Policy pending this Court's rulings on other issues in this case.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "The movant bears the burden of identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*,

485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant

to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant

then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact

is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all

reasonable inferences in the light most favorable to the nonmoving party in deciding a summary

---

[3] This Court, sitting in diversity, will apply Texas law to the contract interpretation issues in this case. *See* (Doc. No.
217).

judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## ANALYSIS

**1. Navigators' Motion for Partial Summary Judgment - Duty to Defend (Doc. No. 351)**

First, Navigators argues that it is entitled to summary judgment that it has no duty to defend Plaintiffs based on this Court's prior ruling that Gemini's duty to defend Plaintiffs never ceased. Plaintiffs respond that this motion is moot. (Doc. No. 383 at 5). Navigators replies that a finding of mootness would be "incorrect" given that Plaintiffs have an affirmative breach of contract claims for the duty to defend pending against Navigators. (Doc. No. 396 at 2).

As noted, this Court previously ruled that Gemini's duty to defend Plaintiffs did not terminate. (Doc. Nos. 313, 328). The Navigators Excess Policy states that "we will have the duty to investigate or defend such suits only if the 'controlling underlying insurance's' expressed duty to investigate or defend ends because it has paid the full limit of insurance in judgments or settlement of claims." (Doc. No. 358-3 at 4). Navigators' duty to defend is not triggered until Ironshore's (here the "controlling underlying insurance") duty to defend ends. Ironshore's duty to defend was never triggered because Gemini's duty to defend never ended. It must follow that Navigators is entitled to judgment as a matter of law that it does not have a duty to defend Plaintiffs, and the Court hereby grants Navigators' motion for summary judgment on that issue. (Doc. No. 351).

**2. Navigators' Motion for Subrogation (Doc. No. 353)**

The Court next considers whether Navigators can pursue a contractual or equitable subrogation claim against Gemini for the costs it incurred in defense of Plaintiffs.

"Subrogation is the substitution of one party for another such that the new party may assert the rights of the substituted party." *Contl. Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 85 (5th Cir. 2012) (citation omitted). "The two most common types of subrogation are equitable and contractual." *Id.* (citations omitted). In Texas, equitable subrogation "'arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter.'" *Contl. Cas. Co.,* 683 F.3d at 85 (citing *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007)). Contractual subrogation "is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss." *Id.* (citing *Mid-Continent Ins.*, 236 S.W.3d at 774). The Fifth Circuit has recognized that "in the case of either equitable or contractual subrogation, 'the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party, subject to any defenses held by the third party against the insured." *Id.* (citing *Mid-Continent Ins.*, 236 S.W.3d at 774).

In *Continental Casualty Co.*, three primary insurance carriers refused to defend their insured in an arbitration. *Contl. Cas. Co.*, 683 F.3d at 86-87. With the insured left unprotected, the excess insurance carrier took over the defense and incurred defense costs. *Id.* The excess insurer "thus bore the costs of a defense to which [the insured] was entitled from third parties." *Id.* In that case, the excess carrier's policy included a subrogation clause that stated the following:

8

"[i]f any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair these rights and must help us enforce them."

*Id.*

The Fifth Circuit found that "under the terms of the subrogation clause, [the excess carrier] is entitled to reimbursement from the insurers who should have borne the costs that it paid." *Id.* Further, the Fifth Circuit, citing Texas law, noted that "[d]isallowing [the excess insurer] to recover from the primary carriers when those carriers had an obligation to protect the insured would encourage the primary carriers to breach their duties to defend rather than place their insured's interests above their own by defending and seeking reimbursement later." *Id.* at 87.

As mentioned previously, the Navigators Policy "follows form" to the Ironshore Policy unless the Navigators Policy contains conflicting provisions. (Doc. No. 353-1 at 142). The Ironshore Policy "follows form" to the Gemini Policy and provides coverage with the same terms and conditions as the Gemini Policy unless the terms are inconsistent with the Ironshore Policy. (Doc. No. 353-1 at 244).

The Gemini Policy includes the following provision ("Subrogation Provision"):

"If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them."

(Doc. No. 353-1 at 24).

Navigators argues that this Subrogation Provision in the Gemini Policy is incorporated into the Navigators Policy because "there are no conflicting or inconsistent provisions in the Navigators Policy or the Ironshore Policy with respect to the Subrogation Provision in the Gemini Policy." (Doc. No. 353 at 10). Gemini's response is silent as to whether the Subrogation Provision in the Gemini Policy is incorporated into the Ironshore and Navigators Policies. In Texas, "[i]nsurance

policies are interpreted using the same rules governing other contracts." *Contl. Cas. Co.*, 683 F.3d at 89 (citing *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008)). "Words are given their 'plain meaning,' and courts must not insert 'additional provisions into the contract.'" *Id.* (citing *Natl. Union*, 246 S.W.3d at 606). "If the written instrument is worded so that it can be given only one reasonable construction, it will be enforced as written." *Id.* (citing *Natl. Union*, 246 S.W.3d at 606).

The Court finds that the Subrogation Provision in the Gemini Policy was incorporated into the Ironshore Policy by the follow form provision in the Ironshore Policy, which is unambiguous. *See* (Doc. No. 353-1 at 244). The Court further finds that the Subrogation Provision in the Gemini Policy was incorporated into the Navigators Policy by the follow form provision in the Navigators Policy, which is unambiguous. (Doc. No. 313-1 at 142).[4] This Court has already determined that Gemini had a duty to defend its insureds until it reached the aggregate limits of liability for multiple occurrences under the Gemini Policy. (Doc. Nos. 313, 328). Ironshore and Navigators' duties to defend were never triggered, as Gemini's duty to defend never terminated.

The Court notes that the Subrogation Provision in the Gemini Policy is nearly identical to the subrogation provision enforced against the primary insurers in *Continental Casualty Co. See* 683 F.3d at 86-87. Therefore, pursuant to clear Fifth Circuit precedent in *Continental Casualty Co.* and the language of the Subrogation Provision, the Court finds that Navigators is entitled to seek reimbursement for its defense costs from Gemini.

---

[4] Gemini's response focuses primarily on its argument that Navigators "voluntarily" paid the defense costs and therefore is not entitled to equitable subrogation. *See Frymire Engr. Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Intern., Ltd.*, 259 S.W.3d 140 (Tex. 2008). Even if Navigators were a "volunteer," this would not negate the applicability of the Subrogation Provision incorporated into the Navigators Policy and enforceable against Gemini.

### A. Calculation of Applicable Defense Costs

Gemini's primary objection to Navigators' motion relates to the competency of the evidence that Navigators submitted to support its claim for $742,069.38 in defense costs. In support of this amount, Navigators submitted the Declaration of Steven Lokus, "the claim professional responsible for overseeing Plaintiffs' defense." (Doc. No. 395 at 6). Attached to that Declaration, Navigators submitted over 350 pages of invoices from "law firms retained to defend Plaintiffs." (*Id.*). Gemini objects specifically to the Declaration of Joseph A. Colagiovanni, Jr., an attorney at Baker Botts LLP ("Baker Botts affidavit"). As Navigators points out, that affidavit and supporting exhibits were submitted in support of Navigators' alternative standing argument in the event the Court were to grant Ironshore's Motion for Reconsideration on the multiple occurrences issue (which it did not). (Doc. No. 395 at 6).

Nonetheless, Gemini is correct that Fifth Circuit precedent and Texas law require that "attorney's fees that are recoverable as damages for breach of the duty to defend must be reasonable and necessary." *Am. Home Assur. Co. v. United Space All., LLC*, 378 F.3d 482, 490 (5th Cir. 2004). The parties agree that the factors outlined in *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812 (Tex. 1997) control the reasonableness determination. The Court therefore considers the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818.

"[E]vidence of each of the *Andersen* factors is not required to support an award of attorney's fees." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.). "The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. App.— Dallas 2009, pet. denied).

Navigators argues that the Lokus Declaration and supporting exhibits satisfy its burden under *Andersen* because "Navigators has provided this Court will full, itemized defense invoices, broken down by task, by lawyer and by the charge of each lawyer and paralegal." (Doc. No. 395 at 9). According to Navigators, the costs are "clearly reasonable in that retained counsel defended two separate proceedings in which the underlying plaintiffs alleged over $45 million in damages for $742,069.38 in total fees and costs." (Doc. No. 395 at 9).

The Court notes that some of the billing records, however, appear to relate to legal work completed for the bankruptcy action. (See, e.g., Doc. No. 353-3 at 371). Although Gemini does not directly dispute these charges in its response to this motion, the issue of whether costs incurred in the bankruptcy action qualify as "defense costs" for breach of the duty to defend is the subject of another pending motion (Doc. No. 359) where the Court determined that the recoverability of costs and fees incurred in the bankruptcy action is a genuine issue of material fact that must be resolved at trial. Navigators has not met its burden to establish that the costs it incurred were reasonable and necessary given that the Lokus Declaration does not distinguish between costs incurred in the Florida lawsuit and the proof of claim hearing in the bankruptcy action; indeed, those two actions are collectively referred to as the "Construction Defect Claims." (Doc. No. 353-

3 at 3). Regarding the bankruptcy, the summary judgment evidence does not describe why all fees connected to it are necessarily fees to defend UOB and/or Hines.

In sum, the Court grants in part Navigators' Motion for Summary Judgment for Subrogation as to Navigators' entitlement to seek reimbursement from Gemini for defense costs incurred after Gemini breached the duty to defend its insured. The Court denies in part Navigators' motion as to the amount it is entitled to recover from Gemini in defense costs without prejudice pending the outcome of trial in this matter.

### 3. Navigators' Motion for Partial Summary Judgment – Duty to Indemnify (Doc. No. 355)

Finally, Navigators argues that it owes no obligation to indemnify Plaintiffs because Plaintiffs "have failed to meet their burden of demonstrating sufficient damages necessary to exceed the available limits of the underlying primary and excess policies issued by Gemini and Ironshore, respectively." (Doc. No. 355 at 9). The parties disagree about the total amount of the estimation judgment that qualifies as covered "property damage" under Texas law. (*Id.*). Given this Court's ruling denying Plaintiffs' Motion for Summary Judgment as to the Duty to Indemnify (Doc. No. 358) and the Court's ruling on Ironshore's Motion for Summary Judgment (finding that the Ironshore $20 million aggregate limit applies) (Doc. No. 360), this Court denies Navigators' motion for Partial Summary Judgment Regarding the Duty to Indemnify (Doc. No. 355) without prejudice.

Signed at Houston, Texas, on this the _19_ day of July 2024.

Andrew S. Hanen
United States District Judge

13